FILED
DALLAS COUNTY
7/25/2018 11:53 AM
FELICIA PITRE
DISTRICT CLERK

CAUSE NO. **DC-16-07371**

**EXHIBIT DAR003**

| | | |
|---|---|---|
| JOHN DARJEAN | § | THE DISTRICT COURT |
| *Plaintiff* | § | |
| | § | |
| vs. | § | |
| | § | 160th JUDICIAL DISTRICT |
| DEION SANDERS, PILAR SANDERS, AND | § | |
| SHILO SANDERS | § | |
| *Defendant* | § | DALLAS COUNTY, TEXAS |

**PLAINTIFF'S THIRD AMENDED ORIGINAL PETITION**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW **JOHN DARJEAN,** hereinafter referred to as "Plaintiff," and respectfully files this Third Amended Original Petition against **DEION SANDERS AND SHILO SANDERS,** hereinafter referred to as "Defendants," and states the following:

**I.**

1. Plaintiff intends to conduct discovery under Level 3 of Rule 190.4 of the Texas Rules of Civil Procedure.

**II.**

2. Plaintiff, **JOHN DARJEAN** is an individual residing in Dallas, Texas.

3. In accordance with CPRC §30.014, **JOHN DARJEAN** has been issued a driver's license. Without regard to when said license was issued, whether it is still in effect, or where it was issued (none of which are required by CPRC §30.014) the last three (3) numbers (although without regard to the sequence as they appear on the license, which is likewise not required by CPRC §30.014) are 970.

Page **1** of **18**

4. Further, Plaintiff **JOHN DARJEAN** has been issued a social security number. Without regard to when said social security number was issued, whether it is still in effect, or where it was issued (none of which are required by CPRC §30.014) the last three (3) numbers (although without regard to the sequence as they appear, which is likewise not required by CPRC §30.014) are 058.

5. Defendant, **DEION SANDERS** is an individual residing in Cedar Hill, Texas at his residence located at 2314 Sunset Ridge Cr, Cedar Hill, Texas 75104. Defendant, Deion Sanders, has filed an answer in this case and is before this Court for all purposes.

6. Defendant, **SHILO SANDERS** is an individual purportedly residing in Cedar Hill, Texas at his residence located at 2314 Sunset Ridge Cr, Cedar Hill, Texas 75104. Defendant Shilo Sanders, has filed an answer in this case and is before this Court for all purposes.

### III.

7. Venue is proper in Dallas County, Texas pursuant to §§15.002(a)(1) and 15.005 of the Texas Civil Practice and Remedies Code.

### IV.
### FACTS

8. Deion Sanders and Pilar Sanders are the biological parents of Shilo Sanders, a minor. Shilo Sanders was 15 years of age and in the ninth grade at Triple A Academy located at 2524 West Ledbetter Drive, Dallas, Texas 75233 at the time of the incident made the basis of this lawsuit occurred when Shilo Sanders assaulted and battered Plaintiff, John Darjean, a security officer at Triple A Academy.

9. In 2011, Defendant, Deion Sanders, and Pilar Sanders, became embattled in a bitter and

hotly contested Divorce proceeding in Collin County, Texas. The Divorce proceeding lasted approximately 2 years culminating with a Divorce Decree being entered by the Judge of the 366th District Court of Collin County, Texas bearing cause number 366-56261-2011 on September 13, 2013. During the Divorce proceedings and the trial of said case which lasted approximately 2 weeks, each of the parties were fighting over and seeking sole custody of their 3 children, including the Defendant, Shilo Sanders.

10. On September 13, 2013, the Trial Court entered a Final Decree of Divorce awarding and Ordering, among other things, sole managing conservatorship of their children, including Shilo Sanders, to the Defendant, Deion Sanders.

11. Based on information and belief, on or about September 1, 2015, Shilo Sanders became a ninth grade student at Triple A Academy in Dallas, Texas. In addition, Shilo Sanders was a student at Triple A Academy during part of the eighth grade.

12. Prior to September of 2015, Shilo Sanders had been a student at Prime Prep Academy which was co-founded by the Defendant, Deion Sanders, along with Co-founder D.L. Wallace, in 2012. However, due to financial mismanagement, misappropriation of funds, theft, wrongdoing, and substandard grades, the school was finally forced to close on January 30, 2015 due to insolvency among other reasons cited by the Texas Education Agency which revoked the school's charter.

13. As a result of the school's charter being revoked and closing, Deion Sanders, convinced many of former Prime Prep Students to transfer to Triple A Academy. In addition, Deion Sanders transferred his own children, including Shilo Sanders to Triple A Academy during the Spring/Fall of 2015.

14. Plaintiff, John Darjean, was employed as a security officer at Focus Academies, which include Focus Learning Academy (Pre – K – 6th grade) and Triple A Academy (7th grade – 12th grade) since approximately 2011.

15. On September 17, 2015, Shilo Sanders while attending Triple A Academy during the school day was caught shooting dice in class. As a result of Shilo Sanders conduct and the fact that he would not stop his dice game as well as his other wrongful conduct which was continually disrupting the class when requested several times by the teacher, John Darjean, was instructed to get Shilo Sanders and take him to the disciplinary office. After receiving the instructions from one of his supervisors, Mr. Darjean, went to the classroom where Shilo Sanders was shooting dice and disrupting the class and took him to the disciplinary office to speak with Coach Hart, the disciplinary officer. Coach Hart instructed Mr. Darjean to take Shilo Sanders to ISS (In School Suspension). Shilo Sanders was taken to ISS and left with the teacher at ISS. Approximately 5 minutes after leaving Shilo Sanders at ISS, Mr. Darjean received a call from the teacher at ISS requesting that he come back and get Shilo Sanders due to Shilo Sanders' continued disruptive behavior in the ISS class which caused the class to be uncontrollable. Upon receiving those instructions, John Darjean returned to the ISS class and took Shilo Sanders to John Darjean's office because he was unable to find the Disciplinary Officer because he believed he was gone to lunch.

16. While Shilo Sanders was in Mr. Darjean's office, the Defendant, Deion Sanders, discovered that his son was talking on the cellular phone with his mother, Pilar Sanders. (Deion Sanders' former spouse). Upon discovering this fact, Deion Sanders, had several telephone conversations with John Darjean advising him, among other things, to wit:

   a. That he did not want his son speaking with his ex-wife, Pilar Sanders;
   b. That she was crazy;
   c. That she was recording everything that was being said;
   d. That she was trying to set Mr. Darjean up;
   e. That she was trying to set the school up;
   f. That she had no legal right to speak to her son, Shilo Sanders;
   g. that she did not have any custody rights of Shilo Sanders;
   h. That Mr. Sanders had sole custody of Shilo and all custody rights;
   i. That she could make a lot of trouble for Deion Sanders because of the divorce and continued problems in Court.

17. Deion Sanders repeatedly requested that John Darjean do him a favor and get Shilo Sanders off the phone with his mother and take both of Shilo Sanders' phones from him so he could not speak with his mother, Pilar Sanders. Deion Sanders further told Mr. Darjean that Pilar Sanders would make trouble for Mr. Sanders so Mr. Darjean needed to get both of Shilo Sanders' phones from him to keep him from speaking with his mother.

18. In addition, it was also a violation of Triple A Academies'/Focus Learning Academies/Focus Academies' Polices, Procedures, and Rules for any student to be displaying and/or using and/or speaking on a cellular telephone while at school.

19. John Darjean asked Shilo Sanders on multiple occasions to get off the telephone and to turn his phones over to him. John Darjean also asked Shilo Sanders on multiple occasions to give him his telephones. Shilo Sanders repeatedly refused the reasonable requests by John Darjean. At all times John Darjean acted in a reasonable, rational and in a non-threatening manner. Suddenly and without warning, Shilo Sanders physically assaulted, beat and battered John Darjean by elbowing Mr. Darjean in the chest and neck and striking Mr. Darjean several times in the chest area and neck area. As a result of the assault and battery, John Darjean sustained severe, permanent, and disabling injuries including permanent neurological injuries and damage to his spine and other parts of his body causing him to become totally disabled.

Page **5** of **18**

20. During the short period of time that Shilo Sanders was at Triple A Academy, he was in and out of trouble on numerous occasions. On September 9, 2015, he was disciplined for being disrespectful to Dr. Leubane for being disrespectful and threatening to report Dr. Leubane to the administration.

> **Step 1: Written Warning and/or Redirection Inside Classroom**
> Teacher Assigning Step - Date Step Assigned - Brief Description of Incident
> Dr. Leubane-9.3.15-Student was being disrespectful. Threatened to report me to leadership after I redirected his misbehavior.

21. On September 17, 2015, Shilo Sanders was caught shooting dice in one of his classes severely disrupting the class and refusing to obey the teacher when he was requested to cease his dice game.

> **LEVEL II OFFENSES**
> CHECK ALL THAT APPLY
> overt defiance, and refusal to comply in such a manner that significant teacher time and interaction is required
>
> **LEVEL III OFFENSES**
> CHECK ALL THAT APPLY
> No Response
>
> **Description of Incident:**
> Shilo was accused for shooting dice by several students and Mr. Dejean was told by the Principal to check bag from security shilo refused to let him check the bag.

22. On September 18, 2015, Shilo Sanders returned to school after he had assaulted and battered Plaintiff and after he had been suspended from school for his conduct seeking out the student that had told on him for shooting dice. When Shilo Sanders returned to school on September 18, 2015, he assaulted and battered a student named Devuntrae Bookman, who had reported him for shooting dice.

**LEVEL III OFFENSES**
CHECK ALL THAT APPLY
Physical, verbal, sexual, or racial behavior towards students

**Description of Incident:**
Student was shown on video, outside of ISS room, attacking another student Devuntrae Bookman.

**Parent must be contacted in regard to this incident before referral will be processed.**
List contact or attempted contact name, date and time in OTHER. OTHER must be selected if a or b is selected.
No Response

**ADMINISTRATIVE ACTION**
CHECK ALL THAT APPLY: OTHER must be selected if option 3 or 4 is selected.
4. Out-of-School Suspension (OSS). Enter No. of days in Other., Other: 3 days

23. On or about September 18, 2015, after Shilo Sanders was sent home a second time because he assaulted and battered the student, Devuntrae Bookman, his father, Mr. Deion Sanders, admitted Shilo Sanders to the Dallas County Juvenile Detention Center due to Shilo's violent, erratic, and irrational conduct that transpired when Shilo Sanders assaulted and battered Plaintiff, John Darjean, on September 17, 2015 and a student at Triple A Academy, Devuntrae Bookman on September 18, 2015.

24. During the time that Shilo Sanders was at the Dallas County Juvenile Detention Center, Mr. Deion Sanders was interviewed by Mr. Jordan Ham, who was investigating the incident in question on behalf of the Texas Department of Family and Protective Services. During the interview of Deion Sanders, his attorney, Mr. Rick Robertson, was present. Among other things, Mr. Deion Sanders advised Jordan Ham during said interview of the following which is taken directly out of the official report prepared by Jordan Ham of the Texas Department of Family and Protective Services , to wit:

> **09/29/2015 11:30AM Face to Face Mr. Deion Sanders, father**
>
> I, Jordan Ham, conducted an interview with the father, Mr. Deion Sanders, in a private conference room at the FOCUS Learning Academy (2524 W. Ledbetter Drive, Dallas, TX 75233). Mr. Sanders was accompanied by his attorney, Mr. Rick Robertson.
>
> Mr. Sanders reported that on Thursday, September 17th, 2015, the security cameras at the Focus Learning Academy observed Shilo and another student shooting dice on the school premises. Mr. Sanders stated that Shilo was confronted by security personnel, Mr. John Darjean. Mr. Sanders indicated that Mr. Darjean did find dice in Shilo's bag. Mr. Sanders stated that Shilo was sent to in school suspension (ISS). Mr. Sanders reported that Shilo became disruptive while in ISS. He indicated that Shilo attempted to use his cell phone while in ISS, which is a violation of school policy. Mr. Sanders reported that Shilo was confronted by Mr. Darjean a subsequent time while in ISS. Mr. Sanders stated that Shilo reportedly struck Mr. Darjean in the chest; and began resisting away
>
> Deion Sanders 000057
>
> Investigation Report
>
> from Mr. Darjean. Mr. Sanders stated that Mr. Darjean was required to restrain Shilo. Mr. Sanders stated that school personnel are all trained on how to perform proper restraints. Mr. Sanders stated that he does not suspect any excessive physical force used in restraining Shilo. Mr. Sanders stated that he feels as if the situation was handled appropriately by Mr. Darjean. Mr. Sanders reported that Shilo's grandmother, Ms. Connie Knight, was contacted and requested to pick Shilo up from school, as Mr. Sanders was out of town. Mr. Sanders stated that Shilo was suspended from attending school the following day as a result of the incident.
>
> Mr. Sanders stated that despite Shilo's suspension, Shilo still proceeded to attend school the following morning with the intentions of "fighting" the student who told on him for playing dice. Mr. Sanders reported that Shilo did engage in a physical altercation with the student and was again sent back to his residence. Mr. Sanders stated that he proceeded to transport Shilo to the Dallas County Juvenile Detention - Letot Center; and admitted Shilo into the crisis intervention program; where Shilo is currently enrolled.
>
> Mr. Sanders stated that Shilo is just being a fifteen year old, defiant teenager, who is acting out. Mr. Sanders reported that he feels it is in Shilo's best interest to remain at the Letot Center at this time. He stated that Shilo's progress will determine how long Shilo remains at the facility. Mr. Sanders stated that Shilo needs time to sit down and think about the path he is currently heading down. Mr. Sanders stated that Shilo may end up in prison at his current rate. Mr. Sanders reported that he does attend weekly meetings with Shilo's therapist and caseworker; and does obtain updates in regards to Shilo's progress.

25. Deion Sanders stated to the investigator for Texas Department of Family and Protective Services that Shilo Sanders was at fault in causing the altercation between his son and John Darjean and that John Darjean was required to restrain Shilo. Deion Sanders further stated that he did not expect any excessive force being used restraining Shilo and that he felt that the situation was handled appropriately by John Darjean. Deion Sanders further stated that despite Shilo's suspension, he returned to school the following morning with the intention of fighting the student who told on him for playing dice and that Shilo Sanders did in engage in a physical altercation with Devuntrae Bookman and was again sent home from school. Deion Sanders also stated to the interviewer that at Shilo's current rate, he will end up in prison.

26. Even though the Defendant, Deion Sanders, during the interview with the representative of the Texas Department of Family and Protective Services on September 29,

2015, took the position and admitted that he did not believe John Darjean did anything wrong in connection with the incident in question, did not use any excessive physical force in restraining Shilo Sanders, and Shilo Sanders initiated the altercation, Deion Sanders, is now taking an inconsistent position in documents that he has filed with this Court alleging that John Darjean initiated the assault on Shilo Sanders and used excessive force. (See Defendant's Motion for Leave to Designate Responsible Third Party filed on April 26, 2017).

27. After an internal investigation was performed by Leroy McClure, the CEO and Founder of Focus Academies, Focus Learning Academy, and Triple A Academy into the incident in question, it was determined on September 22, 2015 that Plaintiff, John Darjean, did nothing wrong and was justified in restraining Shilo Sanders due to the fact that Shilo Sanders struck and assaulted John Darjean by elbowing him in the upper chest area. Upon completion of the investigation, Mr. Darjean's suspension with pay was lifted and his employment status was reinstated effective September 22, 2015. To wit:



Original KM

**FOCUS Learning Academy**
(214) 467-7751 Phone   (972) 572-9610 Fax
**Triple A Academy**
(972) 283-1414 Phone   (972) 709-1111 Fax
2524 West Ledbetter Drive   Dallas, Texas 75233
www.focusacademies.org

FINDINGS AND DISPOSITION RE: INVESTIGATION INTO POLICY VIOLATION

Date: September 22, 2015
To: John Darjean, Security Officer, FOCUS
From: Leroy McClure, Jr., CEO, FOCUS

Dear Mr. Darjean:

On September 17, 2015, you were suspended with pay pending the outcome of an investigation regarding your physical involvement with a student of FOCUS Academies. The purpose of this letter is to provide you with the findings and disposition of said investigation.

Findings
- Video evidence supports your statement and the statement of the nearest employee in the area. You were trying to take the student's cell phone away from him. You were struck in the upper chest area by the student's elbow. You then attempted to restrain the student against the wall. The student pushed back against you, moving both of you back off the wall. You attempted to restrain the student a second time against the wall and then moved the student to the floor to restrain him. At that point other employees entered the area to assist.

Disposition
- Suspension lifted, employment status reinstated effective immediately.

This letter will be placed in your personnel file. You have the right to respond to this letter, and your response will be included with this letter in your personnel file.

Sincerely yours,

Leroy McClure, Jr., CEO, FOCUS Academies

C: Pat Byrd, Superintendent, FOCUS Academies
   Dale Dowell, Chief Financial Officer, FOCUS
   Monica Bozeman, PEIMS Coordinator, FOCUS

Leroy McClure, Jr., CEO, FOCUS Academies   Date 9-22-15

John Darjean, Security Officer, FOCUS Academies   Date 10/11/2015

**Mission Statement**
The stakeholders of FOCUS Academies will provide world-class, innovative and multisensory educational experiences that inspire all students to achieve positive life goals with global impact.

Deion Sanders 000047

28. On or about October 12, 2015, Shilo Sanders was released from the Dallas County Juvenile Detention Center and returned to Triple A Academy. Records reveal that within approximately 2 weeks from the date of his return to school, he was involved in another fight on school grounds causing an Out of school suspension for 3 days. To wit:



**V.**

29. The facts and the evidence will clearly show that the Defendants knew and were on notice long before the incident in question that Shilo Sanders was violent and had violent tendencies and was overly aggressive in starting and causing conflict and fights. The evidence will also show that it was well known by the Defendants that their own actions which took place in the presence of Shilo Sanders over the course of years contributed to Shilo Sanders' violent tendencies and aggression.

**VI.**
**CAUSE OF ACTION SHILO SANDERS**

30. Defendant Shilo Sanders intentionally and/or knowingly, and/or recklessly physically assaulted and battered Plaintiff and caused bodily injury to Plaintiff. The defendant Shilo Sanders intentionally and/or knowingly threatened Plaintiff with imminent bodily injury. The defendant Shilo Sanders intentionally and/or knowingly caused physical contact with Plaintiff when he knew or should reasonably have known that the contact was offensive and/or provocative. The assault and battery by Defendant Shilo Sanders was sudden, unexpected, unprovoked and without warning. Plaintiff's resulting injuries were proximately and/or directly

caused by the assault and battery. Further, the Defendant, Shilo Sanders, intentionally or knowingly threatened Plaintiff with imminent bodily injury and caused same.

31. Shilo Sanders intentionally inflicted severe emotional distress on Plaintiff. Plaintiff alleges Shilo Sanders' wrongful conduct was intentional and/or reckless with extreme and outrageous conduct which caused Plaintiff emotional distress which was severe. Plaintiff further alleges that defendant's conduct was so outrageous in character, and so extreme in degree, that said conduct went beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

32. Due to the Defendant Shilo Sanders' wrongful conduct as plead herein, Plaintiff seeks punitive/exemplary damages from said Defendants.

## VII.
## CAUSE OF ACTION DEION SANDERS

33. Texas Law generally holds there is no duty to control the conduct of third persons absent a special relationship between the actor and the third person. An exception to the general rule is the parent/child relationship. If there exist a parent/child relationship, there is a duty on the part of a parent to control the conduct of their minor children due to the special relationship that exist between a parent and child. In addition, minors are civilly liable for the own torts. Further, a parent may be vicariously liable for their children's actions under the Respondeat of Superior or Joint Enterprise. Texas law further establishes that a parent may be directly liable to a third party when the parent negligently permits or allows the child to act in a manner, likely to cause injury to another. For example, negligence may be shown where the parent entrusts a child with a dangerous instrumentality **or** carelessly fails to restrain a child known to have dangerous tendencies. Parents have a duty to third persons. If the parent has

knowledge or consent or sanction or participation in the child's activities, the Courts have held that actual knowledge is not required if the parent should, under the circumstances, reasonably anticipate the consequences of his or her actions.

34. Further, Texas law has established that a parent has a duty to protect third parties from the violent tendencies and violent acts of the parent's minor children as long as the parent could have reasonably anticipated the danger of the child's tendencies as evidenced by the parent's knowledge or consent or sanction or participation in the child's activities. As indicated above actual knowledge is not required if the parent should under the circumstances reasonably anticipate the consequences of the minor's actions. In addition, Texas Law has further established that if a parent has actual or constructive knowledge that their minor child has violent tendencies and/or an aggressive behavior, said parent can be liable for either misrepresenting those facts or failing to disclose that their minor child has violent tendencies and/or aggressive behavior.

35. Plaintiff would show that Defendants Deion Sanders and/or Pilar Sanders failed to properly monitor, supervise, control, and/or correct the conduct of their minor son, Shilo Sanders. Defendants were aware that Shilo Sanders had a long history and propensity to engage in reckless, careless, violent, aggressive, and harmful conduct and that the conduct of Shilo Sanders was likely to cause harm to others, including Plaintiff. Defendants failed to act as reasonable parents and take reasonable steps to control or prevent said conduct of their son. Defendants' failure to control and/or correct the conduct of Shilo Sanders, despite the foreseeable risk which is tantamount to Defendants consenting to, sanctioning, and participating in Shiloh Sanders' conduct was a proximate and/or direct cause of Plaintiff's

injuries.

36. Plaintiff further alleges that Defendant Deion Sanders through his acts and/or omissions, was negligent and such negligence was a proximate and/or direct cause of the incident and injuries in question. Plaintiff's resulting injuries and damages were proximately caused by one or more of the following acts of negligence on the part of Defendants:

1. In failing to adequately supervise their minor son, Shilo Sanders;

2. In failing to adequately, properly, and prudently supervise their minor son, Shilo Sanders, so as to prevent him from perpetrating the acts and/or omissions set out herein;

3. In failing to adequately, properly, and prudently supervise their minor son, Shilo Sanders, so as to prevent him from acting in a manner likely to cause harm to another person;

4. In failing to adequately, properly, and prudently control the conduct of their minor son, Shilo Sanders, by failing to prevent Shiloh Sanders from perpetrating the acts and/or omissions set out herein;

5. In failing to adequately, properly, and prudently control the conduct of their minor son, Shilo Sanders, so as to prevent him from acting in a manner likely to cause harm to another person;

6. In failing to correct the conduct and actions of their minor son, Shilo Sanders, which were likely to cause harm to another person;

7. In consenting to the actions of their minor son, Shilo Sanders, which were likely to cause harm to another person;

8. In sanctioning the actions of their minor son, Shilo Sanders, which were likely to cause harm to another person;

9. In participating in the actions of their minor son, Shilo Sanders, which were likely to cause harm to another person;

10. In failing to provide reasonable discipline to their son, Shilo Sanders;

11. In negligently permitting Shilo Sanders to engage in conduct likely to cause injury to third parties;

12. In negligently failing to warn Plaintiff that Shilo Sanders had violent tendencies and/or had an aggressive nature;

13. In failing to warn and/or notify Plaintiff that Shilo Sanders had dangerous and reckless propensities and tendencies that was likely to cause Plaintiff harm when he requested that Plaintiff retrieve the 2 telephones from Shilo Sanders, even though Deion Sanders had actual and/or constructive notice and knowledge that his son, Shilo Sanders, had violent tendencies, aggressive behavior, and could harm Plaintiff. Said failures on the part of Defendants was a proximate and/or direct cause of Plaintiff's injuries;

14. Deion Sanders negligently and/or intentionally misrepresented to Plaintiff that Shilo Sanders would not hurt him and/or swing on him and/or did not have violent tendencies when he requested that Plaintiff retrieve the 2 telephones from Shilo Sanders, even though Deion Sanders had actual and/or constructive notice and knowledge that his son, Shilo Sanders, had violent tendencies, aggressive behavior, and could harm Plaintiff and said negligent and/or intentional misrepresentations were a proximate and/or direct cause of Plaintiff's injuries. Further, Plaintiff reasonably relied on all representations made by the Defendants;

15. Defendants made other negligent and/or intentional misrepresentations that Plaintiff relied on and perpetrated other wrongful conduct which was a proximate and/or direct cause of Plaintiff's injuries.

## VIII.
## MALICE

37. Plaintiff further alleges that the Defendants by and through their acts and/or omissions, exceeded the test for negligence and committed acts and/or omissions of gross negligence that amounted to more than momentary thoughtlessness, inadvertence or error of judgment. Plaintiff alleges that said acts and/or omissions set out above amounted to such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety or welfare of Plaintiff. Plaintiff further alleges that the Defendants' acts and/or omission of gross negligence created an extreme degree of risk to Plaintiff. Plaintiff further alleges that the Defendants' acts and/or omissions of gross negligence, when viewed

EXHIBIT DAR003 - Page 15

objectively from the standpoint of the Defendants at the time of its occurrence, involved an extreme degree of risk considering the probability and magnitude of potential harm to others, including Plaintiff. Plaintiff further alleges that the Defendants had actual subjective awareness of the risk involved but, nevertheless, proceeded with conscious indifference to the rights, safety and welfare of Plaintiff. In this regard, Plaintiff therefore seeks punitive and/or exemplary damages.

## IX.
## DAMAGES

38. Plaintiff's damages include past and probable future loss, which includes:

   a. Physical pain and mental anguish and suffering, including the loss of enjoyment of life;

   b. Physical and mental impairment other than the ability to earn money;

   c. Disfigurement;

   d. Necessary medical, psychological, psychiatric, therapeutic, pharmaceutical and hospital care, including rehabilitative services and devices.

   e. loss of wages and wage earning capacity;

   f. prejudgment interest at the maximum legal rate.

39. Plaintiff further seeks punitive damages due to Defendants' wrongful conduct as plead herein.

40. Plaintiff alleges that the incident in question made the basis of this lawsuit, and Plaintiff's injuries and resulting damages were proximately and/or directly caused as a result of the wrongful conduct, negligent and grossly negligent conduct of the Defendants as alleged and set forth herein.

41. Plaintiff alleges that his damages exceed the minimum jurisdictional limits of this Court.

42. All these damages to Plaintiff are within the jurisdictional limits of this Court and Plaintiff would ask that a fair, reasonable and impartial jury assess the amount of damages in this case properly recoverable by the Plaintiff. The amount of actual damages awarded should be subject to the evaluation of the evidence by a fair and impartial jury and is clearly in excess of $1,000,000.00.

## X.
## CLAIM FOR PRE-JUDGMENT AND POST-JUDGMENT INTEREST

43. Plaintiff would further show that he is entitled to recover interest for all elements of damages recovered for which the law provides, for pre-judgment interest beginning on either

(1) the 180th day after the Defendants received written notice of claim, or

(2) the day suit is filed, whichever is earlier, and ending on the day preceding the date judgment is rendered, at the pre-judgment interest rate governed by VTCA Finance Code 304.102, et seq. Plaintiffs are also entitled to recover post-judgment interest at the lawful rate.

## XI.
## JURY DEMAND

44. Plaintiff requests that a jury be convened to try the factual issues in this cause.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon final trial, Plaintiff have judgment of, from and against the Defendants jointly and severally for the actual damages, costs of Court, prejudgment and post-judgment interest, punitive and/or exemplary damages, as set out hereinabove all to be determined by a fair and impartial jury that has fully weighed the evidence and facts and delivered its verdict in accordance with the Judge's instructions, in amounts as set out above, together with costs of suit, pre-judgment interest, post-judgment

interest and for such other and further relief which they may show themselves to be justly entitled.

Respectfully submitted,

  s/ Jimmy M. Negem
Jimmy M. Negem
State Bar No. 14865500
Joe M. Worthington
State Bar No. 22009950
Negem & Worthington
1828 ESE Loop 323
Suite R – 1A
Tyler, Texas 75701
903.595.4466 (telephone)
903.593.3266 (facsimile)
Jimmy@Negemlaw.com

**ATTORNEYS FOR PLAINTIFFS**

### CERTIFICATE OF SERVICE

On this the 25th day of July, 2018, a true copy of the foregoing document was served on all parties in this cause, by and through their respective counsel of record, via e-file.

  s/ Jimmy Negem
JIMMY NEGEM