FILED
DALLAS COUNTY
10/23/2018 5:09 PM
FELICIA PITRE
DISTRICT CLERK

EXHIBIT DAR014

## CAUSE NO. DC-16-07371

| | | |
|---|---|---|
| JOHN DARJEAN | § | THE DISTRICT COURT |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | 160th JUDICIAL DISTRICT |
| **DEION SANDERS, PILAR SANDERS** | § | |
| **and SHILO SANDERS** | § | |
| | § | |
| **Defendants.** | § | DALLAS COUNTY, TEXAS |

### DEFENDANTS' JOINT MOTION TO EXCLUDE THE
### EXPERT TESTIMONY OF NIMESH PATEL, M.D.

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Deion Sanders and Shilo Sanders, Defendants herein, and file this their Joint Motion to Exclude the Expert Testimony of Nimesh Patel, M.D., as to causation and any resulting effects of the cause of the incident in question , and in support thereof would respectfully show the Court as follows:

### I.
### BACKGROUND

1.1     This negligence case was filed by Plaintiff on June 20, 2016.

1.2     On May 2, 2018, the Plaintiff filed his First Amended Designation of Expert Witnesses Pursuant to the Second Amended Docket Control Scheduling Order and Rule 11 Agreement and others, listing Nimesh Patel, M.D. as a potential non-retained testifying expert.  Dr. Patel is designated to express opinions on subject matters (a) regarding the assertion that " the cause, or contributing causes, of John Darjean's post accident and/or present complaints, disabilities and/or incapacities were proximately caused by the subject accident;" (b) that "the subject accident caused, based on a reasonable degree of medical probability, all of the complaints, disabilities, and/or

DEFENDANTS' JOINT MOTION TO EXCLUDE THE EXPERT TESTIMONY OF NIMESH PATEL, M.D. - Page 1

incapacities of John Darjean;" (c) that "all of the medical expenses were necessitated by the subject accident were, in fact, necessitated by the subject accident;" (d) that "John Darjean sustained physical pain in the past and will likely continue to experience physical pain for the rest of his life;" (e) that "John Darjean sustained a loss of the capacity to earn in the past and in all probability will continue to sustain a loss of the capacity to earn in the future;" (f) that "John Darjean sustained permanent disfigurement as a result of the incident in question;" (g) that "John Darjean sustained physical impairment/mental impairment other than the ability to earn money in the past and in reasonable probability will continue to sustain or suffer a permanent physical impairment other than the ability to earn money in the future;" and (h) that "John Darjean sustained in the past and in reasonable probability will sustain in the future mental anguish caused by the incident in question or related to the disfiguring conditions and necessary futurer medical care and treatment." Dr. Patel provided no report regarding these opinions but was deposed on September 20, 2018 (the "Depo.").

1.3    In violation of Rule 194.2(f), Tex. R. Civ. P., Plaintiff has not disclosed (a) the subject matter on which Dr. Patel is expected to testify other than in broad general terms; (b) the general substance of Dr. Patel's mental impressions and opinions; (c) a brief summary of the basis for Dr. Patel's opinions; or (d) provided a copy of Dr. Patel's curriculum vitae.  Plaintiff's vague disclosure of the substance of Dr. Patel's testimony does not comply with the requisites of rule 194.2(f).  *Bailey v. Respironics, Inc.*, 2014 Tex. App. LEXIS 8003 * 21 (Tex. App. - Dallas 2014, no pet.) (citing *Bexar Cnty. Appraisal Dist. v. Abdo*, 399 S.W.3d 248, 256-57 (Tex. App. - San Antonio 2012, no pet.)).  A copy of Plaintiff's First Amended Expert Disclosures is attached hereto as Exhibit "A."

1.4     Pursuant to Rule 702, Tex. R. Evid., an expert witness must be qualified on the basis of knowledge, skill, experience, training, or education to offer opinions concerning the causal link between the alleged wrongful conduct of the Defendants and the alleged damages suffered by the Plaintiff.  Plaintiff's disclosure does not provide the basis for the establishment of the required causal link, and, in fact, the deposition testimony of Dr. Patel establishes that, other than the description of the incident from John Darjean, Dr. Patel has no factual basis for the rendition of any opinions related to causation.  The evidence shows that John Darjean's version of the facts is different from those expressed by eyewitnesses to the incident in question.  Dr. Patel also admitted that if the facts described by John Darjean are inconsistent with the facts determined to accurately describe the incident in question, Dr. Patel's opinion would change.  Further, Dr. Patel expressed no mental impressions, opinions, or conclusions regarding the subjects addressed in subsections (d), (e), (f), (g) and (h) of paragraph 1.2 above.

1.5     Dr. Patel specifically testified that:

a.     he could not determine whether the incident in question aggravated "the underlying herniation of the lumbar spine."' Depo. P. 18;

b.     if the statements given by the Plaintiff as a part of his history to the hospital staff at the time Plaintiff was admitted were inaccurate, then any opinions expressed by Dr. Patel regarding causation would change.  Depo. P. 42;

c.     for purposes of his treatment of Plaintiff, causation was irrelevant.  Depo. P. 42;

d.     the sole basis for his opinion regarding causation were the statements given by the Plaintiff to the admitting staff.  Depo. P. 43;

e.      he has had no communication with any other physician or other medical personnel regarding the Plaintiff's current condition.  Depo. P. 43;

f.      the surgery he performed was successful. Depo. P. 44;

g.      the issues regarding the lumbar spine could be a natural progression unrelated to the incident in question.  Depo. P. 44;

h.      Plaintiff's limitations are lessening.  Depo. P. 44-45;

i.      the Plaintiff should be employed.  Depo. P. 45;

j.      Plaintiff suffered from degenerative disk disease. Depo. 54.

True and correct copies of the foregoing pages from the Oral Deposition of Nimesh Patel, M.D. taken on September 20, 2018, are attached hereto as Exhibit "B."

## II.
## ARGUMENTS AND AUTHORITIES

2.1      The purpose of Rule 194.2(f) is "to give the opposing party sufficient information about the expert's opinions to prepare to cross-examine the expert and to prepare expert rebuttal evidence." *Miller v. Kennedy & Minshew, P.C.*, 142 S.W.3d 325, 348 (Tex. App. - Fort Worth 2003, pet. denied).  Expert reports serve a similar purpose: such disclosures and expert reports not only prevent trial by ambush, but affect the opposing party's preparation for trial. *Baize v. Scott & White Clinic*, 2007 Tex. App. LEXIS 366 * 21 (Tex. App. - Austin, pet. denied) (mem. op.).  A failure to properly designate expert witnesses results in the automatic exclusion of the expert's testimony unless the offering party demonstrates good cause for the failure or a lack of unfair surprise.  Tex. R. Civ. P. 193.6(a); *VingCard A.S. v. Merrimac Hospitality Sys., Inc.,* 59 S.W.3d 847, 856 (Tex. App. - Fort Worth 2001, pet. denied); *Izaguire v. Cox*, 2008 Tex. App. LEXIS 7359 * 15-16 (Tex. App. - Waco 2008, no pet.) (mem. op.); *Perez v. Embree Constr. Group, Inc*., 228 S.W.3d 875, 884

(Tex. App. - Austin 2007, pet. denied).  Rule 195 provides that a party must timely designated experts by "furnishing information requested under rule 194.2(f)."  Rules 195.2 and 193.5(a) place the affirmative obligation on the Plaintiff to provide the requested information in either Plaintiff's original or amended responses.  Here, the Plaintiff has provided neither a proper or complete disclosure nor a report from which the Defendants can determine the basis for Dr. Patel's testimony, and the facts or underlying data supporting that testimony.  As a result, Plaintiff has failed to (a) comply with Rule 194.2(f), thereby rendering Dr. Patel subject to the automatic exclusionary rule; or (b) sustain its burden of proof regarding the reliability of Dr. Patel's opinions.  Dr. Patel should therefore be stricken as an expert witness, since allowing Dr. Patel to testify would constitute unfair surprise and/or prejudice to the Defendants based on undisclosed facts, data, subjects, opinions, and conclusions.

2.2     The party offering expert testimony bears the burden of showing the testimony is admissible.  *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995); *Broders v Heise,* 924 S.W.2d 148, 151 (Tex. 1996).  The proponent bears this burden "regardless of the quality or quantity of the  opposing party's evidence on the issue and regardless of whether the opposing party attempts to conclusively prove the expert testimony is wrong." *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 639 (Tex. 2009).

2.3     Reliability of expert opinions is a cornerstone of their admissibility.  Examination of the expert's underlying methodology as part of a reliability challenge is a task for the trial court in its role as gatekeeper.  *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993): *Coastal Transp. Co. v. Crown Cent. Petroleum Corp*., 136 S.W.3d 227, 233 (Tex. 2004).  "The purpose of a 'gatekeeper hearing' is to allow the trial court to determine

whether an expert's opinions are relevant and reliable." *In re Commitment of Marks*, 230 S.W.3d 241, 247 (Tex. App. - Beaumont 2007, no pet.).   Inferences and opinions drawn either from unreliable foundational data or flawed methodology and reasoning are unreliable and legally no evidence. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 712-14 (Tex. 1997). This gatekeeping rule applies to all expert testimony, both scientific and non-scientific. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999).  In *Gammill v. Jack Williams Chevrolet,* 972 S.W.2d 713,726 (Tex. 1998), the Texas Supreme Court stated "[n]othing in the language of the rule [Rule 702, Tex. R. Evid.] suggests that opinions based on scientific knowledge should be treated any differently than opinions based on technical or other specialized knowledge."

2.4      If an expert's testimony is not reliable, it is not evidence. *Havner*, 953 S.W.2d at 713. The scientific technique or principle underlying an expert opinion must be reliable, among other things, in order to be admissible and to constitute more than a scintilla of evidence. *Robinson*, 923 S.W.2d at 555-56.   The Texas Supreme Court has further determined that "[w]hen an expert's opinion is based on assumed facts that vary materially from the actual, undisputed facts, the opinion is without probative value and cannot support a verdict or judgment." *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499-500 (Tex. 1995).  "An expert's opinion might be unreliable, for example, if it is based on assumed facts that vary from the actual facts . . . or it might be conclusory because it is based on tests or data that do not support the conclusions reached." *Camacho*, 298 S.W.3d at 637.  "If the foundational data underlying opinion testimony are unreliable, an expert will not be permitted to base an opinion on that data because any opinion drawn from that data is likewise unreliable." *Havner*, 953 S.W.2d at 714. Here, Plaintiff has provided no basis to sustain Dr. Patel's

singular reliance on the information provided by John Darjean to the hospital staff on the date of admission, rather than the entirety of the evidence solicited from eyewitnesses as well as Shilo Sanders. Therefore, Dr. Patel's opinions, conclusions or mental impressions regarding the issues related to causation and any resulting effects of the cause of the incident in question are unreliable and therefore should be stricken.

2.5     Unreliable evidence does not assist the trier of fact and is therefore inadmissible under Rule 702, Tex. R. Evid. *Cooper Tire & Rubber Co. v. Mendez,* 204 S.W.3d 797, 801 (Tex. 2006). For an expert's opinion to be admissible under evidence Rule 702, the expert must be both qualified on the specific issue before the court, and the expert's opinion must be relevant and based on a reliable foundation. Tex. R. Evid. 702; *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 628 (Tex. 2002). Here, the foundational basis for the opinions solicited from Dr. Patel during his deposition is incomplete, inaccurate, and based on assumed facts that vary from the actual facts as expressed by eyewitnesses, witness statements, and deposition testimony from Shilo Sanders. Therefore Dr. Patel's opinion, conclusions, and mental impressions regarding causation and any resulting effects of the cause of the incident in question should be stricken.

2.6     Expert testimony is unreliable if there is simply too great an "analytical gap" between the data and the opinion proffered, such that the opinion is "connected to existing data only by the *ipse dixit* of the expert." *Gammill,* 972 S.W.2d at 727; *Gharda USA, Inc. v. Control Solutions, Inc.,* 464 S.W.3d 338, 349 (Tex. 2015). In applying this reliability standard, however, the trial court does not decide whether the expert's conclusions are correct; rather, the trial court determines whether the analysis used to reach those conclusions is reliable. *Gammill,* 972 S.W. 2d. at 728. An expert must "connect the data relied on and his or her opinion" and "show how that data

is valid support for the opinion reached." *Camacho*, 298 S.W.3d at 642.  If an expert's material factual assumptions have no evidentiary support, or those assumptions are contrary to proven facts, the expert's testimony based on those assumptions is not competent.  *Houston Unlimited, Inc. v. Metal Processing v. Mel Acres Ranch,* 443 S.W.3d 820, 833 (Tex. 2014).  This standard negates Dr. Patel's causation opinions and, therefore, his opinions, conclusions and mental impressions as to causation and any resulting effect of the cause of the incident in question should be stricken.

2.7    Based on the unreliability of Dr. Patel's causation testimony, as well as his equally unreliable testimony regarding any resulting effects of the cause of the incident in question, Dr. Patel's opinions are merely speculative since the foundation upon which they are predicated is at variance with the actual facts as expressed by eyewitnesses, witness statements, and deposition testimony from Shilo Sanders.  Therefore, Dr. Patel should not be permitted to testify as an expert witness regarding causation and any opinions, conclusions or mental impressions that he may seek to express regarding causation and any resulting effect of the cause of the incident in question should not be admitted for any purpose.

WHEREFORE, PREMISES CONSIDERED, Defendants Deion Sanders and Shilo Sanders each request that a hearing be set on this Motion to Exclude the Expert Testimony of Nimesh Patel, M.D. regarding causation and any resulting effect of the cause of the incident in question and, after hearing, Dr. Patel not be permitted to testify as an expert witness as to causation or any resulting effect of the cause of the incident in question based on the unreliability of his opinions, that any opinions offered by Dr. Patel be denied admission, and for such other and further relief to which Defendants may show themselves to be justly entitled, both at law or in equity.

Respectfully submitted,

DEFENDANTS' JOINT MOTION TO EXCLUDE THE EXPERT TESTIMONY OF NIMESH PATEL, M.D. - Page 8

**ABERNATHY, ROEDER, BOYD & HULLETT, P.C.**

By: /s/ Larry R. Boyd_____

    **LARRY R. BOYD**
    State Bar No. 02775000
    **CHARLES J. CRAWFORD**
    State Bar No. 05018900
    **EMILY M. HAHN**
    State Bar No. 24101846
    1700 Redbud, Suite 300
    McKinney, Texas 75070
    Telephone: (214) 544-4000
    Telecopier: (214) 544-4040
    lboyd@abernathy-law.com
    ccrawford@abernathy-law.com
    ehahn@abernathy-law.com

**ATTORNEYS FOR DEFENDANT DEION SANDERS**

**SAUNDERS, WALSH & BEARD**

By: /s/ Lewis L. Isaacks_____

    **LEWIS L. ISAACKS**
    State Bar No. 10430300
    **MARK A. WALSH**
    State Bar No. 24003135
    **ABIGAIL K. CHRISTMANN**
    State Bar No. 24097523
    **M. SHANNON KACKLEY**
    State Bar No. 00790993
    6850 TPC Drive, Suite 210
    McKinney, Texas 75070
    lewis@saunderswalsh.com
    mark@saunderswalsh.com
    abby@saunderswalsh.com
    shannon@saunderswalsh.com

**ATTORNEYS FOR DEFENDANT SHILO SANDERS**

EXHIBIT DAR014 - Page 9

## **CERTIFICATE OF SERVICE**

I certify that on October 23, 2018 a true and correct copy of Defendants' Joint Motion to Exclude the Expert Testimony of Nimesh Patel, M.D. was forwarded by electronic mail delivery in accordance with Rule 21a(a)(1) and (2), Tex. R. Civ. P., to  Jimmy M. Negem and Joe M. Worthington, 1828 ESE Loop 323, Suite R-1A, Tyler, Texas 75701 at Jimmy@NegemLaw.com, on Intervenor's attorney, Robert C. Turner, The Silvera Firm, 17070 Dallas Parkway, Suite 100, Dallas, Texas 75248 at robertturner@silveralaw.com, on Defendant Shilo Sanders' counsel of record, Lewis L. Isaacks and Mark Walsh, Saunders, Walsh & Beard, 6850 TPC Drive, Suite 210, McKinney, Texas 75070 at lewis@saunderswalsh.com and mark@saunderswalsh.com; and on Third Party Defendants Focus Learning Academy and LeRoy McClure's attorneys of record, Glynis L. Zavarelli, Wentz & Zavarelli LLP, Urban Towers, 222 W. Las Colinas Blvd. Suite 1900 N, Irving, Texas 75039 at gzavarelli@wandzlaw.com.

/s/ Larry R. Boyd

Larry R. Boyd

# EXHIBIT "A"

DEFENDANTS' JOINT MOTION TO EXCLUDE THE EXPERT TESTIMONY OF NIMESH PATEL, M.D. - Page 11

EXHIBIT DAR014 - Page 11

CAUSE NO. **DC-16-07371**

| | | |
|---|---|---|
| JOHN DARJEAN | § | THE DISTRICT COURT |
| ***Plaintiff*** | § | |
| | § | |
| vs. | § | |
| | § | 160th JUDICIAL DISTRICT |
| DEION SANDERS, PILAR SANDERS, AND | § | |
| SHILO SANDERS | § | |
| ***Defendant*** | § | |
| | § | |
| vs. | § | |
| | § | |
| LEROY MCCLURE, JR. AND FOCUS | § | |
| LEARNING ACADEMY, INCORPORATED | § | |
| D/B/A FOCUS LEARNING ACADEMY/ | § | |
| TRIPLE A ACADEMY | § | |
| ***Third – Party Defendants.*** | § | DALLAS COUNTY, TEXAS |

**PLAINTIFF'S FIRST AMENDED DESIGNATION OF EXPERT WITNESSES
PURSUANT TO THE SECOND AMENDED DOCKET CONTROL SCHEDULING ORDER
AND RULE 11 AGREEMENT**

TO:     Defendant, Deion Sanders, by and through his attorney of record, Larry Boyd and Charles Crawford, 1700 Redbud Blvd., Suite 300, McKinney, Texas 75069.

Third Party Defendants, Focus Learning Academy, Inc. DBA Focus Learning Academy/Triple A Academy and Leroy McClure Jr., by and through their attorneys of record, Glynis L. Zavarelli and Michelle S. Sortor, Wentz and Zavarelli LLP, 222 W. Las Colinas Blvd., Suite 1900 N, Irving, Texas 75039.

Defendant and Counter-Plaintiff, Shiloh Sanders, by and through his attorneys of record, Lewis L. Isaacks, Gay McCall, Isaacks, and Roberts PC, 777 East 15th Street, Plano, Texas 75074 and Mark A. Walsh and Daniel Correa, Saunders, Walsh, and Beard, 6850 TPC Drive, Suite 210, McKinney, Texas 75070.

Intervenor, Utica Mutual Insurance Company, by and through their attorney of record, Robert C. Turner, The Silvera Firm, 17070 Dallas Parkway, Suite 100, Dallas, Texas 75248.

COMES NOW, Plaintiff, JOHN DARJEAN, and pursuant to the Second Amended Scheduling Order dated November 17, 2017 and the subsequent Rule 11 Agreement dated March 23, 2018, Plaintiff hereby makes his Designation of Expert Witnesses to Defendants

and all other parties.

## **EXPERTS DESIGNATED BY PLAINTIFF**

### **Specially Retained and Employed Testifying Experts**

Plaintiff has none.

### **Non-Retained Experts**

Plaintiff has not specially retained or employed any of the individuals listed below who may, due to their background, training or experience be deemed to be experts, or capable and qualified to express expert opinions and who may testify in this matter. By designating these persons herein this party is NOT adopting any or all of their opinions or conclusions as expressed in depositions taken to date or written documents authored or adopted by such individuals and exchanged in discovery herein. The persons are listed herein, out of an abundance of precaution to allow this party to offer those opinions or conclusions to which they do agree or adopt if they chose to at the time evidence is presented to the jury. With regard to those persons that have been deposed, Plaintiffs herein refer the parties to depositions taken in this case and documents produced and exchanged concerning opinions and conclusions of the below listed individuals or other entities set out below. The following persons might best be designated as potential non-retained testifying experts under TRCP 194.2(f(3).

Dallas Police Department
Detective Dalby
Detective McKnight - Bell
1400 South Lamar Street
1st Floor
Dallas, Texas 75215
(214) 275-1300

Law Enforcement Officials that may have investigated the incident in question.

Agents, Servants, and Employees of
Child Protective Services, including but not limited to
Ebonie Solin SWI III
Clara Robertson SWI Supervisor
Diane Jones
Jordan Ham
Joseph Harris
Lisa A. Cardenas, CPS Resol Spec Investigator VI
Floyd Wright
701 W. 51st Street
Austin, Texas 78751

Page **2** of **21**

(512) 438-4800
John Lehman
White Star Consulting LLC
4899 PR 1181
Celeste, Texas 75423
(214) 597-9199

The above named individuals may have performed investigation into the incident and altercation in question and may have knowledge, opinions, and mental impressions regarding the incident and altercation in question as well as all material liability facts regarding the incident and altercation in question as well as other incidents, altercations, abuses that may have taken place. These individuals may also have knowledge and opinions regarding the fault on the part of the Defendants and damages sustained by Plaintiff as a result of Defendant's wrongful conduct. For further information regarding the knowledge of these witnesses, subject matter of their testimony, mental impressions, opinions, and the basis of their testimony, you are referred to their depositions, if and when taken, statements, investigation reports, and other written documents authored and/or adopted by said witnesses which are incorporated by reference fully just as if set forth at length in this designation. Further, you are referred specifically to the deposition of Jordan Ham taken on the 22nd day of August, 2017 and all exhibits attached thereto.

In addition, you are referred to all documents produced by any parties in this case as well as any documents secured by Deposition on Written Questions and Subpoenas in connection with this case.

Additionally, Plaintiff has identified healthcare providers and other individuals in their discovery responses, including disclosures and supplemental disclosures, who may be qualified as experts, due to their education, background, training and experience, which include treating physicians, co-employees and third-party contractors and their agents, servants and employees who are neither specially retained nor employed. Plaintiff refers the parties to Plaintiff's discovery responses, medical records, medical billing, depositions, and other documents exchanged between the parties for the factual basis, mental impressions and opinions disclosed to date.

Physicians, medical personnel and custodians of medical billing and medical records of BAYLOR REHAB, including but not limited to
Constance Fleming PT DPT PT
909 N Washington Ave
Dallas, TX 75246
(214) 339-4533
**Provided medical treatment to Plaintiff**

Page **3** of **21**

Physicians, medical personnel and custodians of medical billing and medical records of
The City of Dallas Fire Department, including but not limited to
Ian Martin – Paramedic
Thomas Gould - Paramedic
1551 Baylor Street
Suite 300
Dallas, Texas 75226
(855) 670-3233
**Provided medical treatment to Plaintiff**

Physicians, medical personnel and custodians of medical billing and medical records of
CONCENTRA MEDICAL CENTER, including but not limited to
Ashley R. Hunter PA – C
Doreatha J. Powell DO
Piotr W. Jakubowski MD
Michael H. Gadison DO
Warren G. Hatley MD
PO Box 9005
Addison, Texas 75001
(800) 733-7098
5520 S. Westmoreland Road
Suite 200
Dallas, Texas 75237
(214) 467-8210
**Provided medical treatment to Plaintiff**

Physicians, medical personnel and custodians of medical billing and medical records of
Genex Services LLC, including but not limited to
HeddyDale Matthias MD
440 E. Swedesford Road
Suite 2045
Wayne, PA 19087
(800) 647-1427
**Provided medical treatment to Plaintiff**

Physicians, medical personnel and custodians of medical billing and medical records of
Landmark Exams, including but not limited to
JOHN STASIKOWSKI MD
5725 W. Highway 20
Suite 202
Austin, Texas 78736
(512) 494-4219
**Provided medical treatment to Plaintiff**

EXHIBIT DAR014 - Page 15

Physicians, medical personnel and custodians of medical billing and medical records of Methodist Charlton Medical Center, including but not limited to
Nelly Guajardo
Shane Haynes MD
Sonya Abraham
Brooke B. While
Alisha Weimer
Kenneth C. Raney MD
Richard Wingo MD
Nimesh Patel MD
Jason Vogel BS IONM
Margaret C. Chappell RN
Robert Simonson
Benjamin Barrett
Bala Giri MD
3500 WEST WHEATLAND ROAD
DALLAS, TEXAS 75257
(469) 248-3900
**Provided medical treatment to Plaintiff**

Physicians, medical personnel and custodians of medical billing and medical records of Methodist Dallas Medical Center, including but not limited to
Nelly Guajardo
Shane Haynes MD
Sonya Abraham
Brooke B. While
Alisha Weimer
Kenneth C. Raney MD
Richard Wingo MD
Nimesh Patel MD
Jason Vogel BS IONM
Margaret C. Chappell RN
Robert Simonson
Benjamin Barrett
Bala Giri MD
4040 North Central Expressway
Suite 600
Dallas, Texas 75204
(214) 520-5700
**Provided medical treatment to Plaintiff**

EXHIBIT DAR014 - Page 16

Physicians, medical personnel and custodians of medical billing and medical records of
Methodist Mansfield Medical Center
Nelly Guajardo
Shane Haynes MD
Sonya Abraham
Brooke B. While
Alisha Weimer
Kenneth C. Raney MD
Richard Wingo MD
Nimesh Patel MD
Jason Vogel BS IONM
Margaret C. Chappell RN
Robert Simonson
Benjamin Barrett
Bala Giri MD
2700 E Broad St
Mansfield, TX 76063
(682) 242-2000
**Provided medical treatment to Plaintiff**

Physicians, medical personnel and custodians of medical billing and medical records of
PINNACLE PAIN, including but not limited to
Michael Phillips MD
D. Sharraine Wilson NP
6606 LBJ Fwy, Suite 200
Dallas, Texas 75240
(972) 715-5000
2010 W Katherine P Raines Road
Cleburne, Texas 76033
(817) 558-4600
800 W. Arbrook Blvd.
Arlington, Texas 76015
(817) 468-4343
**Provided medical treatment to Plaintiff**

Physicians, medical personnel and custodians of medical billing and medical records of
PRESTON NEUROLOGICAL CENTER, including but not limited to
Erwin Cruz MD
12800 Preston Rd
Dallas, TX 75230
(972) 503-2780
**Provided medical treatment to Plaintiff**

EXHIBIT DAR014 - Page 17

Physicians, medical personnel and custodians of medical billing and medical records of Parkland Hospital, including but not limited to
Ryan Mauck MD
Mohita Patel MD
Scott Weiner MD
Mandy Pascual MD
Kerri Rice MD
5200 Harry Hines Blvd
Dallas, TX 75235
(214) 590-8000
**Provided medical treatment to Plaintiff**

Texas Physician Resources
6451 Brentwood Stair Road
Fort Worth, Texas   76112-3200
(800) 378-4134
**Provided medical treatment to Plaintiff**

Physicians, medical personnel and custodians of medical billing and medical records of Radiology Associates of North Texas
PO Box 1723
Indianapolis, Indiana 46206-1723
(877) 718-5728
**Provided medical treatment to Plaintiff**

Physicians, medical personnel and custodians of medical billing and medical records of Century Integrated Partners
Po Box 98991
Las Vegas, Nevada 89193-8991
(800) 355-2470
**Provided medical treatment to Plaintiff**

Physicians, medical personnel and custodians of medical billing and medical records of UT Southwest Physicians, including but not limited to
Sandeep Ram Das M.D.
Adam Kesling MD
Mandy Pascual MD
Ryan Mauck MD
Ankah Khosia MD
P.O. Box 848009
Dallas, Texas 75284-8009
(469) 291-2000
**Provided medical treatment to Plaintiff**

EXHIBIT DAR014 - Page 18

Physicians, medical personnel and custodians of medical billing and medical records of
Fort Worth Surgery Center
2001 W Rosedale St
Fort Worth, TX 76104
(817) 877-4777
**Provided medical treatment to Plaintiff**

Physicians, medical personnel and custodians of medical billing and medical records of
Kirsi Waller Ph.D.
1006 N Bowen Rd
Arlington, Texas 76012
(817) 543-3704
**Provided medical treatment to Plaintiff**

Physicians, medical personnel and custodians of medical billing and medical records of
American Radiology Consultants
3500 Gaston Avenue
Dallas, Texas 75246
(877) 277-2561
**Provided medical treatment to Plaintiff**

Physicians, medical personnel and custodians of medical billing and medical records of
One Call Care Management, including but not limited to
Erwin Cruz M.D.
841 Prudential Drive
Suite 900
Jacksonville, Florida 32207
**Provided medical treatment to Plaintiff**

Physicians, medical personnel and custodians of medical billing and medical records of
Saint Mary's Medical Park Pharmacy, Inc.
10860 North Mavinee Drive
Oro Valley, Arizona 85737
(800) 995-8157
**Provided medical treatment to Plaintiff**

     Each treater identified above falls under the category of an "Independent Expert Witness", and – as such – Plaintiff has no reports to disclose; all "reports" are contained in the medical records.

     The above physicians provided treatment to JOHN DARJEAN and will also opine regarding the initial medical care, any follow up care, any future surgeries and future medical treatments necessitated and will opine that JOHN DARJEAN's current conditions are permanent and that his injuries were traumatic, painful, and lifelong.  They will further opine that Plaintiff, JOHN DARJEAN, has sustained physical pain, mental anguish, physical

Page **8** of **21**

impairment, disfigurement and an impairment of his capacity to earn in the past and in all medical probability will continue to experience in the future. They will further opine that the medical care and treatment were reasonable and necessary as a result of the occurrence in question. Plaintiff refers Defendants to the deposition testimony that may be taken in the future, as well as deposition exhibits, for their factual observations, or facts known by the non-retained testifying expert that relate to or form the basis of the mental impressions and/or opinions as well as the subject matter on which they might testify regarding their mental impressions or opinions incorporated herein by reference.

**Subject Matters of Non-Retained Medical Experts.** The subject matters on which the above listed non-retained/non-controlled medical experts will testify are as follows:

    (a)    the existence, nature and/or extent of the injuries sustained by JOHN DARJEAN;

    (b)    the examination and treatment of the injuries sustained by JOHN DARJEAN;

    (c)    pre-existing injuries to and/or pre-existing medical conditions of JOHN DARJEAN;

    (d)    the type, purpose, extent, results, evaluations and/or interpretations of examinations, treatments, x-rays and tests regarding JOHN DARJEAN;

    (e)    recommendations, diagnosis and prognosis with regard to the injuries of JOHN DARJEAN;

    (f)    the existence, nature and/or extent of the disabilities and/or incapacities of JOHN DARJEAN;

    (g)    the cause and/or causes of JOHN DARJEAN's conditions, injuries, disabilities and/or incapacities;

    (h)    all those subject matters contained, discussed, or disclosed in:

        i.    The medical records of JOHN DARJEAN which have been and which may hereafter be      produced by Plaintiff and/or Plaintiff's doctors and other healthcare providers in responses to discovery requests served in this cause.

        ii.    The depositions presently or hereafter taken in this cause, orally and on written questions; and

        iii.    All written reports of healthcare providers produced during the course of discovery in this cause.

        iv.    The course of discovery in this cause.

All documents referenced above are incorporated herein by reference as though set out at length for all purposes.

**Impression and Opinions of Non-Retained Medical Experts.** The general substance of the above listed said non-retained/non-controlled medical experts' mental impressions and opinions and a brief summary of the basis for them are as follows:

Page **9** of **21**

a. that the nature and extent of JOHN DARJEAN alleged injuries, incapacities, and disabilities are severe and permanent as alleged by JOHN DARJEAN.

b. the cause, or contributing causes, of JOHN DARJEAN's post accident and/or present complaints, disabilities and/or incapacities were proximately caused by the subject accident;

c. that JOHN DARJEAN was injured in the subject accident to the extent that Plaintiff now complains;

d. that all of the treatment and charges to JOHN DARJEAN were reasonable and necessary;

e. that the subject accident caused, based on a reasonable degree of medical probability, all of the complaints, disabilities, injuries, and/or incapacities of JOHN DARJEAN as alleged;

f. that all of the medical expenses were necessitated by the subject accident were, in fact, necessitated by the subject accident;

g. all the facts known and mental impressions and opinions held by the doctors, hospitals, clinics, and other healthcare providers designated above are shown by and contained in;

h. that JOHN DARJEAN sustained physical pain in the past and will likely continue to experience physical pain for the rest of his life;

i. that JOHN DARJEAN sustained a loss of the capacity to earn in the past and in all probability will continue to sustain a loss of the capacity to earn in the future;

j. that JOHN DARJEAN sustained permanent disfigurement as a result of the incident in question;

k. that JOHN DARJEAN sustained physical impairment/mental impairment other than the ability to earn money in the past and in reasonable probability will continue to sustain or suffer a permanent physical impairment other than the ability to earn money in the future;

l. that JOHN DARJEAN sustained in the past and in reasonable probability will sustain in the future mental anguish caused by the incident in question or related to the disfiguring conditions and necessary future medical care and treatment;

m. that all the facts known and mental impressions and opinions held by the doctors, hospitals, clinics, and other healthcare providers designated herein are shown by and contained in their medical records:

    i.    The medical records of JOHN DARJEAN which have been and which may hereafter be produced by Plaintiff and/or Plaintiff's doctors and other healthcare providers in response to discovery requests served in this cause.

    ii.    The depositions presently or hereafter taken in this cause, orally and on written questions.

    iii.    All written reports of healthcare providers produced during the course of discovery in this cause; and

    iv.    Please see all medical records and bills that have previously been produced by Plaintiff to Defendants and Defendants to Plaintiff and all medical records and bills that have been secured through the use of

EXHIBIT DAR014 - Page 21

Deposition Upon Written Questions previously produced to all parties from the following healthcare providers, to wit:

1. ALIGN NETWORKS INC
2. AMERICAN RADIOLOGY CONSULTANTS
3. BAYLOR INSTIRUE FOR REHAB
4. BAYLOR INSTITUTE FOR REHAB
5. CENTURY INTEGRATED PARTNERS, INC.
6. CONCENTRA MEDICAL CENTER
7. CRUZ NEUROLOGICAL CENTER
8. DALLAS FIRE RESCUE
9. FORT WORTH SURGERY CENTER
10. METHODIST CHARLTON MEDICAL CENTER
11. METHODIST DALLAS MEDICAL CENTER
12. ONE CALL CARE MANAGEMENT
13. PARKLAND HEALTH AND HOSPITAL SYSTEM
14. PINNACLE PAIN MEDICINE
15. RADIOLOGY ASSOCIATES OF NORTH TEXAS, P.A.
16. SAINT MARY'S MEDICAL PARK PHARMACY
17. TEXAS PHYSICIANS RESOURCES, LLP
18. UT SOUTHWESTERN PHYSICIANS

n.    That Plaintiff sustained severe permanent and disabling injuries as a result of the accident made the basis of this lawsuit.

o.    That Plaintiff required substantial medical care and treatment to treat the injuries that he sustained as a result of the accident made the basis of this lawsuit.

p.    That Plaintiff has sustained pain and suffering, mental anguish, permanent impairment and disfigurement in the past and will sustain same in the future due to the injuries he sustained as a result of the accident made the basis of this lawsuit as well as the future medical care and treatment necessitated due to the injuries he sustained as a result of the injuries he sustained as a result of the accident made the basis of this lawsuit.

q.    That Plaintiff has sustained pain and suffering, mental anguish, permanent impairment, and disfigurement in the past and will sustain same in the future due to the injuries he sustained as a result of the accident made the basis of this lawsuit, as well as the future medical care and treatment necessitated due to the injuries he sustained as a result of the accident made the basis of this lawsuit.

r.    That all of Plaintiff's past medical care and treatment that he has required since the date of the accident was medically necessary due to the injuries sustained by Plaintiff by the accident made the basis of this lawsuit.

s.    That all of the medical bills for all medical care and treatment Plaintiff has had in the past due to the injuries suffered as a result of the accident in question have been reasonable in light of the treatment rendered time the treatment has been rendered at, and geographic area that the treatment was rendered at and medically necessary.

EXHIBIT DAR014 - Page 22

t.   That Plaintiff will suffer future impairment due to the injuries suffered as a result of the accident in question.

u.   That Plaintiff will suffer future disfigurement due to the injuries suffered as a result of the accident in question.

v.   That Plaintiff will suffer future pain due to the injuries suffered as a result of the accident in question.

w.   That Plaintiff will suffer mental anguish due to the injuries suffered as a result of the accident in question.

x.   That Plaintiff will suffer pain and suffering due to the injuries suffered as a result of the accident in question.

y.   that Plaintiff will require future medical treatment, based on reasonable medical probability in the form of future surgeries, spinal cord stimulator, medical testing, pain maintenance and management, injection procedures, medications, physical therapy, medical rehabilitation, physician office visits, custodial visits, and home health care.

z.   all reasonable and necessary medical care and treatment that Plaintiff will need in the future to treat the injuries he suffered as a result of the collision in question including but not limited to future surgeries, spinal cord stimulator, medical testing, pain maintenance and management, injection procedures, medications, physical therapy, medical rehabilitation, physician office visits, custodial care, home health care and anything else medically necessary as well as the reasonable cost associated with such care and treatment.

aa.  That Plaintiff will require at least one additional fusion surgery because of adjacent level disease from the first surgery.

bb.  That Plaintiff will require continued maintenance, upkeep, and testing of the spinal cord stimulator that has been implanted in Plaintiff's person which will include but not be limited to battery replacement on a regular and periodic basis, stimulator revision and replacement on a regular and periodic basis, as well as complete replacement when a new stimulator is needed. That Plaintiff will require the usage of a spinal cord stimulator for the rest of his life and routine maintenance of same. That Plaintiff will require continuing cortisone injections, trigger point injections, epidural steroid injections for pain relief on a continuous basis for the rest of his life in an attempt to control Plaintiff's pain.

cc.  That Plaintiff will require continued care and treatment for his urinary incontinence which will include testing, follow up physician visits, and the usage of diapers or diaper like items.

dd.  That Plaintiff will require the administration and dispensing of the same or similar type of pain medication, muscle relaxants, anti-depressants, anti-anxiety, nerve medication, and medication for his urinary incontinence for the rest of his life.

ee.  The reasonable cost of the future medical care and treatment referenced herein that Plaintiff will be required to have due to the injuries suffered in the accident in question will be approximately $ 1,000,000.00 and that such

Page **12** of **21**

reasonable cost will be reasonable in light of the treatment to be rendered, the time it will be rendered at, and the geographic area that the treatment will be rendered at.

ff.   For any additional details regarding specific opinions, you are referred to each of the health care providers, medical records, and bills which have been produced and/or secured in connection with this case by any party. You are also referred to all medical records and bills produced by Plaintiff to all parties and secured by any party in this case via Deposition on Written Questions.

All documents referenced above are incorporated herein by reference as though set out at length for all purposes.

**Brief Summary of Basis for Impressions and Opinions of Non-Retained Medical Experts.**  The basis for the foregoing impressions and opinions of the above named and/or designated expert witnesses are all of the facts shown by and/or contained in:

(a)   the medical records of JOHN DARJEAN which have been, and which may hereafter be produced by Plaintiff and/or Plaintiff's doctors and other healthcare providers in responses to discovery requests served in this case;

(b)   the depositions presently or hereafter taken in this cause, orally and on written questions; and

(c)   all written reports of healthcare providers produced during the course of this discovery in this cause;

(d)   physical examination and treatment of JOHN DARJEAN and based upon background, education and training of healthcare providers.

(e)   all radiology films, including MRI's, CAT scans and x-ray scans in connection with discovery.

(f)   all personal knowledge and observations acquired during the care and treatment of John Darjean.

(g)   all test results of John Darjean.

BILLING AND MEDICAL RECORDS CUSTODIANS AND AFFIANTS FOR THE FOLLOWING MEDICAL PROVIDERS FOR JOHN DARJEAN.  SOME OF THESE RECORDS AND BILLS HAVE BEEN ACQUIRED BY DEPOSITION ON WRITTEN QUESTIONS AND AFFIDAVITS, HOWEVER, SOME OF NOT. THESE RECORDS MAY BE USED BY PLAINTIFF DURING THE PENDENCY OF THIS LITIGATION AND DURING THE TRIAL OF THIS MATTER. THE AFFIANTS, AFFIDAVITS, AS WELL AS THE RECORDS MAY BE USED TO ESTABLISH THE REASONABLENESS AND NECESSITY OF THE PAST MEDICAL CARE AND TREATMENT THAT PLAINTIFF'S HAVE INCURRED DUE TO THE INJURIES SUFFERED IN THE ACCIDENT IN QUESTION:

Name unknown
Custodian of Billing Records for
BAYLOR REHAB
909 N Washington Ave
Dallas, TX 75246
(214) 339-4533

Fran Cuzzo
Custodian of Billing Records for
The City of Dallas Fire Department
1551 Baylor Street
Suite 300
Dallas, Texas 75226
(855) 670-3233

Name unknown
Custodian of Billing Records for
CONCENTRA MEDICAL CENTER
PO Box 9005
Addison, Texas 75001
(800) 733-7098

Name unknown
Custodian of Billing Records for
Genex Services LLC
440 E. Swedesford Road
Suite 2045
Wayne, PA 19087
(800) 647-1427

Name unknown
Custodian of Billing Records for
Landmark Exams
5725 W. Highway 20
Suite 202
Austin, Texas 78736
(512) 494-4219

Mitchel J. Taylor
Custodian of Billing Records for
Methodist Charlton Medical Center
3500 WEST WHEATLAND ROAD
DALLAS, TEXAS 75257
(469) 248-3900

EXHIBIT DAR014 - Page 25

Sandra Bryan
Custodian of Billing Records for
Methodist Dallas Medical Center
Name unknown, Custodian of Medical Records
4040 North Central Expressway
Suite 600
Dallas, Texas 75204
(214) 520-5700

Name unknown
Custodian of Billing Records for
Methodist Mansfield Medical Center
2700 E Broad St
Mansfield, TX 76063
(682) 242-2000

Jason Chapman
Custodian of Billing Records for
PINNACLE PAIN and/or THE PAIN DOCTOR
6606 LBJ Fwy, Suite 200
Dallas, Texas 75240
(972) 715-5000

Name unknown
Custodian of Billing Records for
PRESTON NEUROLOGICAL CENTER
12800 Preston Rd
Dallas, TX 75230
(972) 503-2780

Name unknown
Custodian of Billing Records for
Parkland Hospital, including but not limited to
5200 Harry Hines Blvd
Dallas, TX 75235
(214) 590-8000

Shelley Cooper
Custodian of Billing Records for
Texas Physician Resources
6451 Brentwood Stair Road
Fort Worth, Texas   76112-3200
(800) 378-4134

EXHIBIT DAR014 - Page 26

Gwen Walker
Custodian of Billing Records for
Radiology Associates of North Texas
PO Box 1723
Indianapolis, Indiana 46206-1723
(877) 718-5728

Name unknown
Custodian of Billing Records for
Century Integrated Partners
Po Box 98991
Las Vegas, Nevada 89193-8991
(800) 355-2470

Michelle Fisher
Custodian of Billing Records for
UT Southwest Physicians
P.O. Box 848009
Dallas, Texas 75284-8009
(469) 291-2000

Cheryl Granger
Custodian of Billing Records for
American Radiology Consultants
3500 Gaston Avenue
Dallas, Texas 75246
(877) 277-2561

Virginia Jimenez
Katrina Barton
Custodians of Billing Records
One Call Care Management
Erwin Cruz M.D.
841 Prudential Drive
Suite 900
Jacksonville, Florida 32207

Mercedes Rosthenhausler
Custodian of Billing Records
Saint Mary's Medical Park Pharmacy, Inc.
10860 North Mavinee Drive
Oro Valley, Arizona 85737
(800) 995-8157

Page **16** of **21**

Name unknown
Custodian of Billing Records for
Kirsi Waller Ph.D.
1006 N Bowen Rd
Arlington, TX 76012
(817) 543-3704

Name unknown
Custodian of Medical Records for
BAYLOR REHAB
909 N Washington Ave
Dallas, TX 75246
(214) 339-4533

Name unknown
Custodian of Medical Records for
The City of Dallas Fire Department
1551 Baylor Street
Suite 300
Dallas, Texas 75226
(855) 670-3233

Name unknown
Custodian of Medical Records for
CONCENTRA MEDICAL CENTER
PO Box 9005
Addison, Texas 75001
(800) 733-7098

Name unknown
Custodian of Medical Records for
Genex Services LLC
440 E. Swedesford Road
Suite 2045
Wayne, PA 19087
(800) 647-1427

Name unknown
Custodian of Medical Records for
Landmark Exams
5725 W. Highway 20
Suite 202
Austin, Texas 78736
(512) 494-4219

EXHIBIT DAR014 - Page 28

Name unknown
Custodian of Medical Records for
Methodist Charlton Medical Center
3500 WEST WHEATLAND ROAD
DALLAS, TEXAS 75257
(469) 248-3900

Name unknown
Custodian of Medical Records for
Methodist Dallas Medical Center
4040 North Central Expressway
Suite 600
Dallas, Texas 75204
(214) 520-5700

Name unknown
Custodian of Medical Records for
Methodist Mansfield Medical Center
2700 E Broad St
Mansfield, TX 76063
(682) 242-2000

Name unknown
Custodian of Medical Records for
PINNACLE PAIN and/or THE PAIN DOCTOR
6606 LBJ Fwy, Suite 200
Dallas, Texas 75240
(972) 715-5000

Name unknown
Custodian of Medical Records for
PRESTON NEUROLOGICAL CENTER
12800 Preston Rd
Dallas, TX 75230
(972) 503-2780

Name unknown
Custodian of Medical Records for
Parkland Hospital, including but not limited to
5200 Harry Hines Blvd
Dallas, TX 75235
(214) 590-8000

Page **18** of **21**

Name unknown
Custodian of Medical Records for
Texas Physician Resources
6451 Brentwood Stair Road
Fort Worth, Texas   76112-3200
(800) 378-4134

Name unknown
Custodian of Medical Records for
Radiology Associates of North Texas
PO Box 1723
Indianapolis, Indiana 46206-1723
(877) 718-5728

Name unknown
Custodian of Medical Records for
Century Integrated Partners
Po Box 98991
Las Vegas, Nevada 89193-8991
(800) 355-2470

Name unknown
Custodian of Medical Records for
UT Southwest Physicians
P.O. Box 848009
Dallas, Texas 75284-8009
(469) 291-2000

Name unknown
Custodian of Medical Records for
American Radiology Consultants
3500 Gaston Avenue
Dallas, Texas 75246
(877) 277-2561

Name unknown
Custodian of Medical Records for
One Call Care Management
Erwin Cruz M.D.
841 Prudential Drive
Suite 900
Jacksonville, Florida 32207

EXHIBIT DAR014 - Page 30

Name unknown
Custodian of Medical Records for
Saint Mary's Medical Park Pharmacy, Inc.
10860 North Mavinee Drive
Oro Valley, Arizona 85737
(800) 995-8157

Name unknown
Custodian of Medical Records for
Kirsi Waller Ph.D.
1006 N Bowen Rd
Arlington, TX 76012
(817) 543-3704

Plaintiff reserves the right to call as a witness any custodian of documents, business records, medical records, billing records, or other records relevant to this suit, which are not now known but are later determined necessary during further development of this case.

Plaintiff reserves the right to call as a witness any custodian of documents and/or witnesses required to authenticate, and/or prove up a document, including medical, billing, employment, business record, or any other type of records or documents whose admissibility is disputed by any party.

Plaintiff reserves the right to elicit any testimony or expert testimony from any expert witness(s) designated by any Defendant on their expert witness list that said expert(s) may be qualified to render. Plaintiff is not vouching for the credibility or qualifications of Defendants' experts by making this designation, but rather reserving the right to elicit testimony if any such expert is otherwise found qualified to render such opinions or testimony. Additionally, Plaintiff reserves the right to designate any deposition and/or trial testimony, reports, all documentation reviewed by such experts, and/or affidavits of any of such expert witnesses.

Pursuant to the Rule 11 Agreement dated March 23, 2018, the Defendants are not required to designate their expert witnesses until June 1, 2018. Therefore, Plaintiff further reserves the right to elicit any opinion from any expert witnesses designated by any defendants at trial or by way of deposition through direct and/or cross-examination.

Respectfully submitted,

 s/ Jimmy M. Negem
Jimmy M. Negem
State Bar No. 14865500
Joe M. Worthington

EXHIBIT DAR014 - Page 31

State Bar No. 22009950
Negem & Worthington
1828 E SE Loop 323
Suite R – 1A
Tyler, Texas 75701
903.595.4466 (telephone)
903.593.3266 (facsimile)
Jimmy@Negemlaw.com
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon counsel of record on the 2nd day of May, 2018.

 s/ Jimmy M. Negem
Jimmy M. Negem

Page **21** of **21**

# EXHIBIT "B"

DEFENDANTS' JOINT MOTION TO EXCLUDE THE EXPERT TESTIMONY OF NIMESH PATEL, M.D. - Page 12

```
 1                    CAUSE NO. DC-16-07371

 2   JOHN DARJEAN            )      THE DISTRICT COURT
     Plaintiff              )
 3                           )
         vs.                 )      160TH JUDICIAL DISTRICT
 4                           )
     DEION SANDERS, PILAR    )
 5   SANDERS, AND SHILO      )
     SANDERS                 )
 6   Defendants             )      DALLAS COUNTY, TEXAS

 7

 8        *****************************************
              VIDEOTAPED ORAL DEPOSITION OF
 9                  NIMESH PATEL, M.D.
                  SEPTEMBER 20, 2018
10                     VOLUME 1
          *****************************************

11

12

13        VIDEOTAPED ORAL DEPOSITION of NIMESH PATEL, M.D.,

14   produced as a witness at the instance of the Plaintiff,

15   and duly sworn, was taken in the above-styled and

16   -numbered cause on the 20th day of September 2018, from

17   9:32 a.m. to 10:30 a.m., before TAMMY DICKSON CROSS, a

18   Certified Shorthand Reporter in and for the State of

19   Texas, reported by machine shorthand, at Methodist Moody

20   Brain & Spine Institute, 1411 North Beckley Avenue,

21   Pavilion III, Suite 152, Dallas, Texas  75203 pursuant

22   to the Texas Rules of Civil Procedure and the provisions

23   stated on the record or attached hereto.

24

25
```

```
 1              A P P E A R A N C E S

 2    FOR THE PLAINTIFF:
          Mr. Joe M. Worthington
 3        NEGEM & WORTHINGTON
          1828 ESE Loop 323, Suite R-1A
 4        Tyler, Texas  75701
          Telephone:  (903) 595-4466
 5        E-mail:  joe@negemlaw.com

 6    FOR THE DEFENDANT DEION SANDERS:
          Mr. Larry R. Boyd
 7        Ms. Emily M. Hahn
          ABERNATHY, ROEDER, BOYD & HULLETT, P.C.
 8        1700 North Redbud Boulevard, Suite 300
          McKinney, Texas  75069
 9        Telephone:  (214) 544-4000
          E-mail:  lboyd@abernathy-law.com
10
      FOR THE DEFENDANT SHILO SANDERS:
11        Mr. Mark A. Walsh
          SAUNDERS, WALSH & BEARD
12        6850 TPC Drive, Suite 210
          McKinney, Texas  75070
13        Telephone:  (214) 919-3555
          E-mail:  mark@saunderswalsh.com
14
      FOR THE DEFENDANTS FOCUS LEARNING ACADEMY, INC., DBA
15    FOCUS LEARNING ACADEMY/TRIPLE A ACADEMY AND LEROY
      MCCLURE, JR.:
16        Ms. Michelle S. Sortor
          WENTZ & ZAVARELLI, LLP
17        222 West Las Colinas Boulevard
          Urban Towers, Suite 1900N
18        Irving, Texas  75039
          Telephone:  (469) 665-9100
19        E-mail:  msortor@wandzlaw.com

20    FOR THE INTERVENOR UTICA MUTUAL INSURANCE:
          Mr. Robert C. Turner
21        THE SILVERA FIRM
          17070 Dallas Parkway, Suite 100
22        Dallas, Texas  75248
          Telephone:  (972) 715-1750
23        E-mail:  robertturner@silveralaw.com


24
      ALSO PRESENT:
25        Mr. David Guerra, Videographer
```

```
 1                          I N D E X

 2    Appearances                                      2

 3    NIMESH PATEL, M.D.

 4          Examination by Mr. Worthington            4
            Examination by Mr. Boyd                   38
 5          Examination by Mr. Worthington            45
            Examination by Mr. Boyd                   53
 6          Examination by Mr. Worthington            55

 7    Reporter's Certificate                          57

 8

 9                      EXHIBITS MARKED

10    NO.               DESCRIPTION                PAGE

11    Exhibit 1         MRI/Cervical Spine, 4/14/14    13

12    Exhibit 2         MRI/Cervical Spine, 9/21/15    13

13    Exhibit 3         MRI/Lumbar Spine, 9/21/15      15

14    Exhibit 4         MRI/Lumbar Spine, 4/14/14      15

15

16

17

18

19

20

21

22

23

24

25
```

1              P R O C E E D I N G S

2                  THE VIDEOGRAPHER:  We are on the record

3      at 9:32 a.m., September 20th, 2018, for the deposition

4      of Nimesh Patel, M.D.  Counsel, please state your

5      appearances and the court reporter will then administer

6      the oath.

7                  MR. WORTHINGTON:  Joe Worthington for the

8      plaintiff.

9                  MR. TURNER:  Robert Turner for Utica

10     Mutual, intervenor.

11                 MR. WALSH:  Mark Walsh for Shilo Sanders.

12                 MS. SORTOR:  Michelle Sortor for Focus

13     Learning Academy and Leroy McClure.

14                 MR. BOYD:  Larry Boyd and Emily Hahn for

15     Deion Sanders.

16                 NIMESH PATEL, M.D.,

17     having been first duly sworn, testified as follows:

18                      EXAMINATION

19     BY MR. WORTHINGTON:

20        Q    Would you introduce yourself to the jury,

21     please?

22        A    Yes.  My name is Nimesh Patel.

23        Q    And --

24        A    I'm --

25        Q    Go ahead.  I'm sorry.

Nimesh Patel, M.D.                                                    18

```
 1                    MR. WALSH:  Objection --

 2                    MR. BOYD:  Objection --

 3                    MR. WALSH:  -- form.

 4                    MR. BOYD:  -- form.

 5        A     Possible.

 6        Q     Okay.  And -- and why is it you say it's --

 7   it's possible?

 8        A     He had a preexisting disc herniation on 2014

 9   MRI on the lumbar spine.  That same disc herniation

10   appears to be there in 2015 report.  It is slightly

11   changed to 2 to 4 millimeters, therefore, it could be

12   due to an event or it could be due to a pro- -- natural

13   progression.

14        Q     Doctor, in terms of an aggravation, do you

15   have an opinion on whether or not the 2017 assault event

16   caused an aggravation of the underlying herniation in

17   the lumbar spine that you saw?

18                    MR. BOYD:  Objection --

19                    MR. WALSH:  Objection --

20                    MR. BOYD:  -- form.

21                    MR. WALSH:  -- form.

22        A     I can't determine that.

23        Q     Okay.  Were -- did you treat the lumbar spine

24   in any way?

25        A     We treated it nonoperatively --
```

Veritas

```
 1          MR. WORTHINGTON:  Objection; form.

 2     Q    -- the reason for that was because of the

 3   history that you read that Mr. Darjean gave.

 4     A    Yes.

 5     Q    All right.

 6     A    Right.

 7     Q    Now, if the -- if the history that Mr. Darjean

 8   gave was inaccurate, would that change or could that

 9   change your opinion regarding cause?

10     A    We would just shift the change -- cause to

11   something else.  So to answer your question, yes.

12     Q    Okay.

13     A    Yeah.

14     Q    So it's critical from your perspective that

15   the facts you actually read in the history be

16   accurate?

17     A    From a healthcare standpoint, it's critical

18   I'm -- I'm taking it at the tail here.  Once I saw the

19   picture, it was irrelevant to -- to me from a medical

20   standpoint to treat the patient of what I saw.

21     Q    I understand.  So from your perspective,

22   causation was irrelevant at that point?

23     A    Yes.

24     Q    So but -- but for the -- for the purposes of

25   telling the jury in this case what caused the condition,
```

1  you're relying on the statements that were given by Mr.

2  Darjean to the admitting staff?

3      A    That is correct.

4      Q    Okay.  And you have no other basis for that

5  opinion.  Is that accurate?

6      A    That is correct.

7      Q    And, I'm sorry, Doctor, I didn't write it

8  down.  What was the last date you saw Dr. -- Mr.

9  Darjean?

10     A    It was December 2015th --

11     Q    All right.

12     A    -- '15, I believe, yeah.

13     Q    So it's been quite some time?

14     A    Yes.

15     Q    Have you had any communication from any other

16  physician or any other medical personnel regarding his

17  current condition?

18     A    Not that I recall.

19              THE REPORTER:  Excuse me.

20     Q    So to the best of your knowledge today --

21              THE REPORTER:  Excuse me.

22     Q    -- the fusions that you performed have

23  performed their function?

24     A    Yes.  Or they were on their way.  So December

25  2015 and I did the surgery in September, so there's a

Nimesh Patel, M.D.

```
1    progression of the fusion still.  So it could take up to
2    a year for it to fuse, but, in essence, I was confident
3    based off what I saw in December that he was going to
4    progress well.
5         Q    And so we have now passed a year, so would it
6    be your expectation --
7                   THE REPORTER:  Excuse me.
8         Q    -- that having heard nothing, you -- that the
9    surgery was successful?
10        A    Yes.
11        Q    Now, when you discussed the issues with the
12   lumbar spine with Mr. Worthington, you said that looking
13   only at the MRIs that were taken, I think in 2014 and
14   then again in 2015, that the -- that the problems that
15   were seen in the MRIs could be a natural progression.
16   Is that accurate?
17        A    Could be, yes.
18        Q    But you -- you don't know for certain --
19                   THE REPORTER:  Excuse me.
20        Q    -- whether or not there was an intervening
21   cause that Mr. Worthington was discussing with you that
22   would have caused the 2 millimeter difference between
23   the two MRIs?
24        A    No.
25        Q    Now, would you anticipate at this juncture,
```

Veritas

Nimesh Patel, M.D.
45

```
 1   more than two years after the surgery, that Mr.

 2   Darjean's limitations, as you've previously described

 3   them, would not be as severe as they were the last time

 4   you saw him?

 5       A    From --

 6                MR. WALSH:  Objection; form.

 7       A    From the cervical fusion standpoint --

 8       Q    Yes, sir.

 9       A    -- yes, yes.

10       Q    And you've said, I think, a couple of times

11   that you encouraged Mr. Darjean to be employed.  Is that

12   accurate?

13       A    I -- I don't know if I listed it in my report,

14   but I have -- I have a philosophy, personally

15   speaking -- and probably it's not appropriate to say it

16   here, but I already said it -- get back to work, so --

17       Q    Okay.

18                MR. BOYD:  That's all I have, Doctor.

19   Thank you.  I pass the witness.

20                THE REPORTER:  Excuse me.

21                MS. SORTOR:  I don't have any questions.

22                MR. TURNER:  I have no questions.

23                MR. WALSH:  I don't either.

24                     EXAMINATION

25   BY MR. WORTHINGTON:
```

1    Q.   How long would that type limitation last?

2    A.   Again, until his lumbar spine is treated more

3   appropriately.  For his cervical spine he would have

4   some limitations ongoing for overhead lifting or

5   reaching based on his stimulator implant and his pain

6   and weakness in that left upper extremity.  So, even

7   with the pain improved, he still has some weakness that

8   would limit those to do safely.  So, those restrictions

9   would be ongoing for his neck and overhead lifting.

10    Q.   Would you ever release Mr. Darjean out to a

11   manual labor-type job?

12    A.   No.

13    Q.   And how long would that last?

14    A.   At this point indefinitely.

15    Q.   Would you ever release Mr. Darjean back to a

16   security-type job where he may be in the position of

17   having to subdue or restrain someone?

18    A.   No.  That wouldn't be the best occupation.

19    Q.   Is that a permanent-type restriction?

20    A.   Yes.

21    Q.   What type of work, if any, would you release

22   Mr. Darjean back to assuming you're able to manage his

23   care and get him as well as you can?

24    A.   He could easily do more of a sedentary-type

25   work or desk job, something in that realm, potentially

Michael Phillips, MD

```
 1   teacher, other things that don't require heavy lifting,

 2   bending, manual labor.

 3        Q.  And would that be permanent?

 4        A.  Yes.

 5        Q.  Do you have your current billing records there,

 6   Doctor?

 7        A.  I think I tried to get them.  They're not

 8   perfect, but we just printed them yesterday.  But I

 9   believe that's...

10                 MR. WALSH:  Is there a good time to take a

11   break?

12                 MR. WORTHINGTON:  Let me just finish this

13   and I'm, like, this close.

14                 (Exhibit No. 2 marked.)

15        Q.  (BY MR. WORTHINGTON)  Doctor, let me show you

16   what I've marked as Exhibit No. 2.  Can you tell us what

17   Exhibit No. 2 is?

18        A.  These are records printed by my office for

19   specific dates and visits for charging charges,

20   insurance payments or work comp payments in his case and

21   balances due.

22        Q.  Does it itemize the care that you've rendered

23   to Mr. Darjean?

24        A.  It does appear to, yes.

25                 MR. WALSH:  Objection, non-responsive.
```

```
1    congenital cervical spinal stenosis?

2        A    Specifically you're talking about the CAT

3    scan -- CT scan?

4        Q    Yes, sir.

5        A    I will have to look at the report.  I have one

6    after surgery.  If you have something for me to look at

7    for the -- I can affirm that or not affirm that.  Don't

8    have anything previous to that.

9        Q    You say you don't know one way or the other;

10   is that correct?

11       A    I don't have the -- yeah, I don't know the

12   answer --

13       Q    Based on that --

14       A    -- but if you have the documentation for me, I

15   can look at it and tell you.

16       Q    Okay.

17       A    But, yes, if the document states it, then

18   there is.

19       Q    Do you know whether or not Mr. Darjean was

20   suffering from degenerative disc disease?

21       A    Given that he had a previous cervical fusion,

22   one would assume that he had some type of preexisting

23   type of degenerative disc disease.

24       Q    Okay.

25            MR. BOYD:  That's all I have.  Thank you,
```