## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO
## DENVER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 23-14859** |
| **SHILO DION SANDERS,** | § | |
| | § | **Chapter 7** |
| | § | |
| Debtor. | § | |

### *EX PARTE* MOTION OF JOHN DARJEAN FOR PRODUCTION OF DOCUMENTS FROM DEION SANDERS, SHEDEUR SANDERS, THE UNIVERSITY OF COLORADO, AND OTHER THIRD PARTIES PURSUANT TO FED. R. BANKR. P. 2004 AND LOCAL BANKR. R. 2004

**TO THE HONORABLE MICHAEL E. ROMERO, U.S. BANKRUPTCY JUDGE:**

John Darjean, assault and battery victim and judgment creditor ("Darjean" or the "Movant"), files this *Ex Parte Motion of John Darjean for Production of Documents From Deion Sanders, Shedeur Sanders, the University of Colorado, and Other Third Parties Pursuant to Fed. R. Bankr. P. 2004 and Local Bankr. R. 2004* (the "Motion") and in support thereof would show to the Court the following.

## I.
## INTRODUCTION

1. Darjean in the capacity of a creditor of this estate seeks discovery under Rule 2004 regarding the assets of the estate and of the Debtor, including potential turnover and/or avoidance action claims and other litigation which might be pursued by the estate, in order to assist the Chapter 7 Trustee in the identification and recovery of assets and ultimately to facilitate a distribution to Darjean, and to make the documents and information available to the Trustee and all creditors.

## II.
## JURISDICTION

2.     The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 (a) and (b).

3.     This is a core proceeding under 28 U.S.C. § 157(b).

4.     Venue is proper under 28 U.S.C. §§ 1408 and 1409.

5.     The Court has constitutional authority to decide this Motion and enter final orders under *Stern v. Marshall*, 564 U.S. 462 (2011) and its progeny.

## III.
## FACTUAL AND PROCEDURAL BACKGROUND

6.     On October 23, 2023, Debtor commenced this case.

7.     On October 24, 2023, Darjean filed a proof of claim, docketed herein as Proof of Claim No. 1, in the original principal amount of not less than $13,393,645.04.

8.     The basis of Proof of Claim No. is the final, non-appealable, judgment entered on May 18, 2022 in favor of Darjean against the Debtor in Dallas County, Texas.

9.     The Debtor filed this case on the eve of a hearing to appoint a receiver, and thus this case has frustrated and delayed the enforcement of the Judgment.

10.     The basis of the Judgment is the willful and malicious assault committed by the Debtor against Darjean on September 15, 2017.

11.     To date, no party has objected to Proof of Claim No. 1, and thus the claim is deemed allowed under Code § 502(a).

12.     On January 29, 2024, Darjean commenced Adv. No. 24-01022 against the Debtor seeking to except the Judgment and Proof of Claim No. 1 from any discharge the Debtor might obtain in this case pursuant to Code § 523(a)(6).

**EX PARTE MOTION OF JOHN DARJEAN FOR PRODUCTION OF DOCUMENTS FROM DEION SANDERS, SHEDEUR SANDERS, THE UNIVERSITY OF COLORADO, AND OTHER THIRD PARTIES PURSUANT TO FED. R. BANKR. P. 2004 AND LOCAL BANKR. R. 2004 — Page 2**

motion 2004 exam 3Ps 001 4880-7930-1093 v.9.docx [1] / 4860-4515-8644, v. 4

13. On January 29, 2024, Darjean also commenced Adv. No. 24-01023 against the Debtor seeking the denial of any discharge pursuant to Code § 727(a) on account of, inter alia, the massive nondisclosure of assets of the Debtor and other malfeasance in connection with the prosecution of this bankruptcy case.

14. Beyond the two adversary proceedings, Darjean is a creditor of this estate and is entitled to investigate the assets that may be recovered by this estate, including but not limited to the assets which should be turned over to the estate, the assets which have been secreted and withheld from the estate, and any turnover and/or avoidance actions and other litigation which may be commenced against the Debtor and/or third parties.

15. On information and belief, the Debtor has delayed and slow-rolled the production of documents sought by the Trustee in this case, and, as the largest creditor, Darjean seeks by this Motion also to support, bolster, and accelerate the processes undertaken by the Trustee.

16. Darjean intends to share any documents, information, and/or things acquired through the Third Party Discovery with the Trustee.

17. Accordingly, as the initial stages of a comprehensive investigation of the assets and claims of this estate, Darjean seeks leave to obtain documents, information, and things from the non-debtor parties listed and described below, with copies of the proposed production appearing in the exhibits listed below and attached hereto (collectively, the "Third Party Discovery").

| Party | Relationship to the Debtor | Subpoena Exhibit |
|---|---|---|
| Deion Sanders | Father of Debtor | DAR021 |
| Shedeur Sanders | Brother of Debtor | DAR022 |
| University of Colorado | Employer of Debtor | DAR023 |
| University of Colorado Athletic Department | Employer of Debtor | DAR024 |
| 5430 Alliance | NIL collective University of Colorado | DAR025 |
| Blue Sprint Sports and Entertainment LLC | NIL collective University of Colorado | DAR026 |
| Tabitha Plummer | Agent of Debtor | DAR027 |
| Plummer Law Group, PC | Agent of Debtor | DAR028 |
| SMAC Entertainment LLC | Agent of Debtor | DAR029 |
| Constance Schwartz-Morini | Agent of Debtor | DAR030 |
| Truck Ranch | Donor to Debtor | DAR031 |
| Big 21 LLC | Entity of Debtor | DAR032 |
| SS21 LLC | Entity of Debtor | DAR033 |
| SS1 Legendary LLC | Entity of Debtor | DAR034 |
| Headache Gang LLC | Entity of Debtor | DAR035 |

18.     The production sought from the non-debtor third parties relates to issues raised by the schedules and statement of financial affairs filed by the Debtor, the testimony of the Debtor and/or the comments of counsel in the Section 341 meeting of creditors, media reports, and/or from knowledge and investigation accumulated by Darjean to date.

19.     The production is necessary in order to recover assets for the benefit of the estate and/or obtain other discoverable information for such purpose.

20.     For example, and without limitation, the initial bases of seeking the third-party discovery with respect to each third-party witness is set forth below.

**A.     Deion Sanders — Exhibit DAR021.**

21.     Obviously, Deion Sanders is the father of the Debtor, and he is also responsible and/or heavily involved in the financial affairs of the Debtor.

22.     Besides the Debtor, Deion Sanders is the individual likely to possess the greatest amount of information about the assets, liabilities, and financial affairs of the Debtor.

23.     Deion Sanders has stated in the media that one or more trusts exists for his children including the Debtor, and Deion Sanders is the settlor and/or trustee of such trusts.  Even if the trusts have been designed to be shielded from the creditors of the Debtor, the existence, contents, and distributions from any and all such trusts are pertinent issues to the administration of this bankruptcy case.

24.     Deion Sanders and the Debtor have appeared together in documentaries, social media posts, and other events which are certain to have generated royalties or other income, and Deion Sanders either knows about the compensation received by the Debtor and/or possibly received himself the compensation earned by the Debtor.

25.     Darjean through counsel has received information that Deion Sanders and/or Shadeur Sanders have collected revenue for promotional appearances and/or NIL activities on account of or on behalf of the Debtor.

26.     Deion Sanders also is effectively the employer and/or supervisor of the Debtor with respect to the position of the Debtor with the University of Colorado football team and/or the University of Colorado Athletic Department and/or the related NIL collective, 5430 Alliance.

27.     In addition, as evidenced by the statements that the Debtor and Shadeur Sanders purchased a house for Deion Sanders, Deion Sanders directly and/or indirectly is a recipient of prepetition and/or postpetition transfers of property of the Debtor.

**B.     Shadeur Sanders — Exhibit DAR022.**

28.     Besides the Debtor and Deion Sanders, Shadeur Sanders is the individual most likely to possess the greatest amount of information about the assets, liabilities, and financial affairs of the Debtor.

29.     Furthermore, the Debtor has received information that Deion Sanders has collected revenue for promotional appearances and/or NIL activities on account of or on behalf of the Debtor.  If Shadeur Sanders possesses any documents or information regarding such activity, it would be discoverable. Furthermore, it is also possible that Shadeur Sanders as received compensation and transfers of value related to the Debtor.

30.     Darjean through counsel has received information that Deion Sanders and/or Shadeur Sanders have collected revenue for promotional appearances and/or NIL activities on account of or on behalf of the Debtor.

31.     Deion Sanders has stated in the media that trust exists for his children including the Debtor, and Deion Sanders is the settlor and/or trustee of such trusts.  Shadeur Sanders also is likely to possess information about such trusts in addition to Deion Sanders, including the existence and contents of such trusts and/or whether the children have received distributions from such trusts.

C.     **Univ of Colorado and the 5430 Alliance NIL collective et al. — Exhibit DAR023-DAR026.**

32.     The University of Colorado, the University of Colorado Athletics Department, and the  5430 Alliance NIL collective are likely to possess information regarding the compensation provided to the Debtor or participating in athletics at the University and/or endorsements, appearances, and/or other NIL activities of the Debtor and/or Big 21 LLC and/or any other entities owned and/or controlled by the Debtor.

33.     For clarification, the 5430 Alliance is the NIL collective for the University of Colorado football program, and, according to various web sites and/or public records, Blue Sprint Sports and Entertainment LLC is the operator and/or administrator of the 5430 Alliance.

**D.      Professionals employed by the Debtor — Exhibit DAR027-DAR030.**

34.     Darjean also seeks discovery from agents and various other professionals, including but not limited to Tabith Plummer and SMAC Entertainment LLC, disclosed and/or identified to date which have assisted the Debtor with his finances and/or in connection with the endorsements, appearances, and/or other NIL activities of the Debtor.

**E.      Truck Ranch — Exhibit DAR031.**

35.     This subpoena is in reference to a pickup truck or other automobile that was recently gifted to the Debtor according to media reports.[1]

36.     The circumstances of such transfer and the identity of the recipient (whether the Debtor or another person or entity on behalf of the Debtor) lead to the identification of assets available for the estate.

**F.      Big 21 et al.  Exhibit DAR032-DAR035**

37.     Big 21 LLC, SS21 LLC, SS21 Legendary LLC, and Headache Gang LLC are the entities identified to date by and through which the Debtor receives compensation for endorsements, appearances, and/or other NIL activities.

38.     The Debtor identified and discussed some of these entities in the initial pleadings and at the meeting of creditors.

39.     Otherwise, the subject entities have been identified through investigation conducted on behalf of Darjean.

40.     The Third Party Discovery sought also is intended to identify any other entities the Debtor may be involved but which the Debtor has yet to disclose.

---

[1]   https://athlonsports.com/college/colorado-buffaloes/former-assistant-coach-trevor-reilly-reveals-details-flirtation-saudi-arabia-pif

# III.
# RELIEF REQUESTED

41.     Pursuant to Fed. R. Bankr. P. 2004 and L.R.B.P. 2004-1, Darjean respectfully requests that the Court enter an order (1) permitting Darjean to serve the Third Party Discovery and (2) ordering each of the third parties to respond to the Third Party Discovery within thirty (30) days of the entry of such order.

42.     A proposed form of order accompanies this Motion and is incorporated by reference herein.

# IV.
# BASIS OF RELIEF

43.     Federal Rule of Bankruptcy Procedure 2004 and Local Rule of Bankruptcy Procedure 2004-1 permit the examination of any entity with respect to "discovering assets examining transactions, and determining whether wrongdoing has occurred."  Fed. R. Bankr. P. 2004; L.R.B.P. 2004-1. "The purpose of a Rule 2004 examination is to determine the condition, extent, and location of the debtor's estate in order to maximize distribution to unsecured creditors." *In re Lufkin*, 255 B.R. 204, 208 (Bankr. E.D. Tenn. 2000).

44.     A party in interest therefore "may use Rule 2004 to determine the nature and extent of a bankruptcy estate and to ascertain whether wrongdoing has occurred." *In re Hilsen*, 2008 WL 2945996, at *4 (Bankr. S.D.N.Y. Jul. 25, 2008); *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred."). "Any third party who has a relationship with a debtor may be made subject to a Rule 2004 investigation." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004).

45.     The scope of a Rule 2004 examination is "extremely broad," and has even been likened by some courts to a "lawful 'fishing expedition.'" *Id*. (*quoting Bank One, Columbus, N.A. v. Hammond (In re Hammond)*, 140 B.R. 197, 201 (S.D. Ohio 1992)). "The scope of a [ ] Rule 2004 examination is 'unfettered and broad.' Its purpose is to facilitate the discovery of assets and the unearthing of frauds and has been likened to a quick 'fishing expedition' into general matters and issues regarding the administration of the bankruptcy case." *In re Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996) (quoting *In re GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr. D. Mass. 1983). The standard for granting a Rule 2004 examination is whether the movant has established "good cause." *In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992).

46.     Rule 2004 examinations are an appropriate tool for investigating fraudulent transfer claims in particular. *See Rhodes v. Litig. Trust of the Rhodes Cos., LLC (In re Rhodes Cos., LLC)*, 475 B.R. 733 (D. Nev. 2012) ("the subpoenas were an appropriate method of investigating potential fraudulent transfer claims"); *Kirschner v. Agoglia (In re Refco Inc.)*, 461 B.R. 181, 187 (Bankr. S.D.N.Y. 2011) (listing rule 2004 as one of the "several sections of the Bankruptcy Code [that] govern the trustee or debtor in possession's unique role in investigating … fraudulent transfer claims ….").

47.     A showing of good cause is the threshold for utilizing Rule 2004 to obtain discovery from third parties. *See In re Millennium Lab Holdings LLC*, 562 B.R. 614, 627-28 (Bankr.D.Del. 2016), *In re Wilcher*, 56 B.R. 428, 434-35 (Bankr.N.D.Ill. 1985).

48.     Good cause exists for obtaining production from the third parties in the circumstances of this case.  The basic grounds for seeking discovery from the third parties is set forth in Paragraph Nos. 17-39 above.

49.     The Debtor has provided relatively little information to the Trustee, yet the Debtor has lived and continues to live a lavish lifestyle (including the recent purchase of a Tesla Cybertruck).[2]

50.     The Debtor has been involved in numerous appearances, promotions, and other NIL activities, and has owned and/or received benefit from a number of entities that have been administered by an array of other people.

51.     Otherwise, the mechanisms in place under Local Bankr. R. 2004 of this Court provide ample opportunity for the Debtor and/or any other parties to seek any protections they think might be necessary.

52.     The production sought through the Third Party Discovery serves a distinct purpose than any discovery that may occur in the pending adversary proceedings by Darjean against the Debtor. *See In re Buick*, 174 B.R. 299, 306 (Bankr.D.Colo. 1994) (creditor is entitled to conduct Rule 2004 examinations regarding issues in addition to or beyond the scope of the pending adversary proceeding(s) or regarding related issues).

53.     For example, the Third Party Discovery seeks to recover assets for the benefit of the estate and to identify potential avoidance action claims which would then need to be developed and pursued prior to expiration of Code § 546 limitations.

54.     Darjean also believes this case really is a two-party dispute between Darjean and the Debtor, cause exists to dismiss this case on account of the bad faith of the Debtor in the conduct of this case,[3] and Darjean reserves all rights and remedies in that regard.  Until this case is dismissed, however, the Debtor and those involved with and/or acting in concert with the Debtor

---

[2] https://www.youtube.com/watch?v=J-0WsgaKk3c

[3] *See In re Krueger*, 812 F.3d 365 (5th Cir. 2016).

should provide the documents and information to which Darjean otherwise would be entitled to obtain had not the Debtor filed the case on the eve of the receivership hearing.

## VI.
## PRAYER

WHEREFORE, John Darjean, assault and battery victim and judgment creditor, respectfully requests that the Court enter and order (1) permitting Darjean to serve the Third Party Discovery and (2) ordering each of the third parties to respond to the Third Party Discovery within thirty (30) days of the entry of such order.  Creditor respectfully requests such other and further relief to which Creditor is entitled at law or in equity.

*{continued on following sheet}*

Dated:  October 30, 2024        Respectfully submitted:

MATHIAS RAPHAEL PLLC

By: */s/ Ori Raphael\**        
    Ori Raphael  (Tx Bar No. 24088273)
    Mathias Raphael PLLC
    13101 Preston Road, Suite 501
    Dallas, TX 75240
    214-739-0100
    ori@mr.law

*- and -*

SWEETBAUM MILLER, PC

By: */s/ Andrew Miller\**        
    Alan D. Sweetbaum (#13491)
    Andrew Miller (#44219)
    1200 17th Street, Suite 1250
    Denver, CO 80202
    Telephone: (303) 296-3377
    asweetbaum@sweetbaumlaw.com
    amiller@sweetbaumlaw.com

*- and -*

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By:    */s/ Jeff Carruth*        
    JEFF CARRUTH (Tx Bar No. 24001846)
    2608 Hibernia, Suite 105
    Dallas, TX 75204-2514
    Telephone: (713) 341-1158
    Fax: (713) 961-5341
    E-mail:  jcarruth@wkpz.com

**ATTORNEYS FOR JOHN DARJEAN**

*\* Signature by permission by /s/ Jeff Carruth*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on October 30, 2024 (1) by electronic notice to all ECF users who have appeared in this case to date (2) by regular mail (without exhibits) to all parties appearing in the attached address list (i.e. mailing matrix) obtained from the Court's PACER facility, as set forth in the attached lists.

**ANY PARTY REQUIRING A FULL-SIZED COPY OF THIS DOCUMENT OR ANY OF THE EXHIBITS SHOULD CONTACT THE UNDERSIGNED.**

*/s/ Jeff Carruth*
JEFF CARRUTH

## 23-14859-MER Notice will be electronically mailed to:

Peter A. Cal on behalf of Trustee David V. Wadsworth, Trustee
pcal@sah.com, rmeal@shermanhoward.com;efiling@sah.com

Jeffery Dayne Carruth on behalf of Creditor John Darjean
jcarruth@wkpz.com,
jcarruth@aol.com;carruthjr87698@notify.bestcase.com;ATTY_CARRUTH@bluestylus.com;jcarruth@ecf.courtdrive.com

Jeffery Dayne Carruth on behalf of Plaintiff John Darjean
jcarruth@wkpz.com,
jcarruth@aol.com;carruthjr87698@notify.bestcase.com;ATTY_CARRUTH@bluestylus.com;jcarruth@ecf.courtdrive.com

Ori Raphael on behalf of Creditor John Darjean
ori@mr.law

Ori Raphael on behalf of Plaintiff John Darjean
ori@mr.law

Keri L. Riley on behalf of Debtor Shilo Dion Sanders
klr@kutnerlaw.com, vlm@kutnerlaw.com

Keri L. Riley on behalf of Defendant Shilo Dion Sanders
klr@kutnerlaw.com, vlm@kutnerlaw.com

Simon E. Rodriguez on behalf of Trustee David V. Wadsworth, Trustee
lawyercolo@aol.com

Alan Sweetbaum on behalf of Creditor John Darjean
asweetbaum@sweetbaumlaw.com, jstoller@sweetbaumsands.com

Alan Sweetbaum on behalf of Plaintiff John Darjean
asweetbaum@sweetbaumlaw.com, jstoller@sweetbaumsands.com

US Trustee
USTPRegion19.DV.ECF@usdoj.gov

James Van Horn on behalf of Debtor Shilo Dion Sanders
JVanHorn@btlaw.com

James Van Horn on behalf of Defendant Shilo Dion Sanders
JVanHorn@btlaw.com

Victor D Vital on behalf of Defendant Shilo Dion Sanders
victor.vital@btlaw.com

David V. Wadsworth, Trustee
dwadsworth@wgwc-law.com, CO30@ecfcbis.com

## Service/Mailing list

Label Matrix for local noticing
1082-1
Case 23-14859-MER
District of Colorado
Denver
Wed Oct 30 13:02:40 MDT 2024

AT-T Wireless c/o Bankruptcy
4331 Communications Dr., Fl. 4W
Dallas, TX 75211-1300

Peter A. Cal
Sherman Howard LLC
675 Fifteenth Street
Suite 2300
Denver, CO 80202-4258

Jeffery Dayne Carruth
Weycer Kaplan Pulaski & Zuber, P.C.
24 Greenway Plaza, #2050
Houston, TX 77046-2445

Colorado Department of Revenue
1881 Pierce Street
Attn Bankruptcy Dept., RM 104
Lakewood, CO 80214-1407

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

John Darjean
c/o Ori Raphael
Mathias Raphael, PLLC
13101 Preston Rd., STE 501
Dallas, TX 75240-5231

Mercedes - Benz Financial Services
P.O. Box 685
Roanoke, TX 76262-0685

(p)BK SERVICING  LLC
PO BOX 131265
ROSEVILLE MN 55113-0011

Office of the Attorney General
State of Colorado
1300 Broadway
Denver, CO 80203-2104

Office of the Attorney General
US Department of Justice
950 Pennsylvania Avenue, NW
Suite 4400
Washington, DC 20530-0001

Office of the US Attorney
District of Colorado
1225 Seventeenth Street
Suite 700
Denver, CO 80202-5598

ROBERT C. TURNER
THE SILVERA FIRM
17070 N. DALLAS PARKWAY, SUITE 100
DALLAS, TX 75248-1906

Ori Raphael
Mathias Raphael PLLC
13101 Preston Rd
Ste 501
Dallas, TX 75240-5231

Keri L. Riley
Kutner Brinen Dickey Riley, P.C.
1660 Lincoln Street
Suite 1720
Denver, CO 80264-1700

Simon E. Rodriguez
PO Box 36324
Denver, CO 80236-0324

Shilo Dion Sanders
PO Box 1864
Longmont, CO 80502-1864

State of Colorado
Division of Securities
1560 Broadway, Suite 900
Denver, CO 80202-5150

Alan Sweetbaum
Sweetbaum Miller PC
1200 Seventeenth Street
Suite 1250
Denver, CO 80202-5856

US Trustee
Byron G. Rogers Federal Building
1961 Stout St.
Ste. 12-200
Denver, CO 80294-6004

UTICAN MUTUAL INSURANCE COMPANY
ROBERT C. TURNER
THE SILVERA FIRM
17070 N. DALLAS PARKWAY SUITE 100
DALLAS, TX 75248-1906

Utica Mutual
c/o Robert Turner
The Silvera Firm
17070 Dallas Pkwy., STE 100
Dallas, TX 75248-1906

James Van Horn
Barnes & Thornburg LLP
555 12th St NW Suite 1200
Washington, DC 20004-1278

Victor D Vital
Haynes and Boone LLP
2801 N. Harwood St.
Suite 2300
75201
Dallas, TX 75201-1574

David V. Wadsworth, Trustee
2580 West Main Street, Suite 200
Littleton, CO 80120-4631

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

```
Internal Revenue Service              Mercedes-Benz Financial Services USA LLC
Insolvency Unit                       c/o BK Servicing, LLC
1999 Broadway                         PO Box 131265
MS 5012 DEN                           Roseville, MN 55113-0011
Denver, CO 80202-3025



                    The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)John Darjean              (u)Dickensheet & Associates, Inc.          (u)Damon Kaplan CPA




(u)Visa Credit Card          End of Label Matrix
                             Mailable recipients    25
                             Bypassed recipients     4
                             Total                  29
```

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO
### DENVER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 23-14859** |
| **SHILO DION SANDERS,** | § | |
| | § | **Chapter 7** |
| | § | |
| Debtor. | § | |

## ORDER GRANTING *EX PARTE* MOTION OF JOHN DARJEAN FOR PRODUCTION OF DOCUMENTS FROM DEION SANDERS, SHEDEUR SANDERS, THE UNIVERSITY OF COLORADO, AND OTHER THIRD PARTIES PURSUANT TO FED. R. BANKR. P. 2004 AND LOCAL BANKR. R. 2004 (RE: DOCKET NO. 66)

On this day came on for consideration the *Ex Parte Motion of John Darjean for Production of Documents From Deion Sanders, Shedeur Sanders, the University of Colorado, and Other Third Parties Pursuant to Fed. R. Bankr. P. 2004 and Local Bankr. R. 2004* (Docket No. 66) (the "Motion") filed herein on October 30, 2024 by John Darjean ("Darjean" or the "Movant"), assault and battery victim and judgment creditor.

Upon the review of the record before the Court, the Court finds and concludes that good and just cause has been shown for the relief requested in the Motion.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is granted as set forth herein.

2. All capitalized terms shall have the same meaning as ascribed to such terms in the Motion, unless otherwise defined herein.

3. Darjean may serve the Third Party Discovery upon the third parties shown in the table below.

| Party | Relationship to the Debtor | Subpoena Exhibit |
|---|---|---|
| Deion Sanders | Father of Debtor | DAR021 |
| Shedeur Sanders | Brother of Debtor | DAR022 |
| University of Colorado | Employer of Debtor | DAR023 |
| University of Colorado Athletic Department | Employer of Debtor | DAR024 |
| 5430 Alliance | NIL collective University of Colorado | DAR025 |
| Blue Sprint Sports and Entertainment LLC | NIL collective University of Colorado | DAR026 |
| Tabitha Plummer | Agent of Debtor | DAR027 |
| Plummer Law Group, PC | Agent of Debtor | DAR028 |
| SMAC Entertainment LLC | Agent of Debtor | DAR029 |
| Constance Schwartz-Morini | Agent of Debtor | DAR030 |
| Truck Ranch | Donor to Debtor | DAR031 |
| Big 21 LLC | Entity of Debtor | DAR032 |
| SS21 LLC | Entity of Debtor | DAR033 |
| SS1 Legendary LLC | Entity of Debtor | DAR034 |
| Headache Gang LLC | Entity of Debtor | DAR035 |

4.    The third parties in receipt of the Third Party Discovery shall respond to such discovery and produce the documents, information, and things responsive to such discovery within thirty (30) days of the issuance of this Order.

5.    Darjean shall provide the production received in response to the Third Party Discovery to the Chapter 7 Trustee and any creditor of the estate that makes a requests for sharing.

6.    Darjean shall serve this Order to each of the third parties with service of the Third Party Discovery, and file a certificate of service.

Dated this _____ day of _____, 2024.

_____
THE HONORABLE MICHAEL E. ROMERO
UNITED STATES BANKRUPTCY JUDGE

Submitted by:
Jeff Carruth (TX SBN: 24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
2608 Hibernia, Suite 105
Dallas, TX 75204-2514
Telephone: (713) 341-1158
E-mail: jcarruth@wkpz.com
ATTORNEYS FOR
JOHN DARJEAN

**EXHIBIT DAR021 — Subpoena to Deion Sanders**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 23-14859** |
| **SHILO DION SANDERS,** | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS UNDER FED. R. BANKR. P. 2004

**To:**  **Deion Sanders**                                         **Deion Sanders**
**Folson Field**                                            **9400 Memory Ln.**
**2400 Colorado Ave.**                                  **Longmont CO 80504**
**Denver CO 80302**

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the documents, electronically stored information, or objects, referenced and described in **EXHIBIT 001**, attached hereto and incorporated by reference herein, pursuant to Fed. R. Bank. P. 2004 and Local Bankruptcy Rule 2004.

| Place: | *Mathias Raphael PLLC*<br>*13101 Preston Road, Suite 501*<br>*Dallas, TX 75240* | Date and Time: *The thirtieth (30ᵗʰ) day following entry of the order of the Court permitting service of this Subpoena, which order is served with and/or attached to this subpoena,* or as otherwise may be agreed between the parties. |
|---|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  October ___, 2024

|  |  |
|---|---|
| *Signature of Clerk or Deputy Clerk* | *Attorneys for John Darjean* |

The name, address, e-mail address, and telephone number of the attorney representing *John Darjean* who issues or requests this subpoena, are:

Jeff Carruth (SBOT #24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
24 Greenway Plaza, Suite 2050, Houston, TX 77046
Telephone: (713) 341-1158, jcarruth@wkpz.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT DAR021 — Subpoena to Deion Sanders**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Bankruptcy Case     **23-14859**

# PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*    | **Deion Sanders** |

on *(date)* _____ .

I served the subpoena by delivering a copy to the following by ***certified mail, return receipt requested and regular mail*** on October ___, 2024.

☒

| Deion Sanders | Deion Sanders |
| Folson Field | 9400 Memory Ln. |
| 2400 Colorado Ave. | Longmont CO 80504 |
| Denver CO 80302 | |

I declare under penalty of perjury that this information is true.

Date:  | October __, 2024 |

| |
*Server's signature*

| Jeff Carruth, Attorney |
*Printed name and title*

| WEYCER, KAPLAN, PULASKI & ZUBER, P.C. |
| 24 Greenway Plaza, Suite 2050, Houston, TX 77046 |
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
   **(i)** is a party or a party's officer; or
   **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, See Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT TO SUBPOENA

# EXHIBIT 001

## **INSTRUCTIONS**

1.      In no event should any Instruction, Definition, or Discovery Request be read to contradict the Rules.

2.      Unless otherwise specified, the relevant period of time for each Discovery Request is **September 17, 2015,** through and until the present.

3.      These instructions and definitions herein should be construed to require answers and/or production based upon the knowledge of, and information and documents available to the Debtor, as well as the Personnel (as defined below) of Debtor.

4.      It is intended that the following Discovery Requests will not solicit any material protected either by the attorney/client privilege or the work-product doctrine that was created by, or developed by, counsel for Debtor after the date on which the relevant litigation was commenced. If any inquiry is susceptible to a construction that calls for the production of such material, or for material claimed to be protected under the attorney/client privilege, that material need not be provided but a privilege log pursuant will be required as to all such material.

5.      With respect to any Document that is produced:

a.      Each Document produced pursuant to this request should be identified in such production by the paragraph of the request with respect to which it is produced.

b.      If any privilege, exemption, or immunity is claimed as a basis for withholding production of one or more Documents, then please state:

        i.      the particular basis for withholding the Document;

        ii.      the author(s) of the Document;

        iii.      the form of the Document;

        iv.      the date of the Document;

        v.      the identity of all persons who have seen the Document; and;

        vi.      the general subject matter of the Document.

c.      Documents which, when regularly maintained, are stapled, clipped, or otherwise physically attached to other Documents are to be produced in their stapled, clipped, or otherwise physically attached form.

d.      If a Document or a group of Documents is taken out of a file folder, file drawer, notebook, or other identifiable storage facility, please attach thereto a copy of the label of the file folder, file drawer, etc., so that the location of each such Document in your files can be determined.

e.      If any such responsive Document has been lost, discarded, or destroyed, you must identify such Document as completely as possible, including the following information:

        i.      the type of Document;

        ii.      the date of the Document;

iii. the date or approximate date the Document was lost, discarded, or destroyed;

iv. the circumstances or manner in which it was lost, discarded, or destroyed;

v. the reason or reasons for disposing of the Document (if the Document was discarded or destroyed);

vi. the identity of all Persons authorizing or having knowledge of the circumstances surrounding disposal of the Document;

vii. the identity of the Persons who lost, discarded, or destroyed the Document; and

viii. the identity of all Persons having knowledge of the contents of the Document.

f. If you have previously produced to another party any such responsive Documents and you believe that such production is accessible to the party serving these Discovery Requests, you should so specify.

6. These Discovery Requests are continuing in character so as to require that supplemental answers be served seasonably if further or different information is obtained with respect to any Discovery Request. Consequently, these Discovery Requests require supplementation if you obtain further information or documents after the answers are served and prior to satisfaction of the judgment.

7. The answers to the Interrogatories, as applicable, and other Discovery Requests should be complete and candid. To the extent any information called for by these Interrogatories is unknown to you, so state, and set forth whatever information you have regarding that Interrogatory. If any estimate can reasonably be made, please set forth your best estimate, clearly designated as such.

8. No part of a Discovery Request should be left unanswered merely because an objection is interposed to another part of the Discovery Request. If a partial or incomplete answer is provided, state that the answer is partial or incomplete.

9. If, in answering these Discovery Requests, you encounter any ambiguities when construing a question, instruction, or definition, then your answer shall set forth the matter deemed ambiguous, and the construction used in answering.

10. You must serve your answers or objections to these Discovery Requests upon the undersigned counsel on the ***thirtieth (30th)*** day after these Discovery Requests were served upon you.

11. Headings are for convenience only and should not be read to limit the scope of any Discovery Request.

12. Please contact the undersigned if you would like an electronic copy of this discovery to aid in the preparation of responses. In any event, the hard copy of this discovery served upon you shall be the controlling copy.

**EXHIBIT DAR021 — Subpoena to Deion Sanders**
**EXHIBIT 001 TO SUBPOENA**

## DEFINITIONS AND CONSTRUCTION OF WORDS

1.      All words contained in the Discovery Requests shall have their normal contextual meaning unless otherwise defined herein and should be read in a manner to provide a complete answer to each Discovery Requests. ***Words need not be capitalized in order to be controlled by the meaning of such word(s) as defined herein.***

2.      Wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender.

3.      Additional definitions for or relating to the parties to this action may appear in the introductory paragraphs of this document.

### General Discovery Definitions

1.      "Agent" shall mean any agent, representative, employee, officer, director, attorney, independent contractor or any other Person acting at the direction of or on behalf of another.

2.      "And" or "each", "all", and "any" shall be construed as necessary in each case to make each document request inclusive, rather than exclusive.

3.      "Communication" shall mean and refer to any transmittal or information by any means, including, without limitation, any oral, written, or electronically recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, any correspondence, conversations, telephone calls or other voice or audio interaction, text or SMS messages, chat sessions, dialogues, discussions, interviews, consultations, agreements, or any other understandings between or among two or more Persons or any Document that recorded or reflected any such Communication."

4.      "Discovery Requests" shall mean and refer to this discovery instrument and, as applicable, any interrogatories, requests for admissions, requests for production, and/or requests for inspection contained herein.

5.      "Document" shall mean and include all documents and tangible things to the very broadest extent included within the scope of the Rules, including, but not limited to, the originals and all drafts and copies, together with any annotations or highlighted copies containing all or part of the information requested, in the possession, custody or control of You, Your attorneys, representative, employees, agents, or any other natural person or business or legal entity acting or purporting to act for or on Your behalf, or their respective Personnel as the case may be.  Also, the term "Document" or "writing" means any medium whatsoever, including all electronic, recorded and digital media of any kind, upon which intelligence or information can be recorded, or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any written material, correspondence, electronic mail, text or SMS messages, chat sessions, note file, book, pamphlet, printout, chart, record, report, periodical, letter, memorandum, (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, draft, working paper, chart, paper, print, drawing, sketch, graph,

index, list, and any written, recorded, transcribed, punched, taped, filmed or graphic matter whatsoever, however produced or reproduced, which is in your possession, custody, or control or which was, but is no longer, in Your possession, custody, or control.  The term "Document" or "writing" shall also include all copies or drafts of Documents by whatever means made, including specifically but not exclusively, those copies bearing commentary or notations not appearing on the original.

6.     "Equipment" shall mean and refer to any goods or property other than inventory, farm products, consumer goods, or tools.

7.     "Identify" shall have the following meanings.

  a.     When referring to a person, to state the full current name, residence, and business addresses, and residence and business telephone numbers of the person about whom information is sought, as well as that person's present or last known employer, that person's office or title, if any, and that person's job description.  If any of this information was different at the time with which the Interrogatories are concerned, state also such different information as applies to the time in question;

  b.     When referring to a business entity or firm (e.g., a corporation, partnership, limited partnership, law firm, etc.), to state the full name of such business, entity or firm, and the address of its principal place of business;

  c.     When referring to a document, to state its date, title, a brief description, subject matter, addressee or others receiving a copy, and author;

  d.     When referring to an act, communication, occurrence, statement or conduct, to state the substance of the event constituting such act and the date when such act occurred, persons participating in such act, all persons present when such act occurred, and a description of any record of such act;

  e.     When referring to dates, to state the date each such activity began and the date it ended; and

  f.     Any specific meaning provided in an Interrogatory.

8.     "Insider" (A) with respect to a debtor, shall mean and refer to any (i) member or director of the debtor, (ii) any officer or manager of the debtor, (iii) any person in control of the debtor, or (iv) any relative of any such member, director, manager, officer, or person in control; and (B) with respect to any individual, shall have the same meaning as found in 11 U.S.C. §101.

9.     "Investment Asset" shall mean and refer to stocks, bonds, securities, notes, accounts, mortgages, certificates of deposit / CDs, annuities, life insurance policies, profit sharing plans, trusts (as trustee or beneficiary), IRAs, 401(k)'s, pensions, and all other retirement plans, general or limited partnership interests, or similar ownership interests or investments, ownership of or interest in any joint venture, and including any Related Trusts (as defined below).

10.     "Mineral Interest" shall mean and refer to any interest in any mineral interest or oil and gas interest including any lease, royalty, well, working interest, well bore interest, overriding royalty interest, or equity position.

11.     "Person" shall mean and refer to any individual, corporation, company, proprietorship, partnership, trust, association, or other entity.

12.     "Personnel" shall mean and refer to any of the following persons with respect to a referenced person or entity: Insiders (as defined herein); Agents (as defined herein); representatives; servants; employees; officers; directors or managers; the Board of Directors; any individual shareholder or shareholders (or any holders of any equity interest); partner or partners; any accountant representing or providing services; or personal representatives.

13.     "Or" means and refers to and/or.

14.     "Real Property Interest" shall mean and refer to any real estate or interest in any real property in which you own or claim an interest (regardless of whether you acquired or received such real estate by inheritance, gift, or purchase), including (i) any interests in any oil and gas interest or mineral interest, including any mineral acreage owned and further including any lease, royalty, working interest, well bore interest, overriding royalty interest and/or equity position (ii) and option or any similar interest, (iii) any water rights or wind rights, (iv) any leases or interests in leases of any kind such as ground leases, grazing leases, or any other agricultural leases whether as (a) lessor or landlord or (b) lessee or tenant, and/or (v) any lien, encumbrance, or other debt or security related to any interest in real property.

15.     "Relating to" means concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

16.     "Related Trust" means and refers to any trust of which you, your spouse, or child, issue, ward, or dependent of you or your spouse any are a settlor, contributor, controller, trustee, or beneficiary on in which you, your spouse, or child, issue, ward, or dependent of you or your spouse own or claim any interest.

17.     "Response Date" shall mean and refer to the date on which You provide a response to these Discovery Requests / Requests for Production.

18.     "Rolling Stock" shall mean and refer to any automobiles, pickups, trucks, motor vehicles, motorcycles, travel trailers, motor homes, boats, airplanes, dozers, front end loaders, or any other rolling stock or similar equipment, and regardless of whether ownership is evidenced by a certificate of title.

19.     "Rules" shall mean and refer to the Texas Rules of Civil Procedure, the Federal Rules of Civil Procedure and/or the Federal Rules of Bankruptcy Procedure, as applicable.

20.     "Tools" shall men and refer to any goods or property other than inventory, farm products, consumer goods, or equipment.

21.     "You" or "yours" shall refer to the party to whom these Discovery Requests are being served and all agents and representatives, and all other persons acting on behalf of or purported to act on behalf of said person including the Agents and Personnel of such person.

### **Specific Discovery Definitions**

1.     "Debtor" means and refers to SHILO DION SANDERS**.**

2.     "Defendant" means and refers to SHILO DION SANDERS**.**

3.     "5430" the 5430 Alliance.

4.     "Judgment Debtor" means and refers to SHILO DION SANDERS**.**

5.     "NIL" means and refers to name, image, and likeness, and any right or interest in any property related thereto.

6.     "Period" shall mean and refer to the period of time from **September 17, 2015 through and until the present**.

7.     "Plummer" refers to Plummer Law Group, PC and/or Tabitha Plummer.

8.     "Related Entity" means and refers to any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by a person or entity, or with respect to which a person or entity is an Insider or possesses any beneficial interest.

9.     "Schwartz-Morini" means and refers to Constance Schwartz-Morini.

10.     "SMAC" means and refers to SMAC Entertainment LLC.

11.     "Subject Entity" shall mean and refer to each of the following:

    a.     Big 21, LLC

    b.     SS1 Legendary, LLC

    c.     SS21, LLC;

    d.     Headache Gang, LLC and,

    e.     any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by Shilo Sanders, or with respect to which Shilo Sanders is or has been an Insider, and/or with respect to which Shilo Sanders possesses any beneficial interest.

12.     "UC" means and refers to the University of Colardo, the Athletic Department of the University of Colardo, and the football program of the University of Colardo.

*{continued on following sheet}*

# DOCUMENTS AND THINGS TO PRODUCE

1.    Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) Shilo Sanders and/or any Personnel of Shilo Sanders.

2.    Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) any Subject Entity and/or any Personnel of any Subject Entity.

3.    Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) Shilo Sanders.

4.    Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Insider or other Personnel of Shilo Sanders.

5.    Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Subject Entity.

6.    Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Subject Entity.

7.    Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of any Subject Entity.

8.    Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of Shilo Sanders.

9.    Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Related Entity of Deion Sanders, and/or Shedeur Sanders, including any Insider or other Personnel thereof.

10.   Any documents or emails or other communications evidencing any contract or agreement between Shilo Sanders and any other person or entity, including but not limited to:

    a.    5430,
    b.    Plummer,
    c.    Schwartz-Morini,
    d.    SMAC,
    e.    UC,
    f.    any affiliate or subsidiary of any of the foregoing, or
    g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

EXHIBIT 001 TO SUBPOENA — Page 11
4862-6322-1735, v. 6

11.     Any documents or emails or other communications evidencing any contract or agreement between Big 21 LLC and any other person or entity, including but not limited to:

    a.  5430,
    b.  Plummer,
    c.  Schwartz-Morini,
    d.  SMAC,
    e.  UC,
    f.  any affiliate or subsidiary of any of the foregoing, or
    g.  any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

12.     Any documents or emails or other communications evidencing any contract or agreement between SS1 Legendary LLC and any other person or entity, including but not limited to:

    a.  5430,
    b.  Plummer,
    c.  Schwartz-Morini,
    d.  SMAC,
    e.  UC,
    f.  any affiliate or subsidiary of any of the foregoing, or
    g.  any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

13.     Any documents or emails or other communications evidencing any contract or agreement between SS21 LLC and any other person or entity, including but not limited to:

    a.  5430,
    b.  Plummer,
    c.  Schwartz-Morini,
    d.  SMAC,
    e.  UC,
    f.  any affiliate or subsidiary of any of the foregoing, or
    g.  any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

14.     Any documents or emails or other communications evidencing any contract or agreement between Headache Gang LLC and any other person or entity, including but not limited to:

    a.  5430,
    b.  Plummer,
    c.  Schwartz-Morini,
    d.  SMAC,

EXHIBIT 001 TO SUBPOENA — Page 12
4862-6322-1735, v. 6

    e.     UC,

    f.     any affiliate or subsidiary of any of the foregoing, or

    g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

15.    Any documents or emails or other communications evidencing any contract or agreement between any other Subject Entity and any other person or entity, including but not limited to:

    a.    5430,

    b.    Plummer,

    c.    Schwartz-Morini,

    d.    SMAC,

    e.    UC,

    f.    any affiliate or subsidiary of any of the foregoing, or

    g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

16.    Any documents or emails or other communications evidencing any contract or agreement between (i) Shilo Sanders and (ii) any Subject Entity.

17.    Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Subject Entity and (ii) any other Subject Entity.

18.    Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) you and/or any Related Entity, Insider, or Personnel of you, and/or any Subject Entity and (ii) Shilo Sanders.

19.    Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) you and/or any Related Entity, Insider, or Personnel of you and (ii) any Subject Entity.

20.    Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any agents, managers, attorneys, or representatives.

21.    Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any media company, social media outlet, brand, product, advertiser, agency, or any other similar party.

22.    Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service, of or relating to Shilo Sanders, between (i) you and/or any

**EXHIBIT 001 TO SUBPOENA — Page 13**
4862-6322-1735, v. 6

**EXHIBIT DAR021 — Subpoena to Deion Sanders**
**EXHIBIT 001 TO SUBPOENA**

Related Entity, Insider, or Personnel of you, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

23.     [reserved].

24.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Deion Sanders** or any Related Entity or Personnel of Deion Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

25.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Shedeur Sanders** or any Related Entity or Personnel of Shedeur Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

26.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **5430** or any Related Entity or Personnel of 5430 relating to (x) Shilo Sanders or (y) any Subject Entity.

27.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Plummer** or any Related Entity or Personnel of Plummer relating to (x) Shilo Sanders or (y) any Subject Entity.

28.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Schwartz-Morini** or any Related Entity or Personnel of Schwartz-Morini relating to (x) Shilo Sanders or (y) any Subject Entity.

29.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **SMAC** or any Related Entity or Personnel of SMAC relating to (x) Shilo Sanders or (y) any Subject Entity.

30.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **UC** or any Related Entity or Personnel of UC relating to (x) Shilo Sanders or (y) any Subject Entity.

31.     Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* Shilo Sanders during the Period.

32.     Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* any Subject Entity during the Period.

33.     Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

34.     Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* any Insider or other Personnel of

**EXHIBIT 001 TO SUBPOENA — Page 14**
4862-6322-1735, v. 6

Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

35. Any documents or emails or other communications relating to any money, value, or any consideration *earned by or on account of* Shilo Sanders during the Period.

36. Any documents or emails or other communications relating to any money, value, or any consideration *earned by or on account of* any Subject Entity during the Period.

37. Any documents or emails or other communications relating to any money, value, or any consideration *earned by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

38. Any documents or emails or other communications relating to any money, value, or any consideration *earned by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

39. Any documents or emails or other communications relating to any money, value, or any consideration *received* by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

40. Any documents or emails or other communications relating to any money, value, or any consideration *earned* by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

41. Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shilo Sanders or any Subject Entity that were managed or handled by you, your Personnel, or any Related Entity.

42. Any documents or emails or other communications relating to any agreements, contracts, and deals involving Deion Sanders or Related Entity of Deion Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

43. Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shedeur Sanders or Related Entity of Shedeur Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

44. Any documents or email or other communications relating to any trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

**EXHIBIT 001 TO SUBPOENA — Page 15**
4862-6322-1735, v. 6

45.     Any documents or email or other communications relating to any Related Trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

46.     Any documents or email or other communications relating to any money or anything of value you have provided to or for the benefit of Shilo Sanders, any Related Entity of Shilo Sanders, any Subject Entity, or any trust or any Related Trust.

47.     Any documents or email or other communications relating to any money or anything of value you have caused to be received by or on account of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

48.     The trust instrument of any trust or Related Trust of which Shilo Sanders was or is a beneficiary.

49.     The statements of any account of any trust or Related Trust of which Shilo Sanders was or is a beneficiary.

50.     Any documents or email or other communications relating to any trust or Related Trust of which Shilo Sanders was or is a beneficiary.

51.     Any documents or email or other communications relating to any house or any Real Property Interest which Shilo Sanders, any Related Entity of Shilo Sanders, any Subject Entity, or any trust or any Related Trust acquired or sought to acquire.

52.     Any documents or email or other communications evidencing any *assets or interest in any property* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

53.     Any documents or email or other communications evidencing any *Investment Asset* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

54.     Any documents or email or other communications evidencing any *Mineral Interest* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

55.     Any documents or email or other communications evidencing any *Real Property Interest* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

56.     Any documents or email or other communications evidencing any *Rolling Stock* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

**EXHIBIT 001 TO SUBPOENA — Page 16**
4862-6322-1735, v. 6

57.     Any documents or email or other communications evidencing any *firearms* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

58.     Any documents or email or other communications evidencing any *jewelry* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

59.     Any documents or email or other communications evidencing any *designer clothing or accessories* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

60.     Any and all documents, information, and/or things produced by or on behalf of Shilo Sanders to the Chapter 7 Trustee appointed in the bankruptcy case of Shilo Sanders, Case No. 23-14859-MER; *In re Shilo Dion Sanders*, in the United States Bankruptcy Court for the District of Colorado.

**EXHIBIT 001 TO SUBPOENA — Page 17**
4862-6322-1735, v. 6

**EXHIBIT DAR022 — Subpoena to Shedeur Sanders**

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 23-14859** |
| SHILO DION SANDERS, | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS UNDER FED. R. BANKR. P. 2004

**To:** **Shedeur Sanders**
**Folson Field**
**2400 Colorado Ave.**
**Denver CO 80302**

☑ ___Production:___ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the documents, electronically stored information, or objects, referenced and described in **EXHIBIT 001**, attached hereto and incorporated by reference herein, pursuant to Fed. R. Bank. P. 2004 and Local Bankruptcy Rule 2004.

| Place: | _Mathias Raphael PLLC_<br>_13101 Preston Road, Suite 501_<br>_Dallas, TX 75240_ | Date and Time: _**The thirtieth (30th) day following entry of the order of the Court permitting service of this Subpoena, which order is served with and/or attached to this subpoena,**_ or as otherwise may be agreed between the parties. |
|---|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: | October __, 2024 |

_Signature of Clerk or Deputy Clerk_

_Attorneys for John Darjean_

The name, address, e-mail address, and telephone number of the attorney representing _John Darjean_ who issues or requests this subpoena, are:

Jeff Carruth (SBOT #24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
24 Greenway Plaza, Suite 2050, Houston, TX 77046
Telephone: (713) 341-1158, jcarruth@wkpz.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT DAR022 — Subpoena to Shedeur Sanders**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Bankruptcy Case      **23-14859**

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*

| **Shedeur Sanders** |
|---|

on *(date)* _____ .

I served the subpoena by delivering a copy to the following by ***certified mail, return receipt requested and regular mail*** on October __, 2024.

☒

    **Shedeur Sanders**
    **Folson Field**
    **2400 Colorado Ave.**
    **Denver CO 80302**

I declare under penalty of perjury that this information is true.

Date:   | October __, 2024 |

| |
|---|
| |
*Server's signature*

| Jeff Carruth, Attorney |
|---|
*Printed name and title*

| WEYCER, KAPLAN, PULASKI & ZUBER, P.C.<br>24 Greenway Plaza, Suite 2050, Houston, TX 77046 |
|---|
*Server's address*

Additional information regarding attempted service, etc.:

**EXHIBIT DAR022 — Subpoena to Shedeur Sanders**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT TO SUBPOENA

# EXHIBIT 001

<span style="color:red">**EXHIBIT DAR022 — Subpoena to Shedeur Sanders**</span>
**EXHIBIT 001 TO SUBPOENA**

## <u>INSTRUCTIONS</u>

1.      In no event should any Instruction, Definition, or Discovery Request be read to contradict the Rules.

2.      Unless otherwise specified, the relevant period of time for each Discovery Request is **<u>September 17, 2015,</u>** through and until the present.

3.      These instructions and definitions herein should be construed to require answers and/or production based upon the knowledge of, and information and documents available to the Debtor, as well as the Personnel (as defined below) of Debtor.

4.      It is intended that the following Discovery Requests will not solicit any material protected either by the attorney/client privilege or the work-product doctrine that was created by, or developed by, counsel for Debtor after the date on which the relevant litigation was commenced. If any inquiry is susceptible to a construction that calls for the production of such material, or for material claimed to be protected under the attorney/client privilege, that material need not be provided but a privilege log pursuant will be required as to all such material.

5.      With respect to any Document that is produced:

a.      Each Document produced pursuant to this request should be identified in such production by the paragraph of the request with respect to which it is produced.

b.      If any privilege, exemption, or immunity is claimed as a basis for withholding production of one or more Documents, then please state:

     i.      the particular basis for withholding the Document;

     ii.      the author(s) of the Document;

     iii.      the form of the Document;

     iv.      the date of the Document;

     v.      the identity of all persons who have seen the Document; and;

     vi.      the general subject matter of the Document.

c.      Documents which, when regularly maintained, are stapled, clipped, or otherwise physically attached to other Documents are to be produced in their stapled, clipped, or otherwise physically attached form.

d.      If a Document or a group of Documents is taken out of a file folder, file drawer, notebook, or other identifiable storage facility, please attach thereto a copy of the label of the file folder, file drawer, etc., so that the location of each such Document in your files can be determined.

e.      If any such responsive Document has been lost, discarded, or destroyed, you must identify such Document as completely as possible, including the following information:

     i.      the type of Document;

     ii.      the date of the Document;

**EXHIBIT DAR022 — Subpoena to Shedeur Sanders**
**EXHIBIT 001 TO SUBPOENA**

iii. the date or approximate date the Document was lost, discarded, or destroyed;

iv. the circumstances or manner in which it was lost, discarded, or destroyed;

v. the reason or reasons for disposing of the Document (if the Document was discarded or destroyed);

vi. the identity of all Persons authorizing or having knowledge of the circumstances surrounding disposal of the Document;

vii. the identity of the Persons who lost, discarded, or destroyed the Document; and

viii. the identity of all Persons having knowledge of the contents of the Document.

f. If you have previously produced to another party any such responsive Documents and you believe that such production is accessible to the party serving these Discovery Requests, you should so specify.

6. These Discovery Requests are continuing in character so as to require that supplemental answers be served seasonably if further or different information is obtained with respect to any Discovery Request. Consequently, these Discovery Requests require supplementation if you obtain further information or documents after the answers are served and prior to satisfaction of the judgment.

7. The answers to the Interrogatories, as applicable, and other Discovery Requests should be complete and candid. To the extent any information called for by these Interrogatories is unknown to you, so state, and set forth whatever information you have regarding that Interrogatory. If any estimate can reasonably be made, please set forth your best estimate, clearly designated as such.

8. No part of a Discovery Request should be left unanswered merely because an objection is interposed to another part of the Discovery Request. If a partial or incomplete answer is provided, state that the answer is partial or incomplete.

9. If, in answering these Discovery Requests, you encounter any ambiguities when construing a question, instruction, or definition, then your answer shall set forth the matter deemed ambiguous, and the construction used in answering.

10. You must serve your answers or objections to these Discovery Requests upon the undersigned counsel on the ***thirtieth (30th)*** day after these Discovery Requests were served upon you.

11. Headings are for convenience only and should not be read to limit the scope of any Discovery Request.

12. Please contact the undersigned if you would like an electronic copy of this discovery to aid in the preparation of responses. In any event, the hard copy of this discovery served upon you shall be the controlling copy.

**EXHIBIT DAR022 — Subpoena to Shedeur Sanders**
**EXHIBIT 001 TO SUBPOENA**

## DEFINITIONS AND CONSTRUCTION OF WORDS

1.      All words contained in the Discovery Requests shall have their normal contextual meaning unless otherwise defined herein and should be read in a manner to provide a complete answer to each Discovery Requests. ***Words need not be capitalized in order to be controlled by the meaning of such word(s) as defined herein.***

2.      Wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender.

3.      Additional definitions for or relating to the parties to this action may appear in the introductory paragraphs of this document.

### General Discovery Definitions

1.      "Agent" shall mean any agent, representative, employee, officer, director, attorney, independent contractor or any other Person acting at the direction of or on behalf of another.

2.      "And" or "each", "all", and "any" shall be construed as necessary in each case to make each document request inclusive, rather than exclusive.

3.      "Communication" shall mean and refer to any transmittal or information by any means, including, without limitation, any oral, written, or electronically recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, any correspondence, conversations, telephone calls or other voice or audio interaction, text or SMS messages, chat sessions, dialogues, discussions, interviews, consultations, agreements, or any other understandings between or among two or more Persons or any Document that recorded or reflected any such Communication."

4.      "Discovery Requests" shall mean and refer to this discovery instrument and, as applicable, any interrogatories, requests for admissions, requests for production, and/or requests for inspection contained herein.

5.      "Document" shall mean and include all documents and tangible things to the very broadest extent included within the scope of the Rules, including, but not limited to, the originals and all drafts and copies, together with any annotations or highlighted copies containing all or part of the information requested, in the possession, custody or control of You, Your attorneys, representative, employees, agents, or any other natural person or business or legal entity acting or purporting to act for or on Your behalf, or their respective Personnel as the case may be.  Also, the term "Document" or "writing" means any medium whatsoever, including all electronic, recorded and digital media of any kind, upon which intelligence or information can be recorded, or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any written material, correspondence, electronic mail, text or SMS messages, chat sessions, note file, book, pamphlet, printout, chart, record, report, periodical, letter, memorandum, (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, draft, working paper, chart, paper, print, drawing, sketch, graph,

index, list, and any written, recorded, transcribed, punched, taped, filmed or graphic matter whatsoever, however produced or reproduced, which is in your possession, custody, or control or which was, but is no longer, in Your possession, custody, or control.  The term "Document" or "writing" shall also include all copies or drafts of Documents by whatever means made, including specifically but not exclusively, those copies bearing commentary or notations not appearing on the original.

6.    "Equipment" shall mean and refer to any goods or property other than inventory, farm products, consumer goods, or tools.

7.    "Identify" shall have the following meanings.

  a.    When referring to a person, to state the full current name, residence, and business addresses, and residence and business telephone numbers of the person about whom information is sought, as well as that person's present or last known employer, that person's office or title, if any, and that person's job description.  If any of this information was different at the time with which the Interrogatories are concerned, state also such different information as applies to the time in question;

  b.    When referring to a business entity or firm (e.g., a corporation, partnership, limited partnership, law firm, etc.), to state the full name of such business, entity or firm, and the address of its principal place of business;

  c.    When referring to a document, to state its date, title, a brief description, subject matter, addressee or others receiving a copy, and author;

  d.    When referring to an act, communication, occurrence, statement or conduct, to state the substance of the event constituting such act and the date when such act occurred, persons participating in such act, all persons present when such act occurred, and a description of any record of such act;

  e.    When referring to dates, to state the date each such activity began and the date it ended; and

  f.    Any specific meaning provided in an Interrogatory.

8.    "Insider" (A) with respect to a debtor, shall mean and refer to any (i) member or director of the debtor, (ii) any officer or manager of the debtor, (iii) any person in control of the debtor, or (iv) any relative of any such member, director, manager, officer, or person in control; and (B) with respect to any individual, shall have the same meaning as found in 11 U.S.C. §101.

9.    "Investment Asset" shall mean and refer to stocks, bonds, securities, notes, accounts, mortgages, certificates of deposit / CDs, annuities, life insurance policies, profit sharing plans, trusts (as trustee or beneficiary), IRAs, 401(k)'s, pensions, and all other retirement plans, general or limited partnership interests, or similar ownership interests or investments, ownership of or interest in any joint venture, and including any Related Trusts (as defined below).

10.     "Mineral Interest" shall mean and refer to any interest in any mineral interest or oil and gas interest including any lease, royalty, well, working interest, well bore interest, overriding royalty interest, or equity position.

11.     "Person" shall mean and refer to any individual, corporation, company, proprietorship, partnership, trust, association, or other entity.

12.     "Personnel" shall mean and refer to any of the following persons with respect to a referenced person or entity: Insiders (as defined herein); Agents (as defined herein); representatives; servants; employees; officers; directors or managers; the Board of Directors; any individual shareholder or shareholders (or any holders of any equity interest); partner or partners; any accountant representing or providing services; or personal representatives.

13.     "Or" means and refers to and/or.

14.     "Real Property Interest" shall mean and refer to any real estate or interest in any real property in which you own or claim an interest (regardless of whether you acquired or received such real estate by inheritance, gift, or purchase), including (i) any interests in any oil and gas interest or mineral interest, including any mineral acreage owned and further including any lease, royalty, working interest, well bore interest, overriding royalty interest and/or equity position (ii) and option or any similar interest, (iii) any water rights or wind rights, (iv) any leases or interests in leases of any kind such as ground leases, grazing leases, or any other agricultural leases whether as (a) lessor or landlord or (b) lessee or tenant, and/or (v) any lien, encumbrance, or other debt or security related to any interest in real property.

15.     "Relating to" means concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

16.     "Related Trust" means and refers to any trust of which you, your spouse, or child, issue, ward, or dependent of you or your spouse any are a settlor, contributor, controller, trustee, or beneficiary on in which you, your spouse, or child, issue, ward, or dependent of you or your spouse own or claim any interest.

17.     "Response Date" shall mean and refer to the date on which You provide a response to these Discovery Requests / Requests for Production.

18.     "Rolling Stock" shall mean and refer to any automobiles, pickups, trucks, motor vehicles, motorcycles, travel trailers, motor homes, boats, airplanes, dozers, front end loaders, or any other rolling stock or similar equipment, and regardless of whether ownership is evidenced by a certificate of title.

19.     "Rules" shall mean and refer to the Texas Rules of Civil Procedure, the Federal Rules of Civil Procedure and/or the Federal Rules of Bankruptcy Procedure, as applicable.

20.    "Tools" shall men and refer to any goods or property other than inventory, farm products, consumer goods, or equipment.

21.    "You" or "yours" shall refer to the party to whom these Discovery Requests are being served and all agents and representatives, and all other persons acting on behalf of or purported to act on behalf of said person including the Agents and Personnel of such person.

### **Specific Discovery Definitions**

1.    "Debtor" means and refers to SHILO DION SANDERS.

2.    "Defendant" means and refers to SHILO DION SANDERS.

3.    "5430" the 5430 Alliance.

4.    "Judgment Debtor" means and refers to SHILO DION SANDERS.

5.    "NIL" means and refers to name, image, and likeness, and any right or interest in any property related thereto.

6.    "Period" shall mean and refer to the period of time from **September 17, 2015 through and until the present**.

7.    "Plummer" refers to Plummer Law Group, PC and/or Tabitha Plummer.

8.    "Related Entity" means and refers to any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by a person or entity, or with respect to which a person or entity is an Insider or possesses any beneficial interest.

9.    "Schwartz-Morini" means and refers to Constance Schwartz-Morini.

10.    "SMAC" means and refers to SMAC Entertainment LLC.

11.    "Subject Entity" shall mean and refer to each of the following:

    a.    Big 21, LLC

    b.    SS1 Legendary, LLC

    c.    SS21, LLC;

    d.    Headache Gang, LLC and,

    e.    any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by Shilo Sanders, or with respect to which Shilo Sanders is or has been an Insider, and/or with respect to which Shilo Sanders possesses any beneficial interest.

12.    "UC" means and refers to the University of Colardo, the Athletic Department of the University of Colardo, and the football program of the University of Colardo.

### *{continued on following sheet}*

# DOCUMENTS AND THINGS TO PRODUCE

1.   Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) Shilo Sanders and/or any Personnel of Shilo Sanders.

2.   Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) any Subject Entity and/or any Personnel of any Subject Entity.

3.   Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) Shilo Sanders.

4.   Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Insider or other Personnel of Shilo Sanders.

5.   Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Subject Entity.

6.   Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Subject Entity.

7.   Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of any Subject Entity.

8.   Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of Shilo Sanders.

9.   Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Related Entity of Deion Sanders, and/or Shedeur Sanders, including any Insider or other Personnel thereof.

10.  Any documents or emails or other communications evidencing any contract or agreement between Shilo Sanders and any other person or entity, including but not limited to:

   a.   5430,
   b.   Plummer,
   c.   Schwartz-Morini,
   d.   SMAC,
   e.   UC,
   f.   any affiliate or subsidiary of any of the foregoing, or
   g.   any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

EXHIBIT 001 TO SUBPOENA — Page 11
4872-5307-7479, v. 6

11.    Any documents or emails or other communications evidencing any contract or agreement between Big 21 LLC and any other person or entity, including but not limited to:

   a.    5430,
   b.    Plummer,
   c.    Schwartz-Morini,
   d.    SMAC,
   e.    UC,
   f.    any affiliate or subsidiary of any of the foregoing, or
   g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

12.    Any documents or emails or other communications evidencing any contract or agreement between SS1 Legendary LLC and any other person or entity, including but not limited to:

   a.    5430,
   b.    Plummer,
   c.    Schwartz-Morini,
   d.    SMAC,
   e.    UC,
   f.    any affiliate or subsidiary of any of the foregoing, or
   g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

13.    Any documents or emails or other communications evidencing any contract or agreement between SS21 LLC and any other person or entity, including but not limited to:

   a.    5430,
   b.    Plummer,
   c.    Schwartz-Morini,
   d.    SMAC,
   e.    UC,
   f.    any affiliate or subsidiary of any of the foregoing, or
   g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

14.    Any documents or emails or other communications evidencing any contract or agreement between Headache Gang LLC and any other person or entity, including but not limited to:

   a.    5430,
   b.    Plummer,
   c.    Schwartz-Morini,
   d.    SMAC,

**EXHIBIT 001 TO SUBPOENA — Page 12**
4872-5307-7479, v. 6

    e.      UC,

    f.      any affiliate or subsidiary of any of the foregoing, or

    g.      any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

15.    Any documents or emails or other communications evidencing any contract or agreement between any other Subject Entity and any other person or entity, including but not limited to:

    a.      5430,

    b.      Plummer,

    c.      Schwartz-Morini,

    d.      SMAC,

    e.      UC,

    f.      any affiliate or subsidiary of any of the foregoing, or

    g.      any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

16.    Any documents or emails or other communications evidencing any contract or agreement between (i) Shilo Sanders and (ii) any Subject Entity.

17.    Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Subject Entity and (ii) any other Subject Entity.

18.    Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) you and/or any Related Entity, Insider, or Personnel of you, and/or any Subject Entity and (ii) Shilo Sanders.

19.    Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) you and/or any Related Entity, Insider, or Personnel of you and (ii) any Subject Entity.

20.    Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any agents, managers, attorneys, or representatives.

21.    Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any media company, social media outlet, brand, product, advertiser, agency, or any other similar party.

22.    Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service, of or relating to Shilo Sanders, between (i) you and/or any

EXHIBIT 001 TO SUBPOENA — Page 13
4872-5307-7479, v. 6

Related Entity, Insider, or Personnel of you, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

23.    [reserved].

24.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Deion Sanders** or any Related Entity or Personnel of Deion Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

25.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Shedeur Sanders** or any Related Entity or Personnel of Shedeur Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

26.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **5430** or any Related Entity or Personnel of 5430 relating to (x) Shilo Sanders or (y) any Subject Entity.

27.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Plummer** or any Related Entity or Personnel of Plummer relating to (x) Shilo Sanders or (y) any Subject Entity.

28.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Schwartz-Morini** or any Related Entity or Personnel of Schwartz-Morini relating to (x) Shilo Sanders or (y) any Subject Entity.

29.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **SMAC** or any Related Entity or Personnel of SMAC relating to (x) Shilo Sanders or (y) any Subject Entity.

30.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **UC** or any Related Entity or Personnel of UC relating to (x) Shilo Sanders or (y) any Subject Entity.

31.    Any documents or emails or other communications relating to any money, value, or any consideration *received* *by or on account of* Shilo Sanders during the Period.

32.    Any documents or emails or other communications relating to any money, value, or any consideration *received* *by or on account of* any Subject Entity during the Period.

33.    Any documents or emails or other communications relating to any money, value, or any consideration *received* *by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

34.    Any documents or emails or other communications relating to any money, value, or any consideration *received* *by or on account of* any Insider or other Personnel of

**EXHIBIT 001 TO SUBPOENA — Page 14**
4872-5307-7479, v. 6

Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

35.     Any documents or emails or other communications relating to any money, value, or any consideration *earned by or on account of* Shilo Sanders during the Period.

36.     Any documents or emails or other communications relating to any money, value, or any consideration *earned by or on account of* any Subject Entity during the Period.

37.     Any documents or emails or other communications relating to any money, value, or any consideration *earned by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

38.     Any documents or emails or other communications relating to any money, value, or any consideration *earned by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

39.     Any documents or emails or other communications relating to any money, value, or any consideration *received* by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

40.     Any documents or emails or other communications relating to any money, value, or any consideration *earned* by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

41.     Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shilo Sanders or any Subject Entity that were managed or handled by you, your Personnel, or any Related Entity.

42.     Any documents or emails or other communications relating to any agreements, contracts, and deals involving Deion Sanders or Related Entity of Deion Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

43.     Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shedeur Sanders or Related Entity of Shedeur Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

44.     Any documents or email or other communications relating to any trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

**EXHIBIT 001 TO SUBPOENA — Page 15**
4872-5307-7479, v. 6

45.     Any documents or email or other communications relating to any Related Trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

46.     Any documents or email or other communications relating to any money or anything of value you have provided to or for the benefit of Shilo Sanders, any Related Entity of Shilo Sanders, any Subject Entity, or any trust or any Related Trust.

47.     Any documents or email or other communications relating to any money or anything of value you have caused to be received by or on account of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

48.     The trust instrument of any trust or Related Trust of which Shilo Sanders was or is a beneficiary.

49.     The statements of any account of any trust or Related Trust of which Shilo Sanders was or is a beneficiary.

50.     Any documents or email or other communications relating to any trust or Related Trust of which Shilo Sanders was or is a beneficiary.

51.     Any documents or email or other communications relating to any house or any Real Property Interest which Shilo Sanders, any Related Entity of Shilo Sanders, any Subject Entity, or any trust or any Related Trust acquired or sought to acquire.

52.     Any documents or email or other communications evidencing any _assets or interest in any property_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

53.     Any documents or email or other communications evidencing any _Investment Asset_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

54.     Any documents or email or other communications evidencing any _Mineral Interest_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

55.     Any documents or email or other communications evidencing any _Real Property Interest_ of Shilo Sanders, any Related Entity of Shilo Sanders, or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

56.     Any documents or email or other communications evidencing any _Rolling Stock_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

**EXHIBIT 001 TO SUBPOENA — Page 16**
4872-5307-7479, v. 6

57. Any documents or email or other communications evidencing any _firearms_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

58. Any documents or email or other communications evidencing any _jewelry_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

59. Any documents or email or other communications evidencing any _designer clothing or accessories_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

60. Any and all documents, information, and/or things produced by or on behalf of Shilo Sanders to the Chapter 7 Trustee appointed in the bankruptcy case of Shilo Sanders, Case No. 23-14859-MER; _In re Shilo Dion Sanders_, in the United States Bankruptcy Court for the District of Colorado.

**EXHIBIT 001 TO SUBPOENA — Page 17**
4872-5307-7479, v. 6

**EXHIBIT DAR023 — Subpoena to University of Colorado**

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 23-14859** |
| **SHILO DION SANDERS,** | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS UNDER FED. R. BANKR. P. 2004

**To:**   **University of Colorado**
**1120 North Town Center, Suite 160**
**Las Vegas NV 89144**

☑   ___*Production:*___ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the documents, electronically stored information, or objects, referenced and described in **EXHIBIT 001**, attached hereto and incorporated by reference herein, pursuant to Fed. R. Bank. P. 2004 and Local Bankruptcy Rule 2004.

| **Place:** | *Mathias Raphael PLLC*<br>*13101 Preston Road, Suite 501*<br>*Dallas, TX 75240* | ___Date and Time:___ ___*The thirtieth (30th) day following*___ ___*entry of the order of the Court permitting service of*___ ___*this Subpoena, which order is served with and/or*___ ___*attached to this subpoena,*___ or as otherwise may be agreed between the parties. |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   | October __, 2024

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorneys for John Darjean*

The name, address, e-mail address, and telephone number of the attorney representing *John Darjean* who issues or requests this subpoena, are:

Jeff Carruth (SBOT #24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
24 Greenway Plaza, Suite 2050, Houston, TX 77046
Telephone: (713) 341-1158, jcarruth@wkpz.com

---

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT DAR023 — Subpoena to University of Colorado**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Bankruptcy Case     **23-14859**

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*    | **University of Colorado** |

on *(date)* |                          | .

I served the subpoena by delivering a copy to the following by ***certified mail, return receipt requested and regular mail*** on October __, 2024.

☒

**University of Colorado**
**1120 North Town Center, Suite 160**
**Las Vegas NV 89144**

I declare under penalty of perjury that this information is true.

Date:  | October __, 2024. |

|                                          |
| ---------------------------------------- |
| *Server's signature*                     |

|                                          |
| ---------------------------------------- |
| Jeff Carruth, Attorney                   |
| *Printed name and title*                 |

|                                          |
| ---------------------------------------- |
| WEYCER, KAPLAN, PULASKI & ZUBER, P.C.    |
| 24 Greenway Plaza, Suite 2050, Houston, TX 77046 |
| *Server's address*                       |

Additional information regarding attempted service, etc.:

4881-2549-2711, v. 6

**EXHIBIT DAR023 — Subpoena to University of Colorado**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT TO SUBPOENA

# EXHIBIT 001

<span style="color:red">**EXHIBIT DAR023 — Subpoena to University of Colorado**</span>
**EXHIBIT 001 TO SUBPOENA**

## <u>INSTRUCTIONS</u>

1.      In no event should any Instruction, Definition, or Discovery Request be read to contradict the Rules.

2.      Unless otherwise specified, the relevant period of time for each Discovery Request is **<u>September 17, 2015,</u>** through and until the present.

3.      These instructions and definitions herein should be construed to require answers and/or production based upon the knowledge of, and information and documents available to the Debtor, as well as the Personnel (as defined below) of Debtor.

4.      It is intended that the following Discovery Requests will not solicit any material protected either by the attorney/client privilege or the work-product doctrine that was created by, or developed by, counsel for Debtor after the date on which the relevant litigation was commenced. If any inquiry is susceptible to a construction that calls for the production of such material, or for material claimed to be protected under the attorney/client privilege, that material need not be provided but a privilege log pursuant will be required as to all such material.

5.      With respect to any Document that is produced:

a.      Each Document produced pursuant to this request should be identified in such production by the paragraph of the request with respect to which it is produced.

b.      If any privilege, exemption, or immunity is claimed as a basis for withholding production of one or more Documents, then please state:

      i.      the particular basis for withholding the Document;

      ii.      the author(s) of the Document;

      iii.      the form of the Document;

      iv.      the date of the Document;

      v.      the identity of all persons who have seen the Document; and;

      vi.      the general subject matter of the Document.

c.      Documents which, when regularly maintained, are stapled, clipped, or otherwise physically attached to other Documents are to be produced in their stapled, clipped, or otherwise physically attached form.

d.      If a Document or a group of Documents is taken out of a file folder, file drawer, notebook, or other identifiable storage facility, please attach thereto a copy of the label of the file folder, file drawer, etc., so that the location of each such Document in your files can be determined.

e.      If any such responsive Document has been lost, discarded, or destroyed, you must identify such Document as completely as possible, including the following information:

      i.      the type of Document;

      ii.      the date of the Document;

iii.    the date or approximate date the Document was lost, discarded, or destroyed;

iv.    the circumstances or manner in which it was lost, discarded, or destroyed;

v.    the reason or reasons for disposing of the Document (if the Document was discarded or destroyed);

vi.    the identity of all Persons authorizing or having knowledge of the circumstances surrounding disposal of the Document;

vii.    the identity of the Persons who lost, discarded, or destroyed the Document; and

viii.    the identity of all Persons having knowledge of the contents of the Document.

f.    If you have previously produced to another party any such responsive Documents and you believe that such production is accessible to the party serving these Discovery Requests, you should so specify.

6.    These Discovery Requests are continuing in character so as to require that supplemental answers be served seasonably if further or different information is obtained with respect to any Discovery Request. Consequently, these Discovery Requests require supplementation if you obtain further information or documents after the answers are served and prior to satisfaction of the judgment.

7.    The answers to the Interrogatories, as applicable, and other Discovery Requests should be complete and candid. To the extent any information called for by these Interrogatories is unknown to you, so state, and set forth whatever information you have regarding that Interrogatory. If any estimate can reasonably be made, please set forth your best estimate, clearly designated as such.

8.    No part of a Discovery Request should be left unanswered merely because an objection is interposed to another part of the Discovery Request. If a partial or incomplete answer is provided, state that the answer is partial or incomplete.

9.    If, in answering these Discovery Requests, you encounter any ambiguities when construing a question, instruction, or definition, then your answer shall set forth the matter deemed ambiguous, and the construction used in answering.

10.    You must serve your answers or objections to these Discovery Requests upon the undersigned counsel on the ***thirtieth (30th)*** day after these Discovery Requests were served upon you.

11.    Headings are for convenience only and should not be read to limit the scope of any Discovery Request.

12.    Please contact the undersigned if you would like an electronic copy of this discovery to aid in the preparation of responses. In any event, the hard copy of this discovery served upon you shall be the controlling copy.

<span style="color:red">**EXHIBIT DAR023 — Subpoena to University of Colorado**</span>
**EXHIBIT 001 TO SUBPOENA**

## DEFINITIONS AND CONSTRUCTION OF WORDS

      1.    All words contained in the Discovery Requests shall have their normal contextual meaning unless otherwise defined herein and should be read in a manner to provide a complete answer to each Discovery Requests. ***Words need not be capitalized in order to be controlled by the meaning of such word(s) as defined herein.***

      2.    Wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender.

      3.    Additional definitions for or relating to the parties to this action may appear in the introductory paragraphs of this document.

## General Discovery Definitions

      1.    "Agent" shall mean any agent, representative, employee, officer, director, attorney, independent contractor or any other Person acting at the direction of or on behalf of another.

      2.    "And" or "each", "all", and "any" shall be construed as necessary in each case to make each document request inclusive, rather than exclusive.

      3.    "Communication" shall mean and refer to any transmittal or information by any means, including, without limitation, any oral, written, or electronically recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, any correspondence, conversations, telephone calls or other voice or audio interaction, text or SMS messages, chat sessions, dialogues, discussions, interviews, consultations, agreements, or any other understandings between or among two or more Persons or any Document that recorded or reflected any such Communication."

      4.    "Discovery Requests" shall mean and refer to this discovery instrument and, as applicable, any interrogatories, requests for admissions, requests for production, and/or requests for inspection contained herein.

      5.    "Document" shall mean and include all documents and tangible things to the very broadest extent included within the scope of the Rules, including, but not limited to, the originals and all drafts and copies, together with any annotations or highlighted copies containing all or part of the information requested, in the possession, custody or control of You, Your attorneys, representative, employees, agents, or any other natural person or business or legal entity acting or purporting to act for or on Your behalf, or their respective Personnel as the case may be.  Also, the term "Document" or "writing" means any medium whatsoever, including all electronic, recorded and digital media of any kind, upon which intelligence or information can be recorded, or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any written material, correspondence, electronic mail, text or SMS messages, chat sessions, note file, book, pamphlet, printout, chart, record, report, periodical, letter, memorandum, (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, draft, working paper, chart, paper, print, drawing, sketch, graph,

index, list, and any written, recorded, transcribed, punched, taped, filmed or graphic matter whatsoever, however produced or reproduced, which is in your possession, custody, or control or which was, but is no longer, in Your possession, custody, or control.  The term "Document" or "writing" shall also include all copies or drafts of Documents by whatever means made, including specifically but not exclusively, those copies bearing commentary or notations not appearing on the original.

6.     "Equipment" shall mean and refer to any goods or property other than inventory, farm products, consumer goods, or tools.

7.     "Identify" shall have the following meanings.

  a.     When referring to a person, to state the full current name, residence, and business addresses, and residence and business telephone numbers of the person about whom information is sought, as well as that person's present or last known employer, that person's office or title, if any, and that person's job description.  If any of this information was different at the time with which the Interrogatories are concerned, state also such different information as applies to the time in question;

  b.     When referring to a business entity or firm (e.g., a corporation, partnership, limited partnership, law firm, etc.), to state the full name of such business, entity or firm, and the address of its principal place of business;

  c.     When referring to a document, to state its date, title, a brief description, subject matter, addressee or others receiving a copy, and author;

  d.     When referring to an act, communication, occurrence, statement or conduct, to state the substance of the event constituting such act and the date when such act occurred, persons participating in such act, all persons present when such act occurred, and a description of any record of such act;

  e.     When referring to dates, to state the date each such activity began and the date it ended; and

  f.     Any specific meaning provided in an Interrogatory.

8.     "Insider" (A) with respect to a debtor, shall mean and refer to any (i) member or director of the debtor, (ii) any officer or manager of the debtor, (iii) any person in control of the debtor, or (iv) any relative of any such member, director, manager, officer, or person in control; and (B) with respect to any individual, shall have the same meaning as found in 11 U.S.C. §101.

9.     "Investment Asset" shall mean and refer to stocks, bonds, securities, notes, accounts, mortgages, certificates of deposit / CDs, annuities, life insurance policies, profit sharing plans, trusts (as trustee or beneficiary), IRAs, 401(k)'s, pensions, and all other retirement plans, general or limited partnership interests, or similar ownership interests or investments, ownership of or interest in any joint venture, and including any Related Trusts (as defined below).

10.     "Mineral Interest" shall mean and refer to any interest in any mineral interest or oil and gas interest including any lease, royalty, well, working interest, well bore interest, overriding royalty interest, or equity position.

11.     "Person" shall mean and refer to any individual, corporation, company, proprietorship, partnership, trust, association, or other entity.

12.     "Personnel" shall mean and refer to any of the following persons with respect to a referenced person or entity: Insiders (as defined herein); Agents (as defined herein); representatives; servants; employees; officers; directors or managers; the Board of Directors; any individual shareholder or shareholders (or any holders of any equity interest); partner or partners; any accountant representing or providing services; or personal representatives.

13.     "Or" means and refers to and/or.

14.     "Real Property Interest" shall mean and refer to any real estate or interest in any real property in which you own or claim an interest (regardless of whether you acquired or received such real estate by inheritance, gift, or purchase), including (i) any interests in any oil and gas interest or mineral interest, including any mineral acreage owned and further including any lease, royalty, working interest, well bore interest, overriding royalty interest and/or equity position (ii) and option or any similar interest, (iii) any water rights or wind rights, (iv) any leases or interests in leases of any kind such as ground leases, grazing leases, or any other agricultural leases whether as (a) lessor or landlord or (b) lessee or tenant, and/or (v) any lien, encumbrance, or other debt or security related to any interest in real property.

15.     "Relating to" means concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

16.     "Related Trust" means and refers to any trust of which you, your spouse, or child, issue, ward, or dependent of you or your spouse any are a settlor, contributor, controller, trustee, or beneficiary on in which you, your spouse, or child, issue, ward, or dependent of you or your spouse own or claim any interest.

17.     "Response Date" shall mean and refer to the date on which You provide a response to these Discovery Requests / Requests for Production.

18.     "Rolling Stock" shall mean and refer to any automobiles, pickups, trucks, motor vehicles, motorcycles, travel trailers, motor homes, boats, airplanes, dozers, front end loaders, or any other rolling stock or similar equipment, and regardless of whether ownership is evidenced by a certificate of title.

19.     "Rules" shall mean and refer to the Texas Rules of Civil Procedure, the Federal Rules of Civil Procedure and/or the Federal Rules of Bankruptcy Procedure, as applicable.

**EXHIBIT DAR023 — Subpoena to University of Colorado**
**EXHIBIT 001 TO SUBPOENA**

20.     "Tools" shall men and refer to any goods or property other than inventory, farm products, consumer goods, or equipment.

21.     "You" or "yours" shall refer to the party to whom these Discovery Requests are being served and all agents and representatives, and all other persons acting on behalf of or purported to act on behalf of said person including the Agents and Personnel of such person.

## Specific Discovery Definitions

1.      "Debtor" means and refers to SHILO DION SANDERS.

2.      "Defendant" means and refers to SHILO DION SANDERS.

3.      "5430" the 5430 Alliance.

4.      "Judgment Debtor" means and refers to SHILO DION SANDERS.

5.      "NIL" means and refers to name, image, and likeness, and any right or interest in any property related thereto.

6.      "Period" shall mean and refer to the period of time from **September 17, 2015 through and until the present**.

7.      "Plummer" refers to Plummer Law Group, PC and/or Tabitha Plummer.

8.      "Related Entity" means and refers to any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by a person or entity, or with respect to which a person or entity is an Insider or possesses any beneficial interest.

9.      "Schwartz-Morini" means and refers to Constance Schwartz-Morini.

10.     "SMAC" means and refers to SMAC Entertainment LLC.

11.     "Subject Entity" shall mean and refer to each of the following:

    a.      Big 21, LLC

    b.      SS1 Legendary, LLC

    c.      SS21, LLC;

    d.      Headache Gang, LLC and,

    e.      any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by Shilo Sanders, or with respect to which Shilo Sanders is or has been an Insider, and/or with respect to which Shilo Sanders possesses any beneficial interest.

12.     "UC" means and refers to the University of Colardo, the Athletic Department of the University of Colardo, and the football program of the University of Colardo.

*{continued on following sheet}*

# DOCUMENTS AND THINGS TO PRODUCE

1.      Any documents or emails or other communications evidencing any contract or agreement between Shilo Sanders and any other person or entity, including but not limited to:

   a.      5430,
   b.      Plummer,
   c.      Schwartz-Morini,
   d.      SMAC,
   e.      UC,
   f.      any affiliate or subsidiary of any of the foregoing, or
   g.      any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

2.      Any documents or emails or other communications evidencing any contract or agreement between Big 21 LLC and any other person or entity, including but not limited to:

   a.      5430,
   b.      Plummer,
   c.      Schwartz-Morini,
   d.      SMAC,
   e.      UC,
   f.      any affiliate or subsidiary of any of the foregoing, or
   g.      any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

3.      Any documents or emails or other communications evidencing any contract or agreement between SS1 Legendary LLC and any other person or entity, including but not limited to:

   a.      5430,
   b.      Plummer,
   c.      Schwartz-Morini,
   d.      SMAC,
   e.      UC,
   f.      any affiliate or subsidiary of any of the foregoing, or
   g.      any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

4.      Any documents or emails or other communications evidencing any contract or agreement between SS21 LLC and any other person or entity, including but not limited to:

EXHIBIT 001 TO SUBPOENA — Page 11
4881-2549-2711, v. 6

    a.    5430,
    b.    Plummer,
    c.    Schwartz-Morini,
    d.    SMAC,
    e.    UC,
    f.    any affiliate or subsidiary of any of the foregoing, or
    g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

5.     Any documents or emails or other communications evidencing any contract or agreement between Headache Gang LLC and any other person or entity, including but not limited to:

    a.    5430,
    b.    Plummer,
    c.    Schwartz-Morini,
    d.    SMAC,
    e.    UC,
    f.    any affiliate or subsidiary of any of the foregoing, or
    g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

6.     Any documents or emails or other communications evidencing any contract or agreement between any other Subject Entity and any other person or entity, including but not limited to:

    a.    5430,
    b.    Plummer,
    c.    Schwartz-Morini,
    d.    SMAC,
    e.    UC,
    f.    any affiliate or subsidiary of any of the foregoing, or
    g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

7.     Any documents or emails or other communications evidencing any contract or agreement between (i) Shilo Sanders and (ii) any Subject Entity.

8.     Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Subject Entity and (ii) any other Subject Entity.

9.     Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) Shilo Sanders.

EXHIBIT 001 TO SUBPOENA — Page 12
4881-2549-2711, v. 6

10. Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) any Subject Entity.

11. Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any agents, managers, attorneys, or representatives.

12. Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any media company, social media outlet, brand, product, advertiser, agency, or any other similar party.

13. Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service, of or relating to Shilo Sanders, between (i) any Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

14. Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service, of or relating to Shilo Sanders, between (i) any Insider Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

15. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Deion Sanders** or any Related Entity or Personnel of Deion Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

16. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Shedeur Sanders** or any Related Entity or Personnel of Shedeur Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

17. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **5430** or any Related Entity or Personnel of 5430 relating to (x) Shilo Sanders or (y) any Subject Entity.

18. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Plummer** or any Related Entity or Personnel of Plummer relating to (x) Shilo Sanders or (y) any Subject Entity.

19. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Schwartz-Morini** or any Related Entity or Personnel of Schwartz-Morini relating to (x) Shilo Sanders or (y) any Subject Entity.

**EXHIBIT 001 TO SUBPOENA — Page 13**
4881-2549-2711, v. 6

20. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **SMAC** or any Related Entity or Personnel of SMAC relating to (x) Shilo Sanders or (y) any Subject Entity.

21. [reserved].

22. Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* Shilo Sanders during the Period.

23. Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* any Subject Entity during the Period.

24. Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

25. Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

26. Any documents or emails or other communications relating to any money, value, or any consideration *earned by or on account of* Shilo Sanders during the Period.

27. Any documents or emails or other communications relating to any money, value, or any consideration *earned by or on account of* any Subject Entity during the Period.

28. Any documents or emails or other communications relating to any money, value, or any consideration *earned by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

29. Any documents or emails or other communications relating to any money, value, or any consideration *earned by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

30. Any documents or emails or other communications relating to any money, value, or any consideration *received* by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

**EXHIBIT 001 TO SUBPOENA — Page 14**
4881-2549-2711, v. 6

**EXHIBIT DAR023 — Subpoena to University of Colorado**
**EXHIBIT 001 TO SUBPOENA**

31.     Any documents or emails or other communications relating to any money, value, or any consideration _**earned**_ by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

32.     Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shilo Sanders or any Subject Entity that were managed or handled by you, your Personnel, or any Related Entity.

33.     Any documents or emails or other communications relating to any agreements, contracts, and deals involving Deion Sanders or Related Entity of Deion Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

34.     Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shedeur Sanders or Related Entity of Shedeur Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

35.     Any documents or email or other communications relating to any trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

36.     Any documents or email or other communications relating to any Related Trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

37.     Any documents or email or other communications evidencing any _**assets or interest in any property**_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

38.     Any documents or email or other communications evidencing any _**Investment Asset**_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

39.     Any documents or email or other communications evidencing any _**Mineral Interest**_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

40.     Any documents or email or other communications evidencing any _**Real Property Interest**_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

41.     Any documents or email or other communications evidencing any _**Rolling Stock**_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

**EXHIBIT 001 TO SUBPOENA — Page 15**
4881-2549-2711, v. 6

42.    Any documents or email or other communications evidencing any _firearms_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

43.    Any documents or email or other communications evidencing any _jewelry_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

44.    Any documents or email or other communications evidencing any _designer clothing or accessories_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

45.    Any and all documents, information, and/or things produced by you or on your behalf to the Chapter 7 Trustee in the bankruptcy case of Shilo Sanders, Case No. 23-14859-MER; _In re Shilo Dion Sanders_, in the United States Bankruptcy Court for the District of Colorado.

**EXHIBIT 001 TO SUBPOENA — Page 16**
4881-2549-2711, v. 6

**EXHIBIT DAR024 — Subpoena to University of Colorado Athletic Department**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 23-14859** |
| **SHILO DION SANDERS,** | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS UNDER FED. R. BANKR. P. 2004

**To:** **University of Colorado Athletic Department**
**Folson Field**
**2400 Colorado Ave.**
**Denver CO**

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the documents, electronically stored information, or objects, referenced and described in **EXHIBIT 001**, attached hereto and incorporated by reference herein, pursuant to Fed. R. Bank. P. 2004 and Local Bankruptcy Rule 2004.

| Place: | *Mathias Raphael PLLC* <br> *13101 Preston Road, Suite 501* <br> *Dallas, TX 75240* | <u>Date and Time:</u> *The thirtieth (30th) day following entry of the order of the Court permitting service of this Subpoena, which order is served with and/or attached to this subpoena,* or as otherwise may be agreed between the parties. |
|---|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: October __, 2024.

*Signature of Clerk or Deputy Clerk*

*Attorneys for John Darjean*

The name, address, e-mail address, and telephone number of the attorney representing *John Darjean* who issues or requests this subpoena, are:

Jeff Carruth (SBOT #24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
24 Greenway Plaza, Suite 2050, Houston, TX 77046
Telephone: (713) 341-1158, jcarruth@wkpz.com

---

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT DAR024 — Subpoena to University of Colorado Athletic Department**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Bankruptcy Case     **23-14859**

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*

| **University of Colorado Athletic Department** |

on *(date)* _____ .

I served the subpoena by delivering a copy to the following by ***certified mail, return receipt requested and regular mail*** on October \_\_, 2024.

☒
    **University of Colorado Athletic Department**
    **Folson Field**
    **2400 Colorado Ave.**
    **Denver CO**

I declare under penalty of perjury that this information is true.

Date:  | October \_\_, 2024 |

| |
*Server's signature*

| Jeff Carruth, Attorney |
*Printed name and title*

| WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
24 Greenway Plaza, Suite 2050, Houston, TX 77046 |
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT TO SUBPOENA

# EXHIBIT 001

## INSTRUCTIONS

1.      In no event should any Instruction, Definition, or Discovery Request be read to contradict the Rules.

2.      Unless otherwise specified, the relevant period of time for each Discovery Request is **September 17, 2015,** through and until the present.

3.      These instructions and definitions herein should be construed to require answers and/or production based upon the knowledge of, and information and documents available to the Debtor, as well as the Personnel (as defined below) of Debtor.

4.      It is intended that the following Discovery Requests will not solicit any material protected either by the attorney/client privilege or the work-product doctrine that was created by, or developed by, counsel for Debtor after the date on which the relevant litigation was commenced. If any inquiry is susceptible to a construction that calls for the production of such material, or for material claimed to be protected under the attorney/client privilege, that material need not be provided but a privilege log pursuant will be required as to all such material.

5.      With respect to any Document that is produced:

a.      Each Document produced pursuant to this request should be identified in such production by the paragraph of the request with respect to which it is produced.

b.      If any privilege, exemption, or immunity is claimed as a basis for withholding production of one or more Documents, then please state:

   i.      the particular basis for withholding the Document;

   ii.      the author(s) of the Document;

   iii.      the form of the Document;

   iv.      the date of the Document;

   v.      the identity of all persons who have seen the Document; and;

   vi.      the general subject matter of the Document.

c.      Documents which, when regularly maintained, are stapled, clipped, or otherwise physically attached to other Documents are to be produced in their stapled, clipped, or otherwise physically attached form.

d.      If a Document or a group of Documents is taken out of a file folder, file drawer, notebook, or other identifiable storage facility, please attach thereto a copy of the label of the file folder, file drawer, etc., so that the location of each such Document in your files can be determined.

e.      If any such responsive Document has been lost, discarded, or destroyed, you must identify such Document as completely as possible, including the following information:

   i.      the type of Document;

   ii.      the date of the Document;

iii.    the date or approximate date the Document was lost, discarded, or destroyed;

iv.    the circumstances or manner in which it was lost, discarded, or destroyed;

v.    the reason or reasons for disposing of the Document (if the Document was discarded or destroyed);

vi.    the identity of all Persons authorizing or having knowledge of the circumstances surrounding disposal of the Document;

vii.    the identity of the Persons who lost, discarded, or destroyed the Document; and

viii.    the identity of all Persons having knowledge of the contents of the Document.

f.    If you have previously produced to another party any such responsive Documents and you believe that such production is accessible to the party serving these Discovery Requests, you should so specify.

6.    These Discovery Requests are continuing in character so as to require that supplemental answers be served seasonably if further or different information is obtained with respect to any Discovery Request. Consequently, these Discovery Requests require supplementation if you obtain further information or documents after the answers are served and prior to satisfaction of the judgment.

7.    The answers to the Interrogatories, as applicable, and other Discovery Requests should be complete and candid. To the extent any information called for by these Interrogatories is unknown to you, so state, and set forth whatever information you have regarding that Interrogatory. If any estimate can reasonably be made, please set forth your best estimate, clearly designated as such.

8.    No part of a Discovery Request should be left unanswered merely because an objection is interposed to another part of the Discovery Request. If a partial or incomplete answer is provided, state that the answer is partial or incomplete.

9.    If, in answering these Discovery Requests, you encounter any ambiguities when construing a question, instruction, or definition, then your answer shall set forth the matter deemed ambiguous, and the construction used in answering.

10.    You must serve your answers or objections to these Discovery Requests upon the undersigned counsel on the ***thirtieth (30th)*** day after these Discovery Requests were served upon you.

11.    Headings are for convenience only and should not be read to limit the scope of any Discovery Request.

12.    Please contact the undersigned if you would like an electronic copy of this discovery to aid in the preparation of responses. In any event, the hard copy of this discovery served upon you shall be the controlling copy.

**EXHIBIT 001 TO SUBPOENA**

## DEFINITIONS AND CONSTRUCTION OF WORDS

1.      All words contained in the Discovery Requests shall have their normal contextual meaning unless otherwise defined herein and should be read in a manner to provide a complete answer to each Discovery Requests. ***Words need not be capitalized in order to be controlled by the meaning of such word(s) as defined herein.***

2.      Wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender.

3.      Additional definitions for or relating to the parties to this action may appear in the introductory paragraphs of this document.

### General Discovery Definitions

1.      "Agent" shall mean any agent, representative, employee, officer, director, attorney, independent contractor or any other Person acting at the direction of or on behalf of another.

2.      "And" or "each", "all", and "any" shall be construed as necessary in each case to make each document request inclusive, rather than exclusive.

3.      "Communication" shall mean and refer to any transmittal or information by any means, including, without limitation, any oral, written, or electronically recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, any correspondence, conversations, telephone calls or other voice or audio interaction, text or SMS messages, chat sessions, dialogues, discussions, interviews, consultations, agreements, or any other understandings between or among two or more Persons or any Document that recorded or reflected any such Communication."

4.      "Discovery Requests" shall mean and refer to this discovery instrument and, as applicable, any interrogatories, requests for admissions, requests for production, and/or requests for inspection contained herein.

5.      "Document" shall mean and include all documents and tangible things to the very broadest extent included within the scope of the Rules, including, but not limited to, the originals and all drafts and copies, together with any annotations or highlighted copies containing all or part of the information requested, in the possession, custody or control of You, Your attorneys, representative, employees, agents, or any other natural person or business or legal entity acting or purporting to act for or on Your behalf, or their respective Personnel as the case may be.  Also, the term "Document" or "writing" means any medium whatsoever, including all electronic, recorded and digital media of any kind, upon which intelligence or information can be recorded, or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any written material, correspondence, electronic mail, text or SMS messages, chat sessions, note file, book, pamphlet, printout, chart, record, report, periodical, letter, memorandum, (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, draft, working paper, chart, paper, print, drawing, sketch, graph,

index, list, and any written, recorded, transcribed, punched, taped, filmed or graphic matter whatsoever, however produced or reproduced, which is in your possession, custody, or control or which was, but is no longer, in Your possession, custody, or control.  The term "Document" or "writing" shall also include all copies or drafts of Documents by whatever means made, including specifically but not exclusively, those copies bearing commentary or notations not appearing on the original.

6.     "Equipment" shall mean and refer to any goods or property other than inventory, farm products, consumer goods, or tools.

7.     "Identify" shall have the following meanings.

   a.     When referring to a person, to state the full current name, residence, and business addresses, and residence and business telephone numbers of the person about whom information is sought, as well as that person's present or last known employer, that person's office or title, if any, and that person's job description.  If any of this information was different at the time with which the Interrogatories are concerned, state also such different information as applies to the time in question;

   b.     When referring to a business entity or firm (e.g., a corporation, partnership, limited partnership, law firm, etc.), to state the full name of such business, entity or firm, and the address of its principal place of business;

   c.     When referring to a document, to state its date, title, a brief description, subject matter, addressee or others receiving a copy, and author;

   d.     When referring to an act, communication, occurrence, statement or conduct, to state the substance of the event constituting such act and the date when such act occurred, persons participating in such act, all persons present when such act occurred, and a description of any record of such act;

   e.     When referring to dates, to state the date each such activity began and the date it ended; and

   f.     Any specific meaning provided in an Interrogatory.

8.     "Insider" (A) with respect to a debtor, shall mean and refer to any (i) member or director of the debtor, (ii) any officer or manager of the debtor, (iii) any person in control of the debtor, or (iv) any relative of any such member, director, manager, officer, or person in control; and (B) with respect to any individual, shall have the same meaning as found in 11 U.S.C. §101.

9.     "Investment Asset" shall mean and refer to stocks, bonds, securities, notes, accounts, mortgages, certificates of deposit / CDs, annuities, life insurance policies, profit sharing plans, trusts (as trustee or beneficiary), IRAs, 401(k)'s, pensions, and all other retirement plans, general or limited partnership interests, or similar ownership interests or investments, ownership of or interest in any joint venture, and including any Related Trusts (as defined below).

10.     "Mineral Interest" shall mean and refer to any interest in any mineral interest or oil and gas interest including any lease, royalty, well, working interest, well bore interest, overriding royalty interest, or equity position.

11.     "Person" shall mean and refer to any individual, corporation, company, proprietorship, partnership, trust, association, or other entity.

12.     "Personnel" shall mean and refer to any of the following persons with respect to a referenced person or entity: Insiders (as defined herein); Agents (as defined herein); representatives; servants; employees; officers; directors or managers; the Board of Directors; any individual shareholder or shareholders (or any holders of any equity interest); partner or partners; any accountant representing or providing services; or personal representatives.

13.     "Or" means and refers to and/or.

14.     "Real Property Interest" shall mean and refer to any real estate or interest in any real property in which you own or claim an interest (regardless of whether you acquired or received such real estate by inheritance, gift, or purchase), including (i) any interests in any oil and gas interest or mineral interest, including any mineral acreage owned and further including any lease, royalty, working interest, well bore interest, overriding royalty interest and/or equity position (ii) and option or any similar interest, (iii) any water rights or wind rights, (iv) any leases or interests in leases of any kind such as ground leases, grazing leases, or any other agricultural leases whether as (a) lessor or landlord or (b) lessee or tenant, and/or (v) any lien, encumbrance, or other debt or security related to any interest in real property.

15.     "Relating to" means concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

16.     "Related Trust" means and refers to any trust of which you, your spouse, or child, issue, ward, or dependent of you or your spouse any are a settlor, contributor, controller, trustee, or beneficiary on in which you, your spouse, or child, issue, ward, or dependent of you or your spouse own or claim any interest.

17.     "Response Date" shall mean and refer to the date on which You provide a response to these Discovery Requests / Requests for Production.

18.     "Rolling Stock" shall mean and refer to any automobiles, pickups, trucks, motor vehicles, motorcycles, travel trailers, motor homes, boats, airplanes, dozers, front end loaders, or any other rolling stock or similar equipment, and regardless of whether ownership is evidenced by a certificate of title.

19.     "Rules" shall mean and refer to the Texas Rules of Civil Procedure, the Federal Rules of Civil Procedure and/or the Federal Rules of Bankruptcy Procedure, as applicable.

20.    "Tools" shall men and refer to any goods or property other than inventory, farm products, consumer goods, or equipment.

21.    "You" or "yours" shall refer to the party to whom these Discovery Requests are being served and all agents and representatives, and all other persons acting on behalf of or purported to act on behalf of said person including the Agents and Personnel of such person.

## Specific Discovery Definitions

1.    "Debtor" means and refers to SHILO DION SANDERS.

2.    "Defendant" means and refers to SHILO DION SANDERS.

3.    "5430" the 5430 Alliance.

4.    "Judgment Debtor" means and refers to SHILO DION SANDERS.

5.    "NIL" means and refers to name, image, and likeness, and any right or interest in any property related thereto.

6.    "Period" shall mean and refer to the period of time from **September 17, 2015 through and until the present**.

7.    "Plummer" refers to Plummer Law Group, PC and/or Tabitha Plummer.

8.    "Related Entity" means and refers to any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by a person or entity, or with respect to which a person or entity is an Insider or possesses any beneficial interest.

9.    "Schwartz-Morini" means and refers to Constance Schwartz-Morini.

10.    "SMAC" means and refers to SMAC Entertainment LLC.

11.    "Subject Entity" shall mean and refer to each of the following:

a.    Big 21, LLC

b.    SS1 Legendary, LLC

c.    SS21, LLC;

d.    Headache Gang, LLC and,

e.    any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by Shilo Sanders, or with respect to which Shilo Sanders is or has been an Insider, and/or with respect to which Shilo Sanders possesses any beneficial interest.

12.    "UC" means and refers to the University of Colardo, the Athletic Department of the University of Colardo, and the football program of the University of Colardo.

*{continued on following sheet}*

# DOCUMENTS AND THINGS TO PRODUCE

1.      Any documents or emails or other communications evidencing any contract or agreement between Shilo Sanders and any other person or entity, including but not limited to:

     a.      5430,
     b.      Plummer,
     c.      Schwartz-Morini,
     d.      SMAC,
     e.      UC,
     f.      any affiliate or subsidiary of any of the foregoing, or
     g.      any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

2.      Any documents or emails or other communications evidencing any contract or agreement between Big 21 LLC and any other person or entity, including but not limited to:

     a.      5430,
     b.      Plummer,
     c.      Schwartz-Morini,
     d.      SMAC,
     e.      UC,
     f.      any affiliate or subsidiary of any of the foregoing, or
     g.      any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

3.      Any documents or emails or other communications evidencing any contract or agreement between SS1 Legendary LLC and any other person or entity, including but not limited to:

     a.      5430,
     b.      Plummer,
     c.      Schwartz-Morini,
     d.      SMAC,
     e.      UC,
     f.      any affiliate or subsidiary of any of the foregoing, or
     g.      any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

4.      Any documents or emails or other communications evidencing any contract or agreement between SS21 LLC and any other person or entity, including but not limited to:

EXHIBIT 001 TO SUBPOENA — Page 11
4890-9857-1239, v. 6

    a.    5430,
    b.    Plummer,
    c.    Schwartz-Morini,
    d.    SMAC,
    e.    UC,
    f.    any affiliate or subsidiary of any of the foregoing, or
    g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

5.    Any documents or emails or other communications evidencing any contract or agreement between Headache Gang LLC and any other person or entity, including but not limited to:

    a.    5430,
    b.    Plummer,
    c.    Schwartz-Morini,
    d.    SMAC,
    e.    UC,
    f.    any affiliate or subsidiary of any of the foregoing, or
    g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

6.    Any documents or emails or other communications evidencing any contract or agreement between any other Subject Entity and any other person or entity, including but not limited to:

    a.    5430,
    b.    Plummer,
    c.    Schwartz-Morini,
    d.    SMAC,
    e.    UC,
    f.    any affiliate or subsidiary of any of the foregoing, or
    g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

7.    Any documents or emails or other communications evidencing any contract or agreement between (i) Shilo Sanders and (ii) any Subject Entity.

8.    Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Subject Entity and (ii) any other Subject Entity.

9.    Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) Shilo Sanders.

EXHIBIT 001 TO SUBPOENA — Page 12
4890-9857-1239, v. 6

10.     Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) any Subject Entity.

11.     Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any agents, managers, attorneys, or representatives.

12.     Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any media company, social media outlet, brand, product, advertiser, agency, or any other similar party.

13.     Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service, of or relating to Shilo Sanders, between (i) any Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

14.     Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service, of or relating to Shilo Sanders, between (i) any Insider Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

15.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Deion Sanders** or any Related Entity or Personnel of Deion Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

16.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Shedeur Sanders** or any Related Entity or Personnel of Shedeur Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

17.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **5430** or any Related Entity or Personnel of 5430 relating to (x) Shilo Sanders or (y) any Subject Entity.

18.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Plummer** or any Related Entity or Personnel of Plummer relating to (x) Shilo Sanders or (y) any Subject Entity.

19.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Schwartz-Morini** or any Related Entity or Personnel of Schwartz-Morini relating to (x) Shilo Sanders or (y) any Subject Entity.

**EXHIBIT 001 TO SUBPOENA — Page 13**
4890-9857-1239, v. 6

20.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **SMAC** or any Related Entity or Personnel of SMAC relating to (x) Shilo Sanders or (y) any Subject Entity.

21.     [reserved].

22.     Any documents or emails or other communications relating to any money, value, or any consideration _received by or on account of_ Shilo Sanders during the Period.

23.     Any documents or emails or other communications relating to any money, value, or any consideration _received by or on account of_ any Subject Entity during the Period.

24.     Any documents or emails or other communications relating to any money, value, or any consideration _received by or on account of_ any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

25.     Any documents or emails or other communications relating to any money, value, or any consideration _received by or on account of_ any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

26.     Any documents or emails or other communications relating to any money, value, or any consideration _earned by or on account of_ Shilo Sanders during the Period.

27.     Any documents or emails or other communications relating to any money, value, or any consideration _earned by or on account of_ any Subject Entity during the Period.

28.     Any documents or emails or other communications relating to any money, value, or any consideration _earned by or on account of_ any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

29.     Any documents or emails or other communications relating to any money, value, or any consideration _earned by or on account of_ any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

30.     Any documents or emails or other communications relating to any money, value, or any consideration _received_ by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

**EXHIBIT 001 TO SUBPOENA — Page 14**
4890-9857-1239, v. 6

31.     Any documents or emails or other communications relating to any money, value, or any consideration _**earned**_ by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

32.     Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shilo Sanders or any Subject Entity that were managed or handled by you, your Personnel, or any Related Entity.

33.     Any documents or emails or other communications relating to any agreements, contracts, and deals involving Deion Sanders or Related Entity of Deion Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

34.     Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shedeur Sanders or Related Entity of Shedeur Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

35.     Any documents or email or other communications relating to any trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

36.     Any documents or email or other communications relating to any Related Trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

37.     Any documents or email or other communications evidencing any _**assets or interest in any property**_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

38.     Any documents or email or other communications evidencing any _**Investment Asset**_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

39.     Any documents or email or other communications evidencing any _**Mineral Interest**_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

40.     Any documents or email or other communications evidencing any _**Real Property Interest**_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

41.     Any documents or email or other communications evidencing any _**Rolling Stock**_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

**EXHIBIT 001 TO SUBPOENA — Page 15**
4890-9857-1239, v. 6

42.     Any documents or email or other communications evidencing any _firearms_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

43.     Any documents or email or other communications evidencing any _jewelry_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

44.     Any documents or email or other communications evidencing any _designer clothing or accessories_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

45.     Any and all documents, information, and/or things produced by you or on your behalf to the Chapter 7 Trustee in the bankruptcy case of Shilo Sanders, Case No. 23-14859-MER; _In re Shilo Dion Sanders_, in the United States Bankruptcy Court for the District of Colorado.

**EXHIBIT 001 TO SUBPOENA — Page 16**
4890-9857-1239, v. 6

**EXHIBIT DAR025 — Subpoena to 5430 Alliance**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 23-14859** |
| SHILO DION SANDERS, | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS UNDER FED. R. BANKR. P. 2004

**To:** 5430 Alliance                            5430 Alliance
c/o Natalie Sharp                       2400 Colorado Ave.
Folson Field                            Denver CO 80302
2400 Colorado Ave.
Denver CO 80302

☑ _**Production:**_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the documents, electronically stored information, or objects, referenced and described in **EXHIBIT 001**, attached hereto and incorporated by reference herein, pursuant to Fed. R. Bank. P. 2004 and Local Bankruptcy Rule 2004.

| Place: | _Mathias Raphael PLLC_<br>_13101 Preston Road, Suite 501_<br>_Dallas, TX 75240_ | Date and Time: _**The thirtieth (30th) day following entry of the order of the Court permitting service of this Subpoena, which order is served with and/or attached to this subpoena,**_ or as otherwise may be agreed between the parties. |
|---|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   October __, 2024

_Signature of Clerk or Deputy Clerk_

_Attorneys for John Darjean_

The name, address, e-mail address, and telephone number of the attorney representing _John Darjean_ who issues or requests this subpoena, are:

Jeff Carruth (SBOT #24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
24 Greenway Plaza, Suite 2050, Houston, TX 77046
Telephone: (713) 341-1158, jcarruth@wkpz.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT DAR025 — Subpoena to 5430 Alliance**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Bankruptcy Case       **23-14859**

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*  | **5430 Alliance**

on *(date)* _____ .

I served the subpoena by delivering a copy to the following by ***certified mail, return receipt requested and regular mail*** on October ___, 2024.

☒  **5430 Alliance**                              **5430 Alliance**
   **c/o Natalie Sharp**                          **2400 Colorado Ave.**
   **Folson Field**                               **Denver CO 80302**
   **2400 Colorado Ave.**
   **Denver CO 80302**

I declare under penalty of perjury that this information is true.

Date:  | October ___, 2024 |

_____
*Server's signature*

Jeff Carruth, Attorney
*Printed name and title*

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
24 Greenway Plaza, Suite 2050, Houston, TX 77046
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
　**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
　**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
　　**(i)** is a party or a party's officer; or
　　**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
　**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
　**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
　**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
　**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
　　**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
　　**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
　**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
　　**(i)** fails to allow a reasonable time to comply;
　　**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
　　**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
　　**(iv)** subjects a person to undue burden.
　**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
　　**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

　　**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
　**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
　　**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
　　**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
　**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
　**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
　**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
　**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
　**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
　　**(i)** expressly make the claim; and
　　**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
　**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT TO SUBPOENA

# EXHIBIT 001

**EXHIBIT 001 TO SUBPOENA**

## <u>INSTRUCTIONS</u>

1.    In no event should any Instruction, Definition, or Discovery Request be read to contradict the Rules.

2.    Unless otherwise specified, the relevant period of time for each Discovery Request is **<u>September 17, 2015,</u>** through and until the present.

3.    These instructions and definitions herein should be construed to require answers and/or production based upon the knowledge of, and information and documents available to the Debtor, as well as the Personnel (as defined below) of Debtor.

4.    It is intended that the following Discovery Requests will not solicit any material protected either by the attorney/client privilege or the work-product doctrine that was created by, or developed by, counsel for Debtor after the date on which the relevant litigation was commenced. If any inquiry is susceptible to a construction that calls for the production of such material, or for material claimed to be protected under the attorney/client privilege, that material need not be provided but a privilege log pursuant will be required as to all such material.

5.    With respect to any Document that is produced:

a.    Each Document produced pursuant to this request should be identified in such production by the paragraph of the request with respect to which it is produced.

b.    If any privilege, exemption, or immunity is claimed as a basis for withholding production of one or more Documents, then please state:

        i.    the particular basis for withholding the Document;

        ii.    the author(s) of the Document;

        iii.    the form of the Document;

        iv.    the date of the Document;

        v.    the identity of all persons who have seen the Document; and;

        vi.    the general subject matter of the Document.

c.    Documents which, when regularly maintained, are stapled, clipped, or otherwise physically attached to other Documents are to be produced in their stapled, clipped, or otherwise physically attached form.

d.    If a Document or a group of Documents is taken out of a file folder, file drawer, notebook, or other identifiable storage facility, please attach thereto a copy of the label of the file folder, file drawer, etc., so that the location of each such Document in your files can be determined.

e.    If any such responsive Document has been lost, discarded, or destroyed, you must identify such Document as completely as possible, including the following information:

        i.    the type of Document;

        ii.    the date of the Document;

    iii.      the date or approximate date the Document was lost, discarded, or destroyed;

    iv.      the circumstances or manner in which it was lost, discarded, or destroyed;

    v.      the reason or reasons for disposing of the Document (if the Document was discarded or destroyed);

    vi.      the identity of all Persons authorizing or having knowledge of the circumstances surrounding disposal of the Document;

    vii.      the identity of the Persons who lost, discarded, or destroyed the Document; and

    viii.      the identity of all Persons having knowledge of the contents of the Document.

    f.      If you have previously produced to another party any such responsive Documents and you believe that such production is accessible to the party serving these Discovery Requests, you should so specify.

6.    These Discovery Requests are continuing in character so as to require that supplemental answers be served seasonably if further or different information is obtained with respect to any Discovery Request. Consequently, these Discovery Requests require supplementation if you obtain further information or documents after the answers are served and prior to satisfaction of the judgment.

7.    The answers to the Interrogatories, as applicable, and other Discovery Requests should be complete and candid. To the extent any information called for by these Interrogatories is unknown to you, so state, and set forth whatever information you have regarding that Interrogatory. If any estimate can reasonably be made, please set forth your best estimate, clearly designated as such.

8.    No part of a Discovery Request should be left unanswered merely because an objection is interposed to another part of the Discovery Request. If a partial or incomplete answer is provided, state that the answer is partial or incomplete.

9.    If, in answering these Discovery Requests, you encounter any ambiguities when construing a question, instruction, or definition, then your answer shall set forth the matter deemed ambiguous, and the construction used in answering.

10.    You must serve your answers or objections to these Discovery Requests upon the undersigned counsel on the ***thirtieth (30th)*** day after these Discovery Requests were served upon you.

11.    Headings are for convenience only and should not be read to limit the scope of any Discovery Request.

12.    Please contact the undersigned if you would like an electronic copy of this discovery to aid in the preparation of responses. In any event, the hard copy of this discovery served upon you shall be the controlling copy.

**EXHIBIT DAR025 — Subpoena to 5430 Alliance**
**EXHIBIT 001 TO SUBPOENA**

## DEFINITIONS AND CONSTRUCTION OF WORDS

1.      All words contained in the Discovery Requests shall have their normal contextual meaning unless otherwise defined herein and should be read in a manner to provide a complete answer to each Discovery Requests. ***Words need not be capitalized in order to be controlled by the meaning of such word(s) as defined herein.***

2.      Wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender.

3.      Additional definitions for or relating to the parties to this action may appear in the introductory paragraphs of this document.

### General Discovery Definitions

1.      "Agent" shall mean any agent, representative, employee, officer, director, attorney, independent contractor or any other Person acting at the direction of or on behalf of another.

2.      "And" or "each", "all", and "any" shall be construed as necessary in each case to make each document request inclusive, rather than exclusive.

3.      "Communication" shall mean and refer to any transmittal or information by any means, including, without limitation, any oral, written, or electronically recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, any correspondence, conversations, telephone calls or other voice or audio interaction, text or SMS messages, chat sessions, dialogues, discussions, interviews, consultations, agreements, or any other understandings between or among two or more Persons or any Document that recorded or reflected any such Communication."

4.      "Discovery Requests" shall mean and refer to this discovery instrument and, as applicable, any interrogatories, requests for admissions, requests for production, and/or requests for inspection contained herein.

5.      "Document" shall mean and include all documents and tangible things to the very broadest extent included within the scope of the Rules, including, but not limited to, the originals and all drafts and copies, together with any annotations or highlighted copies containing all or part of the information requested, in the possession, custody or control of You, Your attorneys, representative, employees, agents, or any other natural person or business or legal entity acting or purporting to act for or on Your behalf, or their respective Personnel as the case may be.  Also, the term "Document" or "writing" means any medium whatsoever, including all electronic, recorded and digital media of any kind, upon which intelligence or information can be recorded, or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any written material, correspondence, electronic mail, text or SMS messages, chat sessions, note file, book, pamphlet, printout, chart, record, report, periodical, letter, memorandum, (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, draft, working paper, chart, paper, print, drawing, sketch, graph,

index, list, and any written, recorded, transcribed, punched, taped, filmed or graphic matter whatsoever, however produced or reproduced, which is in your possession, custody, or control or which was, but is no longer, in Your possession, custody, or control.  The term "Document" or "writing" shall also include all copies or drafts of Documents by whatever means made, including specifically but not exclusively, those copies bearing commentary or notations not appearing on the original.

6.    "Equipment" shall mean and refer to any goods or property other than inventory, farm products, consumer goods, or tools.

7.    "Identify" shall have the following meanings.

   a.    When referring to a person, to state the full current name, residence, and business addresses, and residence and business telephone numbers of the person about whom information is sought, as well as that person's present or last known employer, that person's office or title, if any, and that person's job description.  If any of this information was different at the time with which the Interrogatories are concerned, state also such different information as applies to the time in question;

   b.    When referring to a business entity or firm (e.g., a corporation, partnership, limited partnership, law firm, etc.), to state the full name of such business, entity or firm, and the address of its principal place of business;

   c.    When referring to a document, to state its date, title, a brief description, subject matter, addressee or others receiving a copy, and author;

   d.    When referring to an act, communication, occurrence, statement or conduct, to state the substance of the event constituting such act and the date when such act occurred, persons participating in such act, all persons present when such act occurred, and a description of any record of such act;

   e.    When referring to dates, to state the date each such activity began and the date it ended; and

   f.    Any specific meaning provided in an Interrogatory.

8.    "Insider" (A) with respect to a debtor, shall mean and refer to any (i) member or director of the debtor, (ii) any officer or manager of the debtor, (iii) any person in control of the debtor, or (iv) any relative of any such member, director, manager, officer, or person in control; and (B) with respect to any individual, shall have the same meaning as found in 11 U.S.C. §101.

9.    "Investment Asset" shall mean and refer to stocks, bonds, securities, notes, accounts, mortgages, certificates of deposit / CDs, annuities, life insurance policies, profit sharing plans, trusts (as trustee or beneficiary), IRAs, 401(k)'s, pensions, and all other retirement plans, general or limited partnership interests, or similar ownership interests or investments, ownership of or interest in any joint venture, and including any Related Trusts (as defined below).

10.     "Mineral Interest" shall mean and refer to any interest in any mineral interest or oil and gas interest including any lease, royalty, well, working interest, well bore interest, overriding royalty interest, or equity position.

11.     "Person" shall mean and refer to any individual, corporation, company, proprietorship, partnership, trust, association, or other entity.

12.     "Personnel" shall mean and refer to any of the following persons with respect to a referenced person or entity: Insiders (as defined herein); Agents (as defined herein); representatives; servants; employees; officers; directors or managers; the Board of Directors; any individual shareholder or shareholders (or any holders of any equity interest); partner or partners; any accountant representing or providing services; or personal representatives.

13.     "Or" means and refers to and/or.

14.     "Real Property Interest" shall mean and refer to any real estate or interest in any real property in which you own or claim an interest (regardless of whether you acquired or received such real estate by inheritance, gift, or purchase), including (i) any interests in any oil and gas interest or mineral interest, including any mineral acreage owned and further including any lease, royalty, working interest, well bore interest, overriding royalty interest and/or equity position (ii) and option or any similar interest, (iii) any water rights or wind rights, (iv) any leases or interests in leases of any kind such as ground leases, grazing leases, or any other agricultural leases whether as (a) lessor or landlord or (b) lessee or tenant, and/or (v) any lien, encumbrance, or other debt or security related to any interest in real property.

15.     "Relating to" means concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

16.     "Related Trust" means and refers to any trust of which you, your spouse, or child, issue, ward, or dependent of you or your spouse any are a settlor, contributor, controller, trustee, or beneficiary on in which you, your spouse, or child, issue, ward, or dependent of you or your spouse own or claim any interest.

17.     "Response Date" shall mean and refer to the date on which You provide a response to these Discovery Requests / Requests for Production.

18.     "Rolling Stock" shall mean and refer to any automobiles, pickups, trucks, motor vehicles, motorcycles, travel trailers, motor homes, boats, airplanes, dozers, front end loaders, or any other rolling stock or similar equipment, and regardless of whether ownership is evidenced by a certificate of title.

19.     "Rules" shall mean and refer to the Texas Rules of Civil Procedure, the Federal Rules of Civil Procedure and/or the Federal Rules of Bankruptcy Procedure, as applicable.

20.     "Tools" shall men and refer to any goods or property other than inventory, farm products, consumer goods, or equipment.

21.     "You" or "yours" shall refer to the party to whom these Discovery Requests are being served and all agents and representatives, and all other persons acting on behalf of or purported to act on behalf of said person including the Agents and Personnel of such person.

## Specific Discovery Definitions

1.     "Debtor" means and refers to SHILO DION SANDERS**.**

2.     "Defendant" means and refers to SHILO DION SANDERS**.**

3.     "5430" the 5430 Alliance.

4.     "Judgment Debtor" means and refers to SHILO DION SANDERS**.**

5.     "NIL" means and refers to name, image, and likeness, and any right or interest in any property related thereto.

6.     "Period" shall mean and refer to the period of time from **September 17, 2015 through and until the present**.

7.     "Plummer" refers to Plummer Law Group, PC and/or Tabitha Plummer.

8.     "Related Entity" means and refers to any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by a person or entity, or with respect to which a person or entity is an Insider or possesses any beneficial interest.

9.     "Schwartz-Morini" means and refers to Constance Schwartz-Morini.

10.     "SMAC" means and refers to SMAC Entertainment LLC.

11.     "Subject Entity" shall mean and refer to each of the following:

a.     Big 21, LLC

b.     SS1 Legendary, LLC

c.     SS21, LLC;

d.     Headache Gang, LLC and,

e.     any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by Shilo Sanders, or with respect to which Shilo Sanders is or has been an Insider, and/or with respect to which Shilo Sanders possesses any beneficial interest.

12.     "UC" means and refers to the University of Colardo, the Athletic Department of the University of Colardo, and the football program of the University of Colardo.

*{continued on following sheet}*

# DOCUMENTS AND THINGS TO PRODUCE

1.      Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) Shilo Sanders and/or any Personnel of Shilo Sanders.

2.      Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) any Subject Entity and/or any Personnel of any Subject Entity.

3.      Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) Shilo Sanders.

4.      Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders.

5.      Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Subject Entity.

6.      Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Subject Entity.

7.      Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of any Subject Entity.

8.      Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders.

9.      Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Related Entity of Deion Sanders, and/or Shedeur Sanders, including any Insider or other Personnel thereof.

10.     Any documents or emails or other communications evidencing any contract or agreement between Shilo Sanders and any other person or entity, including but not limited to:

   a.      5430,
   b.      Plummer,
   c.      Schwartz-Morini,
   d.      SMAC,
   e.      UC,
   f.      any affiliate or subsidiary of any of the foregoing, or

EXHIBIT 001 TO SUBPOENA — Page 11
4857-4319-3575, v. 6

g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

11.    Any documents or emails or other communications evidencing any contract or agreement between Big 21 LLC and any other person or entity, including but not limited to:

a.    5430,
b.    Plummer,
c.    Schwartz-Morini,
d.    SMAC,
e.    UC,
f.    any affiliate or subsidiary of any of the foregoing, or
g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

12.    Any documents or emails or other communications evidencing any contract or agreement between SS1 Legendary LLC and any other person or entity, including but not limited to:

a.    5430,
b.    Plummer,
c.    Schwartz-Morini,
d.    SMAC,
e.    UC,
f.    any affiliate or subsidiary of any of the foregoing, or
g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

13.    Any documents or emails or other communications evidencing any contract or agreement between SS21 LLC and any other person or entity, including but not limited to:

a.    5430,
b.    Plummer,
c.    Schwartz-Morini,
d.    SMAC,
e.    UC,
f.    any affiliate or subsidiary of any of the foregoing, or
g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

14.    Any documents or emails or other communications evidencing any contract or agreement between Headache Gang LLC and any other person or entity, including but not limited to:

a.    5430,
b.    Plummer,

EXHIBIT 001 TO SUBPOENA — Page 12
4857-4319-3575, v. 6

**EXHIBIT DAR025 — Subpoena to 5430 Alliance**
**EXHIBIT 001 TO SUBPOENA**

    c.     Schwartz-Morini,
    d.     SMAC,
    e.     UC,
    f.     any affiliate or subsidiary of any of the foregoing, or
    g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

15.    Any documents or emails or other communications evidencing any contract or agreement between any other Subject Entity and any other person or entity, including but not limited to:

    a.     5430,
    b.     Plummer,
    c.     Schwartz-Morini,
    d.     SMAC,
    e.     UC,
    f.     any affiliate or subsidiary of any of the foregoing, or
    g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

16.    Any documents or emails or other communications evidencing any contract or agreement between (i) Shilo Sanders and (ii) any Subject Entity.

17.    Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Subject Entity and (ii) any other Subject Entity.

18.    Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) Shilo Sanders.

19.    Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) any Subject Entity.

20.    Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any agents, managers, attorneys, or representatives.

21.    Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any media company, social media outlet, brand, product, advertiser, agency, or any other similar party.

**EXHIBIT 001 TO SUBPOENA — Page 13**
4857-4319-3575, v. 6

**EXHIBIT 001 TO SUBPOENA**

22. Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service, of or relating to Shilo Sanders, between (i) any Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

23. Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service, of or relating to Shilo Sanders, between (i) any Insider Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

24. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Deion Sanders** or any Related Entity or Personnel of Deion Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

25. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Shedeur Sanders** or any Related Entity or Personnel of Shedeur Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

26. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **5430** or any Related Entity or Personnel of 5430 relating to (x) Shilo Sanders or (y) any Subject Entity.

27. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Plummer** or any Related Entity or Personnel of Plummer relating to (x) Shilo Sanders or (y) any Subject Entity.

28. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Schwartz-Morini** or any Related Entity or Personnel of Schwartz-Morini relating to (x) Shilo Sanders or (y) any Subject Entity.

29. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **SMAC** or any Related Entity or Personnel of SMAC relating to (x) Shilo Sanders or (y) any Subject Entity.

30. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **UC** or any Related Entity or Personnel of UC relating to (x) Shilo Sanders or (y) any Subject Entity.

31. Any documents or emails or other communications relating to any money, value, or any consideration _received by or on account of_ Shilo Sanders during the Period.

32. Any documents or emails or other communications relating to any money, value, or any consideration _received by or on account of_ any Subject Entity during the Period.

**EXHIBIT 001 TO SUBPOENA — Page 14**
4857-4319-3575, v. 6

33.     Any documents or emails or other communications relating to any money, value, or any consideration *received* *by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

34.     Any documents or emails or other communications relating to any money, value, or any consideration *received* *by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

35.     Any documents or emails or other communications relating to any money, value, or any consideration *earned* *by or on account of* Shilo Sanders during the Period.

36.     Any documents or emails or other communications relating to any money, value, or any consideration *earned* *by or on account of* any Subject Entity during the Period.

37.     Any documents or emails or other communications relating to any money, value, or any consideration *earned* *by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

38.     Any documents or emails or other communications relating to any money, value, or any consideration *earned* *by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

39.     Any documents or emails or other communications relating to any money, value, or any consideration *received* by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

40.     Any documents or emails or other communications relating to any money, value, or any consideration *earned* by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

41.     Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shilo Sanders or any Subject Entity that were managed or handled by you, your Personnel, or any Related Entity.

42.     Any documents or emails or other communications relating to any agreements, contracts, and deals involving Deion Sanders or Related Entity of Deion Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

43.     Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shedeur Sanders or Related Entity of Shedeur

**EXHIBIT 001 TO SUBPOENA — Page 15**
4857-4319-3575, v. 6

Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

44.     Any documents or email or other communications relating to any trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

45.     Any documents or email or other communications relating to any Related Trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

46.     Any documents or email or other communications evidencing any _assets or interest in any property_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

47.     Any documents or email or other communications evidencing any _Investment Asset_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

48.     Any documents or email or other communications evidencing any _Mineral Interest_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

49.     Any documents or email or other communications evidencing any _Real Property Interest_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

50.     Any documents or email or other communications evidencing any _Rolling Stock_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

51.     Any documents or email or other communications evidencing any _firearms_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

52.     Any documents or email or other communications evidencing any _jewelry_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

53.     Any documents or email or other communications evidencing any _designer clothing or accessories_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

54.     Any and all documents, information, and/or things produced by or on behalf of Shilo Sanders to the Chapter 7 Trustee appointed in the bankruptcy case of Shilo

**EXHIBIT 001 TO SUBPOENA — Page 16**
4857-4319-3575, v. 6

Sanders, Case No. 23-14859-MER; *In re Shilo Dion Sanders*, in the United States Bankruptcy Court for the District of Colorado.

EXHIBIT 001 TO SUBPOENA — Page 17
4857-4319-3575, v. 6

**EXHIBIT DAR026 — Subpoena to Blue Sprint Sports and Entertainment LLC**

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 23-14859 |
| SHILO DION SANDERS, | § | |
| | § | CHAPTER 7 |
| Debtor. | § | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS UNDER FED. R. BANKR. P. 2004

**To:** **Blue Sprint Sports and Entertainment LLC**
**Attn. Shawn Cable, Reg. Agent.**
**1120 North Town Center, Suite 160**
**Las Vegas NV 89144**

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the documents, electronically stored information, or objects, referenced and described in **EXHIBIT 001**, attached hereto and incorporated by reference herein, pursuant to Fed. R. Bank. P. 2004 and Local Bankruptcy Rule 2004.

| **Place:** | *Mathias Raphael PLLC*<br>*13101 Preston Road, Suite 501*<br>*Dallas, TX 75240* | Date and Time: *The thirtieth (30th) day following entry of the order of the Court permitting service of this Subpoena, which order is served with and/or attached to this subpoena,* or as otherwise may be agreed between the parties. |
|---|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   October ___, 2024

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorneys for John Darjean*

The name, address, e-mail address, and telephone number of the attorney representing *John Darjean* who issues or requests this subpoena, are:

Jeff Carruth (SBOT #24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
24 Greenway Plaza, Suite 2050, Houston, TX 77046
Telephone: (713) 341-1158, jcarruth@wkpz.com

---

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT DAR026 — Subpoena to Blue Sprint Sports and Entertainment LLC**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Bankruptcy Case     **23-14859**

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* | **Blue Sprint Sports and Entertainment LLC**

on *(date)* _____ .

I served the subpoena by delivering a copy to the following by ***certified mail, return receipt requested and regular mail*** on October __, 2024.

☒

> **Blue Sprint Sports and Entertainment LLC**
> **Attn. Shawn Cable, Reg. Agent.**
> **1120 North Town Center, Suite 160**
> **Las Vegas NV 89144**

I declare under penalty of perjury that this information is true.

Date: | October __, 2024

_____
*Server's signature*

Jeff Carruth, Attorney
*Printed name and title*

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
24 Greenway Plaza, Suite 2050, Houston, TX 77046
*Server's address*

Additional information regarding attempted service, etc.:

4867-1627-2103, v. 5

**EXHIBIT DAR026 — Subpoena to Blue Sprint Sports and Entertainment LLC**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT TO SUBPOENA

# EXHIBIT 001

### <u>INSTRUCTIONS</u>

1.      In no event should any Instruction, Definition, or Discovery Request be read to contradict the Rules.

2.      Unless otherwise specified, the relevant period of time for each Discovery Request is **<u>September 17, 2015,</u>** through and until the present.

3.      These instructions and definitions herein should be construed to require answers and/or production based upon the knowledge of, and information and documents available to the Debtor, as well as the Personnel (as defined below) of Debtor.

4.      It is intended that the following Discovery Requests will not solicit any material protected either by the attorney/client privilege or the work-product doctrine that was created by, or developed by, counsel for Debtor after the date on which the relevant litigation was commenced. If any inquiry is susceptible to a construction that calls for the production of such material, or for material claimed to be protected under the attorney/client privilege, that material need not be provided but a privilege log pursuant will be required as to all such material.

5.      With respect to any Document that is produced:

a.      Each Document produced pursuant to this request should be identified in such production by the paragraph of the request with respect to which it is produced.

b.      If any privilege, exemption, or immunity is claimed as a basis for withholding production of one or more Documents, then please state:

i.      the particular basis for withholding the Document;

ii.      the author(s) of the Document;

iii.      the form of the Document;

iv.      the date of the Document;

v.      the identity of all persons who have seen the Document; and;

vi.      the general subject matter of the Document.

c.      Documents which, when regularly maintained, are stapled, clipped, or otherwise physically attached to other Documents are to be produced in their stapled, clipped, or otherwise physically attached form.

d.      If a Document or a group of Documents is taken out of a file folder, file drawer, notebook, or other identifiable storage facility, please attach thereto a copy of the label of the file folder, file drawer, etc., so that the location of each such Document in your files can be determined.

e.      If any such responsive Document has been lost, discarded, or destroyed, you must identify such Document as completely as possible, including the following information:

i.      the type of Document;

ii.      the date of the Document;

  iii.  the date or approximate date the Document was lost, discarded, or destroyed;

  iv.  the circumstances or manner in which it was lost, discarded, or destroyed;

  v.  the reason or reasons for disposing of the Document (if the Document was discarded or destroyed);

  vi.  the identity of all Persons authorizing or having knowledge of the circumstances surrounding disposal of the Document;

  vii.  the identity of the Persons who lost, discarded, or destroyed the Document; and

  viii.  the identity of all Persons having knowledge of the contents of the Document.

  f.  If you have previously produced to another party any such responsive Documents and you believe that such production is accessible to the party serving these Discovery Requests, you should so specify.

  6.  These Discovery Requests are continuing in character so as to require that supplemental answers be served seasonably if further or different information is obtained with respect to any Discovery Request.  Consequently, these Discovery Requests require supplementation if you obtain further information or documents after the answers are served and prior to satisfaction of the judgment.

  7.  The answers to the Interrogatories, as applicable, and other Discovery Requests should be complete and candid.  To the extent any information called for by these Interrogatories is unknown to you, so state, and set forth whatever information you have regarding that Interrogatory.  If any estimate can reasonably be made, please set forth your best estimate, clearly designated as such.

  8.  No part of a Discovery Request should be left unanswered merely because an objection is interposed to another part of the Discovery Request.  If a partial or incomplete answer is provided, state that the answer is partial or incomplete.

  9.  If, in answering these Discovery Requests, you encounter any ambiguities when construing a question, instruction, or definition, then your answer shall set forth the matter deemed ambiguous, and the construction used in answering.

  10.  You must serve your answers or objections to these Discovery Requests upon the undersigned counsel on the ***thirtieth (30th)*** day after these Discovery Requests were served upon you.

  11.  Headings are for convenience only and should not be read to limit the scope of any Discovery Request.

  12.  Please contact the undersigned if you would like an electronic copy of this discovery to aid in the preparation of responses.  In any event, the hard copy of this discovery served upon you shall be the controlling copy.

**EXHIBIT DAR026 — Subpoena to Blue Sprint Sports and Entertainment LLC**
**EXHIBIT 001 TO SUBPOENA**

## DEFINITIONS AND CONSTRUCTION OF WORDS

1.      All words contained in the Discovery Requests shall have their normal contextual meaning unless otherwise defined herein and should be read in a manner to provide a complete answer to each Discovery Requests. ***Words need not be capitalized in order to be controlled by the meaning of such word(s) as defined herein.***

2.      Wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender.

3.      Additional definitions for or relating to the parties to this action may appear in the introductory paragraphs of this document.

### General Discovery Definitions

1.      "Agent" shall mean any agent, representative, employee, officer, director, attorney, independent contractor or any other Person acting at the direction of or on behalf of another.

2.      "And" or "each", "all", and "any" shall be construed as necessary in each case to make each document request inclusive, rather than exclusive.

3.      "Communication" shall mean and refer to any transmittal or information by any means, including, without limitation, any oral, written, or electronically recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, any correspondence, conversations, telephone calls or other voice or audio interaction, text or SMS messages, chat sessions, dialogues, discussions, interviews, consultations, agreements, or any other understandings between or among two or more Persons or any Document that recorded or reflected any such Communication."

4.      "Discovery Requests" shall mean and refer to this discovery instrument and, as applicable, any interrogatories, requests for admissions, requests for production, and/or requests for inspection contained herein.

5.      "Document" shall mean and include all documents and tangible things to the very broadest extent included within the scope of the Rules, including, but not limited to, the originals and all drafts and copies, together with any annotations or highlighted copies containing all or part of the information requested, in the possession, custody or control of You, Your attorneys, representative, employees, agents, or any other natural person or business or legal entity acting or purporting to act for or on Your behalf, or their respective Personnel as the case may be.  Also, the term "Document" or "writing" means any medium whatsoever, including all electronic, recorded and digital media of any kind, upon which intelligence or information can be recorded, or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any written material, correspondence, electronic mail, text or SMS messages, chat sessions, note file, book, pamphlet, printout, chart, record, report, periodical, letter, memorandum, (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, draft, working paper, chart, paper, print, drawing, sketch, graph,

index, list, and any written, recorded, transcribed, punched, taped, filmed or graphic matter whatsoever, however produced or reproduced, which is in your possession, custody, or control or which was, but is no longer, in Your possession, custody, or control. The term "Document" or "writing" shall also include all copies or drafts of Documents by whatever means made, including specifically but not exclusively, those copies bearing commentary or notations not appearing on the original.

6.      "Equipment" shall mean and refer to any goods or property other than inventory, farm products, consumer goods, or tools.

7.      "Identify" shall have the following meanings.

   a.   When referring to a person, to state the full current name, residence, and business addresses, and residence and business telephone numbers of the person about whom information is sought, as well as that person's present or last known employer, that person's office or title, if any, and that person's job description. If any of this information was different at the time with which the Interrogatories are concerned, state also such different information as applies to the time in question;

   b.   When referring to a business entity or firm (e.g., a corporation, partnership, limited partnership, law firm, etc.), to state the full name of such business, entity or firm, and the address of its principal place of business;

   c.   When referring to a document, to state its date, title, a brief description, subject matter, addressee or others receiving a copy, and author;

   d.   When referring to an act, communication, occurrence, statement or conduct, to state the substance of the event constituting such act and the date when such act occurred, persons participating in such act, all persons present when such act occurred, and a description of any record of such act;

   e.   When referring to dates, to state the date each such activity began and the date it ended; and

   f.   Any specific meaning provided in an Interrogatory.

8.      "Insider" (A) with respect to a debtor, shall mean and refer to any (i) member or director of the debtor, (ii) any officer or manager of the debtor, (iii) any person in control of the debtor, or (iv) any relative of any such member, director, manager, officer, or person in control; and (B) with respect to any individual, shall have the same meaning as found in 11 U.S.C. §101.

9.      "Investment Asset" shall mean and refer to stocks, bonds, securities, notes, accounts, mortgages, certificates of deposit / CDs, annuities, life insurance policies, profit sharing plans, trusts (as trustee or beneficiary), IRAs, 401(k)'s, pensions, and all other retirement plans, general or limited partnership interests, or similar ownership interests or investments, ownership of or interest in any joint venture, and including any Related Trusts (as defined below).

10.     "Mineral Interest" shall mean and refer to any interest in any mineral interest or oil and gas interest including any lease, royalty, well, working interest, well bore interest, overriding royalty interest, or equity position.

11.     "Person" shall mean and refer to any individual, corporation, company, proprietorship, partnership, trust, association, or other entity.

12.     "Personnel" shall mean and refer to any of the following persons with respect to a referenced person or entity: Insiders (as defined herein); Agents (as defined herein); representatives; servants; employees; officers; directors or managers; the Board of Directors; any individual shareholder or shareholders (or any holders of any equity interest); partner or partners; any accountant representing or providing services; or personal representatives.

13.     "Or" means and refers to and/or.

14.     "Real Property Interest" shall mean and refer to any real estate or interest in any real property in which you own or claim an interest (regardless of whether you acquired or received such real estate by inheritance, gift, or purchase), including (i) any interests in any oil and gas interest or mineral interest, including any mineral acreage owned and further including any lease, royalty, working interest, well bore interest, overriding royalty interest and/or equity position (ii) and option or any similar interest, (iii) any water rights or wind rights, (iv) any leases or interests in leases of any kind such as ground leases, grazing leases, or any other agricultural leases whether as (a) lessor or landlord or (b) lessee or tenant, and/or (v) any lien, encumbrance, or other debt or security related to any interest in real property.

15.     "Relating to" means concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

16.     "Related Trust" means and refers to any trust of which you, your spouse, or child, issue, ward, or dependent of you or your spouse any are a settlor, contributor, controller, trustee, or beneficiary on in which you, your spouse, or child, issue, ward, or dependent of you or your spouse own or claim any interest.

17.     "Response Date" shall mean and refer to the date on which You provide a response to these Discovery Requests / Requests for Production.

18.     "Rolling Stock" shall mean and refer to any automobiles, pickups, trucks, motor vehicles, motorcycles, travel trailers, motor homes, boats, airplanes, dozers, front end loaders, or any other rolling stock or similar equipment, and regardless of whether ownership is evidenced by a certificate of title.

19.     "Rules" shall mean and refer to the Texas Rules of Civil Procedure, the Federal Rules of Civil Procedure and/or the Federal Rules of Bankruptcy Procedure, as applicable.

20.     "Tools" shall men and refer to any goods or property other than inventory, farm products, consumer goods, or equipment.

21.     "You" or "yours" shall refer to the party to whom these Discovery Requests are being served and all agents and representatives, and all other persons acting on behalf of or purported to act on behalf of said person including the Agents and Personnel of such person.

### **Specific Discovery Definitions**

1.      "Debtor" means and refers to SHILO DION SANDERS**.**

2.      "Defendant" means and refers to SHILO DION SANDERS**.**

3.      "5430" the 5430 Alliance.

4.      "Judgment Debtor" means and refers to SHILO DION SANDERS**.**

5.      "NIL" means and refers to name, image, and likeness, and any right or interest in any property related thereto.

6.      "Period" shall mean and refer to the period of time from **September 17, 2015 through and until the present**.

7.      "Plummer" refers to Plummer Law Group, PC and/or Tabitha Plummer.

8.      "Related Entity" means and refers to any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by a person or entity, or with respect to which a person or entity is an Insider or possesses any beneficial interest.

9.      "Schwartz-Morini" means and refers to Constance Schwartz-Morini.

10.     "SMAC" means and refers to SMAC Entertainment LLC.

11.     "Subject Entity" shall mean and refer to each of the following:

    a.      Big 21, LLC

    b.      SS1 Legendary, LLC

    c.      SS21, LLC;

    d.      Headache Gang, LLC and,

    e.      any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by Shilo Sanders, or with respect to which Shilo Sanders is or has been an Insider, and/or with respect to which Shilo Sanders possesses any beneficial interest.

12.     "UC" means and refers to the University of Colardo, the Athletic Department of the University of Colardo, and the football program of the University of Colardo.


*{continued on following sheet}*

# DOCUMENTS AND THINGS TO PRODUCE

1.    Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) Shilo Sanders and/or any Personnel of Shilo Sanders.

2.    Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) any Subject Entity and/or any Personnel of any Subject Entity.

3.    Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) Shilo Sanders.

4.    Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders.

5.    Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Subject Entity.

6.    Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Subject Entity.

7.    Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of any Subject Entity.

8.    Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders.

9.    Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Related Entity of Deion Sanders, and/or Shedeur Sanders, including any Insider or other Personnel thereof.

10.   Any documents or emails or other communications evidencing any contract or agreement between Shilo Sanders and any other person or entity, including but not limited to:

   a.    5430,
   b.    Plummer,
   c.    Schwartz-Morini,
   d.    SMAC,
   e.    UC,
   f.    any affiliate or subsidiary of any of the foregoing, or

EXHIBIT 001 TO SUBPOENA — Page 11
4867-1627-2103, v. 5

g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

11.     Any documents or emails or other communications evidencing any contract or agreement between Big 21 LLC and any other person or entity, including but not limited to:

a.     5430,
b.     Plummer,
c.     Schwartz-Morini,
d.     SMAC,
e.     UC,
f.     any affiliate or subsidiary of any of the foregoing, or
g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

12.     Any documents or emails or other communications evidencing any contract or agreement between SS1 Legendary LLC and any other person or entity, including but not limited to:

a.     5430,
b.     Plummer,
c.     Schwartz-Morini,
d.     SMAC,
e.     UC,
f.     any affiliate or subsidiary of any of the foregoing, or
g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

13.     Any documents or emails or other communications evidencing any contract or agreement between SS21 LLC and any other person or entity, including but not limited to:

a.     5430,
b.     Plummer,
c.     Schwartz-Morini,
d.     SMAC,
e.     UC,
f.     any affiliate or subsidiary of any of the foregoing, or
g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

14.     Any documents or emails or other communications evidencing any contract or agreement between Headache Gang LLC and any other person or entity, including but not limited to:

a.     5430,
b.     Plummer,

EXHIBIT 001 TO SUBPOENA — Page 12
4867-1627-2103, v. 5

    c.     Schwartz-Morini,
    d.     SMAC,
    e.     UC,
    f.     any affiliate or subsidiary of any of the foregoing, or
    g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

15.    Any documents or emails or other communications evidencing any contract or agreement between any other Subject Entity and any other person or entity, including but not limited to:

    a.     5430,
    b.     Plummer,
    c.     Schwartz-Morini,
    d.     SMAC,
    e.     UC,
    f.     any affiliate or subsidiary of any of the foregoing, or
    g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

16.    Any documents or emails or other communications evidencing any contract or agreement between (i) Shilo Sanders and (ii) any Subject Entity.

17.    Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Subject Entity and (ii) any other Subject Entity.

18.    Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) Shilo Sanders.

19.    Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) any Subject Entity.

20.    Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any agents, managers, attorneys, or representatives.

21.    Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any media company, social media outlet, brand, product, advertiser, agency, or any other similar party.

**EXHIBIT 001 TO SUBPOENA — Page 13**
4867-1627-2103, v. 5

22.    Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service, of or relating to Shilo Sanders, between (i) any Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

23.    Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service, of or relating to Shilo Sanders, between (i) any Insider Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

24.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Deion Sanders** or any Related Entity or Personnel of Deion Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

25.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Shedeur Sanders** or any Related Entity or Personnel of Shedeur Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

26.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **5430** or any Related Entity or Personnel of 5430 relating to (x) Shilo Sanders or (y) any Subject Entity.

27.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Plummer** or any Related Entity or Personnel of Plummer relating to (x) Shilo Sanders or (y) any Subject Entity.

28.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Schwartz-Morini** or any Related Entity or Personnel of Schwartz-Morini relating to (x) Shilo Sanders or (y) any Subject Entity.

29.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **SMAC** or any Related Entity or Personnel of SMAC relating to (x) Shilo Sanders or (y) any Subject Entity.

30.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **UC** or any Related Entity or Personnel of UC relating to (x) Shilo Sanders or (y) any Subject Entity.

31.    Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* Shilo Sanders during the Period.

32.    Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* any Subject Entity during the Period.

**EXHIBIT 001 TO SUBPOENA — Page 14**
4867-1627-2103, v. 5

33.     Any documents or emails or other communications relating to any money, value, or any consideration *received* by or on account of any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

34.     Any documents or emails or other communications relating to any money, value, or any consideration *received* by or on account of any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

35.     Any documents or emails or other communications relating to any money, value, or any consideration *earned* by or on account of Shilo Sanders during the Period.

36.     Any documents or emails or other communications relating to any money, value, or any consideration *earned* by or on account of any Subject Entity during the Period.

37.     Any documents or emails or other communications relating to any money, value, or any consideration *earned* by or on account of any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

38.     Any documents or emails or other communications relating to any money, value, or any consideration *earned* by or on account of any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

39.     Any documents or emails or other communications relating to any money, value, or any consideration *received* by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

40.     Any documents or emails or other communications relating to any money, value, or any consideration *earned* by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

41.     Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shilo Sanders or any Subject Entity that were managed or handled by you, your Personnel, or any Related Entity.

42.     Any documents or emails or other communications relating to any agreements, contracts, and deals involving Deion Sanders or Related Entity of Deion Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

43.     Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shedeur Sanders or Related Entity of Shedeur

**EXHIBIT 001 TO SUBPOENA — Page 15**
4867-1627-2103, v. 5

Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

44. Any documents or email or other communications relating to any trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

45. Any documents or email or other communications relating to any Related Trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

46. Any documents or email or other communications evidencing any _assets or interest in any property_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

47. Any documents or email or other communications evidencing any _Investment Asset_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

48. Any documents or email or other communications evidencing any _Mineral Interest_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

49. Any documents or email or other communications evidencing any _Real Property Interest_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

50. Any documents or email or other communications evidencing any _Rolling Stock_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

51. Any documents or email or other communications evidencing any _firearms_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

52. Any documents or email or other communications evidencing any _jewelry_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

53. Any documents or email or other communications evidencing any _designer clothing or accessories_ of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

54. Any and all documents, information, and/or things produced by or on behalf of Shilo Sanders to the Chapter 7 Trustee appointed in the bankruptcy case of Shilo

**EXHIBIT 001 TO SUBPOENA — Page 16**
4867-1627-2103, v. 5

Sanders, Case No. 23-14859-MER; *In re Shilo Dion Sanders*, in the United States Bankruptcy Court for the District of Colorado.

**EXHIBIT 001 TO SUBPOENA — Page 17**
4867-1627-2103, v. 5

**EXHIBIT DAR027 — Subpoena to Tabitha Plummer**

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 23-14859** |
| **SHILO DION SANDERS,** | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS UNDER FED. R. BANKR. P. 2004**

**To:**  **Tabitha Plummer**
**16255 Ventura Blvd**
**Suite 625**
**Encino CA 91436**

☑ *__Production:__* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the documents, electronically stored information, or objects, referenced and described in **EXHIBIT 001**, attached hereto and incorporated by reference herein, pursuant to Fed. R. Bank. P. 2004 and Local Bankruptcy Rule 2004.

| Place: | *Mathias Raphael PLLC* *13101 Preston Road, Suite 501* *Dallas, TX 75240* | Date and Time: *__The thirtieth (30th) day following entry of the order of the Court permitting service of this Subpoena, which order is served with and/or attached to this subpoena,__* or as otherwise may be agreed between the parties. |
|---|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    October __, 2024

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorneys for John Darjean*

The name, address, e-mail address, and telephone number of the attorney representing *John Darjean* who issues or requests this subpoena, are:

Jeff Carruth (SBOT #24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
24 Greenway Plaza, Suite 2050, Houston, TX 77046
Telephone: (713) 341-1158, jcarruth@wkpz.com

---

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

---

4880-0811-7735, v. 7

**EXHIBIT DAR027 — Subpoena to Tabitha Plummer**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Bankruptcy Case      **23-14859**

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)*      | **Tabitha Plummer** |

on *(date)* | _____ | .

I served the subpoena by delivering a copy to the following by ***certified mail, return receipt requested and regular mail*** on October ___, 2024.

☒

    **Tabitha Plummer**
    **16255 Ventura Blvd**
    **Suite 625**
    **Encino CA 91436**

I declare under penalty of perjury that this information is true.

Date: | October ___, 2024 |

| |
*Server's signature*

| Jeff Carruth, Attorney |
*Printed name and title*

| WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
24 Greenway Plaza, Suite 2050, Houston, TX 77046 |
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT TO SUBPOENA

# EXHIBIT 001

## INSTRUCTIONS

1.      In no event should any Instruction, Definition, or Discovery Request be read to contradict the Rules.

2.      Unless otherwise specified, the relevant period of time for each Discovery Request is **September 17, 2015,** through and until the present.

3.      These instructions and definitions herein should be construed to require answers and/or production based upon the knowledge of, and information and documents available to the Debtor, as well as the Personnel (as defined below) of Debtor.

4.      It is intended that the following Discovery Requests will not solicit any material protected either by the attorney/client privilege or the work-product doctrine that was created by, or developed by, counsel for Debtor after the date on which the relevant litigation was commenced. If any inquiry is susceptible to a construction that calls for the production of such material, or for material claimed to be protected under the attorney/client privilege, that material need not be provided but a privilege log pursuant will be required as to all such material.

5.      With respect to any Document that is produced:

a.      Each Document produced pursuant to this request should be identified in such production by the paragraph of the request with respect to which it is produced.

b.      If any privilege, exemption, or immunity is claimed as a basis for withholding production of one or more Documents, then please state:

i.      the particular basis for withholding the Document;

ii.      the author(s) of the Document;

iii.      the form of the Document;

iv.      the date of the Document;

v.      the identity of all persons who have seen the Document; and;

vi.      the general subject matter of the Document.

c.      Documents which, when regularly maintained, are stapled, clipped, or otherwise physically attached to other Documents are to be produced in their stapled, clipped, or otherwise physically attached form.

d.      If a Document or a group of Documents is taken out of a file folder, file drawer, notebook, or other identifiable storage facility, please attach thereto a copy of the label of the file folder, file drawer, etc., so that the location of each such Document in your files can be determined.

e.      If any such responsive Document has been lost, discarded, or destroyed, you must identify such Document as completely as possible, including the following information:

i.      the type of Document;

ii.      the date of the Document;

iii.     the date or approximate date the Document was lost, discarded, or destroyed;

iv.     the circumstances or manner in which it was lost, discarded, or destroyed;

v.     the reason or reasons for disposing of the Document (if the Document was discarded or destroyed);

vi.     the identity of all Persons authorizing or having knowledge of the circumstances surrounding disposal of the Document;

vii.     the identity of the Persons who lost, discarded, or destroyed the Document; and

viii.     the identity of all Persons having knowledge of the contents of the Document.

f.     If you have previously produced to another party any such responsive Documents and you believe that such production is accessible to the party serving these Discovery Requests, you should so specify.

6.     These Discovery Requests are continuing in character so as to require that supplemental answers be served seasonably if further or different information is obtained with respect to any Discovery Request.   Consequently, these Discovery Requests require supplementation if you obtain further information or documents after the answers are served and prior to satisfaction of the judgment.

7.     The answers to the Interrogatories, as applicable, and other Discovery Requests should be complete and candid.   To the extent any information called for by these Interrogatories is unknown to you, so state, and set forth whatever information you have regarding that Interrogatory.   If any estimate can reasonably be made, please set forth your best estimate, clearly designated as such.

8.     No part of a Discovery Request should be left unanswered merely because an objection is interposed to another part of the Discovery Request.   If a partial or incomplete answer is provided, state that the answer is partial or incomplete.

9.     If, in answering these Discovery Requests, you encounter any ambiguities when construing a question, instruction, or definition, then your answer shall set forth the matter deemed ambiguous, and the construction used in answering.

10.     You must serve your answers or objections to these Discovery Requests upon the undersigned counsel on the ***thirtieth (30th)*** day after these Discovery Requests were served upon you.

11.     Headings are for convenience only and should not be read to limit the scope of any Discovery Request.

12.     Please contact the undersigned if you would like an electronic copy of this discovery to aid in the preparation of responses.   In any event, the hard copy of this discovery served upon you shall be the controlling copy.

**EXHIBIT 001 TO SUBPOENA**

## DEFINITIONS AND CONSTRUCTION OF WORDS

1.      All words contained in the Discovery Requests shall have their normal contextual meaning unless otherwise defined herein and should be read in a manner to provide a complete answer to each Discovery Requests. ***Words need not be capitalized in order to be controlled by the meaning of such word(s) as defined herein.***

2.      Wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender.

3.      Additional definitions for or relating to the parties to this action may appear in the introductory paragraphs of this document.

### General Discovery Definitions

1.      "Agent" shall mean any agent, representative, employee, officer, director, attorney, independent contractor or any other Person acting at the direction of or on behalf of another.

2.      "And" or "each", "all", and "any" shall be construed as necessary in each case to make each document request inclusive, rather than exclusive.

3.      "Communication" shall mean and refer to any transmittal or information by any means, including, without limitation, any oral, written, or electronically recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, any correspondence, conversations, telephone calls or other voice or audio interaction, text or SMS messages, chat sessions, dialogues, discussions, interviews, consultations, agreements, or any other understandings between or among two or more Persons or any Document that recorded or reflected any such Communication."

4.      "Discovery Requests" shall mean and refer to this discovery instrument and, as applicable, any interrogatories, requests for admissions, requests for production, and/or requests for inspection contained herein.

5.      "Document" shall mean and include all documents and tangible things to the very broadest extent included within the scope of the Rules, including, but not limited to, the originals and all drafts and copies, together with any annotations or highlighted copies containing all or part of the information requested, in the possession, custody or control of You, Your attorneys, representative, employees, agents, or any other natural person or business or legal entity acting or purporting to act for or on Your behalf, or their respective Personnel as the case may be.  Also, the term "Document" or "writing" means any medium whatsoever, including all electronic, recorded and digital media of any kind, upon which intelligence or information can be recorded, or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any written material, correspondence, electronic mail, text or SMS messages, chat sessions, note file, book, pamphlet, printout, chart, record, report, periodical, letter, memorandum, (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, draft, working paper, chart, paper, print, drawing, sketch, graph,

index, list, and any written, recorded, transcribed, punched, taped, filmed or graphic matter whatsoever, however produced or reproduced, which is in your possession, custody, or control or which was, but is no longer, in Your possession, custody, or control. The term "Document" or "writing" shall also include all copies or drafts of Documents by whatever means made, including specifically but not exclusively, those copies bearing commentary or notations not appearing on the original.

6.      "Equipment" shall mean and refer to any goods or property other than inventory, farm products, consumer goods, or tools.

7.      "Identify" shall have the following meanings.

   a.      When referring to a person, to state the full current name, residence, and business addresses, and residence and business telephone numbers of the person about whom information is sought, as well as that person's present or last known employer, that person's office or title, if any, and that person's job description. If any of this information was different at the time with which the Interrogatories are concerned, state also such different information as applies to the time in question;

   b.      When referring to a business entity or firm (e.g., a corporation, partnership, limited partnership, law firm, etc.), to state the full name of such business, entity or firm, and the address of its principal place of business;

   c.      When referring to a document, to state its date, title, a brief description, subject matter, addressee or others receiving a copy, and author;

   d.      When referring to an act, communication, occurrence, statement or conduct, to state the substance of the event constituting such act and the date when such act occurred, persons participating in such act, all persons present when such act occurred, and a description of any record of such act;

   e.      When referring to dates, to state the date each such activity began and the date it ended; and

   f.      Any specific meaning provided in an Interrogatory.

8.      "Insider" (A) with respect to a debtor, shall mean and refer to any (i) member or director of the debtor, (ii) any officer or manager of the debtor, (iii) any person in control of the debtor, or (iv) any relative of any such member, director, manager, officer, or person in control; and (B) with respect to any individual, shall have the same meaning as found in 11 U.S.C. §101.

9.      "Investment Asset" shall mean and refer to stocks, bonds, securities, notes, accounts, mortgages, certificates of deposit / CDs, annuities, life insurance policies, profit sharing plans, trusts (as trustee or beneficiary), IRAs, 401(k)'s, pensions, and all other retirement plans, general or limited partnership interests, or similar ownership interests or investments, ownership of or interest in any joint venture, and including any Related Trusts (as defined below).

10.     "Mineral Interest" shall mean and refer to any interest in any mineral interest or oil and gas interest including any lease, royalty, well, working interest, well bore interest, overriding royalty interest, or equity position.

11.     "Person" shall mean and refer to any individual, corporation, company, proprietorship, partnership, trust, association, or other entity.

12.     "Personnel" shall mean and refer to any of the following persons with respect to a referenced person or entity: Insiders (as defined herein); Agents (as defined herein); representatives; servants; employees; officers; directors or managers; the Board of Directors; any individual shareholder or shareholders (or any holders of any equity interest); partner or partners; any accountant representing or providing services; or personal representatives.

13.     "Or" means and refers to and/or.

14.     "Real Property Interest" shall mean and refer to any real estate or interest in any real property in which you own or claim an interest (regardless of whether you acquired or received such real estate by inheritance, gift, or purchase), including (i) any interests in any oil and gas interest or mineral interest, including any mineral acreage owned and further including any lease, royalty, working interest, well bore interest, overriding royalty interest and/or equity position (ii) and option or any similar interest, (iii) any water rights or wind rights, (iv) any leases or interests in leases of any kind such as ground leases, grazing leases, or any other agricultural leases whether as (a) lessor or landlord or (b) lessee or tenant, and/or (v) any lien, encumbrance, or other debt or security related to any interest in real property.

15.     "Relating to" means concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

16.     "Related Trust" means and refers to any trust of which you, your spouse, or child, issue, ward, or dependent of you or your spouse any are a settlor, contributor, controller, trustee, or beneficiary on in which you, your spouse, or child, issue, ward, or dependent of you or your spouse own or claim any interest.

17.     "Response Date" shall mean and refer to the date on which You provide a response to these Discovery Requests / Requests for Production.

18.     "Rolling Stock" shall mean and refer to any automobiles, pickups, trucks, motor vehicles, motorcycles, travel trailers, motor homes, boats, airplanes, dozers, front end loaders, or any other rolling stock or similar equipment, and regardless of whether ownership is evidenced by a certificate of title.

19.     "Rules" shall mean and refer to the Texas Rules of Civil Procedure, the Federal Rules of Civil Procedure and/or the Federal Rules of Bankruptcy Procedure, as applicable.

20.     "Tools" shall men and refer to any goods or property other than inventory, farm products, consumer goods, or equipment.

21.     "You" or "yours" shall refer to the party to whom these Discovery Requests are being served and all agents and representatives, and all other persons acting on behalf of or purported to act on behalf of said person including the Agents and Personnel of such person.

### Specific Discovery Definitions

1.      "Debtor" means and refers to SHILO DION SANDERS**.**

2.      "Defendant" means and refers to SHILO DION SANDERS**.**

3.      "5430" the 5430 Alliance.

4.      "Judgment Debtor" means and refers to SHILO DION SANDERS**.**

5.      "NIL" means and refers to name, image, and likeness, and any right or interest in any property related thereto.

6.      "Period" shall mean and refer to the period of time from **September 17, 2015 through and until the present**.

7.      "Plummer" refers to Plummer Law Group, PC and/or Tabitha Plummer.

8.      "Related Entity" means and refers to any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by a person or entity, or with respect to which a person or entity is an Insider or possesses any beneficial interest.

9.      "Schwartz-Morini" means and refers to Constance Schwartz-Morini.

10.     "SMAC" means and refers to SMAC Entertainment LLC.

11.     "Subject Entity" shall mean and refer to each of the following:

   a.     Big 21, LLC

   b.     SS1 Legendary, LLC

   c.     SS21, LLC;

   d.     Headache Gang, LLC and,

   e.     any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by Shilo Sanders, or with respect to which Shilo Sanders is or has been an Insider, and/or with respect to which Shilo Sanders possesses any beneficial interest.

12.     "UC" means and refers to the University of Colardo, the Athletic Department of the University of Colardo, and the football program of the University of Colardo.

*{continued on following sheet}*

# DOCUMENTS AND THINGS TO PRODUCE

1.     Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) Shilo Sanders and/or any Personnel of Shilo Sanders.

2.     Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) any Subject Entity and/or any Personnel of any Subject Entity.

3.     Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) Shilo Sanders.

4.     Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders.

5.     Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Subject Entity.

6.     Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Subject Entity.

7.     Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of any Subject Entity.

8.     Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders.

9.     Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Related Entity of Deion Sanders, and/or Shedeur Sanders, including any Insider or other Personnel thereof.

10.    Any documents or emails or other communications evidencing any contract or agreement between Shilo Sanders and any other person or entity, including but not limited to:

   a.     5430,
   b.     Plummer,
   c.     Schwartz-Morini,
   d.     SMAC,
   e.     UC,
   f.     any affiliate or subsidiary of any of the foregoing, or
   g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

EXHIBIT 001 TO SUBPOENA — Page 11
4880-0811-7735, v. 7

11.    Any documents or emails or other communications evidencing any contract or agreement between Big 21 LLC and any other person or entity, including but not limited to:

    a.    5430,
    b.    Plummer,
    c.    Schwartz-Morini,
    d.    SMAC,
    e.    UC,
    f.    any affiliate or subsidiary of any of the foregoing, or
    g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

12.    Any documents or emails or other communications evidencing any contract or agreement between SS1 Legendary LLC and any other person or entity, including but not limited to:

    a.    5430,
    b.    Plummer,
    c.    Schwartz-Morini,
    d.    SMAC,
    e.    UC,
    f.    any affiliate or subsidiary of any of the foregoing, or
    g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

13.    Any documents or emails or other communications evidencing any contract or agreement between SS21 LLC and any other person or entity, including but not limited to:

    a.    5430,
    b.    Plummer,
    c.    Schwartz-Morini,
    d.    SMAC,
    e.    UC,
    f.    any affiliate or subsidiary of any of the foregoing, or
    g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

14.    Any documents or emails or other communications evidencing any contract or agreement between Headache Gang LLC and any other person or entity, including but not limited to:

    a.    5430,
    b.    Plummer,
    c.    Schwartz-Morini,
    d.    SMAC,
    e.    UC,

EXHIBIT 001 TO SUBPOENA — Page 12
4880-0811-7735, v. 7

  f.  any affiliate or subsidiary of any of the foregoing, or

  g.  any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

15.  Any documents or emails or other communications evidencing any contract or agreement between any other Subject Entity and any other person or entity, including but not limited to:

  a.  5430,

  b.  Plummer,

  c.  Schwartz-Morini,

  d.  SMAC,

  e.  UC,

  f.  any affiliate or subsidiary of any of the foregoing, or

  g.  any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

16.  Any documents or emails or other communications evidencing any contract or agreement between (i) Shilo Sanders and (ii) any Subject Entity.

17.  Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Subject Entity and (ii) any other Subject Entity.

18.  Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) Shilo Sanders.

19.  Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) any Subject Entity.

20.  Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any agents, managers, attorneys, or representatives.

21.  Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any media company, social media outlet, brand, product, advertiser, agency, or any other similar party.

22.  Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service, of or relating to Shilo Sanders, between (i) any Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

EXHIBIT 001 TO SUBPOENA — Page 13
4880-0811-7735, v. 7

23.    Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service, of or relating to Shilo Sanders, between (i) any Insider Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

24.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Deion Sanders** or any Related Entity or Personnel of Deion Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

25.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Shedeur Sanders** or any Related Entity or Personnel of Shedeur Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

26.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **5430** or any Related Entity or Personnel of 5430 relating to (x) Shilo Sanders or (y) any Subject Entity.

27.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Plummer** or any Related Entity or Personnel of Plummer relating to (x) Shilo Sanders or (y) any Subject Entity.

28.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Schwartz-Morini** or any Related Entity or Personnel of Schwartz-Morini relating to (x) Shilo Sanders or (y) any Subject Entity.

29.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **SMAC** or any Related Entity or Personnel of SMAC relating to (x) Shilo Sanders or (y) any Subject Entity.

30.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **UC** or any Related Entity or Personnel of UC relating to (x) Shilo Sanders or (y) any Subject Entity.

31.    Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* Shilo Sanders during the Period.

32.    Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* any Subject Entity during the Period.

33.    Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

34.    Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on

**EXHIBIT 001 TO SUBPOENA — Page 14**
4880-0811-7735, v. 7

account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

35. Any documents or emails or other communications relating to any money, value, or any consideration *earned by or on account of* Shilo Sanders during the Period.

36. Any documents or emails or other communications relating to any money, value, or any consideration *earned by or on account of* any Subject Entity during the Period.

37. Any documents or emails or other communications relating to any money, value, or any consideration *earned by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

38. Any documents or emails or other communications relating to any money, value, or any consideration *earned by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

39. Any documents or emails or other communications relating to any money, value, or any consideration *received* by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

40. Any documents or emails or other communications relating to any money, value, or any consideration *earned* by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

41. Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shilo Sanders or any Subject Entity that were managed or handled by you, your Personnel, or any Related Entity.

42. Any documents or emails or other communications relating to any agreements, contracts, and deals involving Deion Sanders or Related Entity of Deion Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

43. Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shedeur Sanders or Related Entity of Shedeur Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

44. Any documents or email or other communications relating to any trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

45. Any documents or email or other communications relating to any Related Trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

**EXHIBIT 001 TO SUBPOENA — Page 15**
4880-0811-7735, v. 7

46.     Any documents or email or other communications evidencing any *assets or interest in any property* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

47.     Any documents or email or other communications evidencing any *Investment Asset* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

48.     Any documents or email or other communications evidencing any *Mineral Interest* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

49.     Any documents or email or other communications evidencing any *Real Property Interest* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

50.     Any documents or email or other communications evidencing any *Rolling Stock* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

51.     Any documents or email or other communications evidencing any *firearms* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

52.     Any documents or email or other communications evidencing any *jewelry* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

53.     Any documents or email or other communications evidencing any *designer clothing or accessories* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

54.     Any and all documents, information, and/or things produced by or on behalf of Shilo Sanders to the Chapter 7 Trustee appointed in the bankruptcy case of Shilo Sanders, Case No. 23-14859-MER; *In re Shilo Dion Sanders*, in the United States Bankruptcy Court for the District of Colorado.

EXHIBIT 001 TO SUBPOENA — Page 16
4880-0811-7735, v. 7

**EXHIBIT DAR028 — Subpoena to Plummer Law Group, PC**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 23-14859** |
| SHILO DION SANDERS, | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS UNDER FED. R. BANKR. P. 2004

**To:** **Plummer Law Group, PC**
**Attn. Tabetha Plummer - Reg. Agent**
**16255 Ventura Blvd. Ste. 625**
**Encino CA 91436**

☑ *__Production:__* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the documents, electronically stored information, or objects, referenced and described in __**EXHIBIT 001**__, attached hereto and incorporated by reference herein, pursuant to Fed. R. Bank. P. 2004 and Local Bankruptcy Rule 2004.

| Place: | *Mathias Raphael PLLC* *13101 Preston Road, Suite 501* *Dallas, TX 75240* | Date and Time: *__The thirtieth (30th) day following entry of the order of the Court permitting service of this Subpoena, which order is served with and/or attached to this subpoena,__* or as otherwise may be agreed between the parties. |
|---|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   October __, 2024

*Signature of Clerk or Deputy Clerk*

*Attorneys for John Darjean*

The name, address, e-mail address, and telephone number of the attorney representing *John Darjean* who issues or requests this subpoena, are:

Jeff Carruth (SBOT #24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
24 Greenway Plaza, Suite 2050, Houston, TX 77046
Telephone: (713) 341-1158, jcarruth@wkpz.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT DAR028 — Subpoena to Plummer Law Group, PC**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Bankruptcy Case    **23-14859**

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*   | **Plummer Law Group, PC** |

on *(date)* _____ .

I served the subpoena by delivering a copy to the following by ***certified mail, return receipt requested and regular mail*** on October __, 2024.

☒

**Plummer Law Group, PC**
**Attn. Tabetha Plummer - Reg. Agent**
**16255 Ventura Blvd. Ste. 625**
**Encino CA 91436**

I declare under penalty of perjury that this information is true.

Date:   | October __, 2024. |

| |
| *Server's signature* |

| Jeff Carruth, Attorney |
| *Printed name and title* |

| WEYCER, KAPLAN, PULASKI & ZUBER, P.C. |
| 24 Greenway Plaza, Suite 2050, Houston, TX 77046 |
| *Server's address* |

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT TO SUBPOENA

# EXHIBIT 001

**EXHIBIT 001 TO SUBPOENA**

## <u>INSTRUCTIONS</u>

1.     In no event should any Instruction, Definition, or Discovery Request be read to contradict the Rules.

2.     Unless otherwise specified, the relevant period of time for each Discovery Request is **<u>September 17, 2015,</u>** through and until the present.

3.     These instructions and definitions herein should be construed to require answers and/or production based upon the knowledge of, and information and documents available to the Debtor, as well as the Personnel (as defined below) of Debtor.

4.     It is intended that the following Discovery Requests will not solicit any material protected either by the attorney/client privilege or the work-product doctrine that was created by, or developed by, counsel for Debtor after the date on which the relevant litigation was commenced. If any inquiry is susceptible to a construction that calls for the production of such material, or for material claimed to be protected under the attorney/client privilege, that material need not be provided but a privilege log pursuant will be required as to all such material.

5.     With respect to any Document that is produced:

a.     Each Document produced pursuant to this request should be identified in such production by the paragraph of the request with respect to which it is produced.

b.     If any privilege, exemption, or immunity is claimed as a basis for withholding production of one or more Documents, then please state:

i.      the particular basis for withholding the Document;

ii.     the author(s) of the Document;

iii.    the form of the Document;

iv.    the date of the Document;

v.     the identity of all persons who have seen the Document; and;

vi.    the general subject matter of the Document.

c.     Documents which, when regularly maintained, are stapled, clipped, or otherwise physically attached to other Documents are to be produced in their stapled, clipped, or otherwise physically attached form.

d.     If a Document or a group of Documents is taken out of a file folder, file drawer, notebook, or other identifiable storage facility, please attach thereto a copy of the label of the file folder, file drawer, etc., so that the location of each such Document in your files can be determined.

e.     If any such responsive Document has been lost, discarded, or destroyed, you must identify such Document as completely as possible, including the following information:

i.      the type of Document;

ii.     the date of the Document;

iii.    the date or approximate date the Document was lost, discarded, or destroyed;

iv.    the circumstances or manner in which it was lost, discarded, or destroyed;

v.    the reason or reasons for disposing of the Document (if the Document was discarded or destroyed);

vi.    the identity of all Persons authorizing or having knowledge of the circumstances surrounding disposal of the Document;

vii.    the identity of the Persons who lost, discarded, or destroyed the Document; and

viii.    the identity of all Persons having knowledge of the contents of the Document.

f.    If you have previously produced to another party any such responsive Documents and you believe that such production is accessible to the party serving these Discovery Requests, you should so specify.

6.    These Discovery Requests are continuing in character so as to require that supplemental answers be served seasonally if further or different information is obtained with respect to any Discovery Request.  Consequently, these Discovery Requests require supplementation if you obtain further information or documents after the answers are served and prior to satisfaction of the judgment.

7.    The answers to the Interrogatories, as applicable, and other Discovery Requests should be complete and candid.  To the extent any information called for by these Interrogatories is unknown to you, so state, and set forth whatever information you have regarding that Interrogatory.  If any estimate can reasonably be made, please set forth your best estimate, clearly designated as such.

8.    No part of a Discovery Request should be left unanswered merely because an objection is interposed to another part of the Discovery Request.  If a partial or incomplete answer is provided, state that the answer is partial or incomplete.

9.    If, in answering these Discovery Requests, you encounter any ambiguities when construing a question, instruction, or definition, then your answer shall set forth the matter deemed ambiguous, and the construction used in answering.

10.    You must serve your answers or objections to these Discovery Requests upon the undersigned counsel on the ***thirtieth (30th)*** day after these Discovery Requests were served upon you.

11.    Headings are for convenience only and should not be read to limit the scope of any Discovery Request.

12.    Please contact the undersigned if you would like an electronic copy of this discovery to aid in the preparation of responses.  In any event, the hard copy of this discovery served upon you shall be the controlling copy.

**EXHIBIT DAR028 — Subpoena to Plummer Law Group, PC**
**EXHIBIT 001 TO SUBPOENA**

## DEFINITIONS AND CONSTRUCTION OF WORDS

1.      All words contained in the Discovery Requests shall have their normal contextual meaning unless otherwise defined herein and should be read in a manner to provide a complete answer to each Discovery Requests. ***Words need not be capitalized in order to be controlled by the meaning of such word(s) as defined herein.***

2.      Wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender.

3.      Additional definitions for or relating to the parties to this action may appear in the introductory paragraphs of this document.

### General Discovery Definitions

1.      "Agent" shall mean any agent, representative, employee, officer, director, attorney, independent contractor or any other Person acting at the direction of or on behalf of another.

2.      "And" or "each", "all", and "any" shall be construed as necessary in each case to make each document request inclusive, rather than exclusive.

3.      "Communication" shall mean and refer to any transmittal or information by any means, including, without limitation, any oral, written, or electronically recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, any correspondence, conversations, telephone calls or other voice or audio interaction, text or SMS messages, chat sessions, dialogues, discussions, interviews, consultations, agreements, or any other understandings between or among two or more Persons or any Document that recorded or reflected any such Communication."

4.      "Discovery Requests" shall mean and refer to this discovery instrument and, as applicable, any interrogatories, requests for admissions, requests for production, and/or requests for inspection contained herein.

5.      "Document" shall mean and include all documents and tangible things to the very broadest extent included within the scope of the Rules, including, but not limited to, the originals and all drafts and copies, together with any annotations or highlighted copies containing all or part of the information requested, in the possession, custody or control of You, Your attorneys, representative, employees, agents, or any other natural person or business or legal entity acting or purporting to act for or on Your behalf, or their respective Personnel as the case may be. Also, the term "Document" or "writing" means any medium whatsoever, including all electronic, recorded and digital media of any kind, upon which intelligence or information can be recorded, or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any written material, correspondence, electronic mail, text or SMS messages, chat sessions, note file, book, pamphlet, printout, chart, record, report, periodical, letter, memorandum, (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, draft, working paper, chart, paper, print, drawing, sketch, graph,

index, list, and any written, recorded, transcribed, punched, taped, filmed or graphic matter whatsoever, however produced or reproduced, which is in your possession, custody, or control or which was, but is no longer, in Your possession, custody, or control. The term "Document" or "writing" shall also include all copies or drafts of Documents by whatever means made, including specifically but not exclusively, those copies bearing commentary or notations not appearing on the original.

6.      "Equipment" shall mean and refer to any goods or property other than inventory, farm products, consumer goods, or tools.

7.      "Identify" shall have the following meanings.

    a.      When referring to a person, to state the full current name, residence, and business addresses, and residence and business telephone numbers of the person about whom information is sought, as well as that person's present or last known employer, that person's office or title, if any, and that person's job description. If any of this information was different at the time with which the Interrogatories are concerned, state also such different information as applies to the time in question;

    b.      When referring to a business entity or firm (e.g., a corporation, partnership, limited partnership, law firm, etc.), to state the full name of such business, entity or firm, and the address of its principal place of business;

    c.      When referring to a document, to state its date, title, a brief description, subject matter, addressee or others receiving a copy, and author;

    d.      When referring to an act, communication, occurrence, statement or conduct, to state the substance of the event constituting such act and the date when such act occurred, persons participating in such act, all persons present when such act occurred, and a description of any record of such act;

    e.      When referring to dates, to state the date each such activity began and the date it ended; and

    f.      Any specific meaning provided in an Interrogatory.

8.      "Insider" (A) with respect to a debtor, shall mean and refer to any (i) member or director of the debtor, (ii) any officer or manager of the debtor, (iii) any person in control of the debtor, or (iv) any relative of any such member, director, manager, officer, or person in control; and (B) with respect to any individual, shall have the same meaning as found in 11 U.S.C. §101.

9.      "Investment Asset" shall mean and refer to stocks, bonds, securities, notes, accounts, mortgages, certificates of deposit / CDs, annuities, life insurance policies, profit sharing plans, trusts (as trustee or beneficiary), IRAs, 401(k)'s, pensions, and all other retirement plans, general or limited partnership interests, or similar ownership interests or investments, ownership of or interest in any joint venture, and including any Related Trusts (as defined below).

10.     "Mineral Interest" shall mean and refer to any interest in any mineral interest or oil and gas interest including any lease, royalty, well, working interest, well bore interest, overriding royalty interest, or equity position.

11.     "Person" shall mean and refer to any individual, corporation, company, proprietorship, partnership, trust, association, or other entity.

12.     "Personnel" shall mean and refer to any of the following persons with respect to a referenced person or entity: Insiders (as defined herein); Agents (as defined herein); representatives; servants; employees; officers; directors or managers; the Board of Directors; any individual shareholder or shareholders (or any holders of any equity interest); partner or partners; any accountant representing or providing services; or personal representatives.

13.     "Or" means and refers to and/or.

14.     "Real Property Interest" shall mean and refer to any real estate or interest in any real property in which you own or claim an interest (regardless of whether you acquired or received such real estate by inheritance, gift, or purchase), including (i) any interests in any oil and gas interest or mineral interest, including any mineral acreage owned and further including any lease, royalty, working interest, well bore interest, overriding royalty interest and/or equity position (ii) and option or any similar interest, (iii) any water rights or wind rights, (iv) any leases or interests in leases of any kind such as ground leases, grazing leases, or any other agricultural leases whether as (a) lessor or landlord or (b) lessee or tenant, and/or (v) any lien, encumbrance, or other debt or security related to any interest in real property.

15.     "Relating to" means concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

16.     "Related Trust" means and refers to any trust of which you, your spouse, or child, issue, ward, or dependent of you or your spouse any are a settlor, contributor, controller, trustee, or beneficiary on in which you, your spouse, or child, issue, ward, or dependent of you or your spouse own or claim any interest.

17.     "Response Date" shall mean and refer to the date on which You provide a response to these Discovery Requests / Requests for Production.

18.     "Rolling Stock" shall mean and refer to any automobiles, pickups, trucks, motor vehicles, motorcycles, travel trailers, motor homes, boats, airplanes, dozers, front end loaders, or any other rolling stock or similar equipment, and regardless of whether ownership is evidenced by a certificate of title.

19.     "Rules" shall mean and refer to the Texas Rules of Civil Procedure, the Federal Rules of Civil Procedure and/or the Federal Rules of Bankruptcy Procedure, as applicable.

20.     "Tools" shall men and refer to any goods or property other than inventory, farm products, consumer goods, or equipment.

21.     "You" or "yours" shall refer to the party to whom these Discovery Requests are being served and all agents and representatives, and all other persons acting on behalf of or purported to act on behalf of said person including the Agents and Personnel of such person.

## Specific Discovery Definitions

1.     "Debtor" means and refers to SHILO DION SANDERS.

2.     "Defendant" means and refers to SHILO DION SANDERS.

3.     "5430" the 5430 Alliance.

4.     "Judgment Debtor" means and refers to SHILO DION SANDERS.

5.     "NIL" means and refers to name, image, and likeness, and any right or interest in any property related thereto.

6.     "Period" shall mean and refer to the period of time from **September 17, 2015 through and until the present**.

7.     "Plummer" refers to Plummer Law Group, PC and/or Tabitha Plummer.

8.     "Related Entity" means and refers to any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by a person or entity, or with respect to which a person or entity is an Insider or possesses any beneficial interest.

9.     "Schwartz-Morini" means and refers to Constance Schwartz-Morini.

10.     "SMAC" means and refers to SMAC Entertainment LLC.

11.     "Subject Entity" shall mean and refer to each of the following:

a.     Big 21, LLC

b.     SS1 Legendary, LLC

c.     SS21, LLC;

d.     Headache Gang, LLC and,

e.     any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by Shilo Sanders, or with respect to which Shilo Sanders is or has been an Insider, and/or with respect to which Shilo Sanders possesses any beneficial interest.

12.     "UC" means and refers to the University of Colardo, the Athletic Department of the University of Colardo, and the football program of the University of Colardo.

*{continued on following sheet}*

# DOCUMENTS AND THINGS TO PRODUCE

1.      Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) Shilo Sanders and/or any Personnel of Shilo Sanders.

2.      Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) any Subject Entity and/or any Personnel of any Subject Entity.

3.      Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) Shilo Sanders.

4.      Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders.

5.      Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Subject Entity.

6.      Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Subject Entity.

7.      Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of any Subject Entity.

8.      Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders.

9.      Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Related Entity of Deion Sanders, and/or Shedeur Sanders, including any Insider or other Personnel thereof.

10.     Any documents or emails or other communications evidencing any contract or agreement between Shilo Sanders and any other person or entity, including but not limited to:

   a.      5430,
   b.      Plummer,
   c.      Schwartz-Morini,
   d.      SMAC,
   e.      UC,
   f.      any affiliate or subsidiary of any of the foregoing, or

EXHIBIT 001 TO SUBPOENA — Page 11
4854-2422-9863, v. 6

g.   any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

11.   Any documents or emails or other communications evidencing any contract or agreement between Big 21 LLC and any other person or entity, including but not limited to:

a.   5430,
b.   Plummer,
c.   Schwartz-Morini,
d.   SMAC,
e.   UC,
f.   any affiliate or subsidiary of any of the foregoing, or
g.   any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

12.   Any documents or emails or other communications evidencing any contract or agreement between SS1 Legendary LLC and any other person or entity, including but not limited to:

a.   5430,
b.   Plummer,
c.   Schwartz-Morini,
d.   SMAC,
e.   UC,
f.   any affiliate or subsidiary of any of the foregoing, or
g.   any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

13.   Any documents or emails or other communications evidencing any contract or agreement between SS21 LLC and any other person or entity, including but not limited to:

a.   5430,
b.   Plummer,
c.   Schwartz-Morini,
d.   SMAC,
e.   UC,
f.   any affiliate or subsidiary of any of the foregoing, or
g.   any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

14.   Any documents or emails or other communications evidencing any contract or agreement between Headache Gang LLC and any other person or entity, including but not limited to:

a.   5430,
b.   Plummer,
c.   Schwartz-Morini,

EXHIBIT 001 TO SUBPOENA — Page 12
4854-2422-9863, v. 6

d.     SMAC,

e.     UC,

f.     any affiliate or subsidiary of any of the foregoing, or

g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

15.    Any documents or emails or other communications evidencing any contract or agreement between any other Subject Entity and any other person or entity, including but not limited to:

a.     5430,

b.     Plummer,

c.     Schwartz-Morini,

d.     SMAC,

e.     UC,

f.     any affiliate or subsidiary of any of the foregoing, or

g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

16.    Any documents or emails or other communications evidencing any contract or agreement between (i) Shilo Sanders and (ii) any Subject Entity.

17.    Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Subject Entity and (ii) any other Subject Entity.

18.    Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) Shilo Sanders.

19.    Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) any Subject Entity.

20.    Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any agents, managers, attorneys, or representatives.

21.    Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any media company, social media outlet, brand, product, advertiser, agency, or any other similar party.

22.    Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service, of or relating to Shilo Sanders, between (i) any Insider or other

EXHIBIT 001 TO SUBPOENA — Page 13
4854-2422-9863, v. 6

Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

23. Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service, of or relating to Shilo Sanders, between (i) any Insider Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

24. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Deion Sanders** or any Related Entity or Personnel of Deion Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

25. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Shedeur Sanders** or any Related Entity or Personnel of Shedeur Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

26. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **5430** or any Related Entity or Personnel of 5430 relating to (x) Shilo Sanders or (y) any Subject Entity.

27. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Plummer** or any Related Entity or Personnel of Plummer relating to (x) Shilo Sanders or (y) any Subject Entity.

28. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Schwartz-Morini** or any Related Entity or Personnel of Schwartz-Morini relating to (x) Shilo Sanders or (y) any Subject Entity.

29. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **SMAC** or any Related Entity or Personnel of SMAC relating to (x) Shilo Sanders or (y) any Subject Entity.

30. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **UC** or any Related Entity or Personnel of UC relating to (x) Shilo Sanders or (y) any Subject Entity.

31. Any documents or emails or other communications relating to any money, value, or any consideration _received by or on account of_ Shilo Sanders during the Period.

32. Any documents or emails or other communications relating to any money, value, or any consideration _received by or on account of_ any Subject Entity during the Period.

33. Any documents or emails or other communications relating to any money, value, or any consideration _received by or on account of_ any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

**EXHIBIT 001 TO SUBPOENA — Page 14**
4854-2422-9863, v. 6

34. Any documents or emails or other communications relating to any money, value, or any consideration *received* by or on account of any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

35. Any documents or emails or other communications relating to any money, value, or any consideration *earned* by or on account of Shilo Sanders during the Period.

36. Any documents or emails or other communications relating to any money, value, or any consideration *earned* by or on account of any Subject Entity during the Period.

37. Any documents or emails or other communications relating to any money, value, or any consideration *earned* by or on account of any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

38. Any documents or emails or other communications relating to any money, value, or any consideration *earned* by or on account of any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

39. Any documents or emails or other communications relating to any money, value, or any consideration *received* by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

40. Any documents or emails or other communications relating to any money, value, or any consideration *earned* by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

41. Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shilo Sanders or any Subject Entity that were managed or handled by you, your Personnel, or any Related Entity.

42. Any documents or emails or other communications relating to any agreements, contracts, and deals involving Deion Sanders or Related Entity of Deion Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

43. Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shedeur Sanders or Related Entity of Shedeur Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

44. Any documents or email or other communications relating to any trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

**EXHIBIT 001 TO SUBPOENA — Page 15**
4854-2422-9863, v. 6

45. Any documents or email or other communications relating to any Related Trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

46. Any documents or email or other communications evidencing any *assets or interest in any property* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

47. Any documents or email or other communications evidencing any *Investment Asset* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

48. Any documents or email or other communications evidencing any *Mineral Interest* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

49. Any documents or email or other communications evidencing any *Real Property Interest* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

50. Any documents or email or other communications evidencing any *Rolling Stock* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

51. Any documents or email or other communications evidencing any *firearms* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

52. Any documents or email or other communications evidencing any *jewelry* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

53. Any documents or email or other communications evidencing any *designer clothing or accessories* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

54. Any and all documents, information, and/or things produced by or on behalf of Shilo Sanders to the Chapter 7 Trustee appointed in the bankruptcy case of Shilo Sanders, Case No. 23-14859-MER; *In re Shilo Dion Sanders*, in the United States Bankruptcy Court for the District of Colorado.

**EXHIBIT 001 TO SUBPOENA — Page 16**
4854-2422-9863, v. 6

**EXHIBIT DAR029 — Subpoena to SMAC Entertainment LLC**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 23-14859** |
| SHILO DION SANDERS, | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS UNDER FED. R. BANKR. P. 2004

**To:** SMAC Entertainment LLC              SMAC Entertainment LLC
Attn. Kay Ovcharenko, Esq. -  Reg. Agent      10960 Wilshire Blvd
1505 Corporation Eresidentagent, Inc.         5th Floor
9000 Sunsent Blvd                             Los Angeles CA 90024
Los Angeles CA 90069-5801

☑ _**Production:**_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the documents, electronically stored information, or objects, referenced and described in **EXHIBIT 001**, attached hereto and incorporated by reference herein, pursuant to Fed. R. Bank. P. 2004 and Local Bankruptcy Rule 2004.

| Place: | _Mathias Raphael PLLC_<br>_13101 Preston Road, Suite 501_<br>_Dallas, TX 75240_ | Date and Time:_ **The thirtieth (30th) day following entry of the order of the Court permitting service of this Subpoena, which order is served with and/or attached to this subpoena,** or as otherwise may be agreed between the parties. |
|---|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  | October __, 2024 |

_Signature of Clerk or Deputy Clerk_              _Attorneys for John Darjean_

The name, address, e-mail address, and telephone number of the attorney representing _John Darjean_ who issues or requests this subpoena, are:

Jeff Carruth (SBOT #24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
24 Greenway Plaza, Suite 2050, Houston, TX 77046
Telephone: (713) 341-1158, jcarruth@wkpz.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT DAR029 — Subpoena to SMAC Entertainment LLC**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Bankruptcy Case        **23-14859**

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*       | **SMAC Entertainment LLC** |

on *(date)*                          .

I served the subpoena by delivering a copy to the following by ***certified mail, return receipt requested and regular mail*** on October __, 2024.

☒     **SMAC Entertainment LLC**                    **SMAC Entertainment LLC**
       **Attn. Kay Ovcharenko, Esq. -  Reg. Agent**   **10960 Wilshire Blvd**
       **1505 Corporation Eresidentagent, Inc.**       **5th Floor**
       **9000 Sunsent Blvd**                           **Los Angeles CA 90024**
       **Los Angeles CA 90069-5801**

I declare under penalty of perjury that this information is true.

Date:     | October __, 2024 |

|                                              |
*Server's signature*

| Jeff Carruth, Attorney |
*Printed name and title*

| WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
24 Greenway Plaza, Suite 2050, Houston, TX 77046 |
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT TO SUBPOENA

# EXHIBIT 001

**EXHIBIT 001 TO SUBPOENA**

## <u>INSTRUCTIONS</u>

1.      In no event should any Instruction, Definition, or Discovery Request be read to contradict the Rules.

2.      Unless otherwise specified, the relevant period of time for each Discovery Request is **<u>September 17, 2015,</u>** through and until the present.

3.      These instructions and definitions herein should be construed to require answers and/or production based upon the knowledge of, and information and documents available to the Debtor, as well as the Personnel (as defined below) of Debtor.

4.      It is intended that the following Discovery Requests will not solicit any material protected either by the attorney/client privilege or the work-product doctrine that was created by, or developed by, counsel for Debtor after the date on which the relevant litigation was commenced. If any inquiry is susceptible to a construction that calls for the production of such material, or for material claimed to be protected under the attorney/client privilege, that material need not be provided but a privilege log pursuant will be required as to all such material.

5.      With respect to any Document that is produced:

a.      Each Document produced pursuant to this request should be identified in such production by the paragraph of the request with respect to which it is produced.

b.      If any privilege, exemption, or immunity is claimed as a basis for withholding production of one or more Documents, then please state:

       i.      the particular basis for withholding the Document;

      ii.      the author(s) of the Document;

     iii.      the form of the Document;

     iv.      the date of the Document;

      v.      the identity of all persons who have seen the Document; and;

     vi.      the general subject matter of the Document.

c.      Documents which, when regularly maintained, are stapled, clipped, or otherwise physically attached to other Documents are to be produced in their stapled, clipped, or otherwise physically attached form.

d.      If a Document or a group of Documents is taken out of a file folder, file drawer, notebook, or other identifiable storage facility, please attach thereto a copy of the label of the file folder, file drawer, etc., so that the location of each such Document in your files can be determined.

e.      If any such responsive Document has been lost, discarded, or destroyed, you must identify such Document as completely as possible, including the following information:

       i.      the type of Document;

      ii.      the date of the Document;

|      |                                                                                                             |
|------|-------------------------------------------------------------------------------------------------------------|
| iii. | the date or approximate date the Document was lost, discarded, or destroyed;                                 |
| iv.  | the circumstances or manner in which it was lost, discarded, or destroyed;                                   |
| v.   | the reason or reasons for disposing of the Document (if the Document was discarded or destroyed);            |
| vi.  | the identity of all Persons authorizing or having knowledge of the circumstances surrounding disposal of the Document; |
| vii. | the identity of the Persons who lost, discarded, or destroyed the Document; and                              |
| viii.| the identity of all Persons having knowledge of the contents of the Document.                                |

f.      If you have previously produced to another party any such responsive Documents and you believe that such production is accessible to the party serving these Discovery Requests, you should so specify.

6.      These Discovery Requests are continuing in character so as to require that supplemental answers be served seasonally if further or different information is obtained with respect to any Discovery Request.   Consequently, these Discovery Requests require supplementation if you obtain further information or documents after the answers are served and prior to satisfaction of the judgment.

7.      The answers to the Interrogatories, as applicable, and other Discovery Requests should be complete and candid.  To the extent any information called for by these Interrogatories is unknown to you, so state, and set forth whatever information you have regarding that Interrogatory.  If any estimate can reasonably be made, please set forth your best estimate, clearly designated as such.

8.      No part of a Discovery Request should be left unanswered merely because an objection is interposed to another part of the Discovery Request.  If a partial or incomplete answer is provided, state that the answer is partial or incomplete.

9.      If, in answering these Discovery Requests, you encounter any ambiguities when construing a question, instruction, or definition, then your answer shall set forth the matter deemed ambiguous, and the construction used in answering.

10.      You must serve your answers or objections to these Discovery Requests upon the undersigned counsel on the ***thirtieth (30th)*** day after these Discovery Requests were served upon you.

11.      Headings are for convenience only and should not be read to limit the scope of any Discovery Request.

12.      Please contact the undersigned if you would like an electronic copy of this discovery to aid in the preparation of responses.  In any event, the hard copy of this discovery served upon you shall be the controlling copy.

**EXHIBIT 001 TO SUBPOENA**

## DEFINITIONS AND CONSTRUCTION OF WORDS

1.       All words contained in the Discovery Requests shall have their normal contextual meaning unless otherwise defined herein and should be read in a manner to provide a complete answer to each Discovery Requests. ***Words need not be capitalized in order to be controlled by the meaning of such word(s) as defined herein.***

2.       Wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender.

3.       Additional definitions for or relating to the parties to this action may appear in the introductory paragraphs of this document.

### General Discovery Definitions

1.       "Agent" shall mean any agent, representative, employee, officer, director, attorney, independent contractor or any other Person acting at the direction of or on behalf of another.

2.       "And" or "each", "all", and "any" shall be construed as necessary in each case to make each document request inclusive, rather than exclusive.

3.       "Communication" shall mean and refer to any transmittal or information by any means, including, without limitation, any oral, written, or electronically recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, any correspondence, conversations, telephone calls or other voice or audio interaction, text or SMS messages, chat sessions, dialogues, discussions, interviews, consultations, agreements, or any other understandings between or among two or more Persons or any Document that recorded or reflected any such Communication."

4.       "Discovery Requests" shall mean and refer to this discovery instrument and, as applicable, any interrogatories, requests for admissions, requests for production, and/or requests for inspection contained herein.

5.       "Document" shall mean and include all documents and tangible things to the very broadest extent included within the scope of the Rules, including, but not limited to, the originals and all drafts and copies, together with any annotations or highlighted copies containing all or part of the information requested, in the possession, custody or control of You, Your attorneys, representative, employees, agents, or any other natural person or business or legal entity acting or purporting to act for or on Your behalf, or their respective Personnel as the case may be.  Also, the term "Document" or "writing" means any medium whatsoever, including all electronic, recorded and digital media of any kind, upon which intelligence or information can be recorded, or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any written material, correspondence, electronic mail, text or SMS messages, chat sessions, note file, book, pamphlet, printout, chart, record, report, periodical, letter, memorandum, (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, draft, working paper, chart, paper, print, drawing, sketch, graph,

index, list, and any written, recorded, transcribed, punched, taped, filmed or graphic matter whatsoever, however produced or reproduced, which is in your possession, custody, or control or which was, but is no longer, in Your possession, custody, or control. The term "Document" or "writing" shall also include all copies or drafts of Documents by whatever means made, including specifically but not exclusively, those copies bearing commentary or notations not appearing on the original.

6.      "Equipment" shall mean and refer to any goods or property other than inventory, farm products, consumer goods, or tools.

7.      "Identify" shall have the following meanings.

    a.      When referring to a person, to state the full current name, residence, and business addresses, and residence and business telephone numbers of the person about whom information is sought, as well as that person's present or last known employer, that person's office or title, if any, and that person's job description. If any of this information was different at the time with which the Interrogatories are concerned, state also such different information as applies to the time in question;

    b.      When referring to a business entity or firm (e.g., a corporation, partnership, limited partnership, law firm, etc.), to state the full name of such business, entity or firm, and the address of its principal place of business;

    c.      When referring to a document, to state its date, title, a brief description, subject matter, addressee or others receiving a copy, and author;

    d.      When referring to an act, communication, occurrence, statement or conduct, to state the substance of the event constituting such act and the date when such act occurred, persons participating in such act, all persons present when such act occurred, and a description of any record of such act;

    e.      When referring to dates, to state the date each such activity began and the date it ended; and

    f.      Any specific meaning provided in an Interrogatory.

8.      "Insider" (A) with respect to a debtor, shall mean and refer to any (i) member or director of the debtor, (ii) any officer or manager of the debtor, (iii) any person in control of the debtor, or (iv) any relative of any such member, director, manager, officer, or person in control; and (B) with respect to any individual, shall have the same meaning as found in 11 U.S.C. §101.

9.      "Investment Asset" shall mean and refer to stocks, bonds, securities, notes, accounts, mortgages, certificates of deposit / CDs, annuities, life insurance policies, profit sharing plans, trusts (as trustee or beneficiary), IRAs, 401(k)'s, pensions, and all other retirement plans, general or limited partnership interests, or similar ownership interests or investments, ownership of or interest in any joint venture, and including any Related Trusts (as defined below).

10. "Mineral Interest" shall mean and refer to any interest in any mineral interest or oil and gas interest including any lease, royalty, well, working interest, well bore interest, overriding royalty interest, or equity position.

11. "Person" shall mean and refer to any individual, corporation, company, proprietorship, partnership, trust, association, or other entity.

12. "Personnel" shall mean and refer to any of the following persons with respect to a referenced person or entity: Insiders (as defined herein); Agents (as defined herein); representatives; servants; employees; officers; directors or managers; the Board of Directors; any individual shareholder or shareholders (or any holders of any equity interest); partner or partners; any accountant representing or providing services; or personal representatives.

13. "Or" means and refers to and/or.

14. "Real Property Interest" shall mean and refer to any real estate or interest in any real property in which you own or claim an interest (regardless of whether you acquired or received such real estate by inheritance, gift, or purchase), including (i) any interests in any oil and gas interest or mineral interest, including any mineral acreage owned and further including any lease, royalty, working interest, well bore interest, overriding royalty interest and/or equity position (ii) and option or any similar interest, (iii) any water rights or wind rights, (iv) any leases or interests in leases of any kind such as ground leases, grazing leases, or any other agricultural leases whether as (a) lessor or landlord or (b) lessee or tenant, and/or (v) any lien, encumbrance, or other debt or security related to any interest in real property.

15. "Relating to" means concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

16. "Related Trust" means and refers to any trust of which you, your spouse, or child, issue, ward, or dependent of you or your spouse any are a settlor, contributor, controller, trustee, or beneficiary on in which you, your spouse, or child, issue, ward, or dependent of you or your spouse own or claim any interest.

17. "Response Date" shall mean and refer to the date on which You provide a response to these Discovery Requests / Requests for Production.

18. "Rolling Stock" shall mean and refer to any automobiles, pickups, trucks, motor vehicles, motorcycles, travel trailers, motor homes, boats, airplanes, dozers, front end loaders, or any other rolling stock or similar equipment, and regardless of whether ownership is evidenced by a certificate of title.

19. "Rules" shall mean and refer to the Texas Rules of Civil Procedure, the Federal Rules of Civil Procedure and/or the Federal Rules of Bankruptcy Procedure, as applicable.

20.    "Tools" shall men and refer to any goods or property other than inventory, farm products, consumer goods, or equipment.

21.    "You" or "yours" shall refer to the party to whom these Discovery Requests are being served and all agents and representatives, and all other persons acting on behalf of or purported to act on behalf of said person including the Agents and Personnel of such person.

### Specific Discovery Definitions

1.    "Debtor" means and refers to SHILO DION SANDERS**.**

2.    "Defendant" means and refers to SHILO DION SANDERS**.**

3.    "5430" the 5430 Alliance.

4.    "Judgment Debtor" means and refers to SHILO DION SANDERS**.**

5.    "NIL" means and refers to name, image, and likeness, and any right or interest in any property related thereto.

6.    "Period" shall mean and refer to the period of time from **September 17, 2015 through and until the present**.

7.    "Plummer" refers to Plummer Law Group, PC and/or Tabitha Plummer.

8.    "Related Entity" means and refers to any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by a person or entity, or with respect to which a person or entity is an Insider or possesses any beneficial interest.

9.    "Schwartz-Morini" means and refers to Constance Schwartz-Morini.

10.    "SMAC" means and refers to SMAC Entertainment LLC.

11.    "Subject Entity" shall mean and refer to each of the following:

a.    Big 21, LLC

b.    SS1 Legendary, LLC

c.    SS21, LLC;

d.    Headache Gang, LLC and,

e.    any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by Shilo Sanders, or with respect to which Shilo Sanders is or has been an Insider, and/or with respect to which Shilo Sanders possesses any beneficial interest.

12.    "UC" means and refers to the University of Colardo, the Athletic Department of the University of Colardo, and the football program of the University of Colardo.

*{continued on following sheet}*

# DOCUMENTS AND THINGS TO PRODUCE

1.   Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) Shilo Sanders and/or any Personnel of Shilo Sanders.

2.   Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) any Subject Entity and/or any Personnel of any Subject Entity.

3.   Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) Shilo Sanders.

4.   Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders.

5.   Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Subject Entity.

6.   Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Subject Entity.

7.   Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of any Subject Entity.

8.   Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders.

9.   Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Related Entity of Deion Sanders, and/or Shedeur Sanders, including any Insider or other Personnel thereof.

10.  Any documents or emails or other communications evidencing any contract or agreement between Shilo Sanders and any other person or entity, including but not limited to:

   a.   5430,
   b.   Plummer,
   c.   Schwartz-Morini,
   d.   SMAC,
   e.   UC,
   f.   any affiliate or subsidiary of any of the foregoing, or

EXHIBIT 001 TO SUBPOENA — Page 11
4877-5626-2887, v. 5

    g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

11.    Any documents or emails or other communications evidencing any contract or agreement between Big 21 LLC and any other person or entity, including but not limited to:

    a.     5430,
    b.     Plummer,
    c.     Schwartz-Morini,
    d.     SMAC,
    e.     UC,
    f.     any affiliate or subsidiary of any of the foregoing, or
    g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

12.    Any documents or emails or other communications evidencing any contract or agreement between SS1 Legendary LLC and any other person or entity, including but not limited to:

    a.     5430,
    b.     Plummer,
    c.     Schwartz-Morini,
    d.     SMAC,
    e.     UC,
    f.     any affiliate or subsidiary of any of the foregoing, or
    g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

13.    Any documents or emails or other communications evidencing any contract or agreement between SS21 LLC and any other person or entity, including but not limited to:

    a.     5430,
    b.     Plummer,
    c.     Schwartz-Morini,
    d.     SMAC,
    e.     UC,
    f.     any affiliate or subsidiary of any of the foregoing, or
    g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

14.    Any documents or emails or other communications evidencing any contract or agreement between Headache Gang LLC and any other person or entity, including but not limited to:

    a.     5430,
    b.     Plummer,

**EXHIBIT 001 TO SUBPOENA — Page 12**
4877-5626-2887, v. 5

    c.    Schwartz-Morini,
    d.    SMAC,
    e.    UC,
    f.    any affiliate or subsidiary of any of the foregoing, or
    g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

15. Any documents or emails or other communications evidencing any contract or agreement between any other Subject Entity and any other person or entity, including but not limited to:

    a.    5430,
    b.    Plummer,
    c.    Schwartz-Morini,
    d.    SMAC,
    e.    UC,
    f.    any affiliate or subsidiary of any of the foregoing, or
    g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

16. Any documents or emails or other communications evidencing any contract or agreement between (i) Shilo Sanders and (ii) any Subject Entity.

17. Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Subject Entity and (ii) any other Subject Entity.

18. Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) Shilo Sanders.

19. Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) any Subject Entity.

20. Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any agents, managers, attorneys, or representatives.

21. Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any media company, social media outlet, brand, product, advertiser, agency, or any other similar party.

22. Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of

**EXHIBIT 001 TO SUBPOENA — Page 13**
4877-5626-2887, v. 5

any good or service, of or relating to Shilo Sanders, between (i) any Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

23.     Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service, of or relating to Shilo Sanders, between (i) any Insider Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

24.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Deion Sanders** or any Related Entity or Personnel of Deion Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

25.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Shedeur Sanders** or any Related Entity or Personnel of Shedeur Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

26.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **5430** or any Related Entity or Personnel of 5430 relating to (x) Shilo Sanders or (y) any Subject Entity.

27.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Plummer** or any Related Entity or Personnel of Plummer relating to (x) Shilo Sanders or (y) any Subject Entity.

28.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Schwartz-Morini** or any Related Entity or Personnel of Schwartz-Morini relating to (x) Shilo Sanders or (y) any Subject Entity.

29.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **SMAC** or any Related Entity or Personnel of SMAC relating to (x) Shilo Sanders or (y) any Subject Entity.

30.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **UC** or any Related Entity or Personnel of UC relating to (x) Shilo Sanders or (y) any Subject Entity.

31.     Any documents or emails or other communications relating to any money, value, or any consideration _received by or on account of_ Shilo Sanders during the Period.

32.     Any documents or emails or other communications relating to any money, value, or any consideration _received by or on account of_ any Subject Entity during the Period.

33.     Any documents or emails or other communications relating to any money, value, or any consideration _received by or on account of_ any Insider or other Personnel of

**EXHIBIT 001 TO SUBPOENA — Page 14**
4877-5626-2887, v. 5

Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

34.     Any documents or emails or other communications relating to any money, value, or any consideration *received* *by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

35.     Any documents or emails or other communications relating to any money, value, or any consideration *earned* *by or on account of* Shilo Sanders during the Period.

36.     Any documents or emails or other communications relating to any money, value, or any consideration *earned* *by or on account of* any Subject Entity during the Period.

37.     Any documents or emails or other communications relating to any money, value, or any consideration *earned* *by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

38.     Any documents or emails or other communications relating to any money, value, or any consideration *earned* *by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

39.     Any documents or emails or other communications relating to any money, value, or any consideration *received* by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

40.     Any documents or emails or other communications relating to any money, value, or any consideration *earned* by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

41.     Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shilo Sanders or any Subject Entity that were managed or handled by you, your Personnel, or any Related Entity.

42.     Any documents or emails or other communications relating to any agreements, contracts, and deals involving Deion Sanders or Related Entity of Deion Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

43.     Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shedeur Sanders or Related Entity of Shedeur Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

**EXHIBIT 001 TO SUBPOENA — Page 15**
4877-5626-2887, v. 5

44.     Any documents or email or other communications relating to any trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

45.     Any documents or email or other communications relating to any Related Trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

46.     Any documents or email or other communications evidencing any *assets or interest in any property* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

47.     Any documents or email or other communications evidencing any *Investment Asset* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

48.     Any documents or email or other communications evidencing any *Mineral Interest* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

49.     Any documents or email or other communications evidencing any *Real Property Interest* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

50.     Any documents or email or other communications evidencing any *Rolling Stock* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

51.     Any documents or email or other communications evidencing any *firearms* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

52.     Any documents or email or other communications evidencing any *jewelry* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

53.     Any documents or email or other communications evidencing any *designer clothing or accessories* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

54.     Any and all documents, information, and/or things produced by or on behalf of Shilo Sanders to the Chapter 7 Trustee appointed in the bankruptcy case of Shilo Sanders, Case No. 23-14859-MER; *In re Shilo Dion Sanders*, in the United States Bankruptcy Court for the District of Colorado.

**EXHIBIT 001 TO SUBPOENA — Page 16**
4877-5626-2887, v. 5

**EXHIBIT DAR030 — Subpoena to Constance Schwartz-Morini**

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 23-14859 |
| SHILO DION SANDERS, | § | |
| | § | CHAPTER 7 |
| Debtor. | § | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS UNDER FED. R. BANKR. P. 2004**

**To:**  **Constance Schwartz-Morini**
**10960 Wilshire Blvd**
**5th Floor**
**Los Angeles CA 90024**

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the documents, electronically stored information, or objects, referenced and described in **EXHIBIT 001**, attached hereto and incorporated by reference herein, pursuant to Fed. R. Bank. P. 2004 and Local Bankruptcy Rule 2004.

| Place: | *Mathias Raphael PLLC* <br> *13101 Preston Road, Suite 501* <br> *Dallas, TX 75240* | Date and Time: *The thirtieth (30th) day following entry of the order of the Court permitting service of this Subpoena, which order is served with and/or attached to this subpoena,* or as otherwise may be agreed between the parties. |
|---|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   October __, 2024

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorneys for John Darjean*

The name, address, e-mail address, and telephone number of the attorney representing *John Darjean* who issues or requests this subpoena, are:

Jeff Carruth (SBOT #24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
24 Greenway Plaza, Suite 2050, Houston, TX 77046
Telephone: (713) 341-1158, jcarruth@wkpz.com

---

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT DAR030 — Subpoena to Constance Schwartz-Morini**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Bankruptcy Case       **23-14859**

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*    | **Constance Schwartz-Morini** |

on *(date)* |                          | .

I served the subpoena by delivering a copy to the following by ***certified mail, return receipt requested and regular mail*** on October __, 2024.

☒

    **Constance Schwartz-Morini**
    **10960 Wilshire Blvd**
    **5th Floor**
    **Los Angeles CA 90024**

I declare under penalty of perjury that this information is true.

Date:   | October __, 2024 |

|                                          |
| :---: |
| *Server's signature* |

| Jeff Carruth, Attorney |
| :---: |
| *Printed name and title* |

| WEYCER, KAPLAN, PULASKI & ZUBER, P.C.<br>24 Greenway Plaza, Suite 2050, Houston, TX 77046 |
| :---: |
| *Server's address* |

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT TO SUBPOENA

# EXHIBIT 001

**EXHIBIT 001 TO SUBPOENA**

## <u>INSTRUCTIONS</u>

1.      In no event should any Instruction, Definition, or Discovery Request be read to contradict the Rules.

2.      Unless otherwise specified, the relevant period of time for each Discovery Request is **<u>September 17, 2015,</u>** through and until the present.

3.      These instructions and definitions herein should be construed to require answers and/or production based upon the knowledge of, and information and documents available to the Debtor, as well as the Personnel (as defined below) of Debtor.

4.      It is intended that the following Discovery Requests will not solicit any material protected either by the attorney/client privilege or the work-product doctrine that was created by, or developed by, counsel for Debtor after the date on which the relevant litigation was commenced. If any inquiry is susceptible to a construction that calls for the production of such material, or for material claimed to be protected under the attorney/client privilege, that material need not be provided but a privilege log pursuant will be required as to all such material.

5.      With respect to any Document that is produced:

a.      Each Document produced pursuant to this request should be identified in such production by the paragraph of the request with respect to which it is produced.

b.      If any privilege, exemption, or immunity is claimed as a basis for withholding production of one or more Documents, then please state:

   i.      the particular basis for withholding the Document;

   ii.      the author(s) of the Document;

   iii.      the form of the Document;

   iv.      the date of the Document;

   v.      the identity of all persons who have seen the Document; and;

   vi.      the general subject matter of the Document.

c.      Documents which, when regularly maintained, are stapled, clipped, or otherwise physically attached to other Documents are to be produced in their stapled, clipped, or otherwise physically attached form.

d.      If a Document or a group of Documents is taken out of a file folder, file drawer, notebook, or other identifiable storage facility, please attach thereto a copy of the label of the file folder, file drawer, etc., so that the location of each such Document in your files can be determined.

e.      If any such responsive Document has been lost, discarded, or destroyed, you must identify such Document as completely as possible, including the following information:

   i.      the type of Document;

   ii.      the date of the Document;

**EXHIBIT 001 TO SUBPOENA**

    iii.    the date or approximate date the Document was lost, discarded, or destroyed;

    iv.    the circumstances or manner in which it was lost, discarded, or destroyed;

    v.    the reason or reasons for disposing of the Document (if the Document was discarded or destroyed);

    vi.    the identity of all Persons authorizing or having knowledge of the circumstances surrounding disposal of the Document;

    vii.    the identity of the Persons who lost, discarded, or destroyed the Document; and

    viii.    the identity of all Persons having knowledge of the contents of the Document.

    f.    If you have previously produced to another party any such responsive Documents and you believe that such production is accessible to the party serving these Discovery Requests, you should so specify.

6.    These Discovery Requests are continuing in character so as to require that supplemental answers be served seasonably if further or different information is obtained with respect to any Discovery Request. Consequently, these Discovery Requests require supplementation if you obtain further information or documents after the answers are served and prior to satisfaction of the judgment.

7.    The answers to the Interrogatories, as applicable, and other Discovery Requests should be complete and candid. To the extent any information called for by these Interrogatories is unknown to you, so state, and set forth whatever information you have regarding that Interrogatory. If any estimate can reasonably be made, please set forth your best estimate, clearly designated as such.

8.    No part of a Discovery Request should be left unanswered merely because an objection is interposed to another part of the Discovery Request. If a partial or incomplete answer is provided, state that the answer is partial or incomplete.

9.    If, in answering these Discovery Requests, you encounter any ambiguities when construing a question, instruction, or definition, then your answer shall set forth the matter deemed ambiguous, and the construction used in answering.

10.    You must serve your answers or objections to these Discovery Requests upon the undersigned counsel on the ***thirtieth (30th)*** day after these Discovery Requests were served upon you.

11.    Headings are for convenience only and should not be read to limit the scope of any Discovery Request.

12.    Please contact the undersigned if you would like an electronic copy of this discovery to aid in the preparation of responses. In any event, the hard copy of this discovery served upon you shall be the controlling copy.

**EXHIBIT DAR030 — Subpoena to Constance Schwartz-Morini**
## EXHIBIT 001 TO SUBPOENA
### DEFINITIONS AND CONSTRUCTION OF WORDS

1.      All words contained in the Discovery Requests shall have their normal contextual meaning unless otherwise defined herein and should be read in a manner to provide a complete answer to each Discovery Requests. ***Words need not be capitalized in order to be controlled by the meaning of such word(s) as defined herein.***

2.      Wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender.

3.      Additional definitions for or relating to the parties to this action may appear in the introductory paragraphs of this document.

### General Discovery Definitions

1.      "Agent" shall mean any agent, representative, employee, officer, director, attorney, independent contractor or any other Person acting at the direction of or on behalf of another.

2.      "And" or "each", "all", and "any" shall be construed as necessary in each case to make each document request inclusive, rather than exclusive.

3.      "Communication" shall mean and refer to any transmittal or information by any means, including, without limitation, any oral, written, or electronically recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, any correspondence, conversations, telephone calls or other voice or audio interaction, text or SMS messages, chat sessions, dialogues, discussions, interviews, consultations, agreements, or any other understandings between or among two or more Persons or any Document that recorded or reflected any such Communication."

4.      "Discovery Requests" shall mean and refer to this discovery instrument and, as applicable, any interrogatories, requests for admissions, requests for production, and/or requests for inspection contained herein.

5.      "Document" shall mean and include all documents and tangible things to the very broadest extent included within the scope of the Rules, including, but not limited to, the originals and all drafts and copies, together with any annotations or highlighted copies containing all or part of the information requested, in the possession, custody or control of You, Your attorneys, representative, employees, agents, or any other natural person or business or legal entity acting or purporting to act for or on Your behalf, or their respective Personnel as the case may be.  Also, the term "Document" or "writing" means any medium whatsoever, including all electronic, recorded and digital media of any kind, upon which intelligence or information can be recorded, or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any written material, correspondence, electronic mail, text or SMS messages, chat sessions, note file, book, pamphlet, printout, chart, record, report, periodical, letter, memorandum, (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, draft, working paper, chart, paper, print, drawing, sketch, graph,

index, list, and any written, recorded, transcribed, punched, taped, filmed or graphic matter whatsoever, however produced or reproduced, which is in your possession, custody, or control or which was, but is no longer, in Your possession, custody, or control. The term "Document" or "writing" shall also include all copies or drafts of Documents by whatever means made, including specifically but not exclusively, those copies bearing commentary or notations not appearing on the original.

6.      "Equipment" shall mean and refer to any goods or property other than inventory, farm products, consumer goods, or tools.

7.      "Identify" shall have the following meanings.

   a.      When referring to a person, to state the full current name, residence, and business addresses, and residence and business telephone numbers of the person about whom information is sought, as well as that person's present or last known employer, that person's office or title, if any, and that person's job description. If any of this information was different at the time with which the Interrogatories are concerned, state also such different information as applies to the time in question;

   b.      When referring to a business entity or firm (e.g., a corporation, partnership, limited partnership, law firm, etc.), to state the full name of such business, entity or firm, and the address of its principal place of business;

   c.      When referring to a document, to state its date, title, a brief description, subject matter, addressee or others receiving a copy, and author;

   d.      When referring to an act, communication, occurrence, statement or conduct, to state the substance of the event constituting such act and the date when such act occurred, persons participating in such act, all persons present when such act occurred, and a description of any record of such act;

   e.      When referring to dates, to state the date each such activity began and the date it ended; and

   f.      Any specific meaning provided in an Interrogatory.

8.      "Insider" (A) with respect to a debtor, shall mean and refer to any (i) member or director of the debtor, (ii) any officer or manager of the debtor, (iii) any person in control of the debtor, or (iv) any relative of any such member, director, manager, officer, or person in control; and (B) with respect to any individual, shall have the same meaning as found in 11 U.S.C. §101.

9.      "Investment Asset" shall mean and refer to stocks, bonds, securities, notes, accounts, mortgages, certificates of deposit / CDs, annuities, life insurance policies, profit sharing plans, trusts (as trustee or beneficiary), IRAs, 401(k)'s, pensions, and all other retirement plans, general or limited partnership interests, or similar ownership interests or investments, ownership of or interest in any joint venture, and including any Related Trusts (as defined below).

10.     "Mineral Interest" shall mean and refer to any interest in any mineral interest or oil and gas interest including any lease, royalty, well, working interest, well bore interest, overriding royalty interest, or equity position.

11.     "Person" shall mean and refer to any individual, corporation, company, proprietorship, partnership, trust, association, or other entity.

12.     "Personnel" shall mean and refer to any of the following persons with respect to a referenced person or entity: Insiders (as defined herein); Agents (as defined herein); representatives; servants; employees; officers; directors or managers; the Board of Directors; any individual shareholder or shareholders (or any holders of any equity interest); partner or partners; any accountant representing or providing services; or personal representatives.

13.     "Or" means and refers to and/or.

14.     "Real Property Interest" shall mean and refer to any real estate or interest in any real property in which you own or claim an interest (regardless of whether you acquired or received such real estate by inheritance, gift, or purchase), including (i) any interests in any oil and gas interest or mineral interest, including any mineral acreage owned and further including any lease, royalty, working interest, well bore interest, overriding royalty interest and/or equity position (ii) and option or any similar interest, (iii) any water rights or wind rights, (iv) any leases or interests in leases of any kind such as ground leases, grazing leases, or any other agricultural leases whether as (a) lessor or landlord or (b) lessee or tenant, and/or (v) any lien, encumbrance, or other debt or security related to any interest in real property.

15.     "Relating to" means concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

16.     "Related Trust" means and refers to any trust of which you, your spouse, or child, issue, ward, or dependent of you or your spouse any are a settlor, contributor, controller, trustee, or beneficiary on in which you, your spouse, or child, issue, ward, or dependent of you or your spouse own or claim any interest.

17.     "Response Date" shall mean and refer to the date on which You provide a response to these Discovery Requests / Requests for Production.

18.     "Rolling Stock" shall mean and refer to any automobiles, pickups, trucks, motor vehicles, motorcycles, travel trailers, motor homes, boats, airplanes, dozers, front end loaders, or any other rolling stock or similar equipment, and regardless of whether ownership is evidenced by a certificate of title.

19.     "Rules" shall mean and refer to the Texas Rules of Civil Procedure, the Federal Rules of Civil Procedure and/or the Federal Rules of Bankruptcy Procedure, as applicable.

20.     "Tools" shall men and refer to any goods or property other than inventory, farm products, consumer goods, or equipment.

21.     "You" or "yours" shall refer to the party to whom these Discovery Requests are being served and all agents and representatives, and all other persons acting on behalf of or purported to act on behalf of said person including the Agents and Personnel of such person.

## Specific Discovery Definitions

1.     "Debtor" means and refers to SHILO DION SANDERS.

2.     "Defendant" means and refers to SHILO DION SANDERS.

3.     "5430" the 5430 Alliance.

4.     "Judgment Debtor" means and refers to SHILO DION SANDERS.

5.     "NIL" means and refers to name, image, and likeness, and any right or interest in any property related thereto.

6.     "Period" shall mean and refer to the period of time from **September 17, 2015 through and until the present**.

7.     "Plummer" refers to Plummer Law Group, PC and/or Tabitha Plummer.

8.     "Related Entity" means and refers to any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by a person or entity, or with respect to which a person or entity is an Insider or possesses any beneficial interest.

9.     "Schwartz-Morini" means and refers to Constance Schwartz-Morini.

10.     "SMAC" means and refers to SMAC Entertainment LLC.

11.     "Subject Entity" shall mean and refer to each of the following:

    a.     Big 21, LLC

    b.     SS1 Legendary, LLC

    c.     SS21, LLC;

    d.     Headache Gang, LLC and,

    e.     any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by Shilo Sanders, with respect to which Shilo Sanders is or has been an Insider, and/or with respect to which Shilo Sanders possesses any beneficial interest.

12.     "UC" means and refers to the University of Colardo, the Athletic Department of the University of Colardo, and the football program of the University of Colardo.

*{continued on following sheet}*

**EXHIBIT 001 TO SUBPOENA**

# DOCUMENTS AND THINGS TO PRODUCE

1.  Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) Shilo Sanders and/or any Personnel of Shilo Sanders.

2.  Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) any Subject Entity and/or any Personnel of any Subject Entity.

3.  Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) Shilo Sanders.

4.  Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders.

5.  Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Subject Entity.

6.  Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Subject Entity.

7.  Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of any Subject Entity.

8.  Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders.

9.  Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Related Entity of Deion Sanders, and/or Shedeur Sanders, including any Insider or other Personnel thereof.

10. Any documents or emails or other communications evidencing any contract or agreement between Shilo Sanders and any other person or entity, including but not limited to:

    a.  5430,
    b.  Plummer,
    c.  Schwartz-Morini,
    d.  SMAC,
    e.  UC,
    f.  any affiliate or subsidiary of any of the foregoing, or

EXHIBIT 001 TO SUBPOENA — Page 12
4885-1123-7607, v. 6

g.      any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

11.    Any documents or emails or other communications evidencing any contract or agreement between Big 21 LLC and any other person or entity, including but not limited to:

a.      5430,
b.      Plummer,
c.      Schwartz-Morini,
d.      SMAC,
e.      UC,
f.      any affiliate or subsidiary of any of the foregoing, or
g.      any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

12.    Any documents or emails or other communications evidencing any contract or agreement between SS1 Legendary LLC and any other person or entity, including but not limited to:

a.      5430,
b.      Plummer,
c.      Schwartz-Morini,
d.      SMAC,
e.      UC,
f.      any affiliate or subsidiary of any of the foregoing, or
g.      any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

13.    Any documents or emails or other communications evidencing any contract or agreement between SS21 LLC and any other person or entity, including but not limited to:

a.      5430,
b.      Plummer,
c.      Schwartz-Morini,
d.      SMAC,
e.      UC,
f.      any affiliate or subsidiary of any of the foregoing, or
g.      any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

14.    Any documents or emails or other communications evidencing any contract or agreement between Headache Gang LLC and any other person or entity, including but not limited to:

a.      5430,
b.      Plummer,

EXHIBIT 001 TO SUBPOENA — Page 13
4885-1123-7607, v. 6

 c.  Schwartz-Morini,
 d.  SMAC,
 e.  UC,
 f.  any affiliate or subsidiary of any of the foregoing, or
 g.  any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

15. Any documents or emails or other communications evidencing any contract or agreement between any other Subject Entity and any other person or entity, including but not limited to:

 a.  5430,
 b.  Plummer,
 c.  Schwartz-Morini,
 d.  SMAC,
 e.  UC,
 f.  any affiliate or subsidiary of any of the foregoing, or
 g.  any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

16. Any documents or emails or other communications evidencing any contract or agreement between (i) Shilo Sanders and (ii) any Subject Entity.

17. Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Subject Entity and (ii) any other Subject Entity.

18. Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) Shilo Sanders.

19. Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) any Subject Entity.

20. Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any agents, managers, attorneys, or representatives.

21. Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any media company, social media outlet, brand, product, advertiser, agency, or any other similar party.

22. Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of

EXHIBIT 001 TO SUBPOENA — Page 14
4885-1123-7607, v. 6

any good or service, of or relating to Shilo Sanders, between (i) any Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

23. Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service, of or relating to Shilo Sanders, between (i) any Insider Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

24. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Deion Sanders** or any Related Entity or Personnel of Deion Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

25. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Shedeur Sanders** or any Related Entity or Personnel of Shedeur Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

26. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **5430** or any Related Entity or Personnel of 5430 relating to (x) Shilo Sanders or (y) any Subject Entity.

27. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Plummer** or any Related Entity or Personnel of Plummer relating to (x) Shilo Sanders or (y) any Subject Entity.

28. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Schwartz-Morini** or any Related Entity or Personnel of Schwartz-Morini relating to (x) Shilo Sanders or (y) any Subject Entity.

29. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **SMAC** or any Related Entity or Personnel of SMAC relating to (x) Shilo Sanders or (y) any Subject Entity.

30. Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **UC** or any Related Entity or Personnel of UC relating to (x) Shilo Sanders or (y) any Subject Entity.

31. Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* Shilo Sanders during the Period.

32. Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* any Subject Entity during the Period.

33. Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* any Insider or other Personnel of

**EXHIBIT 001 TO SUBPOENA — Page 15**
4885-1123-7607, v. 6

Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

34.     Any documents or emails or other communications relating to any money, value, or any consideration _received by or on account of_ any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

35.     Any documents or emails or other communications relating to any money, value, or any consideration _earned by or on account of_ Shilo Sanders during the Period.

36.     Any documents or emails or other communications relating to any money, value, or any consideration _earned by or on account of_ any Subject Entity during the Period.

37.     Any documents or emails or other communications relating to any money, value, or any consideration _earned by or on account of_ any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

38.     Any documents or emails or other communications relating to any money, value, or any consideration _earned by or on account of_ any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

39.     Any documents or emails or other communications relating to any money, value, or any consideration _received_ by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

40.     Any documents or emails or other communications relating to any money, value, or any consideration _earned_ by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

41.     Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shilo Sanders or any Subject Entity that were managed or handled by you, your Personnel, or any Related Entity.

42.     Any documents or emails or other communications relating to any agreements, contracts, and deals involving Deion Sanders or Related Entity of Deion Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

43.     Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shedeur Sanders or Related Entity of Shedeur Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

**EXHIBIT 001 TO SUBPOENA — Page 16**
4885-1123-7607, v. 6

44.     Any documents or email or other communications relating to any trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

45.     Any documents or email or other communications relating to any Related Trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

46.     Any documents or email or other communications evidencing any *assets or interest in any property* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

47.     Any documents or email or other communications evidencing any *Investment Asset* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

48.     Any documents or email or other communications evidencing any *Mineral Interest* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

49.     Any documents or email or other communications evidencing any *Real Property Interest* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

50.     Any documents or email or other communications evidencing any *Rolling Stock* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

51.     Any documents or email or other communications evidencing any *firearms* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

52.     Any documents or email or other communications evidencing any *jewelry* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

53.     Any documents or email or other communications evidencing any *designer clothing or accessories* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

54.     Any and all documents, information, and/or things produced by or on behalf of Shilo Sanders to the Chapter 7 Trustee appointed in the bankruptcy case of Shilo Sanders, Case No. 23-14859-MER; *In re Shilo Dion Sanders*, in the United States Bankruptcy Court for the District of Colorado.

**EXHIBIT 001 TO SUBPOENA — Page 17**
4885-1123-7607, v. 6

**EXHIBIT DAR031 — Subpoena to Truck Ranch**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 23-14859** |
| **SHILO DION SANDERS,** | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS UNDER FED. R. BANKR. P. 2004

**To:**  **Truck Ranch**
**8301 Raspberry Way**
**Frederick CO 80504**

☑ *__Production:__* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the documents, electronically stored information, or objects, referenced and described in **EXHIBIT 001**, attached hereto and incorporated by reference herein, pursuant to Fed. R. Bank. P. 2004 and Local Bankruptcy Rule 2004.

| Place: | *Mathias Raphael PLLC* *13101 Preston Road, Suite 501* *Dallas, TX 75240* | Date and Time: *__The thirtieth (30th) day following entry of the order of the Court permitting service of this Subpoena, which order is served with and/or attached to this subpoena,__* or as otherwise may be agreed between the parties. |
|---|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   October ___, 2024

*Signature of Clerk or Deputy Clerk*

*Attorneys for John Darjean*

The name, address, e-mail address, and telephone number of the attorney representing *John Darjean* who issues or requests this subpoena, are:

> Jeff Carruth (SBOT #24001846)
> **WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
> 24 Greenway Plaza, Suite 2050, Houston, TX 77046
> Telephone: (713) 341-1158, jcarruth@wkpz.com

---

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT DAR031 — Subpoena to Truck Ranch**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Bankruptcy Case       **23-14859**

**PROOF OF SERVICE**

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*    | **Truck Ranch** |

on *(date)*    |                      |    .

I served the subpoena by delivering a copy to the following by ***certified mail, return receipt requested and regular mail*** on October ___, 2024.

☒

**Truck Ranch
8301 Raspberry Way
Frederick CO 80504**

I declare under penalty of perjury that this information is true.

Date:   | October __, 2024 |

| |
*Server's signature*

| Jeff Carruth, Attorney |
*Printed name and title*

| WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
24 Greenway Plaza, Suite 2050, Houston, TX 77046 |
*Server's address*

Additional information regarding attempted service, etc.:

4854-9140-4263, v. 6

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT TO SUBPOENA

# EXHIBIT 001

**EXHIBIT 001 TO SUBPOENA**

## <u>INSTRUCTIONS</u>

1.　　In no event should any Instruction, Definition, or Discovery Request be read to contradict the Rules.

2.　　Unless otherwise specified, the relevant period of time for each Discovery Request is **<u>September 17, 2015,</u>** through and until the present.

3.　　These instructions and definitions herein should be construed to require answers and/or production based upon the knowledge of, and information and documents available to the Debtor, as well as the Personnel (as defined below) of Debtor.

4.　　It is intended that the following Discovery Requests will not solicit any material protected either by the attorney/client privilege or the work-product doctrine that was created by, or developed by, counsel for Debtor after the date on which the relevant litigation was commenced. If any inquiry is susceptible to a construction that calls for the production of such material, or for material claimed to be protected under the attorney/client privilege, that material need not be provided but a privilege log pursuant will be required as to all such material.

5.　　With respect to any Document that is produced:

a.　　Each Document produced pursuant to this request should be identified in such production by the paragraph of the request with respect to which it is produced.

b.　　If any privilege, exemption, or immunity is claimed as a basis for withholding production of one or more Documents, then please state:

  i.　　the particular basis for withholding the Document;

  ii.　　the author(s) of the Document;

  iii.　　the form of the Document;

  iv.　　the date of the Document;

  v.　　the identity of all persons who have seen the Document; and;

  vi.　　the general subject matter of the Document.

c.　　Documents which, when regularly maintained, are stapled, clipped, or otherwise physically attached to other Documents are to be produced in their stapled, clipped, or otherwise physically attached form.

d.　　If a Document or a group of Documents is taken out of a file folder, file drawer, notebook, or other identifiable storage facility, please attach thereto a copy of the label of the file folder, file drawer, etc., so that the location of each such Document in your files can be determined.

e.　　If any such responsive Document has been lost, discarded, or destroyed, you must identify such Document as completely as possible, including the following information:

  i.　　the type of Document;

  ii.　　the date of the Document;

    iii.    the date or approximate date the Document was lost, discarded, or destroyed;

    iv.    the circumstances or manner in which it was lost, discarded, or destroyed;

    v.    the reason or reasons for disposing of the Document (if the Document was discarded or destroyed);

    vi.    the identity of all Persons authorizing or having knowledge of the circumstances surrounding disposal of the Document;

    vii.    the identity of the Persons who lost, discarded, or destroyed the Document; and

    viii.    the identity of all Persons having knowledge of the contents of the Document.

    f.    If you have previously produced to another party any such responsive Documents and you believe that such production is accessible to the party serving these Discovery Requests, you should so specify.

6.    These Discovery Requests are continuing in character so as to require that supplemental answers be served seasonably if further or different information is obtained with respect to any Discovery Request.  Consequently, these Discovery Requests require supplementation if you obtain further information or documents after the answers are served and prior to satisfaction of the judgment.

7.    The answers to the Interrogatories, as applicable, and other Discovery Requests should be complete and candid.  To the extent any information called for by these Interrogatories is unknown to you, so state, and set forth whatever information you have regarding that Interrogatory.  If any estimate can reasonably be made, please set forth your best estimate, clearly designated as such.

8.    No part of a Discovery Request should be left unanswered merely because an objection is interposed to another part of the Discovery Request.  If a partial or incomplete answer is provided, state that the answer is partial or incomplete.

9.    If, in answering these Discovery Requests, you encounter any ambiguities when construing a question, instruction, or definition, then your answer shall set forth the matter deemed ambiguous, and the construction used in answering.

10.    You must serve your answers or objections to these Discovery Requests upon the undersigned counsel on the ***thirtieth (30th)*** day after these Discovery Requests were served upon you.

11.    Headings are for convenience only and should not be read to limit the scope of any Discovery Request.

12.    Please contact the undersigned if you would like an electronic copy of this discovery to aid in the preparation of responses.  In any event, the hard copy of this discovery served upon you shall be the controlling copy.

<span style="color:red">**EXHIBIT DAR031 — Subpoena to Truck Ranch**</span>
**EXHIBIT 001 TO SUBPOENA**

## DEFINITIONS AND CONSTRUCTION OF WORDS

1.      All words contained in the Discovery Requests shall have their normal contextual meaning unless otherwise defined herein and should be read in a manner to provide a complete answer to each Discovery Requests. ***Words need not be capitalized in order to be controlled by the meaning of such word(s) as defined herein.***

2.      Wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender.

3.      Additional definitions for or relating to the parties to this action may appear in the introductory paragraphs of this document.

### General Discovery Definitions

1.      "Agent" shall mean any agent, representative, employee, officer, director, attorney, independent contractor or any other Person acting at the direction of or on behalf of another.

2.      "And" or "each", "all", and "any" shall be construed as necessary in each case to make each document request inclusive, rather than exclusive.

3.      "Communication" shall mean and refer to any transmittal or information by any means, including, without limitation, any oral, written, or electronically recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, any correspondence, conversations, telephone calls or other voice or audio interaction, text or SMS messages, chat sessions, dialogues, discussions, interviews, consultations, agreements, or any other understandings between or among two or more Persons or any Document that recorded or reflected any such Communication."

4.      "Discovery Requests" shall mean and refer to this discovery instrument and, as applicable, any interrogatories, requests for admissions, requests for production, and/or requests for inspection contained herein.

5.      "Document" shall mean and include all documents and tangible things to the very broadest extent included within the scope of the Rules, including, but not limited to, the originals and all drafts and copies, together with any annotations or highlighted copies containing all or part of the information requested, in the possession, custody or control of You, Your attorneys, representative, employees, agents, or any other natural person or business or legal entity acting or purporting to act for or on Your behalf, or their respective Personnel as the case may be.  Also, the term "Document" or "writing" means any medium whatsoever, including all electronic, recorded and digital media of any kind, upon which intelligence or information can be recorded, or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any written material, correspondence, electronic mail, text or SMS messages, chat sessions, note file, book, pamphlet, printout, chart, record, report, periodical, letter, memorandum, (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, draft, working paper, chart, paper, print, drawing, sketch, graph,

index, list, and any written, recorded, transcribed, punched, taped, filmed or graphic matter whatsoever, however produced or reproduced, which is in your possession, custody, or control or which was, but is no longer, in Your possession, custody, or control.  The term "Document" or "writing" shall also include all copies or drafts of Documents by whatever means made, including specifically but not exclusively, those copies bearing commentary or notations not appearing on the original.

6.      "Equipment" shall mean and refer to any goods or property other than inventory, farm products, consumer goods, or tools.

7.      "Identify" shall have the following meanings.

   a.      When referring to a person, to state the full current name, residence, and business addresses, and residence and business telephone numbers of the person about whom information is sought, as well as that person's present or last known employer, that person's office or title, if any, and that person's job description.  If any of this information was different at the time with which the Interrogatories are concerned, state also such different information as applies to the time in question;

   b.      When referring to a business entity or firm (e.g., a corporation, partnership, limited partnership, law firm, etc.), to state the full name of such business, entity or firm, and the address of its principal place of business;

   c.      When referring to a document, to state its date, title, a brief description, subject matter, addressee or others receiving a copy, and author;

   d.      When referring to an act, communication, occurrence, statement or conduct, to state the substance of the event constituting such act and the date when such act occurred, persons participating in such act, all persons present when such act occurred, and a description of any record of such act;

   e.      When referring to dates, to state the date each such activity began and the date it ended; and

   f.      Any specific meaning provided in an Interrogatory.

8.      "Insider" (A) with respect to a debtor, shall mean and refer to any (i) member or director of the debtor, (ii) any officer or manager of the debtor, (iii) any person in control of the debtor, or (iv) any relative of any such member, director, manager, officer, or person in control; and (B) with respect to any individual, shall have the same meaning as found in 11 U.S.C. §101.

9.      "Investment Asset" shall mean and refer to stocks, bonds, securities, notes, accounts, mortgages, certificates of deposit / CDs, annuities, life insurance policies, profit sharing plans, trusts (as trustee or beneficiary), IRAs, 401(k)'s, pensions, and all other retirement plans, general or limited partnership interests, or similar ownership interests or investments, ownership of or interest in any joint venture, and including any Related Trusts (as defined below).

10.     "Mineral Interest" shall mean and refer to any interest in any mineral interest or oil and gas interest including any lease, royalty, well, working interest, well bore interest, overriding royalty interest, or equity position.

11.     "Person" shall mean and refer to any individual, corporation, company, proprietorship, partnership, trust, association, or other entity.

12.     "Personnel" shall mean and refer to any of the following persons with respect to a referenced person or entity: Insiders (as defined herein); Agents (as defined herein); representatives; servants; employees; officers; directors or managers; the Board of Directors; any individual shareholder or shareholders (or any holders of any equity interest); partner or partners; any accountant representing or providing services; or personal representatives.

13.     "Or" means and refers to and/or.

14.     "Real Property Interest" shall mean and refer to any real estate or interest in any real property in which you own or claim an interest (regardless of whether you acquired or received such real estate by inheritance, gift, or purchase), including (i) any interests in any oil and gas interest or mineral interest, including any mineral acreage owned and further including any lease, royalty, working interest, well bore interest, overriding royalty interest and/or equity position (ii) and option or any similar interest, (iii) any water rights or wind rights, (iv) any leases or interests in leases of any kind such as ground leases, grazing leases, or any other agricultural leases whether as (a) lessor or landlord or (b) lessee or tenant, and/or (v) any lien, encumbrance, or other debt or security related to any interest in real property.

15.     "Relating to" means concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

16.     "Related Trust" means and refers to any trust of which you, your spouse, or child, issue, ward, or dependent of you or your spouse any are a settlor, contributor, controller, trustee, or beneficiary on in which you, your spouse, or child, issue, ward, or dependent of you or your spouse own or claim any interest.

17.     "Response Date" shall mean and refer to the date on which You provide a response to these Discovery Requests / Requests for Production.

18.     "Rolling Stock" shall mean and refer to any automobiles, pickups, trucks, motor vehicles, motorcycles, travel trailers, motor homes, boats, airplanes, dozers, front end loaders, or any other rolling stock or similar equipment, and regardless of whether ownership is evidenced by a certificate of title.

19.     "Rules" shall mean and refer to the Texas Rules of Civil Procedure, the Federal Rules of Civil Procedure and/or the Federal Rules of Bankruptcy Procedure, as applicable.

20.     "Tools" shall men and refer to any goods or property other than inventory, farm products, consumer goods, or equipment.

21.     "You" or "yours" shall refer to the party to whom these Discovery Requests are being served and all agents and representatives, and all other persons acting on behalf of or purported to act on behalf of said person including the Agents and Personnel of such person.

## Specific Discovery Definitions

1.     "Debtor" means and refers to SHILO DION SANDERS**.**

2.     "Defendant" means and refers to SHILO DION SANDERS**.**

3.     "5430" the 5430 Alliance.

4.     "Judgment Debtor" means and refers to SHILO DION SANDERS**.**

5.     "NIL" means and refers to name, image, and likeness, and any right or interest in any property related thereto.

6.     "Period" shall mean and refer to the period of time from **September 17, 2015 through and until the present**.

7.     "Plummer" refers to Plummer Law Group, PC and/or Tabitha Plummer.

8.     "Related Entity" means and refers to any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by a person or entity, or with respect to which a person or entity is an Insider or possesses any beneficial interest.

9.     "Schwartz-Morini" means and refers to Constance Schwartz-Morini.

10.     "SMAC" means and refers to SMAC Entertainment LLC.

11.     "Subject Entity" shall mean and refer to each of the following:

a.     Big 21, LLC

b.     SS1 Legendary, LLC

c.     SS21, LLC;

d.     Headache Gang, LLC and,

e.     any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by Shilo Sanders, or with respect to which Shilo Sanders is or has been an Insider, and/or with respect to which Shilo Sanders possesses any beneficial interest.

12.     "UC" means and refers to the University of Colardo, the Athletic Department of the University of Colardo, and the football program of the University of Colardo.

*{continued on following sheet}*

4854-9140-4263, v. 6

# DOCUMENTS AND THINGS TO PRODUCE

1.      All contracts or agreements between you and Shilo Sanders.

2.      All contracts or agreements between you and any Subject Entity.

3.      Any contacts or agreements entered into between you and any of the following relating to Shilo Sanders and/or any Subject Entity:

   a.      5430,
   b.      Plummer,
   c.      Schwartz-Morini,
   d.      SMAC,
   e.      UC,
   f.      any affiliate or subsidiary of any of the foregoing, or
   g.      any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

4.      Any documents or emails or other communications relating to any truck sold, given, or loaned to or for the use of Shilo Sanders.

EXHIBIT 001 TO SUBPOENA — Page 11
4854-9140-4263, v. 6

**EXHIBIT DAR032 — Subpoena to Big 21 LLC**

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 23-14859** |
| **SHILO DION SANDERS,** | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS UNDER FED. R. BANKR. P. 2004

**To:**  Big 21 LLC
**Attn. InCorp Services, Inc. - Reg. Agent**
**815 Brazos St. Ste. 500**
**Austin TX 78701**

☑ *__Production:__* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the documents, electronically stored information, or objects, referenced and described in **EXHIBIT 001**, attached hereto and incorporated by reference herein, pursuant to Fed. R. Bank. P. 2004 and Local Bankruptcy Rule 2004.

| Place: | *Mathias Raphael PLLC*<br>*13101 Preston Road, Suite 501*<br>*Dallas, TX 75240* | Date and Time: *__The thirtieth (30th) day following entry of the order of the Court permitting service of this Subpoena, which order is served with and/or attached to this subpoena,__* or as otherwise may be agreed between the parties. |
|---|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   October __, 2024

_____
*Signature of Clerk or Deputy Clerk*

_____
**Attorneys for John Darjean**

The name, address, e-mail address, and telephone number of the attorney representing *John Darjean* who issues or requests this subpoena, are:

Jeff Carruth (SBOT #24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
24 Greenway Plaza, Suite 2050, Houston, TX 77046
Telephone: (713) 341-1158, jcarruth@wkpz.com

---

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

---

4865-6514-6087, v. 7

**EXHIBIT DAR032 — Subpoena to Big 21 LLC**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Bankruptcy Case       **23-14859**

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*   | **Big 21 LLC** |

on *(date)* _____ .

I served the subpoena by delivering a copy to the following by ***certified mail, return receipt requested and regular mail*** on October ___, 2024.

☒

   **Big 21 LLC**
   **Attn. InCorp Services, Inc. - Reg. Agent**
   **815 Brazos St. Ste. 500**
   **Austin TX 78701**

I declare under penalty of perjury that this information is true.

Date:   | October ___, 2024. |

| |
*Server's signature*

| Jeff Carruth, Attorney |
*Printed name and title*

| WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
24 Greenway Plaza, Suite 2050, Houston, TX 77046 |
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT TO SUBPOENA

# EXHIBIT 001

## INSTRUCTIONS

1.     In no event should any Instruction, Definition, or Discovery Request be read to contradict the Rules.

2.     Unless otherwise specified, the relevant period of time for each Discovery Request is **September 17, 2015,** through and until the present.

3.     These instructions and definitions herein should be construed to require answers and/or production based upon the knowledge of, and information and documents available to the Debtor, as well as the Personnel (as defined below) of Debtor.

4.     It is intended that the following Discovery Requests will not solicit any material protected either by the attorney/client privilege or the work-product doctrine that was created by, or developed by, counsel for Debtor after the date on which the relevant litigation was commenced. If any inquiry is susceptible to a construction that calls for the production of such material, or for material claimed to be protected under the attorney/client privilege, that material need not be provided but a privilege log pursuant will be required as to all such material.

5.     With respect to any Document that is produced:

a.     Each Document produced pursuant to this request should be identified in such production by the paragraph of the request with respect to which it is produced.

b.     If any privilege, exemption, or immunity is claimed as a basis for withholding production of one or more Documents, then please state:

    i.     the particular basis for withholding the Document;

    ii.     the author(s) of the Document;

    iii.     the form of the Document;

    iv.     the date of the Document;

    v.     the identity of all persons who have seen the Document; and;

    vi.     the general subject matter of the Document.

c.     Documents which, when regularly maintained, are stapled, clipped, or otherwise physically attached to other Documents are to be produced in their stapled, clipped, or otherwise physically attached form.

d.     If a Document or a group of Documents is taken out of a file folder, file drawer, notebook, or other identifiable storage facility, please attach thereto a copy of the label of the file folder, file drawer, etc., so that the location of each such Document in your files can be determined.

e.     If any such responsive Document has been lost, discarded, or destroyed, you must identify such Document as completely as possible, including the following information:

    i.     the type of Document;

    ii.     the date of the Document;

iii.     the date or approximate date the Document was lost, discarded, or destroyed;

iv.     the circumstances or manner in which it was lost, discarded, or destroyed;

v.     the reason or reasons for disposing of the Document (if the Document was discarded or destroyed);

vi.     the identity of all Persons authorizing or having knowledge of the circumstances surrounding disposal of the Document;

vii.     the identity of the Persons who lost, discarded, or destroyed the Document; and

viii.     the identity of all Persons having knowledge of the contents of the Document.

f.     If you have previously produced to another party any such responsive Documents and you believe that such production is accessible to the party serving these Discovery Requests, you should so specify.

6.     These Discovery Requests are continuing in character so as to require that supplemental answers be served seasonably if further or different information is obtained with respect to any Discovery Request. Consequently, these Discovery Requests require supplementation if you obtain further information or documents after the answers are served and prior to satisfaction of the judgment.

7.     The answers to the Interrogatories, as applicable, and other Discovery Requests should be complete and candid. To the extent any information called for by these Interrogatories is unknown to you, so state, and set forth whatever information you have regarding that Interrogatory. If any estimate can reasonably be made, please set forth your best estimate, clearly designated as such.

8.     No part of a Discovery Request should be left unanswered merely because an objection is interposed to another part of the Discovery Request. If a partial or incomplete answer is provided, state that the answer is partial or incomplete.

9.     If, in answering these Discovery Requests, you encounter any ambiguities when construing a question, instruction, or definition, then your answer shall set forth the matter deemed ambiguous, and the construction used in answering.

10.     You must serve your answers or objections to these Discovery Requests upon the undersigned counsel on the ***thirtieth (30th)*** day after these Discovery Requests were served upon you.

11.     Headings are for convenience only and should not be read to limit the scope of any Discovery Request.

12.     Please contact the undersigned if you would like an electronic copy of this discovery to aid in the preparation of responses. In any event, the hard copy of this discovery served upon you shall be the controlling copy.

## EXHIBIT 001 TO SUBPOENA

## DEFINITIONS AND CONSTRUCTION OF WORDS

1.　　All words contained in the Discovery Requests shall have their normal contextual meaning unless otherwise defined herein and should be read in a manner to provide a complete answer to each Discovery Requests. ***Words need not be capitalized in order to be controlled by the meaning of such word(s) as defined herein.***

2.　　Wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender.

3.　　Additional definitions for or relating to the parties to this action may appear in the introductory paragraphs of this document.

### General Discovery Definitions

1.　　"Agent" shall mean any agent, representative, employee, officer, director, attorney, independent contractor or any other Person acting at the direction of or on behalf of another.

2.　　"And" or "each", "all", and "any" shall be construed as necessary in each case to make each document request inclusive, rather than exclusive.

3.　　"Communication" shall mean and refer to any transmittal or information by any means, including, without limitation, any oral, written, or electronically recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, any correspondence, conversations, telephone calls or other voice or audio interaction, text or SMS messages, chat sessions, dialogues, discussions, interviews, consultations, agreements, or any other understandings between or among two or more Persons or any Document that recorded or reflected any such Communication."

4.　　"Discovery Requests" shall mean and refer to this discovery instrument and, as applicable, any interrogatories, requests for admissions, requests for production, and/or requests for inspection contained herein.

5.　　"Document" shall mean and include all documents and tangible things to the very broadest extent included within the scope of the Rules, including, but not limited to, the originals and all drafts and copies, together with any annotations or highlighted copies containing all or part of the information requested, in the possession, custody or control of You, Your attorneys, representative, employees, agents, or any other natural person or business or legal entity acting or purporting to act for or on Your behalf, or their respective Personnel as the case may be. Also, the term "Document" or "writing" means any medium whatsoever, including all electronic, recorded and digital media of any kind, upon which intelligence or information can be recorded, or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any written material, correspondence, electronic mail, text or SMS messages, chat sessions, note file, book, pamphlet, printout, chart, record, report, periodical, letter, memorandum, (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, draft, working paper, chart, paper, print, drawing, sketch, graph,

index, list, and any written, recorded, transcribed, punched, taped, filmed or graphic matter whatsoever, however produced or reproduced, which is in your possession, custody, or control or which was, but is no longer, in Your possession, custody, or control.  The term "Document" or "writing" shall also include all copies or drafts of Documents by whatever means made, including specifically but not exclusively, those copies bearing commentary or notations not appearing on the original.

6.      "Equipment" shall mean and refer to any goods or property other than inventory, farm products, consumer goods, or tools.

7.      "Identify" shall have the following meanings.

  a.      When referring to a person, to state the full current name, residence, and business addresses, and residence and business telephone numbers of the person about whom information is sought, as well as that person's present or last known employer, that person's office or title, if any, and that person's job description.  If any of this information was different at the time with which the Interrogatories are concerned, state also such different information as applies to the time in question;

  b.      When referring to a business entity or firm (e.g., a corporation, partnership, limited partnership, law firm, etc.), to state the full name of such business, entity or firm, and the address of its principal place of business;

  c.      When referring to a document, to state its date, title, a brief description, subject matter, addressee or others receiving a copy, and author;

  d.      When referring to an act, communication, occurrence, statement or conduct, to state the substance of the event constituting such act and the date when such act occurred, persons participating in such act, all persons present when such act occurred, and a description of any record of such act;

  e.      When referring to dates, to state the date each such activity began and the date it ended; and

  f.      Any specific meaning provided in an Interrogatory.

8.      "Insider" (A) with respect to a debtor, shall mean and refer to any (i) member or director of the debtor, (ii) any officer or manager of the debtor, (iii) any person in control of the debtor, or (iv) any relative of any such member, director, manager, officer, or person in control; and (B) with respect to any individual, shall have the same meaning as found in 11 U.S.C. §101.

9.      "Investment Asset" shall mean and refer to stocks, bonds, securities, notes, accounts, mortgages, certificates of deposit / CDs, annuities, life insurance policies, profit sharing plans, trusts (as trustee or beneficiary), IRAs, 401(k)'s, pensions, and all other retirement plans, general or limited partnership interests, or similar ownership interests or investments, ownership of or interest in any joint venture, and including any Related Trusts (as defined below).

10.     "Mineral Interest" shall mean and refer to any interest in any mineral interest or oil and gas interest including any lease, royalty, well, working interest, well bore interest, overriding royalty interest, or equity position.

11.     "Person" shall mean and refer to any individual, corporation, company, proprietorship, partnership, trust, association, or other entity.

12.     "Personnel" shall mean and refer to any of the following persons with respect to a referenced person or entity: Insiders (as defined herein); Agents (as defined herein); representatives; servants; employees; officers; directors or managers; the Board of Directors; any individual shareholder or shareholders (or any holders of any equity interest); partner or partners; any accountant representing or providing services; or personal representatives.

13.     "Or" means and refers to and/or.

14.     "Real Property Interest" shall mean and refer to any real estate or interest in any real property in which you own or claim an interest (regardless of whether you acquired or received such real estate by inheritance, gift, or purchase), including (i) any interests in any oil and gas interest or mineral interest, including any mineral acreage owned and further including any lease, royalty, working interest, well bore interest, overriding royalty interest and/or equity position (ii) and option or any similar interest, (iii) any water rights or wind rights, (iv) any leases or interests in leases of any kind such as ground leases, grazing leases, or any other agricultural leases whether as (a) lessor or landlord or (b) lessee or tenant, and/or (v) any lien, encumbrance, or other debt or security related to any interest in real property.

15.     "Relating to" means concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

16.     "Related Trust" means and refers to any trust of which you, your spouse, or child, issue, ward, or dependent of you or your spouse any are a settlor, contributor, controller, trustee, or beneficiary on in which you, your spouse, or child, issue, ward, or dependent of you or your spouse own or claim any interest.

17.     "Response Date" shall mean and refer to the date on which You provide a response to these Discovery Requests / Requests for Production.

18.     "Rolling Stock" shall mean and refer to any automobiles, pickups, trucks, motor vehicles, motorcycles, travel trailers, motor homes, boats, airplanes, dozers, front end loaders, or any other rolling stock or similar equipment, and regardless of whether ownership is evidenced by a certificate of title.

19.     "Rules" shall mean and refer to the Texas Rules of Civil Procedure, the Federal Rules of Civil Procedure and/or the Federal Rules of Bankruptcy Procedure, as applicable.

**EXHIBIT DAR032 — Subpoena to Big 21 LLC**
**EXHIBIT 001 TO SUBPOENA**

20.    "Tools" shall men and refer to any goods or property other than inventory, farm products, consumer goods, or equipment.

21.    "You" or "yours" shall refer to the party to whom these Discovery Requests are being served and all agents and representatives, and all other persons acting on behalf of or purported to act on behalf of said person including the Agents and Personnel of such person.

## Specific Discovery Definitions

1.    "Debtor" means and refers to SHILO DION SANDERS**.**

2.    "Defendant" means and refers to SHILO DION SANDERS**.**

3.    "5430" the 5430 Alliance.

4.    "Judgment Debtor" means and refers to SHILO DION SANDERS**.**

5.    "NIL" means and refers to name, image, and likeness, and any right or interest in any property related thereto.

6.    "Period" shall mean and refer to the period of time from **September 17, 2015 through and until the present**.

7.    "Plummer" refers to Plummer Law Group, PC and/or Tabitha Plummer.

8.    "Related Entity" means and refers to any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by a person or entity, or with respect to which a person or entity is an Insider or possesses any beneficial interest.

9.    "Schwartz-Morini" means and refers to Constance Schwartz-Morini.

10.    "SMAC" means and refers to SMAC Entertainment LLC.

11.    "Subject Entity" shall mean and refer to each of the following:

a.    Big 21, LLC

b.    SS1 Legendary, LLC

c.    SS21, LLC;

d.    Headache Gang, LLC and,

e.    any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by Shilo Sanders, with respect to which Shilo Sanders is or has been an Insider, and/or with respect to which Shilo Sanders possesses any beneficial interest.

12.    "UC" means and refers to the University of Colardo, the Athletic Department of the University of Colardo, and the football program of the University of Colardo.

*{continued on following sheet}*

# DOCUMENTS AND THINGS TO PRODUCE

1. Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) Shilo Sanders and/or any Personnel of Shilo Sanders.

2. Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) any Subject Entity and/or any Personnel of any Subject Entity.

3. Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) Shilo Sanders.

4. Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders.

5. Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Subject Entity.

6. Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Subject Entity.

7. Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of any Subject Entity.

8. Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders.

9. Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Related Entity of Deion Sanders, and/or Shedeur Sanders, including any Insider or other Personnel thereof.

10. Any documents or emails or other communications evidencing any contract or agreement between Shilo Sanders and any other person or entity, including but not limited to:

    a. 5430,
    b. Plummer,
    c. Schwartz-Morini,
    d. SMAC,
    e. UC,
    f. any affiliate or subsidiary of any of the foregoing, or

EXHIBIT 001 TO SUBPOENA — Page 11
4865-6514-6087, v. 7

    g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

11.    Any documents or emails or other communications evidencing any contract or agreement between Big 21 LLC and any other person or entity, including but not limited to:

    a.     5430,
    b.     Plummer,
    c.     Schwartz-Morini,
    d.     SMAC,
    e.     UC,
    f.     any affiliate or subsidiary of any of the foregoing, or
    g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

12.    Any documents or emails or other communications evidencing any contract or agreement between SS1 Legendary LLC and any other person or entity, including but not limited to:

    a.     5430,
    b.     Plummer,
    c.     Schwartz-Morini,
    d.     SMAC,
    e.     UC,
    f.     any affiliate or subsidiary of any of the foregoing, or
    g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

13.    Any documents or emails or other communications evidencing any contract or agreement between SS21 LLC and any other person or entity, including but not limited to:

    a.     5430,
    b.     Plummer,
    c.     Schwartz-Morini,
    d.     SMAC,
    e.     UC,
    f.     any affiliate or subsidiary of any of the foregoing, or
    g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

14.    Any documents or emails or other communications evidencing any contract or agreement between Headache Gang LLC and any other person or entity, including but not limited to:

    a.     5430,
    b.     Plummer,

EXHIBIT 001 TO SUBPOENA — Page 12
4865-6514-6087, v. 7

c. Schwartz-Morini,

d. SMAC,

e. UC,

f. any affiliate or subsidiary of any of the foregoing, or

g. any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

15. Any documents or emails or other communications evidencing any contract or agreement between any other Subject Entity and any other person or entity, including but not limited to:

a. 5430,

b. Plummer,

c. Schwartz-Morini,

d. SMAC,

e. UC,

f. any affiliate or subsidiary of any of the foregoing, or

g. any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

16. Any documents or emails or other communications evidencing any contract or agreement between (i) Shilo Sanders and (ii) any Subject Entity.

17. Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Subject Entity and (ii) any other Subject Entity.

18. Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) Shilo Sanders.

19. Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) any Subject Entity.

20. Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any agents, managers, attorneys, or representatives.

21. Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any media company, social media outlet, brand, product, advertiser, agency, or any other similar party.

22. Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of

EXHIBIT 001 TO SUBPOENA — Page 13
4865-6514-6087, v. 7

any good or service, of or relating to Shilo Sanders, between (i) any Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

23.    Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service, of or relating to Shilo Sanders, between (i) any Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

24.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Deion Sanders** or any Related Entity or Personnel of Deion Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

25.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Shedeur Sanders** or any Related Entity or Personnel of Shedeur Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

26.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **5430** or any Related Entity or Personnel of 5430 relating to (x) Shilo Sanders or (y) any Subject Entity.

27.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Plummer** or any Related Entity or Personnel of Plummer relating to (x) Shilo Sanders or (y) any Subject Entity.

28.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Schwartz-Morini** or any Related Entity or Personnel of Schwartz-Morini relating to (x) Shilo Sanders or (y) any Subject Entity.

29.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **SMAC** or any Related Entity or Personnel of SMAC relating to (x) Shilo Sanders or (y) any Subject Entity.

30.    Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **UC** or any Related Entity or Personnel of UC relating to (x) Shilo Sanders or (y) any Subject Entity.

31.    Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* Shilo Sanders during the Period.

32.    Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* any Subject Entity during the Period.

33.    Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* any Insider or other Personnel of

**EXHIBIT 001 TO SUBPOENA — Page 14**
4865-6514-6087, v. 7

Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

34. Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

35. Any documents or emails or other communications relating to any money, value, or any consideration *earned by or on account of* Shilo Sanders during the Period.

36. Any documents or emails or other communications relating to any money, value, or any consideration *earned by or on account of* any Subject Entity during the Period.

37. Any documents or emails or other communications relating to any money, value, or any consideration *earned by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

38. Any documents or emails or other communications relating to any money, value, or any consideration *earned by or on account of* any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

39. Any documents or emails or other communications relating to any money, value, or any consideration *received* by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

40. Any documents or emails or other communications relating to any money, value, or any consideration *earned* by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

41. Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shilo Sanders or any Subject Entity that were managed or handled by you, your Personnel, or any Related Entity.

42. Any documents or emails or other communications relating to any agreements, contracts, and deals involving Deion Sanders or Related Entity of Deion Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

43. Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shedeur Sanders or Related Entity of Shedeur Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

**EXHIBIT 001 TO SUBPOENA — Page 15**
4865-6514-6087, v. 7

44. Any documents or email or other communications relating to any trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

45. Any documents or email or other communications relating to any Related Trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

46. Any documents or email or other communications evidencing any *assets or interest in any property* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

47. Any documents or email or other communications evidencing any *Investment Asset* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

48. Any documents or email or other communications evidencing any *Mineral Interest* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

49. Any documents or email or other communications evidencing any *Real Property Interest* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

50. Any documents or email or other communications evidencing any *Rolling Stock* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

51. Any documents or email or other communications evidencing any *firearms* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

52. Any documents or email or other communications evidencing any *jewelry* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

53. Any documents or email or other communications evidencing any *designer clothing or accessories* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

54. Any and all documents, information, and/or things produced by or on behalf of Shilo Sanders to the Chapter 7 Trustee appointed in the bankruptcy case of Shilo Sanders, Case No. 23-14859-MER; *In re Shilo Dion Sanders*, in the United States Bankruptcy Court for the District of Colorado.

**EXHIBIT 001 TO SUBPOENA — Page 16**
4865-6514-6087, v. 7

**EXHIBIT DAR033 — Subpoena to SS21 LLC**

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 23-14859** |
| SHILO DION SANDERS, | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS UNDER FED. R. BANKR. P. 2004

**To:** **SS21 LLC**
**Attn. InCorp Services, Inc. - Reg. Agent**
**815 Brazos St. Ste. 500**
**Austin TX 78701**

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the documents, electronically stored information, or objects, referenced and described in **EXHIBIT 001**, attached hereto and incorporated by reference herein, pursuant to Fed. R. Bank. P. 2004 and Local Bankruptcy Rule 2004.

| Place: | *Mathias Raphael PLLC* | Date and Time: *The thirtieth (30th) day following* |
|---|---|---|
| | *13101 Preston Road, Suite 501* | *entry of the order of the Court permitting service of* |
| | *Dallas, TX 75240* | *this Subpoena, which order is served with and/or* |
| | | *attached to this subpoena,* or as otherwise may be |
| | | agreed between the parties. |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   October __, 2024

*Signature of Clerk or Deputy Clerk*

*Attorneys for John Darjean*

The name, address, e-mail address, and telephone number of the attorney representing *John Darjean* who issues or requests this subpoena, are:

Jeff Carruth (SBOT #24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
24 Greenway Plaza, Suite 2050, Houston, TX 77046
Telephone: (713) 341-1158, jcarruth@wkpz.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT DAR033 — Subpoena to SS21 LLC**

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Bankruptcy Case       **23-14859**

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*   | **SS21 LLC** |

on *(date)* |                    | .

I served the subpoena by delivering a copy to the following by ***certified mail, return receipt requested and regular mail*** on October __, 2024.

☒

    **SS21 LLC**
    **Attn. InCorp Services, Inc. - Reg. Agent**
    **815 Brazos St. Ste. 500**
    **Austin TX 78701**

I declare under penalty of perjury that this information is true.

Date:  | October __, 2024 |

|                                      |
*Server's signature*

| Jeff Carruth, Attorney |
*Printed name and title*

| WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
24 Greenway Plaza, Suite 2050, Houston, TX 77046 |
*Server's address*

Additional information regarding attempted service, etc.:

4875-5500-1831, v. 6

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT TO SUBPOENA

# EXHIBIT 001

## <u>INSTRUCTIONS</u>

1.      In no event should any Instruction, Definition, or Discovery Request be read to contradict the Rules.

2.      Unless otherwise specified, the relevant period of time for each Discovery Request is **<u>September 17, 2015,</u>** through and until the present.

3.      These instructions and definitions herein should be construed to require answers and/or production based upon the knowledge of, and information and documents available to the Debtor, as well as the Personnel (as defined below) of Debtor.

4.      It is intended that the following Discovery Requests will not solicit any material protected either by the attorney/client privilege or the work-product doctrine that was created by, or developed by, counsel for Debtor after the date on which the relevant litigation was commenced. If any inquiry is susceptible to a construction that calls for the production of such material, or for material claimed to be protected under the attorney/client privilege, that material need not be provided but a privilege log pursuant will be required as to all such material.

5.      With respect to any Document that is produced:

a.      Each Document produced pursuant to this request should be identified in such production by the paragraph of the request with respect to which it is produced.

b.      If any privilege, exemption, or immunity is claimed as a basis for withholding production of one or more Documents, then please state:

i.      the particular basis for withholding the Document;

ii.      the author(s) of the Document;

iii.      the form of the Document;

iv.      the date of the Document;

v.      the identity of all persons who have seen the Document; and;

vi.      the general subject matter of the Document.

c.      Documents which, when regularly maintained, are stapled, clipped, or otherwise physically attached to other Documents are to be produced in their stapled, clipped, or otherwise physically attached form.

d.      If a Document or a group of Documents is taken out of a file folder, file drawer, notebook, or other identifiable storage facility, please attach thereto a copy of the label of the file folder, file drawer, etc., so that the location of each such Document in your files can be determined.

e.      If any such responsive Document has been lost, discarded, or destroyed, you must identify such Document as completely as possible, including the following information:

i.      the type of Document;

ii.      the date of the Document;

    iii.      the date or approximate date the Document was lost, discarded, or destroyed;

    iv.      the circumstances or manner in which it was lost, discarded, or destroyed;

    v.      the reason or reasons for disposing of the Document (if the Document was discarded or destroyed);

    vi.      the identity of all Persons authorizing or having knowledge of the circumstances surrounding disposal of the Document;

    vii.      the identity of the Persons who lost, discarded, or destroyed the Document; and

    viii.      the identity of all Persons having knowledge of the contents of the Document.

    f.      If you have previously produced to another party any such responsive Documents and you believe that such production is accessible to the party serving these Discovery Requests, you should so specify.

6.    These Discovery Requests are continuing in character so as to require that supplemental answers be served seasonably if further or different information is obtained with respect to any Discovery Request. Consequently, these Discovery Requests require supplementation if you obtain further information or documents after the answers are served and prior to satisfaction of the judgment.

7.    The answers to the Interrogatories, as applicable, and other Discovery Requests should be complete and candid. To the extent any information called for by these Interrogatories is unknown to you, so state, and set forth whatever information you have regarding that Interrogatory. If any estimate can reasonably be made, please set forth your best estimate, clearly designated as such.

8.    No part of a Discovery Request should be left unanswered merely because an objection is interposed to another part of the Discovery Request. If a partial or incomplete answer is provided, state that the answer is partial or incomplete.

9.    If, in answering these Discovery Requests, you encounter any ambiguities when construing a question, instruction, or definition, then your answer shall set forth the matter deemed ambiguous, and the construction used in answering.

10.    You must serve your answers or objections to these Discovery Requests upon the undersigned counsel on the ***thirtieth (30th)*** day after these Discovery Requests were served upon you.

11.    Headings are for convenience only and should not be read to limit the scope of any Discovery Request.

12.    Please contact the undersigned if you would like an electronic copy of this discovery to aid in the preparation of responses. In any event, the hard copy of this discovery served upon you shall be the controlling copy.

**EXHIBIT DAR033 — Subpoena to SS21 LLC**
**EXHIBIT 001 TO SUBPOENA**

## DEFINITIONS AND CONSTRUCTION OF WORDS

1.      All words contained in the Discovery Requests shall have their normal contextual meaning unless otherwise defined herein and should be read in a manner to provide a complete answer to each Discovery Requests. ***Words need not be capitalized in order to be controlled by the meaning of such word(s) as defined herein.***

2.      Wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender.

3.      Additional definitions for or relating to the parties to this action may appear in the introductory paragraphs of this document.

## General Discovery Definitions

1.      "Agent" shall mean any agent, representative, employee, officer, director, attorney, independent contractor or any other Person acting at the direction of or on behalf of another.

2.      "And" or "each", "all", and "any" shall be construed as necessary in each case to make each document request inclusive, rather than exclusive.

3.      "Communication" shall mean and refer to any transmittal or information by any means, including, without limitation, any oral, written, or electronically recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, any correspondence, conversations, telephone calls or other voice or audio interaction, text or SMS messages, chat sessions, dialogues, discussions, interviews, consultations, agreements, or any other understandings between or among two or more Persons or any Document that recorded or reflected any such Communication."

4.      "Discovery Requests" shall mean and refer to this discovery instrument and, as applicable, any interrogatories, requests for admissions, requests for production, and/or requests for inspection contained herein.

5.      "Document" shall mean and include all documents and tangible things to the very broadest extent included within the scope of the Rules, including, but not limited to, the originals and all drafts and copies, together with any annotations or highlighted copies containing all or part of the information requested, in the possession, custody or control of You, Your attorneys, representative, employees, agents, or any other natural person or business or legal entity acting or purporting to act for or on Your behalf, or their respective Personnel as the case may be.  Also, the term "Document" or "writing" means any medium whatsoever, including all electronic, recorded and digital media of any kind, upon which intelligence or information can be recorded, or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any written material, correspondence, electronic mail, text or SMS messages, chat sessions, note file, book, pamphlet, printout, chart, record, report, periodical, letter, memorandum, (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, draft, working paper, chart, paper, print, drawing, sketch, graph,

index, list, and any written, recorded, transcribed, punched, taped, filmed or graphic matter whatsoever, however produced or reproduced, which is in your possession, custody, or control or which was, but is no longer, in Your possession, custody, or control.  The term "Document" or "writing" shall also include all copies or drafts of Documents by whatever means made, including specifically but not exclusively, those copies bearing commentary or notations not appearing on the original.

6.     "Equipment" shall mean and refer to any goods or property other than inventory, farm products, consumer goods, or tools.

7.     "Identify" shall have the following meanings.

a.     When referring to a person, to state the full current name, residence, and business addresses, and residence and business telephone numbers of the person about whom information is sought, as well as that person's present or last known employer, that person's office or title, if any, and that person's job description.  If any of this information was different at the time with which the Interrogatories are concerned, state also such different information as applies to the time in question;

b.     When referring to a business entity or firm (e.g., a corporation, partnership, limited partnership, law firm, etc.), to state the full name of such business, entity or firm, and the address of its principal place of business;

c.     When referring to a document, to state its date, title, a brief description, subject matter, addressee or others receiving a copy, and author;

d.     When referring to an act, communication, occurrence, statement or conduct, to state the substance of the event constituting such act and the date when such act occurred, persons participating in such act, all persons present when such act occurred, and a description of any record of such act;

e.     When referring to dates, to state the date each such activity began and the date it ended; and

f.     Any specific meaning provided in an Interrogatory.

8.     "Insider" (A) with respect to a debtor, shall mean and refer to any (i) member or director of the debtor, (ii) any officer or manager of the debtor, (iii) any person in control of the debtor, or (iv) any relative of any such member, director, manager, officer, or person in control; and (B) with respect to any individual, shall have the same meaning as found in 11 U.S.C. §101.

9.     "Investment Asset" shall mean and refer to stocks, bonds, securities, notes, accounts, mortgages, certificates of deposit / CDs, annuities, life insurance policies, profit sharing plans, trusts (as trustee or beneficiary), IRAs, 401(k)'s, pensions, and all other retirement plans, general or limited partnership interests, or similar ownership interests or investments, ownership of or interest in any joint venture, and including any Related Trusts (as defined below).

10. "Mineral Interest" shall mean and refer to any interest in any mineral interest or oil and gas interest including any lease, royalty, well, working interest, well bore interest, overriding royalty interest, or equity position.

11. "Person" shall mean and refer to any individual, corporation, company, proprietorship, partnership, trust, association, or other entity.

12. "Personnel" shall mean and refer to any of the following persons with respect to a referenced person or entity: Insiders (as defined herein); Agents (as defined herein); representatives; servants; employees; officers; directors or managers; the Board of Directors; any individual shareholder or shareholders (or any holders of any equity interest); partner or partners; any accountant representing or providing services; or personal representatives.

13. "Or" means and refers to and/or.

14. "Real Property Interest" shall mean and refer to any real estate or interest in any real property in which you own or claim an interest (regardless of whether you acquired or received such real estate by inheritance, gift, or purchase), including (i) any interests in any oil and gas interest or mineral interest, including any mineral acreage owned and further including any lease, royalty, working interest, well bore interest, overriding royalty interest and/or equity position (ii) and option or any similar interest, (iii) any water rights or wind rights, (iv) any leases or interests in leases of any kind such as ground leases, grazing leases, or any other agricultural leases whether as (a) lessor or landlord or (b) lessee or tenant, and/or (v) any lien, encumbrance, or other debt or security related to any interest in real property.

15. "Relating to" means concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

16. "Related Trust" means and refers to any trust of which you, your spouse, or child, issue, ward, or dependent of you or your spouse any are a settlor, contributor, controller, trustee, or beneficiary on in which you, your spouse, or child, issue, ward, or dependent of you or your spouse own or claim any interest.

17. "Response Date" shall mean and refer to the date on which You provide a response to these Discovery Requests / Requests for Production.

18. "Rolling Stock" shall mean and refer to any automobiles, pickups, trucks, motor vehicles, motorcycles, travel trailers, motor homes, boats, airplanes, dozers, front end loaders, or any other rolling stock or similar equipment, and regardless of whether ownership is evidenced by a certificate of title.

19. "Rules" shall mean and refer to the Texas Rules of Civil Procedure, the Federal Rules of Civil Procedure and/or the Federal Rules of Bankruptcy Procedure, as applicable.

**EXHIBIT DAR033 — Subpoena to SS21 LLC**
**EXHIBIT 001 TO SUBPOENA**

20.    "Tools" shall men and refer to any goods or property other than inventory, farm products, consumer goods, or equipment.

21.    "You" or "yours" shall refer to the party to whom these Discovery Requests are being served and all agents and representatives, and all other persons acting on behalf of or purported to act on behalf of said person including the Agents and Personnel of such person.

## Specific Discovery Definitions

1.    "Debtor" means and refers to SHILO DION SANDERS.

2.    "Defendant" means and refers to SHILO DION SANDERS.

3.    "5430" the 5430 Alliance.

4.    "Judgment Debtor" means and refers to SHILO DION SANDERS.

5.    "NIL" means and refers to name, image, and likeness, and any right or interest in any property related thereto.

6.    "Period" shall mean and refer to the period of time from **September 17, 2015 through and until the present**.

7.    "Plummer" refers to Plummer Law Group, PC and/or Tabitha Plummer.

8.    "Related Entity" means and refers to any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by a person or entity, or with respect to which a person or entity is an Insider or possesses any beneficial interest.

9.    "Schwartz-Morini" means and refers to Constance Schwartz-Morini.

10.    "SMAC" means and refers to SMAC Entertainment LLC.

11.    "Subject Entity" shall mean and refer to each of the following:

    a.    Big 21, LLC

    b.    SS1 Legendary, LLC

    c.    SS21, LLC;

    d.    Headache Gang, LLC and,

    e.    any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by Shilo Sanders, or with respect to which Shilo Sanders is or has been an Insider, and/or with respect to which Shilo Sanders possesses any beneficial interest.

12.    "UC" means and refers to the University of Colardo, the Athletic Department of the University of Colardo, and the football program of the University of Colardo.

*{continued on following sheet}*

# DOCUMENTS AND THINGS TO PRODUCE

1.     Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) Shilo Sanders and/or any Personnel of Shilo Sanders.

2.     Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) any Subject Entity and/or any Personnel of any Subject Entity.

3.     Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) Shilo Sanders.

4.     Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders.

5.     Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Subject Entity.

6.     Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Subject Entity.

7.     Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of any Subject Entity.

8.     Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders.

9.     Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Related Entity of Deion Sanders, and/or Shedeur Sanders, including any Insider or other Personnel thereof.

10.    Any documents or emails or other communications evidencing any contract or agreement between Shilo Sanders and any other person or entity, including but not limited to:

    a.     5430,
    b.     Plummer,
    c.     Schwartz-Morini,
    d.     SMAC,
    e.     UC,
    f.     any affiliate or subsidiary of any of the foregoing, or

EXHIBIT 001 TO SUBPOENA — Page 11
4875-5500-1831, v. 6

     g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

11.     Any documents or emails or other communications evidencing any contract or agreement between Big 21 LLC and any other person or entity, including but not limited to:

     a.     5430,
     b.     Plummer,
     c.     Schwartz-Morini,
     d.     SMAC,
     e.     UC,
     f.     any affiliate or subsidiary of any of the foregoing, or
     g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

12.     Any documents or emails or other communications evidencing any contract or agreement between SS1 Legendary LLC and any other person or entity, including but not limited to:

     a.     5430,
     b.     Plummer,
     c.     Schwartz-Morini,
     d.     SMAC,
     e.     UC,
     f.     any affiliate or subsidiary of any of the foregoing, or
     g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

13.     Any documents or emails or other communications evidencing any contract or agreement between SS21 LLC and any other person or entity, including but not limited to:

     a.     5430,
     b.     Plummer,
     c.     Schwartz-Morini,
     d.     SMAC,
     e.     UC,
     f.     any affiliate or subsidiary of any of the foregoing, or
     g.     any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

14.     Any documents or emails or other communications evidencing any contract or agreement between Headache Gang LLC and any other person or entity, including but not limited to:

     a.     5430,
     b.     Plummer,

**EXHIBIT 001 TO SUBPOENA — Page 12**
4875-5500-1831, v. 6

c.      Schwartz-Morini,
d.      SMAC,
e.      UC,
f.      any affiliate or subsidiary of any of the foregoing, or
g.      any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

15.     Any documents or emails or other communications evidencing any contract or agreement between any other Subject Entity and any other person or entity, including but not limited to:

a.      5430,
b.      Plummer,
c.      Schwartz-Morini,
d.      SMAC,
e.      UC,
f.      any affiliate or subsidiary of any of the foregoing, or
g.      any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

16.     Any documents or emails or other communications evidencing any contract or agreement between (i) Shilo Sanders and (ii) any Subject Entity.

17.     Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Subject Entity and (ii) any other Subject Entity.

18.     Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) Shilo Sanders.

19.     Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) any Subject Entity.

20.     Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any agents, managers, attorneys, or representatives.

21.     Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any media company, social media outlet, brand, product, advertiser, agency, or any other similar party.

22.     Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of

**EXHIBIT 001 TO SUBPOENA — Page 13**
4875-5500-1831, v. 6

any good or service, of or relating to Shilo Sanders, between (i) any Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

23.     Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service, of or relating to Shilo Sanders, between (i) any Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

24.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Deion Sanders** or any Related Entity or Personnel of Deion Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

25.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Shedeur Sanders** or any Related Entity or Personnel of Shedeur Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

26.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **5430** or any Related Entity or Personnel of 5430 relating to (x) Shilo Sanders or (y) any Subject Entity.

27.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Plummer** or any Related Entity or Personnel of Plummer relating to (x) Shilo Sanders or (y) any Subject Entity.

28.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Schwartz-Morini** or any Related Entity or Personnel of Schwartz-Morini relating to (x) Shilo Sanders or (y) any Subject Entity.

29.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **SMAC** or any Related Entity or Personnel of SMAC relating to (x) Shilo Sanders or (y) any Subject Entity.

30.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **UC** or any Related Entity or Personnel of UC relating to (x) Shilo Sanders or (y) any Subject Entity.

31.     Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* Shilo Sanders during the Period.

32.     Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* any Subject Entity during the Period.

33.     Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* any Insider or other Personnel of

**EXHIBIT 001 TO SUBPOENA — Page 14**
4875-5500-1831, v. 6

Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

34.  Any documents or emails or other communications relating to any money, value, or any consideration _received by or on account of_ any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

35.  Any documents or emails or other communications relating to any money, value, or any consideration _earned by or on account of_ Shilo Sanders during the Period.

36.  Any documents or emails or other communications relating to any money, value, or any consideration _earned by or on account of_ any Subject Entity during the Period.

37.  Any documents or emails or other communications relating to any money, value, or any consideration _earned by or on account of_ any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

38.  Any documents or emails or other communications relating to any money, value, or any consideration _earned by or on account of_ any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

39.  Any documents or emails or other communications relating to any money, value, or any consideration _received_ by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

40.  Any documents or emails or other communications relating to any money, value, or any consideration _earned_ by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

41.  Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shilo Sanders or any Subject Entity that were managed or handled by you, your Personnel, or any Related Entity.

42.  Any documents or emails or other communications relating to any agreements, contracts, and deals involving Deion Sanders or Related Entity of Deion Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

43.  Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shedeur Sanders or Related Entity of Shedeur Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

**EXHIBIT 001 TO SUBPOENA — Page 15**
4875-5500-1831, v. 6

**EXHIBIT DAR033 — Subpoena to SS21 LLC**
**EXHIBIT 001 TO SUBPOENA**

44.     Any documents or email or other communications relating to any trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

45.     Any documents or email or other communications relating to any Related Trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

46.     Any documents or email or other communications evidencing any *assets or interest in any property* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

47.     Any documents or email or other communications evidencing any *Investment Asset* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

48.     Any documents or email or other communications evidencing any *Mineral Interest* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

49.     Any documents or email or other communications evidencing any *Real Property Interest* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

50.     Any documents or email or other communications evidencing any *Rolling Stock* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

51.     Any documents or email or other communications evidencing any *firearms* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

52.     Any documents or email or other communications evidencing any *jewelry* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

53.     Any documents or email or other communications evidencing any *designer clothing or accessories* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

54.     Any and all documents, information, and/or things produced by or on behalf of Shilo Sanders to the Chapter 7 Trustee appointed in the bankruptcy case of Shilo Sanders, Case No. 23-14859-MER; *In re Shilo Dion Sanders*, in the United States Bankruptcy Court for the District of Colorado.

**EXHIBIT 001 TO SUBPOENA — Page 16**
4875-5500-1831, v. 6

**EXHIBIT DAR034 — Subpoena to SS1 Legendary LLC**

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 23-14859** |
| SHILO DION SANDERS, | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS UNDER FED. R. BANKR. P. 2004**

**To:** **SS1 Legendary LLC**
**Attn. InCorp Services, Inc. - Reg. Agent**
**815 Brazos St. Ste. 500**
**Austin TX 78701**

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the documents, electronically stored information, or objects, referenced and described in **EXHIBIT 001**, attached hereto and incorporated by reference herein, pursuant to Fed. R. Bank. P. 2004 and Local Bankruptcy Rule 2004.

| Place: | *Mathias Raphael PLLC* <br> *13101 Preston Road, Suite 501* <br> *Dallas, TX 75240* | Date and Time: *The thirtieth (30ᵗʰ) day following entry of the order of the Court permitting service of this Subpoena, which order is served with and/or attached to this subpoena,* or as otherwise may be agreed between the parties. |
|---|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: October __, 2024

*Signature of Clerk or Deputy Clerk*

*Attorneys for John Darjean*

The name, address, e-mail address, and telephone number of the attorney representing *John Darjean* who issues or requests this subpoena, are:

Jeff Carruth (SBOT #24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
24 Greenway Plaza, Suite 2050, Houston, TX 77046
Telephone: (713) 341-1158, jcarruth@wkpz.com

---

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

---

**EXHIBIT DAR034 — Subpoena to SS1 Legendary LLC**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Bankruptcy Case      **23-14859**

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)*     | **SS1 Legendary LLC** |

on *(date)* |                        | .

I served the subpoena by delivering a copy to the following by ***certified mail, return receipt requested and regular mail*** on October __, 2024.

☒

   **SS1 Legendary LLC**
   **Attn. InCorp Services, Inc. - Reg. Agent**
   **815 Brazos St. Ste. 500**
   **Austin TX 78701**

I declare under penalty of perjury that this information is true.

Date: | October __, 2024 |

| |
*Server's signature*

| Jeff Carruth, Attorney |
*Printed name and title*

| WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
24 Greenway Plaza, Suite 2050, Houston, TX 77046 |
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT TO SUBPOENA

# EXHIBIT 001

**EXHIBIT DAR034 — Subpoena to SS1 Legendary LLC**
**EXHIBIT 001 TO SUBPOENA**

## <u>INSTRUCTIONS</u>

1.      In no event should any Instruction, Definition, or Discovery Request be read to contradict the Rules.

2.      Unless otherwise specified, the relevant period of time for each Discovery Request is **<u>September 17, 2015,</u>** through and until the present.

3.      These instructions and definitions herein should be construed to require answers and/or production based upon the knowledge of, and information and documents available to the Debtor, as well as the Personnel (as defined below) of Debtor.

4.      It is intended that the following Discovery Requests will not solicit any material protected either by the attorney/client privilege or the work-product doctrine that was created by, or developed by, counsel for Debtor after the date on which the relevant litigation was commenced. If any inquiry is susceptible to a construction that calls for the production of such material, or for material claimed to be protected under the attorney/client privilege, that material need not be provided but a privilege log pursuant will be required as to all such material.

5.      With respect to any Document that is produced:

        a.      Each Document produced pursuant to this request should be identified in such production by the paragraph of the request with respect to which it is produced.

        b.      If any privilege, exemption, or immunity is claimed as a basis for withholding production of one or more Documents, then please state:

                i.      the particular basis for withholding the Document;

                ii.     the author(s) of the Document;

                iii.    the form of the Document;

                iv.     the date of the Document;

                v.      the identity of all persons who have seen the Document; and;

                vi.     the general subject matter of the Document.

        c.      Documents which, when regularly maintained, are stapled, clipped, or otherwise physically attached to other Documents are to be produced in their stapled, clipped, or otherwise physically attached form.

        d.      If a Document or a group of Documents is taken out of a file folder, file drawer, notebook, or other identifiable storage facility, please attach thereto a copy of the label of the file folder, file drawer, etc., so that the location of each such Document in your files can be determined.

        e.      If any such responsive Document has been lost, discarded, or destroyed, you must identify such Document as completely as possible, including the following information:

                i.      the type of Document;

                ii.     the date of the Document;

iii.    the date or approximate date the Document was lost, discarded, or destroyed;

iv.    the circumstances or manner in which it was lost, discarded, or destroyed;

v.    the reason or reasons for disposing of the Document (if the Document was discarded or destroyed);

vi.    the identity of all Persons authorizing or having knowledge of the circumstances surrounding disposal of the Document;

vii.    the identity of the Persons who lost, discarded, or destroyed the Document; and

viii.    the identity of all Persons having knowledge of the contents of the Document.

f.    If you have previously produced to another party any such responsive Documents and you believe that such production is accessible to the party serving these Discovery Requests, you should so specify.

6.    These Discovery Requests are continuing in character so as to require that supplemental answers be served seasonably if further or different information is obtained with respect to any Discovery Request. Consequently, these Discovery Requests require supplementation if you obtain further information or documents after the answers are served and prior to satisfaction of the judgment.

7.    The answers to the Interrogatories, as applicable, and other Discovery Requests should be complete and candid. To the extent any information called for by these Interrogatories is unknown to you, so state, and set forth whatever information you have regarding that Interrogatory. If any estimate can reasonably be made, please set forth your best estimate, clearly designated as such.

8.    No part of a Discovery Request should be left unanswered merely because an objection is interposed to another part of the Discovery Request. If a partial or incomplete answer is provided, state that the answer is partial or incomplete.

9.    If, in answering these Discovery Requests, you encounter any ambiguities when construing a question, instruction, or definition, then your answer shall set forth the matter deemed ambiguous, and the construction used in answering.

10.    You must serve your answers or objections to these Discovery Requests upon the undersigned counsel on the ***thirtieth (30th)*** day after these Discovery Requests were served upon you.

11.    Headings are for convenience only and should not be read to limit the scope of any Discovery Request.

12.    Please contact the undersigned if you would like an electronic copy of this discovery to aid in the preparation of responses. In any event, the hard copy of this discovery served upon you shall be the controlling copy.

<span style="color:red">**EXHIBIT DAR034 — Subpoena to SS1 Legendary LLC**</span>
**EXHIBIT 001 TO SUBPOENA**

## DEFINITIONS AND CONSTRUCTION OF WORDS

1.     All words contained in the Discovery Requests shall have their normal contextual meaning unless otherwise defined herein and should be read in a manner to provide a complete answer to each Discovery Requests. ***Words need not be capitalized in order to be controlled by the meaning of such word(s) as defined herein.***

2.     Wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender.

3.     Additional definitions for or relating to the parties to this action may appear in the introductory paragraphs of this document.

### General Discovery Definitions

1.     "Agent" shall mean any agent, representative, employee, officer, director, attorney, independent contractor or any other Person acting at the direction of or on behalf of another.

2.     "And" or "each", "all", and "any" shall be construed as necessary in each case to make each document request inclusive, rather than exclusive.

3.     "Communication" shall mean and refer to any transmittal or information by any means, including, without limitation, any oral, written, or electronically recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, any correspondence, conversations, telephone calls or other voice or audio interaction, text or SMS messages, chat sessions, dialogues, discussions, interviews, consultations, agreements, or any other understandings between or among two or more Persons or any Document that recorded or reflected any such Communication."

4.     "Discovery Requests" shall mean and refer to this discovery instrument and, as applicable, any interrogatories, requests for admissions, requests for production, and/or requests for inspection contained herein.

5.     "Document" shall mean and include all documents and tangible things to the very broadest extent included within the scope of the Rules, including, but not limited to, the originals and all drafts and copies, together with any annotations or highlighted copies containing all or part of the information requested, in the possession, custody or control of You, Your attorneys, representative, employees, agents, or any other natural person or business or legal entity acting or purporting to act for or on Your behalf, or their respective Personnel as the case may be.  Also, the term "Document" or "writing" means any medium whatsoever, including all electronic, recorded and digital media of any kind, upon which intelligence or information can be recorded, or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any written material, correspondence, electronic mail, text or SMS messages, chat sessions, note file, book, pamphlet, printout, chart, record, report, periodical, letter, memorandum, (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, draft, working paper, chart, paper, print, drawing, sketch, graph,

index, list, and any written, recorded, transcribed, punched, taped, filmed or graphic matter whatsoever, however produced or reproduced, which is in your possession, custody, or control or which was, but is no longer, in Your possession, custody, or control.  The term "Document" or "writing" shall also include all copies or drafts of Documents by whatever means made, including specifically but not exclusively, those copies bearing commentary or notations not appearing on the original.

6.  "Equipment" shall mean and refer to any goods or property other than inventory, farm products, consumer goods, or tools.

7.  "Identify" shall have the following meanings.

   a.  When referring to a person, to state the full current name, residence, and business addresses, and residence and business telephone numbers of the person about whom information is sought, as well as that person's present or last known employer, that person's office or title, if any, and that person's job description.  If any of this information was different at the time with which the Interrogatories are concerned, state also such different information as applies to the time in question;

   b.  When referring to a business entity or firm (e.g., a corporation, partnership, limited partnership, law firm, etc.), to state the full name of such business, entity or firm, and the address of its principal place of business;

   c.  When referring to a document, to state its date, title, a brief description, subject matter, addressee or others receiving a copy, and author;

   d.  When referring to an act, communication, occurrence, statement or conduct, to state the substance of the event constituting such act and the date when such act occurred, persons participating in such act, all persons present when such act occurred, and a description of any record of such act;

   e.  When referring to dates, to state the date each such activity began and the date it ended; and

   f.  Any specific meaning provided in an Interrogatory.

8.  "Insider" (A) with respect to a debtor, shall mean and refer to any (i) member or director of the debtor, (ii) any officer or manager of the debtor, (iii) any person in control of the debtor, or (iv) any relative of any such member, director, manager, officer, or person in control; and (B) with respect to any individual, shall have the same meaning as found in 11 U.S.C. §101.

9.  "Investment Asset" shall mean and refer to stocks, bonds, securities, notes, accounts, mortgages, certificates of deposit / CDs, annuities, life insurance policies, profit sharing plans, trusts (as trustee or beneficiary), IRAs, 401(k)'s, pensions, and all other retirement plans, general or limited partnership interests, or similar ownership interests or investments, ownership of or interest in any joint venture, and including any Related Trusts (as defined below).

10. "Mineral Interest" shall mean and refer to any interest in any mineral interest or oil and gas interest including any lease, royalty, well, working interest, well bore interest, overriding royalty interest, or equity position.

11. "Person" shall mean and refer to any individual, corporation, company, proprietorship, partnership, trust, association, or other entity.

12. "Personnel" shall mean and refer to any of the following persons with respect to a referenced person or entity: Insiders (as defined herein); Agents (as defined herein); representatives; servants; employees; officers; directors or managers; the Board of Directors; any individual shareholder or shareholders (or any holders of any equity interest); partner or partners; any accountant representing or providing services; or personal representatives.

13. "Or" means and refers to and/or.

14. "Real Property Interest" shall mean and refer to any real estate or interest in any real property in which you own or claim an interest (regardless of whether you acquired or received such real estate by inheritance, gift, or purchase), including (i) any interests in any oil and gas interest or mineral interest, including any mineral acreage owned and further including any lease, royalty, working interest, well bore interest, overriding royalty interest and/or equity position (ii) and option or any similar interest, (iii) any water rights or wind rights, (iv) any leases or interests in leases of any kind such as ground leases, grazing leases, or any other agricultural leases whether as (a) lessor or landlord or (b) lessee or tenant, and/or (v) any lien, encumbrance, or other debt or security related to any interest in real property.

15. "Relating to" means concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

16. "Related Trust" means and refers to any trust of which you, your spouse, or child, issue, ward, or dependent of you or your spouse any are a settlor, contributor, controller, trustee, or beneficiary on in which you, your spouse, or child, issue, ward, or dependent of you or your spouse own or claim any interest.

17. "Response Date" shall mean and refer to the date on which You provide a response to these Discovery Requests / Requests for Production.

18. "Rolling Stock" shall mean and refer to any automobiles, pickups, trucks, motor vehicles, motorcycles, travel trailers, motor homes, boats, airplanes, dozers, front end loaders, or any other rolling stock or similar equipment, and regardless of whether ownership is evidenced by a certificate of title.

19. "Rules" shall mean and refer to the Texas Rules of Civil Procedure, the Federal Rules of Civil Procedure and/or the Federal Rules of Bankruptcy Procedure, as applicable.

**EXHIBIT 001 TO SUBPOENA**

20.    "Tools" shall men and refer to any goods or property other than inventory, farm products, consumer goods, or equipment.

21.    "You" or "yours" shall refer to the party to whom these Discovery Requests are being served and all agents and representatives, and all other persons acting on behalf of or purported to act on behalf of said person including the Agents and Personnel of such person.

## Specific Discovery Definitions

1.    "Debtor" means and refers to SHILO DION SANDERS.

2.    "Defendant" means and refers to SHILO DION SANDERS.

3.    "5430" the 5430 Alliance.

4.    "Judgment Debtor" means and refers to SHILO DION SANDERS.

5.    "NIL" means and refers to name, image, and likeness, and any right or interest in any property related thereto.

6.    "Period" shall mean and refer to the period of time from **September 17, 2015 through and until the present**.

7.    "Plummer" refers to Plummer Law Group, PC and/or Tabitha Plummer.

8.    "Related Entity" means and refers to any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by a person or entity, or with respect to which a person or entity is an Insider or possesses any beneficial interest.

9.    "Schwartz-Morini" means and refers to Constance Schwartz-Morini.

10.    "SMAC" means and refers to SMAC Entertainment LLC.

11.    "Subject Entity" shall mean and refer to each of the following:

a.    Big 21, LLC

b.    SS1 Legendary, LLC

c.    SS21, LLC;

d.    Headache Gang, LLC and,

e.    any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by Shilo Sanders, or with respect to which Shilo Sanders is or has been an Insider, and/or with respect to which Shilo Sanders possesses any beneficial interest.

12.    "UC" means and refers to the University of Colardo, the Athletic Department of the University of Colardo, and the football program of the University of Colardo.

*{continued on following sheet}*

# DOCUMENTS AND THINGS TO PRODUCE

1.     Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) Shilo Sanders and/or any Personnel of Shilo Sanders.

2.     Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) any Subject Entity and/or any Personnel of any Subject Entity.

3.     Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) Shilo Sanders.

4.     Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders.

5.     Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Subject Entity.

6.     Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Subject Entity.

7.     Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of any Subject Entity.

8.     Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders.

9.     Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Related Entity of Deion Sanders, and/or Shedeur Sanders, including any Insider or other Personnel thereof.

10.     Any documents or emails or other communications evidencing any contract or agreement between Shilo Sanders and any other person or entity, including but not limited to:

    a.     5430,
    b.     Plummer,
    c.     Schwartz-Morini,
    d.     SMAC,
    e.     UC,
    f.     any affiliate or subsidiary of any of the foregoing, or

EXHIBIT 001 TO SUBPOENA — Page 11
4884-7774-8711, v. 6

    g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

11.    Any documents or emails or other communications evidencing any contract or agreement between Big 21 LLC and any other person or entity, including but not limited to:

    a.    5430,
    b.    Plummer,
    c.    Schwartz-Morini,
    d.    SMAC,
    e.    UC,
    f.    any affiliate or subsidiary of any of the foregoing, or
    g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

12.    Any documents or emails or other communications evidencing any contract or agreement between SS1 Legendary LLC and any other person or entity, including but not limited to:

    a.    5430,
    b.    Plummer,
    c.    Schwartz-Morini,
    d.    SMAC,
    e.    UC,
    f.    any affiliate or subsidiary of any of the foregoing, or
    g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

13.    Any documents or emails or other communications evidencing any contract or agreement between SS21 LLC and any other person or entity, including but not limited to:

    a.    5430,
    b.    Plummer,
    c.    Schwartz-Morini,
    d.    SMAC,
    e.    UC,
    f.    any affiliate or subsidiary of any of the foregoing, or
    g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

14.    Any documents or emails or other communications evidencing any contract or agreement between Headache Gang LLC and any other person or entity, including but not limited to:

    a.    5430,
    b.    Plummer,

**EXHIBIT 001 TO SUBPOENA — Page 12**
4884-7774-8711, v. 6

c.    Schwartz-Morini,

d.    SMAC,

e.    UC,

f.    any affiliate or subsidiary of any of the foregoing, or

g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

15.    Any documents or emails or other communications evidencing any contract or agreement between any other Subject Entity and any other person or entity, including but not limited to:

a.    5430,

b.    Plummer,

c.    Schwartz-Morini,

d.    SMAC,

e.    UC,

f.    any affiliate or subsidiary of any of the foregoing, or

g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

16.    Any documents or emails or other communications evidencing any contract or agreement between (i) Shilo Sanders and (ii) any Subject Entity.

17.    Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Subject Entity and (ii) any other Subject Entity.

18.    Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) Shilo Sanders.

19.    Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) any Subject Entity.

20.    Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any agents, managers, attorneys, or representatives.

21.    Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any media company, social media outlet, brand, product, advertiser, agency, or any other similar party.

22.    Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of

EXHIBIT 001 TO SUBPOENA — Page 13
4884-7774-8711, v. 6

any good or service, of or relating to Shilo Sanders, between (i) any Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

23.  Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service, of or relating to Shilo Sanders, between (i) any Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

24.  Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Deion Sanders** or any Related Entity or Personnel of Deion Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

25.  Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Shedeur Sanders** or any Related Entity or Personnel of Shedeur Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

26.  Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **5430** or any Related Entity or Personnel of 5430 relating to (x) Shilo Sanders or (y) any Subject Entity.

27.  Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Plummer** or any Related Entity or Personnel of Plummer relating to (x) Shilo Sanders or (y) any Subject Entity.

28.  Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Schwartz-Morini** or any Related Entity or Personnel of Schwartz-Morini relating to (x) Shilo Sanders or (y) any Subject Entity.

29.  Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **SMAC** or any Related Entity or Personnel of SMAC relating to (x) Shilo Sanders or (y) any Subject Entity.

30.  Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **UC** or any Related Entity or Personnel of UC relating to (x) Shilo Sanders or (y) any Subject Entity.

31.  Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* Shilo Sanders during the Period.

32.  Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* any Subject Entity during the Period.

33.  Any documents or emails or other communications relating to any money, value, or any consideration *received by or on account of* any Insider or other Personnel of

**EXHIBIT 001 TO SUBPOENA — Page 14**
4884-7774-8711, v. 6

Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

34.    Any documents or emails or other communications relating to any money, value, or any consideration _received by or on account of_ any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

35.    Any documents or emails or other communications relating to any money, value, or any consideration _earned by or on account of_ Shilo Sanders during the Period.

36.    Any documents or emails or other communications relating to any money, value, or any consideration _earned by or on account of_ any Subject Entity during the Period.

37.    Any documents or emails or other communications relating to any money, value, or any consideration _earned by or on account of_ any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

38.    Any documents or emails or other communications relating to any money, value, or any consideration _earned by or on account of_ any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

39.    Any documents or emails or other communications relating to any money, value, or any consideration _received_ by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

40.    Any documents or emails or other communications relating to any money, value, or any consideration _earned_ by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

41.    Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shilo Sanders or any Subject Entity that were managed or handled by you, your Personnel, or any Related Entity.

42.    Any documents or emails or other communications relating to any agreements, contracts, and deals involving Deion Sanders or Related Entity of Deion Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

43.    Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shedeur Sanders or Related Entity of Shedeur Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

**EXHIBIT 001 TO SUBPOENA — Page 15**
4884-7774-8711, v. 6

44.    Any documents or email or other communications relating to any trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

45.    Any documents or email or other communications relating to any Related Trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

46.    Any documents or email or other communications evidencing any *assets or interest in any property* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

47.    Any documents or email or other communications evidencing any *Investment Asset* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

48.    Any documents or email or other communications evidencing any *Mineral Interest* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

49.    Any documents or email or other communications evidencing any *Real Property Interest* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

50.    Any documents or email or other communications evidencing any *Rolling Stock* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

51.    Any documents or email or other communications evidencing any *firearms* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

52.    Any documents or email or other communications evidencing any *jewelry* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

53.    Any documents or email or other communications evidencing any *designer clothing or accessories* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

54.    Any and all documents, information, and/or things produced by or on behalf of Shilo Sanders to the Chapter 7 Trustee appointed in the bankruptcy case of Shilo Sanders, Case No. 23-14859-MER; *In re Shilo Dion Sanders*, in the United States Bankruptcy Court for the District of Colorado.

**EXHIBIT 001 TO SUBPOENA — Page 16**
4884-7774-8711, v. 6

**EXHIBIT DAR035 — Subpoena to Headache Gang LLC**

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 23-14859** |
| **SHILO DION SANDERS,** | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS UNDER FED. R. BANKR. P. 2004**

**To:** **Headache Gang LLC**
**Attn. InCorp Services, Inc. - Reg. Agent**
**815 Brazos St. Ste. 500**
**Austin TX 78701**

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the documents, electronically stored information, or objects, referenced and described in **EXHIBIT 001**, attached hereto and incorporated by reference herein, pursuant to Fed. R. Bank. P. 2004 and Local Bankruptcy Rule 2004.

| Place: | *Mathias Raphael PLLC* | Date and Time: *The thirtieth (30th) day following entry of the order of the Court permitting service of this Subpoena, which order is served with and/or attached to this subpoena,* or as otherwise may be agreed between the parties. |
|---|---|---|
| | *13101 Preston Road, Suite 501* | |
| | *Dallas, TX 75240* | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   October __, 2024

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorneys for John Darjean*

The name, address, e-mail address, and telephone number of the attorney representing *John Darjean* who issues or requests this subpoena, are:

Jeff Carruth (SBOT #24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
24 Greenway Plaza, Suite 2050, Houston, TX 77046
Telephone: (713) 341-1158, jcarruth@wkpz.com

---

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

---

4895-3471-3319, v. 6

**EXHIBIT DAR035 — Subpoena to Headache Gang LLC**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Bankruptcy Case      **23-14859**

## PROOF OF SERVICE

### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*     | **Headache Gang LLC** |

on *(date)* | | .

I served the subpoena by delivering a copy to the following by ***certified mail, return receipt requested and regular mail*** on October __, 2024.

☒
  **Headache Gang LLC**
  **Attn. InCorp Services, Inc. - Reg. Agent**
  **815 Brazos St. Ste. 500**
  **Austin TX 78701**

I declare under penalty of perjury that this information is true.

Date: | October __, 2024 |

| |
*Server's signature*

| Jeff Carruth, Attorney |
*Printed name and title*

| WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
24 Greenway Plaza, Suite 2050, Houston, TX 77046 |
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) Command to Produce Materials or Permit Inspection.**
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) Quashing or Modifying a Subpoena.**
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) Claiming Privilege or Protection.**
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT TO SUBPOENA

# EXHIBIT 001

**EXHIBIT 001 TO SUBPOENA**

## <u>INSTRUCTIONS</u>

1.     In no event should any Instruction, Definition, or Discovery Request be read to contradict the Rules.

2.     Unless otherwise specified, the relevant period of time for each Discovery Request is **<u>September 17, 2015,</u>** through and until the present.

3.     These instructions and definitions herein should be construed to require answers and/or production based upon the knowledge of, and information and documents available to the Debtor, as well as the Personnel (as defined below) of Debtor.

4.     It is intended that the following Discovery Requests will not solicit any material protected either by the attorney/client privilege or the work-product doctrine that was created by, or developed by, counsel for Debtor after the date on which the relevant litigation was commenced. If any inquiry is susceptible to a construction that calls for the production of such material, or for material claimed to be protected under the attorney/client privilege, that material need not be provided but a privilege log pursuant will be required as to all such material.

5.     With respect to any Document that is produced:

     a.     Each Document produced pursuant to this request should be identified in such production by the paragraph of the request with respect to which it is produced.

     b.     If any privilege, exemption, or immunity is claimed as a basis for withholding production of one or more Documents, then please state:

          i.     the particular basis for withholding the Document;

          ii.     the author(s) of the Document;

          iii.     the form of the Document;

          iv.     the date of the Document;

          v.     the identity of all persons who have seen the Document; and;

          vi.     the general subject matter of the Document.

     c.     Documents which, when regularly maintained, are stapled, clipped, or otherwise physically attached to other Documents are to be produced in their stapled, clipped, or otherwise physically attached form.

     d.     If a Document or a group of Documents is taken out of a file folder, file drawer, notebook, or other identifiable storage facility, please attach thereto a copy of the label of the file folder, file drawer, etc., so that the location of each such Document in your files can be determined.

     e.     If any such responsive Document has been lost, discarded, or destroyed, you must identify such Document as completely as possible, including the following information:

          i.     the type of Document;

          ii.     the date of the Document;

**EXHIBIT 001 TO SUBPOENA**

  iii.   the date or approximate date the Document was lost, discarded, or destroyed;

  iv.   the circumstances or manner in which it was lost, discarded, or destroyed;

  v.   the reason or reasons for disposing of the Document (if the Document was discarded or destroyed);

  vi.   the identity of all Persons authorizing or having knowledge of the circumstances surrounding disposal of the Document;

  vii.   the identity of the Persons who lost, discarded, or destroyed the Document; and

  viii.   the identity of all Persons having knowledge of the contents of the Document.

  f.  If you have previously produced to another party any such responsive Documents and you believe that such production is accessible to the party serving these Discovery Requests, you should so specify.

  6.  These Discovery Requests are continuing in character so as to require that supplemental answers be served seasonably if further or different information is obtained with respect to any Discovery Request. Consequently, these Discovery Requests require supplementation if you obtain further information or documents after the answers are served and prior to satisfaction of the judgment.

  7.  The answers to the Interrogatories, as applicable, and other Discovery Requests should be complete and candid. To the extent any information called for by these Interrogatories is unknown to you, so state, and set forth whatever information you have regarding that Interrogatory. If any estimate can reasonably be made, please set forth your best estimate, clearly designated as such.

  8.  No part of a Discovery Request should be left unanswered merely because an objection is interposed to another part of the Discovery Request. If a partial or incomplete answer is provided, state that the answer is partial or incomplete.

  9.  If, in answering these Discovery Requests, you encounter any ambiguities when construing a question, instruction, or definition, then your answer shall set forth the matter deemed ambiguous, and the construction used in answering.

  10.  You must serve your answers or objections to these Discovery Requests upon the undersigned counsel on the ***thirtieth (30th)*** day after these Discovery Requests were served upon you.

  11.  Headings are for convenience only and should not be read to limit the scope of any Discovery Request.

  12.  Please contact the undersigned if you would like an electronic copy of this discovery to aid in the preparation of responses. In any event, the hard copy of this discovery served upon you shall be the controlling copy.

**EXHIBIT DAR035 — Subpoena to Headache Gang LLC**
**EXHIBIT 001 TO SUBPOENA**

## DEFINITIONS AND CONSTRUCTION OF WORDS

1.      All words contained in the Discovery Requests shall have their normal contextual meaning unless otherwise defined herein and should be read in a manner to provide a complete answer to each Discovery Requests. ***Words need not be capitalized in order to be controlled by the meaning of such word(s) as defined herein.***

2.      Wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender.

3.      Additional definitions for or relating to the parties to this action may appear in the introductory paragraphs of this document.

### General Discovery Definitions

1.      "Agent" shall mean any agent, representative, employee, officer, director, attorney, independent contractor or any other Person acting at the direction of or on behalf of another.

2.      "And" or "each", "all", and "any" shall be construed as necessary in each case to make each document request inclusive, rather than exclusive.

3.      "Communication" shall mean and refer to any transmittal or information by any means, including, without limitation, any oral, written, or electronically recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, any correspondence, conversations, telephone calls or other voice or audio interaction, text or SMS messages, chat sessions, dialogues, discussions, interviews, consultations, agreements, or any other understandings between or among two or more Persons or any Document that recorded or reflected any such Communication."

4.      "Discovery Requests" shall mean and refer to this discovery instrument and, as applicable, any interrogatories, requests for admissions, requests for production, and/or requests for inspection contained herein.

5.      "Document" shall mean and include all documents and tangible things to the very broadest extent included within the scope of the Rules, including, but not limited to, the originals and all drafts and copies, together with any annotations or highlighted copies containing all or part of the information requested, in the possession, custody or control of You, Your attorneys, representative, employees, agents, or any other natural person or business or legal entity acting or purporting to act for or on Your behalf, or their respective Personnel as the case may be.  Also, the term "Document" or "writing" means any medium whatsoever, including all electronic, recorded and digital media of any kind, upon which intelligence or information can be recorded, or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any written material, correspondence, electronic mail, text or SMS messages, chat sessions, note file, book, pamphlet, printout, chart, record, report, periodical, letter, memorandum, (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, draft, working paper, chart, paper, print, drawing, sketch, graph,

index, list, and any written, recorded, transcribed, punched, taped, filmed or graphic matter whatsoever, however produced or reproduced, which is in your possession, custody, or control or which was, but is no longer, in Your possession, custody, or control.  The term "Document" or "writing" shall also include all copies or drafts of Documents by whatever means made, including specifically but not exclusively, those copies bearing commentary or notations not appearing on the original.

6. "Equipment" shall mean and refer to any goods or property other than inventory, farm products, consumer goods, or tools.

7. "Identify" shall have the following meanings.

   a. When referring to a person, to state the full current name, residence, and business addresses, and residence and business telephone numbers of the person about whom information is sought, as well as that person's present or last known employer, that person's office or title, if any, and that person's job description.  If any of this information was different at the time with which the Interrogatories are concerned, state also such different information as applies to the time in question;

   b. When referring to a business entity or firm (e.g., a corporation, partnership, limited partnership, law firm, etc.), to state the full name of such business, entity or firm, and the address of its principal place of business;

   c. When referring to a document, to state its date, title, a brief description, subject matter, addressee or others receiving a copy, and author;

   d. When referring to an act, communication, occurrence, statement or conduct, to state the substance of the event constituting such act and the date when such act occurred, persons participating in such act, all persons present when such act occurred, and a description of any record of such act;

   e. When referring to dates, to state the date each such activity began and the date it ended; and

   f. Any specific meaning provided in an Interrogatory.

8. "Insider" (A) with respect to a debtor, shall mean and refer to any (i) member or director of the debtor, (ii) any officer or manager of the debtor, (iii) any person in control of the debtor, or (iv) any relative of any such member, director, manager, officer, or person in control; and (B) with respect to any individual, shall have the same meaning as found in 11 U.S.C. §101.

9. "Investment Asset" shall mean and refer to stocks, bonds, securities, notes, accounts, mortgages, certificates of deposit / CDs, annuities, life insurance policies, profit sharing plans, trusts (as trustee or beneficiary), IRAs, 401(k)'s, pensions, and all other retirement plans, general or limited partnership interests, or similar ownership interests or investments, ownership of or interest in any joint venture, and including any Related Trusts (as defined below).

10.     "Mineral Interest" shall mean and refer to any interest in any mineral interest or oil and gas interest including any lease, royalty, well, working interest, well bore interest, overriding royalty interest, or equity position.

11.     "Person" shall mean and refer to any individual, corporation, company, proprietorship, partnership, trust, association, or other entity.

12.     "Personnel" shall mean and refer to any of the following persons with respect to a referenced person or entity: Insiders (as defined herein); Agents (as defined herein); representatives; servants; employees; officers; directors or managers; the Board of Directors; any individual shareholder or shareholders (or any holders of any equity interest); partner or partners; any accountant representing or providing services; or personal representatives.

13.     "Or" means and refers to and/or.

14.     "Real Property Interest" shall mean and refer to any real estate or interest in any real property in which you own or claim an interest (regardless of whether you acquired or received such real estate by inheritance, gift, or purchase), including (i) any interests in any oil and gas interest or mineral interest, including any mineral acreage owned and further including any lease, royalty, working interest, well bore interest, overriding royalty interest and/or equity position (ii) and option or any similar interest, (iii) any water rights or wind rights, (iv) any leases or interests in leases of any kind such as ground leases, grazing leases, or any other agricultural leases whether as (a) lessor or landlord or (b) lessee or tenant, and/or (v) any lien, encumbrance, or other debt or security related to any interest in real property.

15.     "Relating to" means concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

16.     "Related Trust" means and refers to any trust of which you, your spouse, or child, issue, ward, or dependent of you or your spouse any are a settlor, contributor, controller, trustee, or beneficiary on in which you, your spouse, or child, issue, ward, or dependent of you or your spouse own or claim any interest.

17.     "Response Date" shall mean and refer to the date on which You provide a response to these Discovery Requests / Requests for Production.

18.     "Rolling Stock" shall mean and refer to any automobiles, pickups, trucks, motor vehicles, motorcycles, travel trailers, motor homes, boats, airplanes, dozers, front end loaders, or any other rolling stock or similar equipment, and regardless of whether ownership is evidenced by a certificate of title.

19.     "Rules" shall mean and refer to the Texas Rules of Civil Procedure, the Federal Rules of Civil Procedure and/or the Federal Rules of Bankruptcy Procedure, as applicable.

20. "Tools" shall men and refer to any goods or property other than inventory, farm products, consumer goods, or equipment.

21. "You" or "yours" shall refer to the party to whom these Discovery Requests are being served and all agents and representatives, and all other persons acting on behalf of or purported to act on behalf of said person including the Agents and Personnel of such person.

## Specific Discovery Definitions

1. "Debtor" means and refers to SHILO DION SANDERS.

2. "Defendant" means and refers to SHILO DION SANDERS.

3. "5430" the 5430 Alliance.

4. "Judgment Debtor" means and refers to SHILO DION SANDERS.

5. "NIL" means and refers to name, image, and likeness, and any right or interest in any property related thereto.

6. "Period" shall mean and refer to the period of time from **September 17, 2015 through and until the present**.

7. "Plummer" refers to Plummer Law Group, PC and/or Tabitha Plummer.

8. "Related Entity" means and refers to any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by a person or entity, or with respect to which a person or entity is an Insider or possesses any beneficial interest.

9. "Schwartz-Morini" means and refers to Constance Schwartz-Morini.

10. "SMAC" means and refers to SMAC Entertainment LLC.

11. "Subject Entity" shall mean and refer to each of the following:

    a.    Big 21, LLC

    b.    SS1 Legendary, LLC

    c.    SS21, LLC;

    d.    Headache Gang, LLC and,

    e.    any other business, association, joint venture, partnership, and/or entity owned in whole or in part, or directly or indirectly, controlled by Shilo Sanders, with respect to which Shilo Sanders is or has been an Insider, and/or with respect to which Shilo Sanders possesses any beneficial interest.

12. "UC" means and refers to the University of Colardo, the Athletic Department of the University of Colardo, and the football program of the University of Colardo.

*{continued on following sheet}*

# DOCUMENTS AND THINGS TO PRODUCE

1.      Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) Shilo Sanders and/or any Personnel of Shilo Sanders.

2.      Any documents or emails or other communications exchanged between (i) you and/or any of your Personnel and (ii) any Subject Entity and/or any Personnel of any Subject Entity.

3.      Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) Shilo Sanders.

4.      Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders.

5.      Any contracts or agreements between (i) you and/or any Insider or other Personnel of you and (ii) any Subject Entity.

6.      Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Subject Entity.

7.      Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of any Subject Entity.

8.      Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders.

9.      Any documents or emails or other communications between (i) Shilo Sanders and (ii) any Related Entity of Deion Sanders, and/or Shedeur Sanders, including any Insider or other Personnel thereof.

10.     Any documents or emails or other communications evidencing any contract or agreement between Shilo Sanders and any other person or entity, including but not limited to:

        a.      5430,
        b.      Plummer,
        c.      Schwartz-Morini,
        d.      SMAC,
        e.      UC,
        f.      any affiliate or subsidiary of any of the foregoing, or

EXHIBIT 001 TO SUBPOENA — Page 11
4895-3471-3319, v. 6

g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

11.    Any documents or emails or other communications evidencing any contract or agreement between Big 21 LLC and any other person or entity, including but not limited to:

    a.    5430,
    b.    Plummer,
    c.    Schwartz-Morini,
    d.    SMAC,
    e.    UC,
    f.    any affiliate or subsidiary of any of the foregoing, or
    g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

12.    Any documents or emails or other communications evidencing any contract or agreement between SS1 Legendary LLC and any other person or entity, including but not limited to:

    a.    5430,
    b.    Plummer,
    c.    Schwartz-Morini,
    d.    SMAC,
    e.    UC,
    f.    any affiliate or subsidiary of any of the foregoing, or
    g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

13.    Any documents or emails or other communications evidencing any contract or agreement between SS21 LLC and any other person or entity, including but not limited to:

    a.    5430,
    b.    Plummer,
    c.    Schwartz-Morini,
    d.    SMAC,
    e.    UC,
    f.    any affiliate or subsidiary of any of the foregoing, or
    g.    any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

14.    Any documents or emails or other communications evidencing any contract or agreement between Headache Gang LLC and any other person or entity, including but not limited to:

    a.    5430,
    b.    Plummer,

**EXHIBIT 001 TO SUBPOENA — Page 12**
4895-3471-3319, v. 6

    c.      Schwartz-Morini,
    d.      SMAC,
    e.      UC,
    f.      any affiliate or subsidiary of any of the foregoing, or
    g.      any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

15. Any documents or emails or other communications evidencing any contract or agreement between any other Subject Entity and any other person or entity, including but not limited to:

    a.      5430,
    b.      Plummer,
    c.      Schwartz-Morini,
    d.      SMAC,
    e.      UC,
    f.      any affiliate or subsidiary of any of the foregoing, or
    g.      any media company, social media outlet, brand, product, advertiser, agency, and/or any other similar party.

16. Any documents or emails or other communications evidencing any contract or agreement between (i) Shilo Sanders and (ii) any Subject Entity.

17. Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Subject Entity and (ii) any other Subject Entity.

18. Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) Shilo Sanders.

19. Any documents or emails or other communications evidencing any contract or agreement relating to Shilo Sanders between (i) any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders and (ii) any Subject Entity.

20. Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any agents, managers, attorneys, or representatives.

21. Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service between (i) Shilo Sanders and/or any Subject Entity and (ii) any media company, social media outlet, brand, product, advertiser, agency, or any other similar party.

22. Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of

EXHIBIT 001 TO SUBPOENA — Page 13
4895-3471-3319, v. 6

any good or service, of or relating to Shilo Sanders, between (i) any Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

23.     Any documents or emails or other communications relating to any NIL transaction, endorsement deal agreements, promotional appearance, and/or the promotion of any good or service, of or relating to Shilo Sanders, between (i) any Insider or other Personnel of Shilo Sanders. Deion Sanders, Shedeur Sanders, and/or any Subject Entity and (ii) any agents, managers, attorneys, and representatives.

24.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Deion Sanders** or any Related Entity or Personnel of Deion Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

25.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Shedeur Sanders** or any Related Entity or Personnel of Shedeur Sanders relating to (x) Shilo Sanders or (y) any Subject Entity.

26.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **5430** or any Related Entity or Personnel of 5430 relating to (x) Shilo Sanders or (y) any Subject Entity.

27.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Plummer** or any Related Entity or Personnel of Plummer relating to (x) Shilo Sanders or (y) any Subject Entity.

28.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **Schwartz-Morini** or any Related Entity or Personnel of Schwartz-Morini relating to (x) Shilo Sanders or (y) any Subject Entity.

29.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **SMAC** or any Related Entity or Personnel of SMAC relating to (x) Shilo Sanders or (y) any Subject Entity.

30.     Any documents or emails or other communications between (i) you or any of your Personnel and (ii) **UC** or any Related Entity or Personnel of UC relating to (x) Shilo Sanders or (y) any Subject Entity.

31.     Any documents or emails or other communications relating to any money, value, or any consideration _received by or on account of_ Shilo Sanders during the Period.

32.     Any documents or emails or other communications relating to any money, value, or any consideration _received by or on account of_ any Subject Entity during the Period.

33.     Any documents or emails or other communications relating to any money, value, or any consideration _received by or on account of_ any Insider or other Personnel of

**EXHIBIT 001 TO SUBPOENA — Page 14**
4895-3471-3319, v. 6

Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

34.   Any documents or emails or other communications relating to any money, value, or any consideration _received_ by or on account of any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

35.   Any documents or emails or other communications relating to any money, value, or any consideration _earned_ by or on account of Shilo Sanders during the Period.

36.   Any documents or emails or other communications relating to any money, value, or any consideration _earned_ by or on account of any Subject Entity during the Period.

37.   Any documents or emails or other communications relating to any money, value, or any consideration _earned_ by or on account of any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, relating to (i) Shilo Sanders or (ii) any Subject Entity.

38.   Any documents or emails or other communications relating to any money, value, or any consideration _earned_ by or on account of any Insider or other Personnel of Shilo Sanders, Deion Sanders, and/or Shedeur Sanders during the Period, on account of or as the agent or representative of (i) Shilo Sanders or (ii) any Subject Entity.

39.   Any documents or emails or other communications relating to any money, value, or any consideration _received_ by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

40.   Any documents or emails or other communications relating to any money, value, or any consideration _earned_ by you, your Personnel, or any Related Entity, received from or on account of (i) Shilo Sanders or (ii) any Subject Entity.

41.   Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shilo Sanders or any Subject Entity that were managed or handled by you, your Personnel, or any Related Entity.

42.   Any documents or emails or other communications relating to any agreements, contracts, and deals involving Deion Sanders or Related Entity of Deion Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

43.   Any documents or emails or other communications relating to any agreements, contracts, and deals involving Shedeur Sanders or Related Entity of Shedeur Sanders that were managed or handled by you, your Personnel, or any Related Entity of you.

**EXHIBIT 001 TO SUBPOENA — Page 15**
4895-3471-3319, v. 6

44.     Any documents or email or other communications relating to any trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

45.     Any documents or email or other communications relating to any Related Trust of which Shilo Sanders is a settlor or beneficiary, directly or indirectly.

46.     Any documents or email or other communications evidencing any *assets or interest in any property* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

47.     Any documents or email or other communications evidencing any *Investment Asset* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

48.     Any documents or email or other communications evidencing any *Mineral Interest* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

49.     Any documents or email or other communications evidencing any *Real Property Interest* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

50.     Any documents or email or other communications evidencing any *Rolling Stock* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

51.     Any documents or email or other communications evidencing any *firearms* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

52.     Any documents or email or other communications evidencing any *jewelry* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

53.     Any documents or email or other communications evidencing any *designer clothing or accessories* of Shilo Sanders, any Related Entity of Shilo Sanders, and/or any Subject Entity, or any trust or any Related Trust of which Shilo Sanders was or is a beneficiary.

54.     Any and all documents, information, and/or things produced by or on behalf of Shilo Sanders to the Chapter 7 Trustee appointed in the bankruptcy case of Shilo Sanders, Case No. 23-14859-MER; *In re Shilo Dion Sanders*, in the United States Bankruptcy Court for the District of Colorado.

**EXHIBIT 001 TO SUBPOENA — Page 16**
4895-3471-3319, v. 6