UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

In re:  Case No. 23-14859-MER
Chapter 7

SHILO DION SANDERS, *Debtor*

MERCEDES-BENZ FINANCIAL SERVICES USA LLC, *Movant*

v.

SHILOH DION SANDERS and
DAVID V. WADSWORTH, Chapter 7 Trustee, *Respondents*

## MOTION FOR RELIEF FROM STAY

COMES NOW, the Movant, MERCEDES-BENZ FINANCIAL SERVICES USA LLC, ("Movant"), through counsel, Douglas D. Koktavy, P.C., and pursuant to 11 U.S.C. §362(d), Fed.R.Bankr.P. 4001 and 9014, and L.B.R. 4001-1, respectfully moves this Court for relief from stay, and as grounds states:

1. This Court has jurisdiction over this matter under 28 U.S.C. §1334. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §1409(a).

2. Debtor filed a Chapter 7 Petition on October 23, 2024. The deadline for discharge was January 29, 2024.

3. Movant holds a claim secured by certain property of the Estate evidenced by the following:

   A. A Retail Installment Contract ["contract"], a true and correct copy of which is attached hereto, incorporated by reference and marked as **Exhibit "1."**

   B. Movant properly perfected it's security interest as evidenced on the Certificate of Title, attached hereto, incorporated by reference and marked as **Exhibit "2."**

4. Movant's contract requires monthly payments. Debtor is in financial default of this obligation. Movant's true and correct Affidavit, incorporating computer records of this consumer debt, kept and maintained in the ordinary course of business, reflecting the debt, payment history, outstanding balance and existing arrearage is attached hereto, incorporated by reference and marked as **Exhibit "3."**

5. The property securing this contract is one:

2023 Mercedes-Benz GLE63C4S VIN: 4JGFD8KB8PA893241 (the "motor vehicle").

6. Debtor indicated an intent to retain the motor vehicle and reaffirm the obligation. Debtor has not accomplished this intention.

7. Movant is entitled to relief under 11 U.S.C. §362(d)(1) for cause, including lack of adequate protection in the motor vehicle. Particularly, the motor vehicle is depreciating in value, the contract is in default and the Movant is being prevented by the automatic stay from exercising its remedies to repossess and liquidate its collateral, the motor vehicle. Specifically, the account is in default **$6,877.17**. *See* Exhibit 3, including a payment history pursuant to LBR 4001-1(a)(4)(B).

8. **SUMMARY OF DEFAULT**. Payments are $2,292.39 per month. As of March 20, 2025 the account was past due for $6,877.17 for December 2024 through February 2025. L.B.R. 4001-1(a)(4)(B).

9. Movant is entitled to relief under 11 U.S.C. §362(d)(2). Debtor lacks equity in the motor vehicle. The outstanding balance on the contract is **$97,239.34** (*See*, Exhibit 3), while the NADA average trade-in value is **$97,000.00 (Exhibit "4")**. The motor vehicle is not necessary to an effective reorganization because the case was filed under Chapter 7.

10. The Interim Chapter 7 Trustee is named on behalf of the estate.

11. A complying affidavit is made pursuant to the Servicemembers Civil Relief Act of 2003 ["SCRA"] and L.B.R. 4002-3 and is attached hereto as **Exhibit "5"** and incorporated by reference.

12. Movant also requests that Debtor disclose the location of the motor vehicle in accordance with Fed.R.Bankr.P. 2004 and 7034 and the covenants in the security agreement portion of the contract and that the fourteen day stay of order pursuant to Fed.R.Bankr.P. 4001(a)(3) be lifted in the event of no response.

WHEREFORE, Movant respectfully requests the Court grant the Movant relief from the stay to enforce its claims against the motor vehicle pursuant to state law and Movant's contract through foreclosure of its interest; that Debtor provide and make available to Movant the location of the motor vehicle upon the granting of this relief; that the fourteen day provisions of Fed.R.Bankr.P. 4001(a)(3) be lifted in the event of no response; or in the alternative, by the termination, annulment, modification or conditioning of the Stay as the Court deems necessary to adequately preserve, protect and maintain Movant's security interest and position in the motor vehicle during the pendency of these Bankruptcy proceedings; and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: April 1, 2025

**DOUGLAS D. KOKTAVY, P.C.**

by: /s/ Douglas D. Koktavy
Douglas D. Koktavy, #14641
Building B, Suite 120
10200 East Girard Avenue
Denver, Colorado 80231
Telephone: (303) 758-6601
Facsimile: (303) 758-6540
E-mail: Doug@ColoradoCreditorLaw.com

**ATTORNEY FOR MOVANT**

**LAW 553-CA-ARB-eps 3/23**

RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| SHILO SANDERS<br>410 PRIVATE RD 6405, CANTON, TX 75103<br>Cell<br>Em | N/A<br>N/A<br>Cell: N/A<br>Email: N/A | CB AUTOMOTIVE GROUP, INC.<br>1423 CALLE JOAQUIN<br>SAN LUIS OBISPO  CA  93405<br>SAN LUIS OBISPO  (805) 543-5752 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2023 | MERCEDES-BENZ GLE | 15 | 4JGFD8KB8PA893241 | Personal, family, or household unless otherwise indicated below<br>☐ business or commercial |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $22,500.00 is |
|---|---|---|---|---|
| 7.50 % | $ 28019.68 (e) | $ 123,278.06 (e) | $ 151,297.74 (e) | $ 173,797.74 (e) |

(e) means an estimate

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|
| One Payment of | $ N/A | N/A |
| One Payment of | $ N/A | N/A |
| One Payment of | $ N/A | N/A |
| 65 | $ 2292.39 | Monthly beginning 06/22/2023 |
| N/A | $ N/A | N/A |
| One final payment 1 | $ 2292.39 | 11/22/2028 |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay early, you may be charged a minimum finance charge.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

### STATEMENT OF INSURANCE

NOTICE. No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

**Vehicle Insurance**

|  |  | Term | Premium |
|---|---|---|---|
| $ N/A | Ded. Comp, Fire & Theft | N/A Mos. | $ N/A |
| $ N/A | Ded. Collision | N/A Mos. | $ N/A |
| Bodily Injury $ N/A Limits | | N/A Mos. | $ N/A |
| Property Damage $ N/A Limits | | N/A Mos. | $ N/A |
| Medical N/A | | N/A Mos. | $ N/A |
| N/A | | N/A Mos. | $ N/A |
| Total Vehicle Insurance Premiums | | | $ N/A |

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X _[signature]_
Co-Buyer X N/A
Seller X _[signature]_

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle(s) to arrive at the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s). You understand that the amount quoted is an estimate. Seller agrees to pay the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s) to the lienholder or lessor of the trade-in vehicle(s), or its designee. If the actual payoff amount is more than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on page 5 of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in Trade-In Vehicle(s) or any refund. You agree to sign or provide any documents Seller reasonably requires to effect the transfer of the Trade-In Vehicle to Seller or its designee.

Buyer Signature X N/A                    Co-Buyer Signature X N/A

### AUTO BROKER FEE DISCLOSURE

If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:
☐ Name of autobroker receiving fee, if applicable: N/A

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 5 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _[signature]_                    Co-Buyer Signs X N/A

Buyer Signs X _[signature]_     Co-Buyer Signs X N/A

**EXHIBIT 1**

Page 1 of 6

**ITEMIZATION OF THE AMOUNT FINANCED** (Seller may keep part of the amounts paid to others.)

1. Total Cash Price
   - A. Cash Price of Motor Vehicle and Accessories ............ $ 135,365.00 (A)
     1. Cash Price Vehicle ............ $ 135,365.00
     2. Cash Price Accessories ............ $ N/A
     3. Other (Nontaxable) Describe N/A ............ $ N/A
     4. Other (Nontaxable) Describe N/A ............ $ N/A
   - B. Document Processing Charge (not a governmental fee) ............ $ 34.00 (B)
   - C. Emissions Testing Charge (not a governmental fee) ............ $ N/A (C)
   - D. (Optional) Theft Deterrent Device(s)
     1. (paid to) N/A ............ $ N/A (D1)
     2. (paid to) N/A ............ $ N/A (D2)
     3. (paid to) N/A ............ $ N/A (D3)
   - E. (Optional) Surface Protection Product(s)
     1. (paid to) XZILON APPEARANCE PROTECTION ............ $ 1,895.00 (E1)
     2. (paid to) N/A ............ $ N/A (E2)
   - F. EV Charging Station (paid to) N/A ............ $ N/A (F)
   - G. Sales Tax (on taxable items in A through F) ............ $ 8,460.31 (G)
   - H. Electronic Vehicle Registration or Transfer Charge (not a governmental fee) (paid to) DMV DESK ............ $ 145.00 (H)
   - I. (Optional) Service Contract(s)
     1. (paid to) N/A ............ $ N/A (I1)
     2. (paid to) N/A ............ $ N/A (I2)
     3. (paid to) N/A ............ $ N/A (I3)
     4. (paid to) N/A ............ $ N/A (I4)
     5. (paid to) N/A ............ $ N/A (I5)
   - J. Prior Credit or Lease Balance (s) paid by Seller to N/A ............ $ N/A (J)
     (see downpayment and trade-in calculation)
   - K. Prior Credit or Lease Balance (s) paid by Seller to N/A ............ $ N/A (K)
     (see downpayment and trade-in calculation)
   - L. (Optional) Debt Cancellation Agreement or Guaranteed Asset Protection Waiver $ ............ N/A (L)
   - M. (Optional) Used Vehicle Contract Cancellation Option Agreement ............ $ N/A (M)
   - N. Other paid to N/A  For N/A ............ $ N/A (N)
   - O. Other paid to N/A  For N/A ............ $ N/A (O)
   - Total Cash Price (A through O) ............ $ 145,899.31 (1)

2. Amounts Paid to Public Officials
   - A. Vehicle License Fees ............ $ N/A (A)
   - B. Registration/Transfer/Titling Fees ............ $ 78.75 (B)
   - C. California Tire Fees ............ $ N/A (C)
   - D. Other N/A ............ $ N/A (D)
   - Total Official Fees (A through D) ............ $ 78.75 (2)

3. Amount Paid to Insurance Companies (Total premiums from Statement of Insurance) ............ $ N/A (3)
4. ☐ State Emissions Certification Fee or ☐ State Emissions Exemption Fee ............ $ N/A (4)
5. Subtotal (1 through 4) ............ $ 145,778.06 (5)
6. Total Downpayment
   - A. Total Agreed Value of Property Being Traded-In (see Trade-In Vehicle(s)): ............ $ N/A (A)
     Vehicle 1 $ N/A  Vehicle 2 $ N/A
   - B. Total Less Prior Credit or Lease Balance (s) ............ $ N/A (B)
     Vehicle 1 $ N/A  Vehicle 2 $ N/A
   - C. Total Net Trade-In (A–B) ............ $ N/A (C)
     Vehicle 1 $ N/A  Vehicle 2 $ N/A
   - D. Deferred Downpayment Payable to Seller ............ $ N/A (D)
   - E. Manufacturer's Rebate ............ $ N/A (E)
   - F. Other N/A ............ $ N/A (F)
   - G. Other N/A ............ $ N/A (G)
   - H. Other N/A ............ $ N/A (H)
   - I. Cash, Cash Equivalent, Check, Credit Card, or Debit Card ............ $ 22,500.00 (I)
   - Total Downpayment (C through I) ............ $ 22,500.00 (6)
   (If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1J and/or 1K above)
7. Amount Financed (5 less 6) ............ $ 123,278.06 (7)

---

**OPTIONAL DEBT CANCELLATION AGREEMENT OR GUARANTEED ASSET PROTECTION WAIVER.** A debt cancellation agreement or guaranteed asset protection waiver (GAP waiver) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy debt cancellation or a GAP waiver, the charge is shown in item 1L of the Itemization of Amount Financed. See your agreement for details on the terms and conditions it provides. It is a part of this contract.

Term N/A Mos.   N/A
                Name of Agreement
I want to buy a debt cancellation agreement or GAP waiver.
Buyer Signs X N/A

**OPTIONAL SERVICE CONTRACT(S)** You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in item 1I.

I1 Company N/A
Term N/A Mos. or N/A Miles
I2 Company N/A
Term N/A Mos. or N/A Miles
I3 Company N/A
Term N/A Mos. or N/A Miles
I4 Company N/A
Term N/A Mos. or N/A Miles
I5 Company N/A
Term N/A Mos. or N/A Miles
Buyer X N/A

**Trade-In Vehicle(s)**

1. Vehicle 1
   Year N/A  Make N/A
   Model N/A  Odometer N/A
   VIN N/A
   a. Agreed Value of Property $ N/A
   b. Buyer/Co-Buyer Retained Trade Equity $ N/A
   c. Agreed Value of Property Being Traded-In (a–b) $ N/A
   d. Prior Credit or Lease Balance $ N/A
   e. Net Trade-In (c–d) (must be ≥ 0 for buyer/co-buyer to retain equity) $ N/A

2. Vehicle 2
   Year N/A  Make N/A
   Model N/A  Odometer N/A
   VIN N/A
   a. Agreed Value of Property $ N/A
   b. Buyer/Co-Buyer Retained Trade Equity $ N/A
   c. Agreed Value of Property Being Traded-In (a–b) $ N/A
   d. Prior Credit or Lease Balance $ N/A
   e. Net Trade-In (c–d) (must be ≥ 0 for buyer/co-buyer to retain equity) $ N/A

Total Agreed Value of Property Being Traded-In (1c+2c) $ N/A *
Total Prior Credit or Lease Balance (1d+2d) $ N/A *
Total Net Trade-In (1e+2e) $ N/A *
(*See item 6A–6C in the Itemization of Amount Financed.)

OPTION: ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before N/A , Year N/A
SELLER'S INITIALS N/A

---

Buyer Signs X [signature]   Co-Buyer Signs X N/A

LAW 553-CA-ARB-eps 3/23 v1   Page 2 of 6

## OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. Seller - Creditor may receive part of the Finance Charge.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment. As of the date of your payment, if the minimum finance charge is greater than the earned Finance Charge, you may be charged the difference; the minimum finance charge is as follows: (1) $25 if the original Amount Financed does not exceed $1,000, (2) $50 if the original Amount Financed is more than $1,000 but not more than $2,000, or (3) $75 if the original Amount Financed is more than $2,000.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

   > **GAP LIABILITY NOTICE**
   > In the event of theft or damage to your vehicle that results in a total loss, there may be a gap between the amount you owe under this contract and the proceeds of your insurance settlement and deductible. THIS CONTRACT PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. An optional debt cancellation agreement for coverage of the gap amount may be offered for an additional charge.

   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
   You give us a security interest in:
   - The vehicle and all parts or goods put on it;
   - All money or goods received (proceeds) for the vehicle;
   - All insurance, maintenance, service, or other contracts we finance for you; and
   - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

   This secures payment of all you owe on this contract. It also secures your other agreements in this contract as the law allows. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

   d. **Insurance you must have on the vehicle.**
   You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to any right the law gives you to reinstate this contract.
   Default means:
   - You do not pay any payment on time;
   - You give false, incomplete, or misleading information during credit application;
   - The vehicle is lost, damaged, or destroyed; or
   - You break any agreements in this contract.
   
   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** You will pay our reasonable costs to collect what you owe, including attorney fees, court costs, collection agency fees, and fees paid for other reasonable collection efforts. You agree to pay a charge not to exceed $15 if any check you give to us is dishonored.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). You may redeem the vehicle by paying all you owe, or you may have the right to reinstate this contract and redeem the vehicle by paying past due payments and any late charges, providing proof of insurance, and/or taking other action to cure the default. We will provide you all notices required by law to tell you when and how much to pay and/or what action you must take to redeem the vehicle.

Buyer Signs X _____   Co-Buyer Signs X __N/A__

LAW 553-CA-ARB-eps 3/23 v1   Page 3 of 6

f. We will sell the vehicle if you do not get it back. If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at the Annual Percentage Rate shown on page 1 of this contract, not to exceed the highest rate permitted by law, until you pay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **WARRANTIES SELLER DISCLAIMS**
**If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. If the Seller has sold you a certified used vehicle, the warranty of merchantability is not disclaimed.

5. **Used Car Buyers Guide. The Information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

6. **SERVICING AND COLLECTION CONTACTS**
In consideration of our extension of credit to you, you agree to provide us your contact information for our servicing and collection purposes. You agree that we may use this information to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. You agree to allow our agents and service providers to contact you as agreed above.
You agree that you will, within a reasonable time, notify us of any change in your contact information.

7. **APPLICABLE LAW**
Federal law and California law apply to this contract. If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

8. **WARRANTIES OF BUYER**
You promise you have given true and correct information during your application for credit, and you have no knowledge that will make that information untrue in the future. We have relied on the truth and accuracy of that information in entering into this contract. Upon request, you will provide us with documents and other information necessary to verify any item contained in your credit application.

9. **NEGATIVE CREDIT REPORT NOTICE**
**We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

You waive the provisions of Calif. Vehicle Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your residence address to us.

**CREDIT DISABILITY INSURANCE NOTICE**
**CLAIM PROCEDURE**
If you become disabled, you must tell us right away. (You are advised to send this information to the same address to which you are normally required to send your payments, unless a different address or telephone number is given to you in writing by us as the location where we would like to be notified.) We will tell you where to get claim forms. You must send in the completed form to the insurance company as soon as possible and tell us as soon as you do.
If your disability insurance covers all of your missed payment(s), WE CANNOT TRY TO COLLECT WHAT YOU OWE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER your first missed payment is due or until the insurance company pays or rejects your claim, whichever comes first. We can, however, try to collect, foreclose, or repossess if you have any money due and owing us or are otherwise in default when your disability claim is made or if a senior mortgage or lien holder is foreclosing.
If the insurance company pays the claim within the three calendar months, we must accept the money as though you paid on time. If the insurance company rejects the claim within the three calendar months or accepts the claim within the three calendar months on a partial disability and pays less than for a total disability, you will have 35 days from the date that the rejection or the acceptance of the partial disability claim is sent to pay past due payments, or the difference between the past due payments and what the insurance company pays for the partial disability, plus late charges. You can contact us, and we will tell you how much you owe. After that time, we can take action to collect or foreclose or repossess any collateral you may have given.
If the insurance company accepts your claim but requires that you send in additional forms to remain eligible for continued payments, you should send in these completed additional forms no later than required. If you do not send in these forms on time, the insurance company may stop paying, and we will then be able to take action to collect or foreclose or repossess any collateral you may have given.

Buyer Signs X _____   Co-Buyer Signs X __N/A__

LAW 553-CA-ARB-eps 3/23 v1   Page 4 of 6

**Seller's Right to Cancel**

a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take some time for Seller to verify your credit and assign the contract. You agree that if Seller is unable to assign the contract to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel the contract.
b. Seller shall give you written notice (or in any other manner in which actual notice is given to you) within 10 days of the date this contract is signed if Seller elects to cancel. Upon receipt of such notice, you must immediately return the vehicle to Seller in the same condition as when sold, reasonable wear and tear excepted. Seller must give back to you all consideration received by Seller, including any trade-in vehicle.
c. If you do not immediately return the vehicle, you shall be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees.
d. While the vehicle is in your possession, all terms of the contract, including those relating to use of the vehicle and insurance for the vehicle, shall be in full force and you shall assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage to the vehicle until the vehicle is returned to Seller.

**ARBITRATION PROVISION**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator only on an individual basis and not as a plaintiff in a collective or representative action, or a class representative or member of a class on any class claim. The arbitrator may not preside over a consolidated, representative, class, collective, injunctive, or private attorney general action. You expressly waive any right you may have to arbitrate a consolidated, representative, class, collective, injunctive, or private attorney general action. You or we may choose the American Arbitration Association (www.adr.org) or National Arbitration and Mediation (www.namadr.com) as the arbitration organization to conduct the arbitration. If you and we agree, you or we may choose a different arbitration organization. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this transaction was originated. We will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee up to a maximum of $5,000, unless the law or the rules of the chosen arbitration organization require us to pay more. You and we will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee over $5,000 in accordance with the rules and procedures of the chosen arbitration organization. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate any related or unrelated claims by filing any action in small claims court, or by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual or statutory public injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. You agree that you expressly waive any right you may have for a claim or dispute to be resolved on a class basis in court or in arbitration. If a court or arbitrator finds that this class arbitration waiver is unenforceable for any reason with respect to a claim or dispute in which class allegations have been made, the rest of this Arbitration Provision shall also be unenforceable.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Buyer Signs X _[signature]_   Co-Buyer Signs X __N/A__

LAW 553-CA-ARB-eps 3/23 v1   Page 5 of 6

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

Buyer Signs X _____ Co-Buyer Signs X N/A _____

**SELLER'S RIGHT TO CANCEL** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on page 5 of this contract giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

Buyer X _____ Co-Buyer X N/A _____

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
WARNING:
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

S/S X _____ X N/A _____

N/A

Notice to buyer: (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

If you have a complaint concerning this sale, you should try to resolve it with the seller.
Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof. After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer Signature X _____ Co-Buyer Signature X N/A _____

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**
California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a two-day contract cancellation option on used vehicles with a purchase price of less than forty thousand dollars ($40,000), subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ ALL PAGES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON PAGE 5, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

Buyer Signature X _____ Date 05/08/2023 Co-Buyer Signature X N/A _____ Date N/A
Buyer Printed Name SHILO SANDERS _____ Co-Buyer Printed Name N/A

If the "business" use box is checked in "Primary Use for Which Purchased": Print Name N/A _____ Title N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other Owner Signature X N/A _____ Address N/A

**GUARANTY:** To induce us to sell the vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Buyer more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend the contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing.
Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default; and notices of the amount owing at any time; and of any demands upon the Buyer.

Guarantor X N/A _____ Date N/A Guarantor X N/A _____ Date N/A
Address N/A _____ N/A _____ N/A Address N/A _____ N/A _____ N/A

Seller Signs CB AUTOMOTIVE GROUP, INC. Date 05/08/2023 By X _____ Title N/A F&I MGR

Seller assigns its interest in this contract to MERCEDES-BENZ FINANCIAL SERVICES USA LLC (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse   [X] Assigned without recourse   ☐ Assigned with limited recourse
Seller CB AUTOMOTIVE GROUP, INC.
By X _____ Title F&I MANAGER

LAW FORM NO. 553-CA-ARB-eps (REV. 3/23)
©2023 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

LAW 553-CA-ARB-eps 3/23 v1   Page 6 of 6

Upon sale of this vehicle, the purchaser must apply for a new title within 30 days unless the vehicle is purchased by a dealer. Until a new title is issued, the vehicle record will continue to reflect the owner's name listed on the current title. SEE BACK OF TAB FOR ADDITIONAL INFORMATION

013611  014915

MERCEDES BENZ FINSER USA
PO BOX 997542
SACRAMENTO, CA 95899-7542



0 2 6 3 9 1

↓ DETACH HERE ↓

## TEXAS CERTIFICATE OF TITLE

TxDMV

TEXAS DEPARTMENT OF MOTOR VEHICLES

17223GG12

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 4JGFD8KB8PA893241 | 2023 | MERZ | LL |

TITLE DOCUMENT NUMBER: 23420045129162626
DATE TITLE ISSUED: 08/01/2023

MODEL:
MFG CAPACITY IN TONS:
WEIGHT: 5600
LICENSE NUMBER: TGH0152
PREVIOUS OWNER: CB AUTOMOTIVE SAN LUIS OB CA

ODOMETER READING: 15
REMARK(S): ACTUAL MILEAGE

OWNER:
SHILO DION SANDERS
410 PRIVATE ROAD 6405
CANTON, TX 75103

X _____
SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW IT IS A VIOLATION OF STATE LAW TO SIGN THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE INFORMATION ON A CERTIFICATE OF TITLE

DATE OF LIEN              1ST LIENHOLDER
05/08/2023  MERCEDES BENZ FINSER USA
            PO BOX 997542
            SACRAMENTO, CA 95899

1ST LIEN RELEASED _____ DATE
BY _____ AUTHORIZED AGENT

DATE OF LIEN              2ND LIENHOLDER

2ND LIEN RELEASED _____ DATE
BY _____ AUTHORIZED AGENT

DATE OF LIEN              3RD LIENHOLDER

3RD LIEN RELEASED _____ DATE
BY _____ AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS

RIGHTS OF SURVIVORSHIP AGREEMENT
WE THE MARRIED PERSONS WHOSE SIGNATURES APPEAR HEREIN HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS CERTIFICATE OF TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY AND IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED IN THE AGREEMENT THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S)

SIGNATURE _____ DATE
SIGNATURE _____ DATE
SIGNATURE _____ DATE

FORM 30 C REV 05/2016      DO NOT ACCEPT TITLE SHOWING ERASURE ALTERATION OR MUTILATION

**EXHIBIT 2**

Whenever you sell or trade in a vehicle, be sure to **protect yourself by filing the Vehicle Transfer Notification online** at www.TxDMV.gov. The notification removes your responsibility for anything the buyer might do with the vehicle. It's free!

**You ONLY have 30 days to submit the Vehicle Transfer Notification from the date you sell or trade in the vehicle to remove your liability.**

Before you buy, do a Title Check. For more information, go to www.TxDMV.gov and click on the "Title Check" icon.

---

**WHEN VEHICLE IS SOLD, TITLE HOLDER MUST ASSIGN AND FURNISH THIS TITLE INDICATING A DATE OF SALE TO THE PURCHASER WHO MUST FILE APPLICATION WITH COUNTY TAX ASSESSOR-COLLECTOR WITHIN 30 DAYS TO AVOID PENALTY**

17223 6612

FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.

**ASSIGNMENT OF TITLE**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens except as noted herein and has been transferred to the following printed name and address.

Name of Purchaser / Street / City / State / Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
- ☐ 1 The mileage stated is in excess of its mechanical limits
- ☐ 2 The odometer reading is not the actual mileage WARNING ODOMETER DISCREPANCY

ODOMETER READING (No Tenths) / Date of Sale

Signature of Seller/Agent / Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent / Printed Name (same as signature)

**FIRST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens except as noted herein and has been transferred to the following printed name and address.

Name of Purchaser / Street / City / State / Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
- ☐ 1 The mileage stated is in excess of its mechanical limits
- ☐ 2 The odometer reading is not the actual mileage WARNING ODOMETER DISCREPANCY

ODOMETER READING (No Tenths) / Date of Sale / Dealer No

Dealer's Name

Agent's Signature / Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent / Printed Name (same as signature)

**SECOND REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens except as noted herein and has been transferred to the following printed name and address.

Name of Purchaser / Street / City / State / Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
- ☐ 1 The mileage stated is in excess of its mechanical limits
- ☐ 2 The odometer reading is not the actual mileage WARNING ODOMETER DISCREPANCY

ODOMETER READING (No Tenths) / Date of Sale / Dealer No

Dealer's Name

Agent's Signature / Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent / Printed Name (same as signature)

**THIRD REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens except as noted herein and has been transferred to the following printed name and address.

Name of Purchaser / Street / City / State / Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
- ☐ 1 The mileage stated is in excess of its mechanical limits
- ☐ 2 The odometer reading is not the actual mileage WARNING ODOMETER DISCREPANCY

ODOMETER READING (No Tenths) / Date of Sale / Dealer No

Dealer's Name

Agent's Signature / Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent / Printed Name (same as signature)

**LIEN**

LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE
1ST LIEN IN FAVOR OF (NAME & ADDRESS) _____

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

In re:                                 Chapter 7

    Shilo Dion Sanders,                Bky. No. 23-14859
    Debtor(s)

**STATE OF TEXAS**                    )
                                           ) ss.
**COUNTY OF BELL**                  )          **AFFIDAVIT**

        I, _Star Faz_, a _Bankruptcy specialist_ of Mercedes-Benz Financial Services USA LLC, declare under penalty of perjury that I have personal knowledge of the information set forth below, which is true and correct to the best of my knowledge, information, and belief.

        1.      This affidavit is based on the loan payment records of Mercedes-Benz Financial Services USA LLC as of March 20, 2025. These records are regularly maintained in the course of business and it is the regular practice to make and maintain these records. These records reflect the loan payments that are noted in the records at the time of receipt by persons whose regular duties include recording this information. I maintain these records and regularly use and rely upon them in the performance of my duties.

        2.      Mercedes-Benz Financial Services USA LLC has a valid, perfected security interest in the following (the "Collateral"): 2023 Mercedes-Benz GLE63C4S, VIN: 4JGFD8KB8PA893241.

        3.      $97,239.34 is the outstanding balance under the contract.

        4.      $6,877.17 is the amount of the existing delinquency under the contract.

        5.      $97,000.00 is the fair market value of the Collateral.

        6.      No appropriate insurance has been verified.

        Further your affiant sayeth not.

Dated: _3/21/2025_

Subscribed and sworn to before me on this
_21_ day of _March_, 2025

_Notary Public_
My commission expires: _09/19/2027_

Printed Name: _Star Faz_
Title: _Bankruptcy specialist_
Creditor: Mercedes-Benz Financial Services USA LLC

[Notary Seal: HEIDI J. QUINTANA, NOTARY PUBLIC, STATE OF TEXAS, ID 134563373, EXP 09-19-2027]

**EXHIBIT 3**



## Payment History

**SHILO SANDERS**          Agreement Number

### Payments Applied Towards Current and Future Invoices

| Payment Received Date | Payment Received Amount | Payment Method | Invoice Number | Invoice Due Date | Invoice Charge Type | Payment Applied | Comments |
|---|---|---|---|---|---|---|---|
| 05/08/2023 | $22,500.00 | Paid Via Dealer | 176599011 | 05/08/2023 | Down Payment | $22,500.00 | |
| 07/03/2023 | $0.00 | | 178478241 | 07/03/2023 | Late Payment Fee | $114.62 | |
| | | | 179472042 | 07/03/2023 | Late Payment Fee | ($114.62) | Courtesy |
| 07/21/2023 | $2,292.39 | GuestPay Credit Card | 177181546 | 06/22/2023 | Loan/HP Repayment | $2,292.39 | |
| 07/26/2023 | $2,292.39 | MMF ACH | 178478237 | 07/22/2023 | Loan/HP Repayment | $2,292.39 | |
| 07/27/2023 | $2,292.39 | MMF ACH | 179884202 | 08/22/2023 | Loan/HP Repayment | $2,292.39 | |
| 09/26/2023 | $2,292.39 | MMF ACH | 181228709 | 09/22/2023 | Loan/HP Repayment | $2,292.39 | |
| 09/28/2023 | $2,292.39 | MMF ACH | 182592215 | 10/22/2023 | Loan/HP Repayment | $2,292.39 | |
| 11/29/2023 | $2,292.39 | Agent CC | 183944197 | 11/22/2023 | Loan/HP Repayment | $2,292.39 | |
| 01/22/2024 | $4,584.78 | Agent ACH | 185168752 | 12/22/2023 | Loan/HP Repayment | $2,292.39 | |
| | | | 186494183 | 01/22/2024 | Loan/HP Repayment | $2,292.39 | |
| 03/08/2024 | $2,292.39 | Agent CC | 187800274 | 02/22/2024 | Loan/HP Repayment | $2,292.39 | |
| 05/23/2024 | $6,877.17 | Agent ACH | 189069319 | 03/22/2024 | Loan/HP Repayment | $2,292.39 | |
| | | | 190384195 | 04/22/2024 | Loan/HP Repayment | $2,292.39 | |
| | | | 191718150 | 05/22/2024 | Loan/HP Repayment | $2,292.39 | |
| 08/23/2024 | $6,877.17 | Agent ACH | 193078211 | 06/22/2024 | Loan/HP Repayment | $2,292.39 | |
| | | | 194399140 | 07/22/2024 | Loan/HP Repayment | $2,292.39 | |
| | | | 195725238 | 08/22/2024 | Loan/HP Repayment | $2,292.39 | |
| 12/10/2024 | $6,877.17 | Agent ACH | 196994181 | 09/22/2024 | Loan/HP Repayment | $2,292.39 | |
| | | | 198301151 | 10/22/2024 | Loan/HP Repayment | $2,292.39 | |
| | | | 199564257 | 11/22/2024 | Loan/HP | $2,292.39 | |

\*\* The highlighted amount in the Payment Applied column above represents payments received by creditor that have not been applied to customer's account as of the date this payment history is provided. The highlighted amount may be applied to customer's future invoice(s). If there is any discrepancy in this payment history and creditor's records or if this payment history contains errors regarding customer's payment history, the balances on creditor's books shall prevail. \*\*

Page 1



## Payment History

| Payment Received Date | Payment Received Amount | Payment Method | Invoice Number | Invoice Due Date | Invoice Charge Type | Payment Applied | Comments |
|---|---|---|---|---|---|---|---|
| 12/10/2024 | $6,877.17 | Agent ACH | | | Repayment | | |

** The highlighted amount in the Payment Applied column above represents payments received by creditor that have not been applied to customer's account as of the date this payment history is provided. The highlighted amount may be applied to customer's future invoice(s). If there is any discrepancy in this payment history and creditor's records or if this payment history contains errors regarding customer's payment history, the balances on creditor's books shall prevail. **

Page 2

# J.D. POWER

3/21/2025

**J.D. POWER Used Cars/Trucks**

## Vehicle Information

| | |
|---|---|
| Vehicle: | 2023 Mercedes-Benz GLE Utility 4D GLE63 AMG S Sport Coupe AWD 4.0L V8 Turbo |
| Region: | Mountain |
| Period: | March 21, 2025 |
| VIN: | 4JGFD8KB8PA893241 |
| Mileage: | 32,500 |
| Base MSRP: | $120,700 |
| Typically Equipped MSRP: | $127,100 |
| Weight: | 5,390 |

## J.D. POWER Used Cars/Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| **Monthly Used** | | | | |
| Rough Trade-In | $94,000 | N/A | N/A | **$94,000** |
| Average Trade-In | $97,000 | N/A | N/A | **$97,000** |
| Clean Trade-In | $99,500 | N/A | N/A | **$99,500** |
| Clean Loan | $89,550 | N/A | N/A | **$89,550** |
| Clean Retail | $105,825 | N/A | N/A | **$105,825** |
| **Weekly Auction** | | | | |
| Low | $92,250 | N/A | N/A | **$92,250** |
| Average | $96,275 | N/A | N/A | **$96,275** |
| High | $100,325 | N/A | N/A | **$100,325** |

*The auction values displayed include typical equipment and adjustments for mileage and any of the following applicable accessories: engine size, drivetrain, and trim.

## Selected Options

| | Trade-In/Loan | Retail |
|---|---|---|
| Leather Seats | w/body | w/body |
| Driver Assist Plus Pkg. | w/body | w/body |
| Cooled Front Seats | w/body | w/body |
| Passenger Seat Memory | w/body | w/body |
| Air Suspension | w/body | w/body |

**EXHIBIT 4**

## SCRA AFFIDAVIT

I, Douglas D. Koktavy, am attorney in fact for Movant, am of lawful age, and make the following statements under oath:

1. This affidavit is made pursuant to Servicemembers Civil Relief Act of 2003 ["SCRA"] and L.B.R. 4002-3.

2. I recently performed an online search of military records using the debtor's name and social security number. The online service I used was Department of Defense Manpower Data Center, which maintains a search address of https://www.dmdc.osd.mil/scra/owa/home.

3. Based on the online search, it does not appear the debtor is an active duty servicemember. A copy of the Status Report is attached hereto.

Further affiant sayeth not.

Dated: 4-1-2025

By _____
Douglas D. Koktavy
Attorney at Law

Subscribed and sworn to:

_____
Notary Public
My commission expires: 5/7/2027

CAROLINE S. REPAIR
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 19954005082
MY COMMISSION EXPIRES MAY 7, 2027

**EXHIBIT 5**

Department of Defense Manpower Data Center

Results as of : Apr-01-2025 11:36:20 AM EDT

SCRA 5.24



Status Report
Pursuant to Servicemembers Civil Relief Act

| | |
|---|---|
| SSN: | XXX-XX-2504 |
| Birth Date: | |
| Last Name: | SANDERS |
| First Name: | SHILO |
| Middle Name: | DION |
| Status As Of: | Apr-01-2025 |
| Certificate ID: | D7KLNCCPGWTNFG9 |

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, Space Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Sam Yousefzadeh*

Sam Yousefzadeh, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Alexandria, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

In re:    Case No. 23-14859-MER
          Chapter 7

SHILO DION SANDERS, *Debtor*

MERCEDES-BENZ FINANCIAL SERVICES USA LLC, *Movant*

v.

SHILOH DION SANDERS and
DAVID V. WADSWORTH, Chapter 7 Trustee, *Respondents*

---

**NOTICE OF MOTION FOR RELIEF FROM STAY
AND OPPORTUNITY FOR HEARING PURSUANT TO 11 U.S.C. §362(d)**

---

**OBJECTION DEADLINE: April 23, 2025**

YOU ARE HEREBY NOTIFIED that a Motion for Relief From Stay has been filed, a copy of which is attached hereto.

A hearing on the Motion has been set for **April 30, 2025, at 9:30 a.m.** The hearing will be conducted by telephone. The hearing **telephone number is 833-568-8864.** The **meeting ID is #161 090 8955.** The hearing will be conducted in accordance with the provisions of L.B.R. 4001-1.

IF YOU DESIRE TO OPPOSE THIS MOTION, you must file with this court a WRITTEN OBJECTION to the Motion on or before the objection deadline listed above and serve a copy upon movant's attorney, whose address is listed below.

If you file an objection you are REQUIRED to comply with L.B.R. 4001-1 regarding hearing procedures, including (1) the timely submission and exchange of witness lists and exhibits and (2) attendance at the above-scheduled hearing in person or through counsel, if represented.

**IF YOU FAIL TO FILE AN OBJECTION**, the scheduled hearing will be **vacated**, and an order granting the relief requested may be granted without further notice to you.

Dated: April 1, 2025

Respectfully submitted,

**DOUGLAS D. KOKTAVY, P.C.**

by: /s/ Douglas D. Koktavy
Douglas D. Koktavy, #14641
Building B, Suite 120
10200 East Girard Avenue
Denver, Colorado 80231
Telephone: (303) 758-6601
Facsimile: (303) 758-6540
E-mail: Doug@ColoradoCreditorLaw.com

**ATTORNEY FOR MOVANT**

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2025, a true and correct copy of the foregoing **NOTICE OF MOTION FOR RELIEF FROM STAY AND OPPORTUNITY FOR HEARING PURSUANT TO 11 U.S.C. §362(d)** and **MOTION FOR RELIEF FROM STAY,** was served via a Notice of Electronic Filing transmitted by CM/ECF in accordance with Local Bankruptcy Rule 5005-4(a), to:

| | | |
|---|---|---|
| Shilo Dion Sanders*<br>PO Box 1864<br>Longmont, CO 80502 | Keri L. Riley<br>1660 Lincoln Street<br>Suite 1720<br>Denver, CO 80264 | James Van Horn<br>555 12th St NW Suite 1200<br>Washington, DC 20004 |
| Victor D Vital<br>2801 N. Harwood St.<br>Suite 2300<br>Dallas, TX 75201 | United States Trustee<br>Byron G. Rogers Federal Building<br>1961 Stout St.<br>Ste. 12-200<br>Denver, CO 80294 | David V. Wadsworth<br>2580 West Main Street,<br>Suite 200<br>Littleton, CO 80120 |
| Peter A. Cal<br>675 Fifteenth Street<br>Suite 2300<br>Denver, CO 80202 | Simon E. Rodriguez<br>PO Box 36324<br>Denver, CO 80236 | |

* served via United States Post Office Mail, first-class postage prepaid

/s/Douglas D. Koktavy
Douglas D. Koktavy

2